**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KEITH ALLEN, M21830,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **ANTHONY WILLS,** | ) |
| **ANGELA CRAIN,** | )          **Case No. 23-cv-3775-DWD** |
| **J. CRANE,** | ) |
| **ALISA DEARMOND,** | ) |
| **M. MOLDENHAUER,** | ) |
| **N. FLORENCE,** | ) |
| **N. YOUSUF,** | ) |
| **KELLY PIERCE,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Keith Allen, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Upon initial review on January 26, 2024, the Court allowed Plaintiff to proceed on five claims against a select group of Defendants, and service of process began. (Doc. 11). Meanwhile, Plaintiff has filed a Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. 32), a Second Motion for Counsel (Doc. 33), and a Motion for the Issuance of Subpoenas (Doc. 34). For reasons explained in this Order, all motions will be denied at this time.

THE TRO/PRELIMINARY INJUNCTION

The operative claims in this case are as follows:

**Count 1:**     **Eighth Amendment deliberate indifference claim against Defendants J. Crane, Alisa Dearmond, M. Moldenhauer, N. Florence, and N. Yousuf concerning their handling of his right-hand injury as medical professionals;**

**Count 2:**     **Eighth Amendment deliberate indifference claim against Defendants Anthony Wills, Angela Crain, and Kelly Pierce for their handling of Plaintiff's grievances and other correspondence about his need for care;**

**Count 3:**     ***Monell* claim against Wexford for maintaining multiple allegedly harmful customs, policies, or practices that prevented Plaintiff from getting timely and appropriate care;**

**Count 4:**     **State law medical negligence claim against Defendants J. Crane, Alisa Dearmond, N. Yousuf, and N. Florence for their early handling and diagnosis of Plaintiff's injury;**

**Count 5:**     **State law intentional infliction of emotional distress claim against Defendants J. Crane, Alissa Dearmond, N. Florence, N. Yusuf, M. Moldenhauer, Anthony Wills, Angela Crain, and Wexford.**

(Doc. 11 at 30).

In the Motion for Preliminary Injunction, Plaintiff seeks a court order removing his current medical hold and directing his transfer to protective custody at Pontiac Correctional Center, subject to many specific requirements (for example, ADA accommodations, single-cell status, access to religious services, etc.).   (Doc. 32 at 1). Plaintiff also seeks copies of all his medical and mental health records for a seven-month period.   (Doc. 32 at 1).   Plaintiff complains about various conditions of his current confinement including access to the phones, access to hot water, ongoing sexual

harassment, tampering with his mail, and access to showers, among other things.  (Doc. 32 at 1-2).

All of Plaintiff's requests are premised on his contention that the defendants will not transfer him because they are using the medical hold to retaliate against him for filing grievances and for initiating this lawsuit.  (Doc. 32 at 2).  Plaintiff contends that he qualifies for the relief he seeks because the medical issues with his hand were completely resolved as of August of 2023 when the orthopedist released him from treatment and physical therapy at a post-surgical follow-up, and thus he should not have a medical hold.  (Doc. 32 at 2).  He claims he has attempted to sign paperwork to remove his hold, and to grieve the hold, to no avail.  (Doc. 32 at 2-3).

Plaintiff alleges that without the injunctive relief, he will continue to suffer violations of his First and Eighth Amendment rights, as well as Equal Protection violations.  (Doc. 32 at 3).  He argues that it would not be burdensome for Defendants to remove his medical hold and to effectuate his transfer, because transfers from Menard to Pontiac's protective custody occur regularly.  (Doc. 32 at 3-4).  He further alleges that it is in the public interest to grant him relief to prevent ongoing retaliation.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief.  *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).  An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued.  *Mays*, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn,

extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

Here, the relief Plaintiff seeks is not directly related to the claims that have been allowed to proceed in this lawsuit concerning deliberate indifference to Plaintiff's medical needs for an injured hand.  In fact, Plaintiff admits in support of his Motion, that his hand is now healed, and he has been released from treatment.  Instead, Plaintiff's Motion propounds a new legal theory that the Defendants are retaliating against him for initiating this litigation.  Injunctive relief must be tied to an existing claim and must be necessary to preserve the status quo in relation to that claim.  Here, Plaintiff's injunctive relief is *not* tied substantively to the underlying claims, and it is not necessary to preserve the status quo as to those claims while the litigation plays out.  Accordingly, because the injunctive relief sought is not related to the operative claims, and because it expands into new legal theories such as the right to observe his religion, Plaintiff's Motion (Doc. 32) will be **DENIED**.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Second Motion for Counsel (Doc. 33) is supported by evidence that he has attempted to secure his own counsel, and it is also supported by a memorandum wherein he argues about the various reasons he believes he needs counsel.  The Court already considered these arguments in relation to Plaintiff's original Motion for Counsel (Doc. 4) and nothing significant has changed since that time.  There is  no right to the

appointment of counsel in civil matters.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010).  When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff is still actively pursuing this case on his own behalf, and his efforts suggest he is competent to continue to represent his own interests.  The case is still in its infancy at service of process, and the next steps will involve a simple exchange of information guided by the Court's scheduling order (which will issue when all parties have answered).  Based on the early status of this litigation, the Court will deny Plaintiff's Second Motion for Counsel (Doc. 33) without prejudice.

### MOTION FOR SUBPOENAS

Plaintiff has moved for subpoenas, and has submitted proposed subpoenas, which make it clear he intends to seek his: grievance records, medical records, counseling records, financial records, inmate movement records, inmate disciplinary records, inmate handbook records, and mental health records.  (Doc. 34).  While it is certainly possible that this information will all be relevant to this litigation, the Court takes a staggered approach to discovery in cases brought by inmates.  First, if the defendants express a desire to pursue the affirmative defense of failure to exhaust administrative remedies, then the parties will be directed to engage in discovery about grievance records and the like.  If exhaustion is raised, the Court will issue a limited discovery schedule tailored to this issue.  Second, after the exhaustion phase (or if the defendants do not raise that issue),

the Court will then issue a full merits discovery schedule, which will facilitate the further exchange of information such as medical records, disciplinary records, and the like.  Until the Court has issued each of these schedules, discovery is not formally open, and the Court will not grant Plaintiff's Motion for Subpoenas at this time.  Answers from most of the defendants are due in late March 2024, so the parties should refrain from engaging in any discovery until answers have been filed and a scheduling order has issued.  Plaintiff's Motion for Subpoenas (Doc. 34) is **DENIED**.

### SERVICE OF PROCESS

The Court has been unable to locate Defendants Florence and Yusuf by contacting the prison directly.  (Doc. 30).  Accordingly, Plaintiff is **DIRECTED** to supply the Court with any additional information he possesses that may help identify and serve these parties with 21 days of this Order.  This information may include Florence and Yusuf's place of employment, or any other contact information.

**IT IS SO ORDERED.**

Dated: March 1, 2024

/s David W. Dugan

_____
DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.