IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEITH ALLEN, M21830, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | Case No. 23-cv-3775-DWD |
| ANTHONY WILLS, | ) | |
| ANGELA CRAIN, | ) | |
| ALISA DEARMOND, | ) | |
| N. FLORENCE, | ) | |
| N. YOUSUF, | ) | |
| KELLY PIERCE, | ) | |
| JILLIAN CRANE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Keith Allen, an inmate of the Illinois Department of Corrections (IDOC) brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, he alleged that the defendants failed to treat or delayed treatment for a hand injury he sustained during a fight in August of 2021. Defendant Florence has moved for judgment on the pleadings, or alternatively, for summary judgment on the exhaustion of administrative remedies. (Docs. 83, 84). Plaintiff has responded (Doc. 92) and has also filed a few miscellaneous motions (Docs. 93, 94, 95). As explained in this Order, Defendant Florence's Motion (Doc. 83) will be denied, and this matter will now proceed to full merits discovery on all claims against all defendants.

BACKGROUND

Here, the Court will limit the factual overview to the assertions relevant to Defendant Florence.  Plaintiff injured his hand on August 16, 2021, while defending himself during a fight.  On August 17, 2021, Plaintiff saw Defendant Crane (a nurse practitioner) who gave him and ice pack and pain medication.  (Doc. 1 at 18).  On August 20, 2021, Crane saw Plaintiff a second time and he had an x-ray due to discoloration of his right hand and visible swelling.  (Doc. 1 at 20).  Crane and Defendant Dearmond believed the x-ray showed no fracture or break.

On August 20, 2021, Crane also sent the x-ray films to an outside radiologist—Defendant N. Florence—for evaluation.  (Doc. 1 at 21).  Plaintiff alleges that Florence determined the films were unremarkable.  (Doc. 1 at 21).  He argues that this assessment was incorrect, because his hand was actually broken.  He further alleges that the misdiagnosis delayed or denied him access to further care.  (*Id.*).  He claims that Florence reached this conclusion despite knowing of his severe hand injury and ongoing pain.  Plaintiff further alleged that Florence's conduct was negligent, and that it constituted an intentional infliction of emotional distress.  (Doc. 1 at 22-23).

In the Order of Initial Review (Doc. 11), the Court allowed three claims against Florence:

Claim 1:    Eighth Amendment deliberate indifference claim against Defendants J. Crane, Alisa Dearmond, N. Florence, and N. Yusuf concerning their handling of his right-hand injury as medical professionals;

Claim 4:    State law medical negligence claim against Defendants J. Crane, Alisa Dearmond, N. Yousuf, and N. Florence for their early handling and diagnosis of Plaintiff's injury;

Claim 5:    State law intentional infliction of emotional distress claim against all Defendants.

(Doc. 11 at 12).  Plaintiff was allowed to proceed on additional claims, and all additional claims and claims listed above against other defendants, are awaiting the opening of merits discovery.

FINDINGS OF FACT

A.  Judgment on the pleadings

Plaintiff's medical records submitted with the Complaint (and again in response to the recent motions) reflect that he had x-rays in August and September of 2021.  On August 26, 2021, Dr. Florence reported no evidence of an acute fracture or malalignment, and no other remarkable characteristics.  (Doc. 1-1 at 29).  The x-ray films were stamped as received on August 31, 2021, and as reviewed by an M.D. on September 7, 2021.  (Doc. 1-1 at 29).  On September 7, 2021, Defendant Crane completed a radiology summary form that indicated the results were "normal or stable."  (Doc. 1-1 at 35).  In the interim, Plaintiff's medical chart also indicated he got a second x-ray on August 31, 2021.  (Doc. 1-1 at 28).  On September 2, 2021, Dr. Yousuf reported no sign of fracture or abnormality, but suggested, "[i]f symptoms persist or progress, a follow-up study may be considered." (Doc. 1-1 at 32).  On September 14, 2021, Plaintiff had a third x-ray.  (Doc. 1-1 at 36).  On September 16, 2021, Dr. Yousuf noted mild degenerative changes, but no acute fracture or dislocation.  He noted mild swelling, but again stated a follow-up could be considered

if symptoms persisted or progressed. (Doc. 1-1 at 38). The results were stamped as received October 5, 2021, and as reviewed by an M.D. on October 13, 2021. (Doc. 1-1 at 38). Ultimately, Plaintiff was seen by the Orthopaedic Institute of Southern Illinois on February 8, 2022, at which time x-ray films were taken and revealed "an old fracture at the base of the 5th metacarpal [that] was impacted, but it was healed." (Doc. 1-1 at 63).

### B. Exhaustion of administrative remedies—grievance records

On October 15, 2021, Plaintiff submitted a grievance about his right-hand injury that he designated as an emergency. (Doc. 1-1 at 39-40). The Warden approved emergency handling of the grievance, which was assigned number 232-10-21. (*Id.*). In the grievance Plaintiff explained that he injured his hand and immediately experienced severe visible swelling. He made requests to nurses during cellhouse rounds for assistance, and he was ultimately seen a few days after his injury by a nurse practitioner (Defendant Crane). Crane ordered an x-ray, and gave pain medication, and in subsequent weeks, Plaintiff ultimately had three x-rays that all revealed no damage. His severe pain persisted. At the time of writing the grievance, he indicated he was still in serious pain, and he sought an x-ray and MRI from an outside provider, as well as additional medication for the pain. He claimed that without intervention, he was suffering ongoing pain in violation of the Eighth Amendment, inflicted by "Menard staff, correctional officers, health care personnel, nurses, LPNs, doctors, Wexford Health Care providers Inc., the assistant warden, director of operations, chief administrative officer (warden), John Doe staff, etc." (Doc. 1-1 at 39-40).

In response, the healthcare unit administrator indicated that Plaintiff had undergone x-rays on August 20, 2021, and August 31, 2021, and he was scheduled to review the results of the latter x-ray and possible future treatment. (Doc. 92 at 15, 18). Based on this report, the grievance officer recommended denying the grievance as moot, and the Chief Administrative Officer (CAO) concurred on November 10, 2021. (Doc. 92 at 15, 18). Plaintiff timely appealed to the Administrative Review Board (ARB). The ARB deemed the grievance "mixed" given that an appointment was pending. (Doc. 92 at 19).

Plaintiff submitted a second emergency grievance about his hand on November 3, 2021. (Doc. 1-1 at 45-46). The Warden expedited it for emergency processing, and it was assigned number 95-11-21. (Doc. 1-1 at 45). In the grievance Plaintiff indicated he was still awaiting a response for his first emergency grievance, and that his pain had intensified without treatment. He blamed the "nurses, LPNs, staff members, COs, John Doe staff, Wexford Health care medical provider personnel, Warden (Chief administrative officer), assistant warden, director of operations, doctors, [and] physicians" for violating his rights with the lack of treatment. On November 8, 2021, the grievance officer labeled the grievance a duplicate of the first emergency grievance, and on November 10, 2021, the Warden concurred with this finding. (Doc. 1-1 at 50). The ARB rejected the grievance as a duplicate and because the events alleged were "not submitted within the timeframe outlined in Department Rule 504." (Doc. 1-1 at 51). The ARB further noted, "date of incident is outside of 60 days." (*Id.*).

On February 15, 2022, Plaintiff submitted a third grievance that was approved for emergency processing and was assigned number 121-2-22. (Doc. 92 at 24-25). Plaintiff

alleged that on February 8, 2022, he was seen for his hand injury at an outside hospital and was told his hand was broken.  He alleged his hand had healed improperly, and that he was also diagnosed with arthritis and carpal tunnel.  Plaintiff indicated he desired surgery and medication.  He stated, "Wexford Health Care Services, Inc., staff nurses, LPNs, in Menard C.C. who gave me 3 different x-rays within a 30 day period right after I broke my hand all lied to me maliciously and misdiagnosed me when they told me the x-rays they had conducted results came back negative with no broken bones where they joked about it and I knew it was lie which the second opinion from the outside doctor and LPN I seen on 2/8/22 confirmed."  He further alleged that the lack of diagnosis or misdiagnosis caused him prolonged suffering and permanent disfigurement or damage, which he attributed to "Menard's staff and Wexford's health care services provider, inc. staff, medical staff, nurses, LPNs, doctors' inadequate policies."  (Doc. 92 at 24-25).

In response, the healthcare unit administrator relayed notes from the orthopedic specialist consistent with the notes quoted above in the facts about judgment on the pleadings.  (Doc. 92 at 26-27).  Based on this report, the grievance officer recommended the grievance be denied as moot, and the CAO concurred.  The ARB denied the grievance on March 30, 2022, as appropriately addressed by the prison, and because treatment is at the discretion of the licensed medical providers.  (Doc. 92 at 28).

CONCLUSIONS OF LAW

A.  Legal Standards

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

FED. R. CIV. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357-58 (7th Cir. 2016). A reviewing court must draw all reasonable inferences and facts in favor of the non-movant but need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014). "As in a Rule 12(b)(6) analysis, [the court's] review is limited to the pleadings; however, the court 'may take into consideration documents incorporated by reference to the pleadings,' and 'may also take judicial notice of matters of public record.'" *Milwaukee Police Ass'n v. Flynn*, 863. F.3d 636, 640 (7th Cir. 2017) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. _Pavey v. Conley_, 544 F.3d 739, 742 (7th Cir. 2008).[1]  After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. _Wilborn v. Ealey_, 881 F.3d 998, 1004 (7th Cir. 2018).  The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal.  _See e.g._, _Walker v. Harris_, 2021 WL 3287832 * 1 (S.D. Ill 2021); _Miller v. Wexford Health Source, Inc._, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a); _Pavey_, 544 F.3d at 740.  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." _Pavey v. Conley_, 663 F.3d 899, 903 (7th Cir. 2011).  For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." _Pozo v. McCaughtry_, 286 F.3d 1022,

---

[1] The Court's ability to conduct _Pavey_ hearings for evidentiary disputes on exhaustion was altered slightly by the Supreme Court's holding in _Perttu v. Richards_, 605 U.S. ____, 145 S.Ct. 1793 (June 18, 2025) (holding that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim, then a jury trial is required on the intertwined issue(s)).  In the present case, there is no _Perttu_ intertwinement issue.

1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's

decision. _Id._ The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. _Id._ The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

### B. Analysis

#### 1. Judgment on the pleadings

Defendant Florence argues that he is entitled to judgment as a matter of law because Plaintiff's complaint and the records submitted with it show that Florence only reviewed the first of three x-ray films, and Florence's findings were consistent with two subsequent films. (Doc. 84). Based on his very limited involvement in Plaintiff's situation, and the two corroborating films after the August 26, 2021, assessment, he argues that Plaintiff simply cannot establish deliberate indifference. He claims that deliberate indifference requires something more than mere negligence, and something so far afield it was not based on medical judgment. (Doc. 84 at 4-5). Plaintiff vehemently contests Florence's characterization of the situation, arguing at length that his injury was serious, Florence was aware of his extreme pain and swelling, and Florence chose not to act, thus depriving him of care or delaying care with an overall negative permanent outcome.

Unlike Defendant Moldenhauer, who was able to argue in this case for judgment as a matter of law based on a nuanced reading of the medical records appended to the complaint (Doc. 90), Defendant Florence's position is less compelling. The Court already thoroughly reviewed and analyzed the allegations and evidence in this case at the initial

review stage under 28 U.S.C. § 1915A.  The standard of review at that phase is akin to a motion to dismiss, and thus it is also akin to the standard applicable to a motion for judgment on the pleadings.  The Court acknowledged in the Order of Initial Review (Doc. 11) that the evidence against some of the providers, including Florence, was thin but that it was sufficient to proceed beyond initial review so that the factual record could be further developed.  While it is certainly plausible that Florence had a very singular and remote role in this case, reviewing just a single set of films, the Court does not yet have any evidence that defines the scope of his relationship to Menard healthcare staff, or the information he had available to him at the time he reviewed the films.  While Florence alleges his actions were taken in complete isolation, Plaintiff alleges that Florence knew more about his situation and had greater insight into his condition.  Given that the parties are still in opposition over facts that will better illuminate this claim, judgment on the pleadings is inappropriate.

Florence also seeks dismissal of the intentional infliction of emotional distress claim.  Plaintiff argues the claim should survive because Florence knowingly and intentionally falsified medical records concerning his x-ray and prevented him from getting care or a proper diagnosis until six months later.  (Doc. 92 at 20-22).  While these facts may not hold up at the merits summary judgment phase, for now, they are sufficient to proceed with the other claims.  As the Court previously indicated, if the primary constitutional claim against Florence fails (Claim 1), the Court will relinquish supplemental jurisdiction over related state law claims against Florence.

### C.  Exhaustion of administrative remedies

Defendant Florence argues that Plaintiff failed to exhaust administrative remedies against him because his three relevant grievances were not properly processed at all levels of the grievance system.  Specifically, he argues that Plaintiff's October 15, 2021, grievance and his February 15, 2022, grievance, were both found to be appropriately addressed by the Administrative Review Board, and Plaintiff did not appeal these findings.  (Doc. 84 at 7-8).  As to the November 3, 2021, grievance, Florence argues that the grievance was not filed in the correct timeframe, and Plaintiff did not appeal this finding.  Florence argues that Plaintiff did not specifically mention him in any of the grievances, and he argues none of them were properly appealed.

Defendant Florence's stance is perplexing.  All three grievances were processed at all levels of review within the available grievance system.  Plaintiff initiated them at the prison, they were reviewed by grievance officers and the Chief Administrative Officer, and Plaintiff appealed them to the ARB.  It is true that the November 3, 2021, grievance was marked as out of timeframe, but it was also noted as purely duplicative of the October 15, 2021, grievance.  Perhaps Florence means to argue that because the grievances were deemed appropriately addressed by prison staff and thus moot or satisfactory, then Plaintiff has no cause to sue, but this is not how the IDOC grievance process functions.  There are instances when inmates attempt to argue that a favorable resolution at the prison level means they do not have to go to the ARB level of review, but that is not the situation in this case.  Defendant Florence's arguments that Plaintiff failed to exhaust the grievances at all levels are entirely unavailing and must be rejected.

Alternatively, Florence argues that none of the grievances are sufficient to identify

him. This issue is a closer call. The IDOC grievance rules technically call for a description

of a person being grieved if their name is not known, but courts have taken a slightly

more lax approach and have allowed grievances that sufficiently notify the prison system

of the issue being grieved. Plaintiff repeatedly complained in his October 15, 2021,

grievance and again in his February 15, 2022, grievance that he had three x-rays, but none

of them adequately identified the source of his pain. He also complained in the

November 2021 grievance that it was a follow-up query on the October 15, 2021,

grievance which had been deemed an emergency, but had otherwise not been returned

to him. The contents of these grievances were adequate to notify the prison that he did

not believe he was getting satisfactory care for his injury, and that he attributed part of

the problem to the three early x-rays that failed to detect any issue.

While Plaintiff may not have known Defendant Florence's name, Florence's role

could have been easily identified by a review of Plaintiff's medical records. The Seventh

Circuit and other judges in this District have found a grievance to be sufficient to exhaust

a claim if it is sufficiently detailed for the prison to identify and remedy an issue,

regardless of if it precisely names a particular medical provider or employee. *See e.g.,*

*Jackson v. Esser*, 105 F.4th 948, 959-60 (7th Cir. 2024) (the PLRA does not have a "name all

defendants" requirement, but the grievance must at least provide enough information

about the problem for the prison to reasonably investigate and resolve the issue); *Maddox

v. Love,* 655 F.3d 709, 721-22 (7th Cir. 2011) (a grievance can be sufficient without naming

a person if it fairly describes the underlying issue and thus gives the prison a chance to

rectify it); *Glick v. Walker*, 385 Fed. App'x 579, 582 (7th Cir. 2010) (grievances are intended to give prison administrators a chance to address a shortcoming, not put individual defendants on notice of a lawsuit); *Bakaturski v. Brookhart*, 2022 WL 1093633 (S.D. Ill. Apr. 12, 2022) (finding a grievance sufficient to exhaust a claim against a healthcare administrator where she was not named, but conduct she participated in was described in the grievances); *but see Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) (finding that a grievance that singled out a doctor and made no mention of specific nurse, was not sufficient for exhaustion against the nurse because it had nothing to do with her alleged conduct). Here, Plaintiff's grievances repeatedly spoke of the x-rays he had, one of which was reviewed by Florence. The grievances were addressed by the prison on the merits, which suggests they contained enough information for prison to be on notice of underlying issues and those involved even if they were not individually named. As such, the grievances are sufficient to exhaust the claim against Defendant Florence.

MISCELLANEOUS MOTIONS

On the same day that he filed his response to Defendant Florence's Motion, Plaintiff moved for the Court to take judicial notice and to accept a late filing (Doc. 93). In the Motion he complains of alleged retaliation in various forms that he claims delayed his ability to file his response. The Motion (Doc. 93) is **GRANTED** to the extent that Plaintiff asks the Court to accept his response as timely. To the extent Plaintiff is attempting to expand the bounds of this suit to include any retaliation allegations described in the motion, any such effort is rejected as improper.

Plaintiff's Motion for a Copy and Status (Doc. 94) is **GRANTED** in part. The Motion is **GRANTED** as to the request for status on Florence's Motion, and it is **DENIED** to the extent that Plaintiff seeks a copy of document 33. As the Court previously explained, copies are $0.50/page. Document 33 is 22 pages, so it would cost $11.00. Plaintiff can get a copy by sending payment and a letter to the Clerk's Office.

Finally, Plaintiff's Second Motion for Status (Doc. 95) is **GRANTED** to the extent he seeks an update on Defendant Florence's Motion, and it is otherwise **DENIED** to the extent he seeks to revive old motions for counsel or injunctive relief.

### DISPOSITION

Defendant Florence's Motion for Judgment on the Pleadings or Summary Judgment on Exhaustion (Doc. 83) is **DENIED.**

Plaintiff's Motion for Judicial Notice (Doc. 93) is **GRANTED** to the extent Plaintiff asks the Court to accept Document 92 as timely, but it is otherwise **DENIED** to the extent it seeks to expand claims. Plaintiff's Motion for Status (Doc. 94) is **GRANTED** by the issuance of this Order, and is **DENIED** as it pertains to the request for a courtesy copy. Plaintiff's Motion for Status (Doc. 95) is **GRANTED** in part as it pertains to Defendant Florence's Motion, but it is **DENIED** to the extent he seeks to revive old motions.

**IT IS SO ORDERED.**

Dated: July 11, 2025

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge