In The United States District Court
For The Southern District Of Illinois

Keith Allen - M21830

    Plaintiff,

V.                                           Case No. 23-cv-3775-DWD

Wexford Health Sources, Inc, et al.

    Defendants.

SCANNED at MENARD and E-mailed
12/16/25 by ___ 51 pages
Date    Initials    No.

" Plaintiff's Response Motion To Deny - Defendant Nicholas Florence, M.D.'s Motion To Dee Requests To Admit Admitted Pursuant To Rule 36(a)(3)"

    This Plaintiff, Keith Allen - M21830, pro se, files the following motion-" Plaintiff's Respon Motion To Deny - Defendant Nicholas Florence, M.D.'s Motion To Deem Requests To Admit Admit -ed Pursuant To Rule 36(a)(3)", and states as follows:

    1.) On 04/15/2025, plaintiff was shipped from Menard Correctional Center's segregation housing unit for a court writ to Dupage County Jail pertaining to plaintiff's pending criminal appeal matters and remained in Dupage County Jail until he was transferred back to menard on 8/10/25 where plaintiff was placed back in Menard's Correctional Center segregation housing unit where he was placed in a suicide cell because Menard C.C.'s staff members alleged there was no other cells available with no personal property or pens, paper, legal documents, etc, where Plain -f remained in segregation until 9/10/25. ( See Ex. # ■)

    2.) Then on July 25, 2025, defendant served plaintiff with Interrogatories, Requests for Production, and Requests to Admits. (Defendant's Ex. A - 7/25/25 Request to Admit).

    3.) Under Rule 36(a)(3), plaintiff's responses to the Requests to admit were due 30 days later, on or about August 24, 2025. Plaintiff served no responses and made no contact, yet plaintiff didn't have none of his personal property or legal documents to adequately respond to defendant's Discovery reques at that time making him unable to respond.

    4.) The on September 16, 2025, Defendant sent Plaintiff a written reminder advising that the Jul including the Requests to Admit - was overdue and granting an additional 14 days to respond,

page ① of ⑤

and even though plaintiff was now released from segregation he was unable to access his excess legal exchange personal property where property staff sent all his excess property with his needed legal documents to respond to defendant's discovery request was held preventing him still from being able to respond, and plaintiff earnestly wrote personal property request to obtain those documents for weeks, yet he wasn't called to personal property in time to be able to get the needed documents to respond. (Ex. B - 9/16/25 Letter).

5.) Then plaintiff wrote Defendant's attorney James D. Sloan a letter certified mail explaining to him, on 10/5/25, that plaintiff was unable to respond to defendant's Discovery requests due to the unforeseen above mentioned events beyond plaintiff's control and he's working to get his personal property needed to respond, along with the copy of the discovery request that was placed in excess property to be sent to plaintiff that was tooken from plaintiff when he got out of seg due to not having enough room in his personal property to take it all to his cell, and that once he obtained these items he'd respond to defendant's discovery request and telling him he needed additional time to respond. (see Ex. #2, Ex. #3 -Attached-)

6.) Then on October 6, 2025, counsel for defendant held a telephone conference with plaintiff; during that call, plaintiff stated that certain materials had been taken from him and requested that discovery requests be resent and to give him an additional 30 days for plaintiff to respond to defendant's discovery request, which would give plaintiff enough time to respond before the new deadline of 11/5/25, which defendant's counsel agreed to.

7.) Immediately following the call, defendant re-served all written discovery, including the Requests to Admit, by letter dated October 6, 2025, which expressly set a new due date of November 5, 2025. (Ex. C - 10/6/25 Letter)

8.) On 11/3/2025, plaintiff sent via certified mail through the menard correctional center's institutional mail by placing his Discovery Response to defendant's Requests to Admi tories to plaintiff, and Request for production of documents (consisting of a total of

— 459 documents, both side copies, attached to fulfill all production of documents requests by defendant), which costed plaintiff a total of $18.00 to mail out all those Discovery Response documents certified mail with tracking number and it was enclosed in a Big Manilla Envelope, which plaintiff's trust fund balance proves where it shows plaintiff was charged $18.00 for postage for mail sent out on 11/04/2 that plaintiff placed in Menard Correctional Center's institutional mail on 11/3/25, by placing it in the bars Monday night (11/3/25) to be collected by Correctional Staff at 11:00 pm to be processed and mailed out certified mail the very next day early morning on 11/04/25, which is the normal mail procedures at Menard Correctional Center, which is also shown and proven by attached exhibits numbered - #2, #3, #4 (trust fund - Inmate Transaction Statement), where exhibit #2 which is a copy of the "money voucher" to pay for certified mail sent to defendant's lawyer - James D. Sloan, (posting document #: 857046), dated - 10/5/25, and exhibit #3 which is the "U.S. Postal Service - Certified Mail Recci (dated - October 7, 2025, stamped and received by USPS to be mailed out), # 9589 0710 5270 1701 5616 44 , for the letter plaintiff sent out certified mail to James D Sloan, Litchfied CAVO, 303 W. Madison St., Chi, IL 60606, on 10/5/25, which the trust fund balance reflects; so plaintiff proves that he did respond to Defendant's Discovery Request and on time when he mailed it out certified mail to James D. Sloan on 11/3/25, two days before the 11/5/25 deadline to respond, so defendant's lawyer should have received it, which is why plaintiff didn't respond to defendant's lawyer's November 6, 2025 letter final written reminder noting that the November 5 deadline had passed, giving 14 additional days to respond, in advising that defendant would move to compel and move to deem the Requests to Admit admit -ted if no responses were received, because plaintiff just mailed out the Discovery Response requested on 11/3/25 and defendant's lawyers would receive it within the next week or so, and attached is a copy of plaintiff's Discovery Response to defendants Discov -y Requests for Production of Documents, Response to Interrogatories, and Requests to Admit to plaintiff, consisting of 42 pages total not including the 459 pages of production of documents that consists of the documents N. Florence's lawyer sent plaintiff when plaintiff had to respond to N. Florence's Partial Summary Judgment for failure To Exhaust Administrative Remedies and Motion to

— Dismiss, and the only other documents plaintiff possess at this time is the 450 pages of exhibit plaintiff attached to his verified complaint, until plaintiff receives the production of documents he requested via subpoena via certified mail to the various different institutions he's still currently waiting on a response back from to fulfill his requests, so as of right now todate, defendant have all the documents plaintiff has already. (See attached Exhibit # 5 -" which is Plaintiff's Discovery Request Response to defendant's Request for Admissions, Request for Interrogatories, Request for Production of documents (42 pages total) ; Ex. # 2, Ex. # 3, Ex. # 4).

9.) Since plaintiff did respond to defendant's Discovery Request on time, despite defendan -'s attorney James D. Sloan alleging that he didn't get it via certified U.S. Postal Service mai which he should have received by the time of his 11/21/25 filing of his motion titled's " Defendant's, Nicholas Florence, M.D.'s Motion To Deem Requests To Admit Admitted Pursuan To Rule 36 (a)(3)", and plaintiff attached copy of Plaintiff's Response To Defendant Nichola Florence, M.D.'s Interrogatories, Request for Production of Documents, and Requests to Admi to plaintiff, consisting of 42 pages, not including the attached documents in response to producti -on of documents and attached exhibits # 2, # 3, # 4, # 5, with the documents in response to production of documents being approximately 300 to 450 pages total, both side copies of documents that plaintiff will have to send E-Filed seperately as a Supplemental Filing to this motion in order to include those documents in response to Production of Documents requested as attached exhibits, because here at Menard C.C., the law library clerk staff has a policy which doesn't allow inmates to e-file filings that exceed 150 pages, so I'll have to e-file the exhibits seperately; and for these reasons, defendant's "motion to Deem Requests to Admit Admitted Pursuant To Rule 36 (a)(3)" should be Denied.

10.) Also, plaintiff asks the Honorable Judge; David W. Dugan, to take these matters into consideration with the defendant N. Florence's attorney lying, alleging he never receiv -d plaintiff's Response to their Discovery Request, which plaintiff mailed out certified mail, then betur -s around and tries to use that lie as grounds to get the court to deem all his questio-

- to admit to be admitted maliciously, and for these additional reasons plaint -iff asks the court to grant his motion (Pending) for Appointment of Counsel to prevent future tactics by defendant's Attorneys which prejudices the plaintiff due to his pro se status.

Keith Allen - M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

Respectfully Submitted
Keith Allen - M21830
By: Keith Allen
Plaintiff - Pro Se

"Certificate OF Service"

I, Keith Allen - #M21830, hereby certify that on 12/14/25, I sent this motion and attached exhibits, and plaintiff's Response to N. Florence's Discovery Requests (Ad -missions, Interogatories, Production of Document response, 42 pages total) to Menard Cor -ctional Center, law library - Clerk Staff to be E-Filed to: The Clerk OF Court, United States District Court, 750 Missouri Ave, East St. Louis, IL. 62201, and to be sent to all defendant's of the record.

Keith Allen - M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

Date: 12/14/25
/S/ Keith Allen
Pro Se - Plaintiff Signature

In The United States District Court
For The Southern District Of Illinois

(Exhibit #5)

Keith Allen - #M21830
        Plaintiff,

v.                                             No. 23-cv-3775-DWD

Wexford Health Sources, Inc, et al.
        Defendants.

"Plaintiff's Response To Defendant's-Nicholas Florence, M.D.'s Interrogatories To Plaintiff"

"Plaintiff's Interrogatories Answers To Questions #1 - #15 questions"

Plaintiff, Keith Allen - M21830, pro se, pursuant to Fed. R. Civ. P. 33, responds to Defendant, Nicholas Florence, M.D.'s "Interrogatories To Plaintiff" within 30 days following service on 10/6 25.

1.) Identify all grievances, complaints, or other written communications you filed or submitted concerning the care you received for your right hand injury from August 16, 2021, to present, including the dates, contents, and outcomes of each.

Answer: (1.) (A.) Plaintiff wrote a sick call request slip on 8/17/21 concerning my pain and swelling in right hand. (B.) Plaintiff filed emergency grievance on 10/15/21, grievance # 232-10-21, seeking adequate medical care, for a second opinion, and expressed the pain and suffering endured and inadequate care being provided by various medical care staff, which grievance was declared an emergency by CAO for expedited grievance review. (C.) Plaintiff wrote another sick call request on 10/28/21, about plaintiff breaking his hand and the severe pain and suffering experienced and the need for pain pills to help ease the pain, and requests for treatment, where I was put in for a sick call evaluations. (D.) Plaintiff wrote a request to LPN medical staff on 11/3/21, explaining that he broke his hand on 8/16/21 and is experiencing excruciating pain and suffering and in dire need of pain pills and medical treatment because his hand pai worse and may lead to permanent disfiguration, which led to plaintiff being put in for sick c another emergency grievance on 11/3/21, grievance # 232-10-21, seeking medical treatm from an outside nurse on his right hand, the pain and suffering he experienced and th

page (1) of (37)

-experienced, ~~have~~ he broke his hand and haven't received proper medical care for his injury, and it was dee
-ed an emergency. (F.) Plantiff filed another emergency grievance dated 2/15/22, grievance # 121-2-22, regarding
medical treatment and surgery has been deemed emergency by CAO for expedited grievance review, and how
the outside clinic Orthopaedic hand specialist diagnosed an old fractured right hand and Carpal tunnel
Verve Damage, Arthritis, and the need for surgery, to correct his improperly healed fractured right hand,
etc., with this grievance seeking bone correction surgery being denied by Angela Crain. (G.) Plaintiff
wrote sick call request slip on 5/10/22, due to complaints of pain and suffering in right hand and other
symptoms of pain experienced due to fractured hand and not healing properly, as well as Carpal Tunn
Nerve Damage and Arthritis, need for pain pills until he can obtain the surgery to properly fix his right
right hand and correct the nerve damage, and I was put in for sick call. (H.) Plaintiff wrote _____ reques
to Mental Health Personell, on 5/10/22, informing her that he broke his right hand that has improperl
healed, and the nerve damage plaintiff is enduring, is causing him mental health, issues of depression, and
various other kinds of pain and suffering; then he was seen by mental health personell. (I.) Plaintiff
wrote ~~request~~ request to Angela Crain - Head of Medical Director on 5/18/22, informing her that he broke his
right hand, which is causing him pain and suffering (and he was seen by medical healthcare) and he needs
surgery to fix it, and for pain pills until he can get surgery and regularly prescribed Anti-inflammat
-ry pain pills, and the negative affects his right hand injury is having on his mental health, and
eventually he was seen by Medical healthcare personell; (J.) Plaintiff wrote Medical request to Angela Crain
Head of Medical Director, on 5/31/22, informing her of the pain and suffering he experienced, due to an
old fractured hand that has improperly healed is causing him emotional distress and other symptoms o
pain, and he requests a follow up examination from an outside clinic's Orthopaedic Specialist, and he
_____ put in for sick call; (K.) Plaintiff wrote request to Warden on 5/31/22, informing him about the
severe pain and suffering he is experiencing, the inadequate treatment he's been given, attempts to gain
roper medical treatment, the various symptoms of pain and discomfort experienced, requests.
requesting for a follow-up examination by outside Orthopaedic Hand Specialist and sur
    ain and suffering, and led to him being put in for sick call, and sent to outs
                                    page (2) of (37.)

- Plaintiff wrote request to counselor of East House, on 9/28/22, requesting for pain pills for the intermitten pain in his right hand due to his right hand injury. (M.) Plaintiff wrote sick call request slip, dated 10/31/22, about how plaintiff slipped trying to climb up on the top bunk with his new "soft brace" he received from medical staff, which injured his right hand injury further, and needs pain pills, for his pain and suffering, a bottom bunk permit, and requests for surgery to repair his right hand, and he was sent to see an outside Orthopaedic Hand Specialist; (N.) Plaintiff filed grievance dated 11/3/22, requesting surgery for pain and suffer induced for right hand injury, pain pills, and the hand splints, pills, and physical therapy is inadequate medical care and was considered for surgery; (O.) Wrote grievance dated 11/21/22, requesting a right wrist hand splint to protect his wrist and hand from getting worser, and causing more pain, other symptoms experienced, and inadequate treatment received, pain pills, and requests for surgery. Forw d to medical staff for review; (P.) Wrote grievance dated 11/21/22, requesting surgery for hand Carpal Tunnel Nerve Damage pain, grievance # 296-11-22, consisting of requests for Carpal Tunnel Syndrome Surgery for the pain and suffering he experienced to due the Nerve Damage and Arthritis and other pain and discomfort he was experiencing with the inadequate courses of treatment being ineffective, and he was reviewed by medical staff. (Q.) And various external Health requests for pain and the negative affects his hand injury was having on his mental health.

(2.) Identify each individual who you contend denied or delayed medical care for your right hand from August 16, 2021, to present, and describe their specific acts or omissions that you allege constitute deliberate indifference.

Answer: (2.) Jilian Crane - violated plaintiff's Eighth Amendment rights by denying him acce -s to adequate medical care and for being deliberate indifference to his serious medical needs in the following way listed. Plaintiff broke his right hand in a fight in self-defense with another inmate where his hand was swollen and in severe pain, where on 8/17/21 J. Crane seen plaintiff in person, in response to a sick call request, where he voiced his complaints of e pain and suffering due to the pain he experienced in his right hand injury, showi

-showing her how swollen it was, the purple discoloration, restricted range of motion being unable to make a fist, telling her it felt like his hand was broken, how he needed some pain medication to help cope with the pain, and how he may need surgery and need to see a physician, yet he was only provided an ICE PACK, some Ibprofen 200mg tablets for pain, resulting in plaintiff being denied access to adequate medical treatment, delayed adequate treatment for non-medical reasons, administered blatantly inadequate medical treatment, misdiagnosed his X-ray film reading on 8/30/21 stating the results came back negative for any fractures or broken bones and making sarcastic remarks and joking about his hand injury stating it was remarkable it can be that swollen but not have any fractures or broken bones, falsifying medical reports and misstating all of his symptoms by leaving some out that would be required referring him to see a Medical Doctor/Physician, thereby exacerbating his pain and suffering and injury unnecessarily, persisting in a course of treatment known to be ineffective, prolonging his pain and suffering, with J. Crane's professional judgment which no minimally competent professional would have so responded under those circumstances, exhibiting deliberate indifference to plaintiff's serious medical needs.

Jilian Crane also exhibited deliberate and intentional Indifference to plaintiff's serious medical need for not following their own policies, or rules and regulations, protocols, state laws, court decisions, Wexford medical policies, and NCCHC medical standards, which caused plaintiff unnecessary pain and suffering and worshiping his injury as a result by violating the following: (1.) IDOC Administrative Directive, number -03.02.108, Title:"Standard OF Care", by not following all federal, state and local laws, all applicable court decisions and orders related to the performance of their job duties which J. Crane failed to do; (2.) IDOC Administrative Directive, number -04.03.10( ), Title: Offender Health Care Services", (F.) (3.) (b.) (c.) (1.) by not affording plaintiff daily access to health care personnel and for not referring him to see an Orthopaedic Hand Specialist physician as needed for his severe hand Injury and pain; (3.) Nurse Practitioner J. Crane failed to follow her professional obligation and  ...dant duty to ensure plaintiff received constitutionally adequate care; (4.) J. Crane violated

page (4.) of (37)

— Wexford's Health Sources, Inc Medical policy by denying plaintiff access to emergency care
which is supposed to be made available 24 hours a day, seven days a week, and denying a
referral to outside Medical Doctor/Physician to meet medical needs when no physician is on
site to properly attend to plaintiff serious medical needs; (5.) Jillian Crane violated Wexford
Health Sources, Inc. Medical policy by denying plaintiff his right to request to see a physician,
failing to honor his request within 72 hours as required when requested or referred for
second opinion, evaluation, diagnosis, and or treatment; (6.) IDOC Administrative Directive, number
03.02.108, Title: "Standards of Conduct" — (10.) "Giving False Information" — which J. Crane violated
by violating when she provided false information on medical incident sick call reports taken on
8/17/21, when she wrote "No" presence of discoloration when there were symptoms of it leading to
plaintiff's need to be referred to see a Medical doctor, which her medical sick call report on 8/20
21 proves, where she acknowledge plaintiff's purple discoloration and swelling; contradicting her first
medical report 3 days prior; (7.) IDOC Administrative Directive, number — 03.02.108, Title: Standards
of Conduct", which J. Crane violated by giving false information by knowingly providing false
information, and falsifying medical reports by forging the signature on documents "Laboratory and
Radiology Summary" report meant for a Medical Doctor to sign, which J. Crane is not since
she's a Nurse Practitioner by not following the National Commission of Corrections Standards of
Professional care and treatment resulting in prolonged pain and suffering and worsening injury;
(8.) J. Crane was deliberate Indifference to plaintiff's serious medical needs by her refusing
to follow the advice of Medical Doctor Radiologists N. Yousuf recommending that plaintiff be seen
by a Doctor at an outside clinic for evaluation and treatment which denied and delayed
access to adequate medical treatment that prolonged his pain and worsened his injury; (9.)
J. Crane violated Intentional State Tort claims and Medical Malpractice Intentional Medic-
al Negligence by being made aware of plaintiff's severe hand injury in person by continued
complaints of pain and suffering among various symptoms of deformity, severe pain, swelling
f range of motion on three seperate occasions and via Medical Doctor Radiologist's —

— x-ray findings requesting patient see an outside doctor at an outside clinic from his "Me.D., Review" (N, Yousuf) if the x-ray conducted on 8/31/21, yet LPN (NP) Nurse practitioner didn't adhere to the standard of Corrections Health Care Standards by not following the recommendations of specialist to refer plaintiff to see a physician for as examination for not communicating to physician hand specialist plaintiff's continued symptoms and complaints of pain for not following NCCHC Standard of care requiring LPN (NP) practitioner to report accurate information to treating physicians for practicing outside the scope of her license by providing medication without a prescription from a doctor for persisting in an ineffective course of treatment, for significantly diminishing the seriousness of plaintiff's severe hand injury which was later found out to be broken/fractured causing permanent damage, irreparable damage, disfiguration, healed improperly, diminished loss of functioning and range of motion, as a result of J. Crane's intentional and negligent failure by the medical professional to comply with the NCCHC standard of care for practice outside her scope of practicing by assessing and diagnosing plaintiff's injury, making full determinations for plaintiff's care and denying an unnecessary pain and suffering was proximately caused by J. Crane's deviation from the standard of care.

    Alsia Deamond, registered nurse, was deliberate indifference to plaintiff's serious medical needs, she also delayed and denied Access to adequate medical care and committed intentional medical negligence and medical malpractice in the following was enlisted: (1.) Alisa Deamond was personally made aware of plaintiff's complaints of pain and suffering from his severe hand injury, witnessing how swollen it was when accompanying (NP) J. Crane at his first two x-rays conducted on 8/20/21 and 8/31/21, yet Deamond failed to provide adequate treatment to inmate herself, by referring him to see a physician for corrective treatment, or ensure that others did by contacting supervisory personnel to voice my concerns about the treatment being provided to him causing the unnecessary and wanton infliction of pain and suffering; (2) At plaintiff's second x-ray on 8/31/21 that came back negative for fractures, Alisa Deamond was made aware of

page 6. of 37.

— plaintiff's severe hand injury for the second time, his continued complaints of pain and discomfort, witnessed his swelling, and him being in dire need of seeing a doctor, where Dearmond prescribed Ibuprofen 600mg pain medication which she knew was an ineffect-e course of treatment by plaintiff's repeated complaints of pain and suffering with plaintiff saying the pain medication not fixing the problem, prolonging his pain and worsening his injury; ③ Alisa Dearmond conducted a third x-ray on plaintiff on 9/14/21 that came back negative for any fractures in a sick call with her being present for his severe hand injury, misdiagnosing his injury, and failing to provide any adequate medical treatment despite plaintiff's many repeated complaints of experiencing extreme pain & suffering, which she disregarded and fell on deaf ears with Alisa Dearmond turning a blind eye to any serious medical needs for fear of what she might see causing him unnecessary and wanton infliction of pain; ④ After Alisa Dearmond forwarded 9/14/21 x-ray film for review to Radiologist — N. Yousif whose x-ray review findings noticed mild soft swelling of the thenar and hypothenar eminences, and referred plaintiff to be seen by a physician, in response Alisa Dearmond having knowledge of a significant risk to plaintiff's health and safety administered blatantly inappropriate medical treatment, acting is a nurse contrary to the recommendation of specialists, and denying and delaying plaintiff access to adequate medical treatment for non-medical reasons, thereby exacerbating his pain and suffering

Alisa Dearmond also exhibited deliberate and intentional indifference to plaintiff's serious medical needs for not following their own policies, Rules and Regulations, protocols, state laws, protocol, professional obligation, court decisions, medical policies and NCCHC medical standards, Wexford Health Sources, Inc. policies, which caused plaintiff unnecessary pain and suffering and worsening his injury as a result, by violating the following: ⑤ IDOC Administrative Directive, number- 04.03.103 Title: "Offender Health Care Services"- (F) ③ (b) (C.) ① : by Alisa Dearmond denying and failing to provide plaintiff daily access to proper healthcare personnel and being referred to a physician when it's —

- determined medically necessary as recommended by medical Doctor Radiologist - N. Yousuf constituting intentional and wanton infliction of pain; (6.) IDOC Administrative Directive number - 04.03.121, Title: "Treatment Protocols", for Alisa Dearmond after evaluating plaintiff for the same complaint three times in 30 days for the same complaint of his severe right hand injury, conducting three x-rays within 30 days with her being present at each one, and still didn't refer the plaintiff to see a physician for evaluation, causing unnecessary and intentional wanton of pain and suffering; (7.) IDOC Administrative Directive number - 04.03.103, Titled: Offender Health Care Services, (a.)(b)(c.) was violated by Alisa Dearmond when upon receiving plaintiff's referral request to a primary physician by Medical Doctor - N. Yousuf after review of swelling seen on plaintiff's x-ray review findings report plaintiff wasn't seen within 72 hours for an Orthopaedic Hand Specialist Physician evaluation as required; (8.) And for being denied 24 hour access to Medical Doctor for limb threatening injury, suffering from a broken hand, and Alisa Dearmond failing to follow the Radiologist N. Yousuf's recommendation to see an outside physician for follow-up evaluation and possible treatment causing unnecessary pain and suffering and worsening his injury.

   Alisa Dearmond violated State Tort Medical Malpractice and International Medical Negligence in the following ways: (a.) For Alisa Dearmond's failure to provide plaintiff the standard of care in the medical community by which the medical professional's treatment is measured and plaintiff is entitled to that, and Dearmond caused plaintiff unnecessary pain and suffering, worsening his injury, resulting in irreparable damage, permanent disfiguration and deformity, loss of functioning and range of motion, prolonged pain and denying adequate medical care for a broken right hand, by refusing to refer him to see an Orthopaedic Hand Specialist Medical Doctor after being made aware of his injury on three seperate in person on x-ray visits; and Medical Doctor Radiologist recommendations for plaintiff to be seen by Doctor at outside clinic, constituting unnecessary and wanton infliction of pain and suffering; (b.) For Alisa Dearmond failing to meet her independant duty to ensure that plaintiff received -

constitutionally adequate care, when she had knowledge of plaintiff's severe hand injury and continued pain, yet still delayed and denied him access to to see an Orthopaedic Hand Specialist by refusing to refer him to the outside clinic for an evaluation; (c.) For Alisa Dearmond failing to communicate to Orthopaedic Hand Specialist Doctor describing the symptoms and information about plaintiff's complaints of pain and suffering, severed hand injury, deformity, swelling, loss of range of motion, and for persisting with providing known ineffective courses of medical treatment in prescribing only pain pills for a broke hand exacerbating his injury; (d.) For Alisa Dearmond's knowledge of plaintiff's severe hand injury by her in person observations and awareness of a substantial risk of harm to his health on three different occasions and disregarding it when it was obvious that plaintiff/patient had serious medical needs; (e.) Alisa Dearmond violated her duty when she was confronted with an inappropriate and questionable practice was not to simply defer to it, but rather she had a professional obligation to plaintiff/patient to take appropriate action, whether by discussing the nurse's concern with the Orthopaedic Hand Specialist or by contacting a responsible administrative or higher authority which she failed to do; (f.) For Alisa Dearmond failing to provide a complete description of the situation for doctors to review upon evaluation, significantly diminishing the seriousness of plaintiff's symptoms or by misleading medical professionals about plaintiff's health condition leading to him not being referred to see an Orthopaedic Hand Specialist Medical Doctor, denying and delaying his access to adequate medical care; (g.) For Alisa Dearmond's failure to report accurate information to treating physician when she didn't report the symptoms of mild soft tissue swelling of the thenar and hypothenar eminences, and his constantly repeated complaints of pain and suffering in the "Offender Outpatient Progress Notes" conducted after X-ray Note taken on 9/14/21; (h.) Alisa Dearmond violated the standard of care owed to injury plaintiff by her failure to follow IDOC Administrative Directive, number—04.03.121, Titled: "Treatment Protocols," for plaintiff being evaluated for the same complaints of pain three times in 30 days with Dearmond on 8/30/21, 8/31/21, an

-9/14/21 and she still didn't refer plaintiff to see an Orthopaedic Hand Specialist denying him adequate medical treatment causing unnecessary and wanton infliction of pain.

Nicholas Florence — Medical Doctor - Radiologist, N. Florence was deliberate indifference to plaintiff's serious medical needs and denied access to adequate medical care, which cause plaintiff the unnecessary and wanton infliction of pain and prolonged his pain for non-medical reasons that exacerbated his injury in the following ways: ① On 8/26/2 medical doctor, N. Florence, was made aware of plaintiff's severe hand injury by 8/20/ x-ray film report sent to Radiologist (N. Florence) from (NP) Jilian Crane with him knowingly disregarding obvious risks to inmates health being deliberate indiference to plaintiff's serious medical needs via misdiagnosis of plaintiff's injury causing unnecessary and wanton infliction of pain, exacerbating his injury, and delaying and denying access to medical personnel quali-fied to exercise judgment about a particular medical problem; ② For N. Florence had knowledge of plaintiff's severe hand injury and pain experienced, yet failed to provide adequate medical treatment to plaintiff himself, by referring him to see a physician for evaluation or to ensure others did, e.g. by contacting supervising personnel to voice any concerns about treatment being provided to him constituting unnecessary and wanton infliction of pain; ③ For N. Florence also exhibiting deliberate and intentional indifference to plaintiff's serious medical needs for not following their own policies, rules, and regula-ions, protocols, State laws, professional obligations, court decisions, medical policies and NCCHC medical standards, and Wexford Health Sources, Inc., medical policies which caus plaintiff unnecessary and prolonged pain and suffering that worsened his injury as a resu in the following ways: ④ For N. Florence failing to follow his professional obligation and state aw by him knowingly ignoring obvious risks to inmate's health since confronted with an 'inapp-priate or questionable practice' he should not simply defer to that practice, but rather has a professional obligation to patient to take appropriate action, whether by discussing Radiolo

-st's concerns with the treating physician by contacting a responsible administrator or higher authority which he failed to do, not following their own policy of medical professional standards of the National Commission of Corrections Health Care Standards to ensure plaintiff received constitutionally adequate care; (4.) N. Florence constituted deliberate and intentional indifference to plaintiff's serious medical needs for not exercising his professional judgment and failing to follow his obligation and duty to adhere to medical policies and NCCHC Standards consisting unnecessary and wanton infliction of pain and suffering on plaintiff, prolonging his pain and worsening his injury, his broken/fractured hand by interfering with reasonable medical judgment by factors unrelated to plaintiff's medical needs in adhering to Wexford's Health Sources, Inc, unconstitutional policies and procedures restricting adequate medical care that doesn't allow for proper diagnosis and treatment aimed at cutting costs to save money and increase profits by denying inmates who rely on them as their only means of seeking medical care; (5.) For N. Florence Violating IDoc Administrative Directive, number-03.02., Titled: "Standard of Conduct", (6), (a), (b)., by denying plaintiff access to adequate medical care, delaying treatment, committing medical malpractice, not adhering to all federal, state and local laws, failing to obey all applicable court decisions and orders related to the performance of his job duties; (6.) For N. Florence Violating IDoc Administrative Directive, number-04.03.103, Title: "Offender Health Care Services" - (F).(3).(b). (C).(1), by denying plaintiff daily access to health care personnel and being referred to an Orthopedic Hand Specialist physician as needed for evaluation and treatment.

<u>N. Yousuf</u> - Medical Doctor Radiologist - N. Yousuf, exhibited deliberate indifferent to plaintiff's serious medical needs and delaying and or denied access to adequate medical treatment, consisting unnecessary and wanton infliction of pain, prolonging plaintiff's suffering exacerbating his injury, in the following ways: (1.) Medical Doctor, Radiologist

— N. Yousuf had knowledge of plaintiff's severe hand injury by X-ray report reviews conduc-
-ted on 8/31/21 sent to him by (NP) J. Crane from Menard Correctional Center, which
he reviewed on 9/14/21, consisting of plaintiff's extreme pain and discomfort and the
excessive risk to inmates health, yet he disregarded it, and failed to remedy it or take action.

(2.) Also upon N. Yousuf's review of the X-ray film review tooken on 8/31/21 by J. Crane
sent to him on 9/2/21 and he reviewed and received on 9/14/21, N. Yousuf misdiagnosed
plaintiff's severe hand injury stating in his X-ray review film findings," the joint
spaces are intact, no fracture, destructive or erosive abnormality; the soft tissues
are unremarkable," delaying and denying plaintiff access to adequate medical care
constituting deliberate indifference and worsening plaintiff's injury and prolonged his pain.

(3.) N. Yousuf, radiologist, constituted deliberate and intentional indifference by not following
his medical duty and professional obligation, state and federal law, applicable case law, and
medical policies, to ensure that plaintiff received constitutionally adequate care after he reque-
-sted that plaintiff be referred to see a Doctor at the outside clinic; (4.) On 9/16/21
Medical Doctor - N. Yousuf, Radiologist's review of X-ray report findings identified mild
degenerative changes are seen, but no acute bony fracture or discoloration is noted on
this initial study but did note mild soft tissue swelling of the thenar and hypothenar
eminences that weren't recognized in his X-ray findings on 8/31/21, yet when
confronted with an inappropriate or questionable practice, he deferred to it, disregar-
-ed his professional obligation to patient to "take appropriate action," whether by
discussing his concerns with the Orthopaedic Hand Specialist physician, by contacting
a responsible administrator or higher authority; again knowingly, disregarding a risk to
plaintiff's health constituting deliberate and intentional indifference, causing plaintiff unnecessary and
wanton infliction of pain prolonging his suffering and exacerbating his injury; (5.) N. Yousuf's
misdiagnosis of plaintiff's fractured right hand on X-ray review films tooken on 8/31/21 and
9/14/21, by Menard C.C.'s medical staff, caused plaintiff an approximately 5 month delay in bee-

— Seen by an outside doctor Orthopaedic Hand Specialist physician, who confirmed when Orthopaedic Hand Specialist conducted an X-ray he determined in his diagnostic Assessment the plaintiff, "did have an old fracture at the base of the 5th metacarpal malunion, Bilateral Carpal tunnel Syndrome, and Arthritis; causing plaintiff unnecessary pain and suffering, worsening his injury resulting in irreparable damage, permanent disfiguration and deformity, loss of function and range of motion, prolonged pain and denying him access to adequate medical care for a broken right hand and refusing to ensure he was seen by an outside doctor Orthopaedic Hand Specialist physician, after Radiologist recommendations requesting plaintiff be seen by a doctor at an outside clinic, constituting Deliberate and intentional indifference to his serious medical needs, unnecessary and wanton infliction of pain; (6.) N. Yousuf, Radiologist exhibited Deliberate and Intentional indifference by failing to adhere to NCCHC medical standards, protocols, policies, and his professional obligation and duty owed to plaintiff who suffered severe hand injury by failing to communicate to Orthopaedic Hand Specialist Doctor describing the symptoms and information about plaintiff's complaints of pain and suffering, injury, swelling, and for failing to act on ensuring plaintiff received adequate medical care after obtaining evidence and knowledge he was at risk of harm to his health, by delaying or denying necessary treatment and thus aggravating his injury and needlessly prolonging his pain, by persisting with inappropriate treatment in repeated X-ray reviews never contacting a Hand Specialist Orthopaedic physician, resulting in unnecessary and wanton infliction of pain exacerbating his injury leading to irreparable damage, and permanent disfiguration, deformity, loss of functioning, loss of range of motion, prolonging pain and suffering; (7.) N. Yousuf was also Deliberate and Intentionally Indifferent to plaintiff's serious medical needs for not following their own policies, NCCHC medical standards, which caused plaintiff unnecessary pain and suffering, and worsening his injury, as a result, by Violating the following in the following ways: (a) For N. Yousuf failing to report accurate information to treating physicians, which N. Yousuf's inconsistent X-ray film review findings confirmed with him on multiple occasions stating no fractures, no dislocations, or destructive or erosive abnormality with joint spaces being intact,

-which approximately 5 months later at the evaluation at the Outside Clinic with the Orthopaedic Hand Specialist Doctor whose diagnostic interpretation assessment of X-ray findings contradicted Medical Doctor Radiologist - N. Yousuf's finding reports, where the Orthopaedic Hand Specialist Doctor Radiologist findings stated: "plaintiff did have an old fracture at the base of the 5th metacarpal; it did appear was impacted and healed improperly, with right 5th metacarpal malunion, Bilateral Carpal Tunnel Syndrome, and Arthritis; with N. Yousuf's failure to comply with the standard of care, causing plaintiff unnecessary and wanton infliction of pain and prolonging his suffering, worsening his injury, deformity, loss of range of motion and loss of functioning in his right hand, constituting deliberate and intentional indifference; (b.) For N. Yousuf's violation of IDOC Administrative Directive, number 03.02.108, Title: "Standards of Conduct," F. G. 1. 4. 5 - 6. Requirements: 1. "Compliance With Laws and Regulations"; requiring employees to obey all applicable Court decisions and orders related to the performance of their job duties, which Radiologist, N. Yousuf, failed to do when he didn't uphold his independent duty to ensure that plaintiff received constitutionally adequate medical care, also when confronted with an inappropriate or questionable practice or knowledge of risk of harm to plaintiff's health, inconsistent X-ray findings, witnessing persistent inappropriate courses of treatment by nurses failure to refer plaintiff to see Orthopaedic Doctor for evaluation after they failed to heed Radiologist recommendation the first time, yet N. Yousuf simply deferred to that practice inspite of having a professional obligation to the plaintiff/patient to take appropriate action," whether by discussing their concerns with the treating physician or by contacting a responsible administrator or higher authority which N. Yousuf failed to do with that negligent failure to comply with the standard of care; resulting in ~~injuries~~ of irreparable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate hand, constituting intentional and wanton infliction of pain, prolonging his suffering, which was proximately caused by the deviation from the standard of care, constituting deliberate and intentional indifference for not following their own rules, regulations, policies, NCCHC standards of care, fed

—al, and state law, and medical intentional Malpractice; (C) For N. Yousuf violation of IDOC Administrative Directive Policy and NCCHC medical Standards of care and state laws number - 04.03.103, Title: "Offender Health Care services," (b), (c), -(F) Requirements (3) "Offer -er Access" (b). which states all offenders shall have be referred to specialty services if determined medically necessary; "Which N. Yousuf failed to do by not providing access to an Ortho -aedic Hand Specialist Doctor for Eval or treatment for the swelling he noticed on his X-ray findings, and by misdiagnosing plaintiff fractured right hand injury that resulted in plaintiff being denied and delayed proper medical treatment exacerbating his injury by N. Yousuf's failure to comply with the standard of care leading to plaintiff's resulting injuries of irreparable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, prolonging his pain and suffering, and causing him unnecessary and wanton affliction of pain, which proximately was caused by the deviation from the standard of care constitut -ing deliberate and Intentional indifference for not following their medical policies, protocols, state and federal laws, case laws, NCCHC standards, and Medical Malpractice; (d) For N. Yousuf failing to follow IDOC Administrative Directive, number - 04.03.103, Title: "Offender Health Care services, (E) Requirement; (6). Review of sick call requests; (C). states, "When an offender's request for non - emergency medical attention results in referral to a primary care physician by the screening health care staff, the primary care physician, yet N. Yousuf negligent failure to comply with the standard of care by not ensuring plaintiff was seen by a primary care physician within 72 hours constitut -ing Deliberate Indifference for not following their own policy and NCCHC standards, guidelines delaying plaintiff access to adequate medical care exacerbating his injury resulting in the unnecessary and wanton infliction of pain, irreparable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing him unnecessary prolonging his suffering, which was proximately caused by the deviation from the standard of care, constituting medical intentional negligence.

(Anthony Wills - Warden) — Warden - Anthony Wills were deliberate indifference to plaintiff's serious - page (15.) of (77)

- medical needs when plaintiff suffered a severe hand injury in a physical altercation in self-defense and despite his severe swelling and deformity and filing of two grievances emergency directly to the Warden with him deeming them as an emergency and several forms of ineffective medical treatment by his medical staff; who it's his responsibility to oversee and continued complaints of pain and suffering for approximately 6 months repeatedly being denied and delayed adequate medical treatment before plaintiff was sent to Orthopaedic Hand Specialist, by which time it was too late to obtain proper surgery to repair a broken hand because the specialist focuses on mobility verses pain and to the fractured right hand healing though improperly exacerbating his injury causing him nerve damage, Arthritis, permanent irreparable damage, disfiguration, loss of range of motion and loss of function in his right hand and plaintiff had to wait 4 months after seeing a Hand Specialist and finding out he was misdiagnosed and needed to see a nerve specialist for an evaluation, and three months after that to see a hand specialist, and given several different courses of knowing ineffective courses of treatment before experiencing a 19 month delay from time of injury until receipt of meaningful treatment in the form of Carpal Tunnel Surgery, before being denied bone repair treatment surgery by Menard CIC's Health Care Unit Administrator, despite his complaints of ongoing symptoms, including pain, suffering, migraines, headaches, insomnia, loss of range of motion and functioning, severe hand cramps, loss of feeling in hand, fingers all the way up to his elbow, mental anguish and extreme depression.

On 10/15/21, plaintiff filed an emergency grievance #232-10-21, by having it placed in the Warden's box informing him of my severe hand injury that felt like my hand was broken due to me getting into a physical altercation in self-defense which was causing plaintiff severe pain and suffering and discomfort, how swollen it was and how you could see it was deformed, requesting pain pills for the excruciating pain, how I put in for multiple sick calls, receiving only ineffective pain pills, x-rays 3 of them in 30 days that all came back negative, with my right hand injury preventing me from sleeping, migraines, headaches, writing since I'm right handed and doing normal activities like washing up and cleaning due to pain suffered, and requesting to receive a second opinion and x-ray from an outside nurse at a hospital, and MRI's to check for nerve damage and if it shows that my

—hand is fractured or I have nerve damage I'd like to have surgery to fix it and any other treatment I may need, yet the Warden after being informed of plaintiff's serious medical needs and receiving knowledge of a substantial risk of harm to plaintiff existed he disregarded it even after deeming it an emergency through a report or appeal or grievance, he failed to remedy the wrong causing plaintiff unnecessary and wanton pain, prolonging his pain for 4 months until seeing a physician because of Warden Anthony Wills being deliberate Indifference to plaintiff's serious medical needs.

(Kelly Pierce) – Grievance officer was forwarded plaintiff's grievance dated -10/15/21, grievance #232-10-21, sent emergency to the Warden- Anthony Wills, which fell on deaf ears leading to plaintiff ever receiving a response to that grievance with plaintiff receiving no relief or treatment for his severe hand injury by none of the grievance personnel exercising their authority to ensure plaintiff received adequate medical treatment despite all of them being made aware of his predicament by way of his grievance and other correspondences causing him unnecessary and wanton pain and prolonging his suffering which lead to his injury worsening to permanent disfiguration, deformity, loss of range of motion and loss of functioning, delaying him to see a physician for an evaluation for approximately 4 months later only to find out he had a fractured hand and it healed improperly and would need multiple surgeries to fix, yet the physician didn't feel it was needed at that point because he only focuses on mobility and not pain with Warden - Anthony Wills and grievance officer kelly Pierce both being deliberate indifference to plaintiff's serious medical needs.

Plaintiff filed another emergency grievance dated -11/3/21 -grievance # 95-11-21 to the Warden- Anthony Wills, which was forwarded to grievance officer - Kelly Pierce, because plaintiff still haven't received any adequate treatment or a response to his grievance deemed an emergency by Warden from the grievance officer and still suffering pain and suffering for a broken/fractured hand being forced to endure extreme pain, and kelly Pierce denying plaintiff's requests for adequate medical treatment for his fractured right hand, and second opinion x-ray from an outside nurse, and I to check for nerve damage, and whatever other treatment necessary, which the Warden concurred with, ruling that plaintiff's grievance was moot, denying plaintiff

-grievance without providing him any adequate treatment. With Grievance Officer, Kelly Pierce, being made aware of plaintiff's predicament and severe hand injury by way of multiple grievances and other correspondences, both of which highly detailed, yet both the Warden - Anthony Wills, and grievance officer, Kelly Pierce failed to exercise their authority to intervene on plaintiff's behalf to rectify the situation, and in violation of various IDOC Administrative Directives medical policies, Wexford Health Sources Inc., policies, state and federal laws and NCCHC medical standards showing deliberate and intentional indifference, and suggesting they either approved of or turned a blind eye to plaintiff's unconstitutional treatment exhibiting deliberate indifference to plaintiff's serious medical needs, causing him unnecessary and wanton infliction of pain, prolonging his suffering for approximately 4 additional months from the time they received his grievance before he seen a physician at the outside clinic exacerbating his injury, causing him irreparable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, preventing him from being able to receive the corrective surgery from his broken hand due to the 6 month delay from the date of his injury and the date he was evaluated by the Orthopaedic Hand Specialist Medical Doctor at the outside clinic.

(Angela Crain) — Angela Crain, the Health Care Unit Administrative, Registered Nurse, has the leadership responsibility and prime objective to provide high medical service, whose duty is also to manage all administrative aspects of the medical operation, and Angela Crain exhibited deliberate indifference to plaintiff's serious medical needs and denyed and/or delayed plaintiff Access to Adequate Medical care in violation of the Eighth Amendment's prohibitions of Cruel and Unusual Punishment in the following ways.

On 8/16/21, plaintiff sustained a severe hand injury in a fight in self-defense and that Angela Crain, the Health Care United Administrator and Unit Medical Director, who was the individual responsible for approving requests for inmates to be seen by outside doctors, that despite Medical Doctor's Radiologist review findings of x-rays that show mild degenerative changes and mild soft tissue swelling of the thenar and hypothenar eminences of plaintiff's right hand injury were so serious that physician's determinat
page (18) of [23]

-n on two seperate occasions he referred patient/plaintiff's referral request without explanation and for non-medical reasons for approximately 2½ months, and that because of the delay, the orthopedic Hand Specialist was unable to provide necessary surgery to repair his fractured right hand causing plaintiff needless pain and suffering and worsening the injury, causing irreparable damage, permanent disfiguration, deformity, loss of sleep, loss of feeling in right hand, and preventing plaintiff from performing and enjoying daily activities, constituting deliberate indifference intentionally to his serious medical needs in violation of his Eighth Amendment's prohibition against Cruel and Unusual punishment. As well as violating the following IDOC Administrative Directive Policies: 04.03.103, 04.03.121, 03.02.103, 04.03.108, 04.03.125, 04.03.105, 03.02.08.

Angela Crain, the Health Care Unit Administrative, Registered Nurse, has the leadership responsibility, and prime objective to provide high medical service, whose duty is also to manage all administrative aspects of the medical operation, and is also expected to manage all the medical unit administrative details and orchestrates the staff functions, review the lower level provider nurses medical care through quality assurances to identify deficiencies and improve patient outcomes, along with an independent duty to ensure plaintiff's severe hand injury (broken right hand) via emergency grievances on several occasions, repeated complaints, through sick call nursing staff evaluation reports, medical Doctor Radiologists physician referrals for plaintiff to see outside Doctor, sick call requests, her job titles and duties requires her to review all medical provider evaluations which showed plaintiff's repeated complaints of pain for his severe hand injury (broken right hand), seeking adequate medical care, yet Angela Crain failed to provide adequate medical treatment to plaintiff herself or to ensure that others did for approximately a 6 month period of constant complaints for his pain and suffering for his severe hand injury (broken hand), nor by contacting supervisory personnel to voice any concerns about the treatment being provided plaintiff after being confronted with an inappropriate or questionable practice of repeated complaints of pain for his severe hand injury over a six month period, 3 X-rays coming back negative within a 30 day period despite complaints of pain and only being given pain pills medication and denied access to see a physician or have a second opini-

-and X-ray by an outside hospital, and ignoring obvious risks to inmates health, and denying and delaying plaintiff access to adequate medical care; Angela Crain and Warden ███ Anthony Wills both also delayed plaintiff's recommended surgery for Carpal Tunnel Damage in his right hand requested by the Orthopaedic Hand Specialist on 11/15/22 for approximately 4 months with several delays for non-medical reasons before he actually received surgery on 3/3/23, and failed to return him for the Orthopaedic Hand Specialist for post-surgery follow-up Scheduled for 6 weeks after surgery that didn't actually occur until 8/3/23, 5 months later, constituting deliberate and intentional indifference to plaintiff's serious medical needs for not following her duty and professional obligation to ensure plaintiff received constitutionally adequate care policy, state law, rules, regulations, medical professional standard of NCCHC, causing plaintiff unnecessary and wanton infliction of pain, exacerbating his injury resulting in irreparable damage, permanent disfiguration, loss of functioning in his right hand, loss of range of motion, prolonged pain and suffering, depression, mental anguish, headaches, loss of sleep, all in violation of the Eighth Amendment's prohibition of Cruel and Unusual Punishment.

Inside the Wexford Health Sources, Incorporated "Provider Handbook" medical policies, usually called administrative directives as well as Wexford's own set of operational policies, and in cases, some of the policies apply to the medical and mental health services, which medical staff must be familiar with all of these policies, which Angela Crain violated Administrative directives, number -: 04.03.103, 03.02.103, 04.03.108, 04.03.121, 04.03.105, 03.02.108, 04.03.112, 03.01.07, 01.02 350; and Wexford's Health Sources, Incorporated "Provider's Handbook" Policies under sections = "Infirmary Care", "Health Care Roles", "Relationships", "Nursing Sick Call", "Emergency Care", "Doctor's Sick call", "Correctional Staff", and Nurse Duty And Professional Obligation to ensure plaintiff received constitutionally adequate medical care, constituting Deliberate and Intentional Indifference to plaintiff's Serious Medical Needs with non-compliance to these Administrative Directive and Wexford's policies inside the "Provider'Handbook", causing him unnecessary and wanton infliction of pain and resulting in irreparable damage, permanent disfiguration, prolonged suffering, loss of functioning in my right hand

- loss of range of motion, depression, mental anguish, headaches, extreme discomfort, and in violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment.

Angela Crain also violated IDOC Administrative Directive state law policy for failure to comply with laws and regulations requiring all employees shall obey all federal, state and local laws, all applicable court decisions and orders related to the performance of their job duties with failure to comply with **any** of the standards of Conduct may result in discipline including discharge, for Angela Crain ~~violating~~ violating the "Standards of Conduct" by failing to obey Federal law when she violated plaintiff's Eighth Amendment Rights in being deliberate and intentional indifference to his serious medical needs in violation of the Eighth Amendment's Prohibitions Against Cruel And Unusual Punishment, when she violated state laws Administrative Directives : 04.03.10, 03.02.103, 04.03.108, 04.03.121, 04.03.105, 03.02.108, 04.03.112, 03.01.107, 01.02.350; and for violating Court decision Perez v. Fenoglio, 792 F.3d 768 (2015) for being deliberately indifferent to plaintiff's severe hand injury, and for failing to perform her job duties and professional obligation to ensure plaintiff's serious medical needs, for not following their own policies, state law Administrative Directives, Rules And Regulations, Applicable Court decisions, and Wexford Health Sources, Inc., Policies, causing plaintiff unnecessary and wanton infliction of pain, and exacerbating his injury (broken right hand) resulting in irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion, deformity, mental anguish, headaches, loss of sleep, all in violation of plaintiff's Eighth Amendment's Prohibition against Cruel And Unusual Punishment.

(Wexford Health Sources, Inc.) — Plaintiff sustained a severe hand injury, a fractured right hand, and was denied and/or delayed access to an Orthopaedic Hand Specialist Medical Doctor for evaluation and adequate medical care for an approximately 6 month period on multiple occasions unnecessarily prolonged his pain and worsening his injury, also plaintiff was denied access to an outside clinic physician for a follow-up for his request ▉ for surgery to repair his improperly healed fractured right hand over a Carpal Nerve that caused him more pain and suffering, and was denied

any meaningful treatment for a 19 month period from 8/16/21 to 3/3/23 when plaintiff received Nerve Damage Carpal Tunnel Syndrome Surgery, and be prescribed known ineffective courses of treatment for a fractured hand, etc., causing plaintiff unnecessary and wanton infliction of pain, unnecessarily prolonged suffering, irreparable damage, permanent disfiguration, deformity, loss of range of motion, diminished functioning, extreme discomfort, sharp stabbing pains, numbness, throbbing, burning sensation in hand, and arm, headaches, severe hand cramps, loss of feeling in his right hand, mental anguish, depression, infliction of emotional distress, loss of range of motion, loss of functioning, pinching pains in wrist, amongst others, which was a result of Wexford's medical staff misdiagnosing his injury and various unconstitutional Wexford Health Sources, Inc., Policies, customs, and practices of denying and delaying of access to Adequate Medical treatment and care, being deliberate indifferent to plaintiff's serious medical needs in violation of the Eighth Amendments Prohibitions of Cruel and unusual punishment, which attributed to plaintiff's problem securing adequate medical care for his severe right hand injury, due to a host of policies, customs or practices maintained ~~by Wexford Health~~ Sources, Inc., which include:

- Directing Staff when conditions are pre-existing or chronic to simply monitor and observe them instead of providing treatment;
- Directing staff ~~to maintain doubt or suspicion~~ of inmate's complaints and to misdiagnose their injuries to avoid having to offer treatment;
- Failing to maintain a full time doctor at Menard to offer adequate medical care;
- Giving staff full discretion to disregard inmate's needs if it is convenient for medical and correctional staff;
- Encouraging staff to falsify information on medical documentation to support a misdiagnosis and to avoid offering treatment;
- Allowing Angela Crain to undermine recommendations of a provider by having final authority to decide on recommended procedures or services;
- Directing nurses or nurse practitioners to review X-ray films and to evaluate the x-ray

page (22) of (37)

-for treatment;

• Encouraging staff to prescribe ineffective courses of treatment for long periods of time to save costs;

• Instructing medical staff to give less attention to proposed corrective treatment that may only give some relief, and to give more weight to a proposal only if it will make a significant differen

• Telling staff they do not have an obligation to provide treatment simply because an inmate requests it;

• Prescribing non-formulary or generic drugs instead of brand medications;

• Prolong and delaying access to care to save money;

And as a result of these policies, customs, or practices that Wexford contributed to delays in plaintiff receiving inadequate medical care, which caused him unnecessary pains and suffering that worsened his injury and which allowed permanent damage.

③ State all facts supporting your allegation that Dr. Florence acted with deliberate indifference when interpreting your x-ray on August 20, 2021.

Answer: On 8/26/21, Medical Doctor, N. Florence was made aware of plaintiff's severe hand injury by x-ray report sent to Radiologist (N. Florence) from (NP) Jillian Crane on 8/20/21 with him knowingly disre-arding obvious risks to inmate's health being deliberate indifference to plaintiff's serious medical needs via misdiagnosis of plaintiff's injury causing unnecessary and wanton infliction of pain, exacerbating his injury, and delaying and denying access to medical personnel qualified to exercise judgment about a particular medical problem.

Medical Doctor, N. Florence, Radiologist had knowledge of plaintiff's severe hand injury and pain he experienced, yet failed to provide adequate medical treatment plaintiff himself, by referring hi to see a physician for evaluation or to ensure others did, e.g. by contacting supervisory personnel to voice any concerns about treatment being provided to him constituting deliberate indifference to pain and prolonging his pain for non-medical reasons exacerbating his injury.

Medical Doctor Radiologist, N. Florence's negligent failure by a medical professional, to comply with the Standard of care resulting in plaintiff's injury of pain and suffering being proximately caused by the deviation from the standard of care set by the National Commission of Corrections (NCCHC) Standard guidelines which required Radiologist, N. Florence, to report accurate information to insure that inmates receive constitutionally adequate care, misdiagnosing plaintiff resulting from failure to exercise ordinary knowledge and skill, constituting medical malpractice State Tort Claim violation and for not referring patient to see a Medical Doctor/Physician for examination constituting deliberate and intentional infliction of indifference to plaintiff's serious medical needs causing unnecessary pain and suffering and exacerbating his injury for a broken hand, causing unnecessary pain and suffering.

Medical Doctor, Radiologist, N. Florence, also constituted deliberate and intentional indifference for not exercising his professional judgment and fulfilling his obligation and duty to adhere to medical policies and National Commission of Correction (NCCHC) Standard Constituting unnecessary and wanton infliction of pain and suffering on plaintiff, prolonging his pain, exacerbating injury to his broken/fractured right hand, by interfering with reasonable medical judgment by factors unrelated to plaintiff's medical needs in adhering to Wexford's Health Sources, Inc's unconstitutional policies and procedures restricting adequate medical care that doesn't allow for proper diagnosis and treatment, aimed at cutting costs to save money and increase profits by denying inmate's who rely on them as their only means of seeking medical treatment being deliberate and intentionally indifferent to their serious medical needs.

Illinois Department of Correction Administrative Directive, number: 03.02.108, Title: "Standard of Conduct", (G.)(1.)(a.)(b.) states, " Employees shall obey all federal, state and local laws; and shall obey all applicable court decisions and orders related to the performance of their job duties which Medical Doctor Radiologist didn't do by denying plaintiff access to adequate medical care, delaying treatment, commiting medical malpractice, in violation of state law exhibiting deliberate and intentional indifference to plaintiff's serious medical needs causing him the infliction of pain and suffering, by

- not following their own policies, rules, regulations, NCCHC guidelines.

Illinois Department of Corrections Administrative Directive, number - 04.03.103, Title: Offender Health Care Services", (F.)(3.)(b.)(c.)(1.) states, "all offenders shall have daily access to health care personnel and be referred to a facility physician, physician assistance or nurse practitioner as needed, and offenders shall be referred for specialty services if determined medically necessary, with Medical Doctor, Radiologist, exhibiting deliberate and intentional indifference by not following their own policies, regulations, policies, guidelines causing plaintiff unnecessary pain and suffering exacerbating his injury.

(4.) Identify all healthcare professionals (including doctors, nurses, or other medical providers) who evaluated or treated your right hand between August 16, 2021, and February 2022, including their names, titles, and roles.

Answer: (a.) Jilian Crane (NP) Nurse Practitioner conducted an x-ray on 8/20/21, prescribed pain pills, conducted an x-ray on 8/31/21, and examined plaintiff on sick calls; (b.) Alisa Dearmond, (RN) Registered Nurse, accompanied Jilian Crane when conducting x-ray reviews on 8/20/21, 8/31/21, 9/14/21, prescribed ~~pain~~ pain pills, forwarded x-ray to radiologist, but failed to recommend plaintiff to see outside Clinic Doctor, made diagnosis; (c.) Nicholas Florence, Medical Doctor - Radiologist, conducted x-ray film reviews, made x-ray review findings of misdiagnosis, failed to recommend plaintiff to see outside Clinic Doctor, made diagnosis; (d.) N. Yousuf, Medical Doctor - Radiologist, conducted x-ray film reviews, made findings, recommended plaintiff to see outside Clinic Doctor, made diagnosis; (e.) Michael Moldenhauer, Nurse Practitioner (NP), sickcall evaluation, referred to be seen by outside Hand Specialist, gave pain pills; (6.) Glen Babich - Medical Doctor, who gave evaluation and diagnosed plaintiff's injury, order treatment plans, pain medication, referred for surgery, follow-up care; (7.) Jane Doe, Nurse Suzie, sick call reviews.

(5.) Identify all radiology imaging (x-rays, CT scans, MRI's, or other imaging) performed a

page (25) of (57.)

-your right hand from August 2021 to present, including the dates, facilities, and findings reported.

Answer: Plaintiff had radiology imaging x-rays on the following occasions: (1.) X-ray taken on 8/20/21, at Menard Correctional Center by Jilian Crane of right hand, with the findings from N. Florence, M.D., consisting of No Evidence of Acute fracture or malalignment; Normal joint space and mineralization is preserved; The soft tissues are unremarkable"; impression: "Unremarkable radiographs of the right hand." (2.) X-ray taken on 8/31/21 at Menard Correctional Center by Jilian Crane of right hand, with the findings consisting of: "Three views of the right hand are submitted; The joint spaces are intact; No fracture, destructive or erosive abnormality; The soft tissues are unremarkable; if symptoms persist or progress, a follow-up study may be considered"; X-ray review findings from N. Yousuf, M.D. (3.) X-ray taken on 9/14/21 at Menard Correctional Center by Alisa Dearmond of right hand, with the findings review from N. Yousuf consisting of: "Mild degenerative changes are seen, but not acute bony fracture or dislocating is noted on this initial study; There is mild soft tissue swelling of the thenar and hypothenar eminences; if symptoms persist or progress a follow up study may be considered"; (4.) X-ray was taken on 2/8/22 at office visit at The Orthopaedic Institute of Southern Illinois by medical staff, with the findings from Glen Babich - M.D., consisting of: "Diagnostic interpretation: X-ray were obtained today. Three views of the right hand were taken. He did have an old fracture at the base of the 5th metacarpal. It did appearances impacted but it was healed. Assessment: (1) Right 5th metacarpal fracture malunion; (2) Bilateral carpal tunnel syndrome; Plan: At this time, we did discuss nerve studies and carpal tunnel release. However, the patient states he is not interested at this point in Carpal tunnel surgery. He was told that if symptoms became worse or he would like to have this addressed that he can have a follow up made here at the clinic. It was explained to the patient that the fracture itself is healed. There is not much that can be done. An osteotomy more than likely would not provide any benefit due to the nature of the fracture and it did appear that the fracture had encroached on the distal row of carpal bones, but again the fracture is healed. He had very little pain on palpation of the practice site and was able to make a complete fist. At this time it was -

page (26.) of (37.)

-explained to the patient this does not appear to be a surgical issue. Surgery would be less tha optimal. He was instructed to take anti-inflammatories for his intermittent pain and to use t hand with no restrictions. We will go ahead and release him p.r.n." (5.) Nerve Conduction test Neurology Brain and Spine taken on 6/17/2020, at Southern Illinois Healthcare by Tiffany Ward M.D.; With findings consisting of: "Right hand pain", and Preliminary Report: There is evidence a mild median neuropathy at the right wrist; (6.) X-ray taken on 9/27/22 at The Orthopaed Institute of Southern Illinois, by medical staff David Mason - PA-C, with findings consisting of: "Diagnostic Interpretation: Three views of his right hand demonstrates healed 5th metacarpal base fracture. No displacement or angulation noted. Unchanged ~~from previous~~ evaluation. Physical Exa : his right hand did demonstrate a positive carpal compression. He did have a positive Tinel's. Negative Wattenberg, negative Fennent. No muscle atrophy. Strength was 5/5 bilaterally. Was neurovascularly intact. He had no tenderness to palpation along the base of his 5th metacarp -l. (7.) Clinical assessment/plan and Carpal Tunnel release, surgery, on 3/3/2023, Arthritis, Assessme t- (1.) "Nondisp fx of the base of fifth MC bone, right hand, init (S62. 346 A); Assessment (2.): "Carpal tun l syndrome, right upper limb (G 56.01); Plan) Findings: "I did advise him it does take a long time for that nerve to regenerate. It may never completely be perfect again, but in general, if he gives this plenty of time, it should continue to improve. We will see him back in our clinic as needed. If h has problems or issues in the fracture, we are happy to help out.

(7.) Identify any expert witness (including retained or treating experts) you may call to testify regarding Dr. Florence's care, and state the subject matter of their expected testimony.

Answer: Glen Babich - Medical Doctor who treated and conducted evaluation and assessment diagnosis of plaintiff's right hand is someone who may be called to testify regarding Dr. Florence care, and review the x-ray film Dr. N. Florence reviewed of the 8/20/21 x-ray and state how he misdiagnosed plaintiff's injury and testify as to plaintiff's right hand actually being fractured on 8/20/21, despite Dr. N. Florence's x-ray film review diagnosis stating otherwise, and who knows wha

— else Dr. Glen Babich might discover that N. Florence failed to acknowledge.

(8.) State all facts supporting your claim that Dr. Florence's actions caused any delay in your treatment or worsened your hand injury.

Answer: Dr. N. Florence's misdiagnosis of plaintiff's right hand fracture injury upon his 8/20/ x-ray film review findings and him failing to refer plaintiff to see an Orthopaedic Hand Specialist for evaluation, and his failure to ensure that plaintiff received adequate medical treatment and was seen by an Orthopaedic Hand Specialist for his complaints of pain and other symptoms of his right hand, caused plaintiff an approximately 6 month delay in being seen by an outside clinic Orthopaedic Hand Specialist for evaluation, which worsened plaintiff's injury causing his fractured right hand to heal improperly subjecting him to unnecessary and prolonged pain and suffering for non-medical reasons. All of which plaintiff's evaluation on 2/8/22 by Medical Doctor -Glen Babich -Orthopaedic Hand Specialists confirmed.

(9.) Describe in detail all injuries, pain, limitations, or other harm you claim resulted from Dr. Florence's alleged acts or omissions.

Answer: The injuries plaintiff suffered include unnecessary and wanton infliction of pain unnecessary prolonged suffering, extreme discomfort, irreparable damage, permanent disfiguration and deformity, loss of range of motion and loss of functioning in right hand, sharp stabbing pains and throbbing and burning sensations in right hand, wrist, and arm, numbness of hand and loss of feeling and weakness in right hand, pinching pains in wrist, severe hand cramps, loss of sleep migraines, headaches, extreme mental anguish, depression, infliction of emotional distress, unable to enjo egular activities, all from the following injuries of fractured bone in his right hand that healed improperly with the bone being infused together, no protective coating over the bone, bone marrow gone from inside it, with bare bones rubbing against each other and denied surgery to repair it so it can heal properly, then Arthritis bone joint pains, and Carpal Tunnel Syndrome Nerve dama

-pain with the improperly healed bone encroaching over Carpal bones, causing more pain, which plaintiff endured for approximately 6 months before, ~~seen by the orthopaedic~~ Hand Specialist for an evaluation and proper diagnosis of plaintiff's injury due to delays and denials caused by Radiologist N. Florence's misdiagnosis of plaintiff's right hand injury and him being deliberate indifference to plaintiff's serious medical needs; which contributed to a 19 month delay from the day of sustaining his fractured right hand injury on 8/16/21 until receiving any form of meaningful medical care in the form of surgery on 3/3/23, and being prescribed several forms of ineffective courses of treatment in being given different pain medications, hand splints, physical therapy as a result.

(10.) Identify all persons with Knowledge of facts supporting your claims against Dr. Florence, and briefly describe the informations you believe each person possesses.

Answer: (a) Jilian Crane, (NP) Nurse Practitioner who was the medical staff at Menard Correctional Cent who submitted plaintiff for X-ray of right hand injury and reviewed the findings on 8/20/21, who also evaluated plaintiff's hand injury in person on multiple sick call evals who had Knowledge of plaint f's swelling, pain, deformity, loss of range of motion, and functioning, purple discoloration, she reviewed the X-ray film review findings, and she was the person who ordered an X-ray film reviewed ~~from~~ Medical Doctor - Radiologist - N. Florence, with her sending him a copy of the X-ray film conducted of plaintiff's right hand on 8/20/21 and sent him other medical records of plaintiff's symptoms for N. Florence's to take into consideration when evaluating plaintiff's X-rays. And Jilian Cran and Alisa Dearmond both reviewed the X-ray films and plaintiff's swollen right hand and deformity and purple discoloration, loss of range of motion in person on 8/20/21 when conducting X-rays, and they were aware that N. Florence misdiagnosed plaintiff's right hand fracture and he was deliberate and intentionally indifference to plaintiff's serious medical needs because I believe the 8/20/21 x-ray film findings clearly showed that plaintiff's hand was fractured and if nothing else he was in dire need for a referral to see an outside Clinic Orthopaedic Hand Specialist - Medical Doctor for a proper evaluation

-and possible treatment, and for N. Florence to ensure that it got done after being made aware of the symptoms plaintiff exhibited, the substantial risk of harm to plaintiff's health, and after personally reviewing the X-ray films reviews himself.

I believe Angela Crain, the Health Care Unit Administrator at Menard Correctional Center had knowledge of the facts supporting plaintiff's claims against Dr. N. Florence, because she's the person who oversees all inmates medical complaint, reviews all sick call evaluations of inmates and oversees all medical staff's at Menard Correctional Center medical reports, findings, treatment plans and medical protocol notes and assessments, including X-ray film results, oversees and approves med furlough referrals to outside medical doctors, Radiologists, etc., and I believe she reviewed plaintiff's X-ray film results taken on 8/20/21 and Radiologist, N. Florence's X-ray film review findings and his failure to recommend plaintiff be seen by an outside Clinic Medical Doctor, Orthopaedic Hand Specialist, to ensure that plaintiff received adequate medical treatment, and I believe that she was aware of the X-ray films clear showing of fracture of plaintiff's right hand on 8/20/21 x-ray film finding results, contradicting Radiologists Medical Doctor - N. Florences X-ray film review finding results, ~~and proof of his misdiagnosis of plaintiff's injury clearing~~ shown own by a lay person, or if nothing else a showing of a questionable practice requiring an Orthopaedic Hand Specialist's evaluation.

Medical Doctor, Orthopaedic Hand Specialist, Glen Babich, who works for the Orthopaedic Institute Of The Southern Illinois who evaluated plaintiff's medical records, possibly even all 3 x-ray films reviews findings, and Doctor - Glen Babich was the person who had an x-ray conducted on plaintiff upon arriving at the Orthopaedic Clinic on 3/8/22 which he reviewed and his findings determined that plaintiff did have an old fracture of his right hand that has since healed improperly over another bone. And I believe if he was to review Radiologists, N. Florence's, X-ray film review findings, he'd determine that N. Florence intentionally misdiagnosed plaintiff's right hand injury and that it was clearly shown on the 8/20/21 x-ray film review that it showed plaintiff's right hand was fractured!

(11.) State the total amount of damages you seek against Dr. Florence, identifying each category of damages (e.g., pain and suffering, emotional distress, medical expenses), how you calculated each category, and all facts and documents supporting each category.

Answer: Plaintiff now seeks the following amount of damages against Dr. N. Florence as follows: Award Compensatory Damages in the amount of $150,000 for the pain and suffering physical and emotional injuries, worsening of plaintiff's injury due to delays and denials of adequate medical treatment as a result of Dr. Florences deliberate and intentional indifference to plaintiff's serious medical needs, his misdiagnosis of plaintiff's right hand fracture, and his x-ray film review findings that stated, "No Evidence of acute fracture or malalignment. Normal joint spaces and mineralization is preserved. The soft tissues are unremarkable. Impression: Unremarkable radiographs of the right hand," knowing his x-ray film review findings were a known lie, intentionally seeking to subject plaintiff to extreme pain and suffering.

Also, award $150,000 against Dr. Florence for the Intentional Infliction of emotional distress, and $100,000 for the emotional injury resulting from the failure to provide adequate medical care to plaintiff, and for Dr. Florence intentionally disregarding a known risk of substantial harm to plaintiff's health and for not ensuring he received adequate medical treatment despite his professional obligation and duty to do so, and $125,000 in Punitive Damages as a result of the intentional misconduct of Dr. Florence which lead to the unnecessary and wanton infliction of pain he caused plaintiff to suffer and to prevent him from doing it to anybody else. And plaintiff's filed verified civil Complaint and all attached exhibits of medical records in support and other medical documents supports plaintiff's contentions. And Award $250,000 against Dr. Florence for signing a contract agreement to be employed by Wexford Health Sources, Inc as a subcontractor to provide medical care to inmates that requires him to agree to intentionally misdiagnose inmates injuries on x-ray film reviews as a ploy to deny and or delay inmates health care treatment to increase their profit margins; as a result of being hired to carrying out Wexford's unconstitutional policies which state's, "No Diagnosis equals No Treatment", intentionally disregarding the adverse effects complying to

page (31.) of (37.)

— such a policy would have an inmate who are forced to depend on Wexford Health Sources, Inc., and other medical personnel as their only means for receiving adequate medical care for them injuries.

(12.) Describe any prior injuries to your right hand or wrist, including dates, treatment and outcomes.

    Answer: Plaintiff didn't have any prior injuries to his right hand or wrist, prior to sustaining his fractured right hand in a fight in self-defense with another inmate on 8/16/21.

(13.) Indentify any healthcare providers or facilities (inside or outside the IDOC) that informed you your hand was broken, including the date, facility/provider name.

    Answer: When plaintiff visited the office of The Orthopaedic Institute of Southern Illinois on 2/8/22, and was given an X-ray of his right hand, and evaluated by Medical Doctor-Orthopaedic Hand Specialist—Glen Babich, he diagnosed plaintiff with Arthritis, Bilateral Carpal Tunnel Syndrome, and a right 5th metacarpal fracture malunion, and a closed nondisplaced fracture of the base of the fifth metacarpal bone of right hand; and told plaintiff that his right hand was fractured and it did appear that the fracture had encroached on the distal row of carpal bones.

(14.) State with particularity all facts supporting your claim for intentional infliction of emotional distress against Dr. Florence, including: (a.) each act, statement, or omission by Dr. Florence you contend was extreme and outrageous; (b.) when and where each such act occurred; (c.) all facts supporting your contention that Dr. Florence intended to cause, or knew there was a high probability of causing, you severe emotional distress; and (d.) the nature of any emotional distress you claim (including symptoms, duration and whether you sought treatment).

    Answer: Medical Doctor, Radiologist, N. Florence's subjected plaintiff to the intentional infliction of emotional distress. Dr. N. Florence's conduct was both extreme and outrageous aimed at deliberately

— acting to cause plaintiff to suffer from emotional harm and mental suffering, despite him owing plain
-f a duty of reasonable standard of care to provide adequate medical care with reasonable diligence whe
summoning medical care for inmate in need of immediate medical care as needed; when medical Doctor
Radiologist, N. Florence, was made aware of plaintiff's complaints of pain and suffering and of his severe
hand injury by the x-ray film finding report sent to him by (NP) Nurse Practitioner, Jilian Crane, a memb
of Menard Correctional Center medical staff, of the 8/20/21 x-ray film, along with knowledge of plaintiff
symptoms recorded on sick-call eval medical reports of moderate swelling, purple discoloration to hand and
palm, radical pulse signs, moderate severe restriction of motion being unable to make fist and being prescribed
Motrin 600mg pain medication, an ice pack, deformity, all from (NP) Jilian Crane's Assessment report notes
, all of which gave Dr. Florence knowledge of a substantial risk of harm to health and safety; then Dr.
Florence was forwarded a copy of the x-ray film taken by Jilian Crane on 8/20/21 for his review of
the x-ray film review findings stating, "Findings: No evidence of acute fracture or malalignment.
Normal joint spaces and mineralization is preserved. The soft tissues are unremarkable"; Impression: "Unr
-arkable radiographs of the right hand," when he knew the entire time plaintiff's hand was in fact brok
and fracture and intentionally misdiagnosed plaintiff's injured right hand. Then he didn't refer or recom
-mend that plaintiff be seen by an Orthopaedic Hand Specialist even when aware of the substantial risk
of harm to plaintiff's health and safety and knowingly disregarding obvious risks, failing to provid
a complete and accurate description of his x-ray film review findings, nor the situation surrounding
plaintiff's injury for Orthopaedic Hand Specialist review upon eval, and significantly diminishing the serious
-ness of plaintiff's symptoms and injury misleading medical professionals about plaintiff's health; for
denying and delaying plaintiff access to proper physician medical personnel to receive adequate medical
treatment for his severe hand injury, and for not ensuring plaintiff was seen by Orthopaedic Hand Spec
-ist – Medical Doctor after confronted with an inappropriate and questionable practice after review
-ing x-ray film and Menard C.C.'s nurses medical reports" notes from the 8/20/21 assessments of
his injury, Dr. Florence's failure to fulfill his state law professional duty and obligations to ensure plaintiff
received constitutionally adequate medical care by "taking appropriate action whether by discussing the

—medical doctor's concerns with the treating Orthopaedic Hand Specialist physician or by contacting a responsible administrator or higher authority, and for signing a contract and agreeing to work as a subcontracted Medical Doctor-Radiologist for Wexford Health Sources, Inc., where you agreed to adhere to an unconstitutional "Wexford Health Source, Inc., ~~Wexford Provider's Handbook~~" policy which required you to intentionally misdiagnose inmates injuries who rely on you for medical care to prevent having to send them to outside clinics for evals and obtaining proper treatment from qualified medical personnel inorder to help Wexford cut costs and save money to increase their profit margins at the expense of inmates health and safety, in exchange for a fat check.

Dr. Florence knew there was a high probability of his conduct in denying and delaying plaintiff access to qualified medical personnel to evaluate his injury and provide proper treatment and depriving plaintiff of his right to adequate medical care, and for being deliberate and intentionally indifferent to plaintiff's serious medical needs would cause severe emotional distress, which Dr. Florence's actions did in causing plaintiff to experience severe emotional distress that resulted in plaintiff suffering extreme physical and emotional injury, irreparable damage, the unnecessary and wanton infliction of pain, unnecessarily prolonged pain and suffering, permanent disfiguration and deformity, loss of range of motion, diminished functioning in his predominant right hand, extreme discomfort, sharp stabbing pains in right hand and burning sensation in his hand and wrist, numbness in hand, wrist, and forearm, loss of sleep, migraines, headaches, extreme mental anguish and depression requiring him to be seen by mental health personnel whose they diagnosed him with extreme depression and prescribed him with Cymbalta anti-depression and sleeping medication to cope, the infliction of emotion distress, being unable to engage in recreational activities placing his health and safety at risk with other inmates living in the max prison environment.

15.) State all facts supporting your allegation that Dr. Florence falsified or misrepresented any findings or records related to your X-ray on August 20, 2021.

<u>Answer</u>:   It's evident that and clearly seen that medical Doctor-Radiologist - N. Flore -ce falsified or misrepresented his X-ray film review findings and records he wrote in response to his findings of plaintiff's X-ray film review of the 8/30/21 X-ray results for the following reasons : ①.  First off because he misdiagnosed plaintiff's right hand injury in his X-ray film review findings, his X-ray film review report dated 9/7/21, when he stated, "Findings = No evidence of acute fracture or malalignment. Normal joint spaces and mineralization is preserved. The soft tissues are remarkable," Impression : Unremarkable radiographs of right hand, when the day that X-ray film was tooken he reviewed, plaintiff's right hand was severely swollen like a baseball glove, deformity, with purple discoloration on his hand, and his hand was fractured /broken at that time, and Dr. Florence misdiagnosed plaintiff's injury in his reports saying ~~that plaintiff's~~ there were no fractures and the impressions of the soft tissues and radiu- raphs of the right hand were unremarkable, when there was nothing unremarkable about the severe pain, symptoms plaintiff exhibited or the suffering he experienced for a broken hand that later confirmed 6 months later by medical Doctor Orthopaedic Hand Specialist - Dr. Glen Babich on evaluated 2/8/2022.

②.  Then medical Doctor - Radiologist - N. Yousuf's X-ray film review of 9/14/21 X-ray film findings conducted on 10/13/21, diagnosis findings contradicted Dr. Florence's with N. Yousuf findings stating, "mild degenerative changes are seen, but no bony fracture or dislocation is noted on this initial study. There is mild soft tissue swelling of the thenar and hypothenar eminences. If symptoms persist or progress a follow up study may be considered." And Dr. N. Yousuf even found the X-ray film review findings rendering the need for him to plaintiff to be seen by an outside clinic physician.

③.  Then plaintiff's office visit for eval on 2/8/22 at The Orthopaedic Institute of Southern Illinois by Orthopaedic Hand Specialist, medical doctor - Dr. Glen Babich, upon his own X-ray film tooken of plaintiff's right hand that day his diagnosis and X-ray film review findings also contradicted Dr. N. Florence's X-ray film findings of the 8/30/21

— x-ray and confirmed that plaintiff's hand was indeed fractured and that Dr. Florence ~~in fact did misdiagnose~~ and either falsified or misrepresented his x-ray film review findings with Dr. Glen Babich's Orthopaedic Hand Specialist's Assessment and Diagnostic directly contradicting Dr. Florence's, with Dr. Glen Babich's findings stating, "Diagnostic Interpretation: x-rays were obtained today. Three views of the right hand were taken. He did have an old fracture at the base of the 5th metacarpal. It did appear was impacted, but it was healed." Clinic Assessment/Plan: "Pain in left and right hand, and Closed nondisplaced fracture of base of fifth metacarpal bone of right hand, init -l encounter (S. 62, 346A)." Assessment: "(1) Right 5th metacarpal fracture Malunion; (2). Bilateral Carpal Tunnel Syndrome"; Plan: "It was explained to the patient that the fracture itself is healed. There is not much that can be done. An Osteotomy more than ikely would not provide any benefit due to the nature of the fracture and it did appear that the fracture had encroached on the distal row of Carpal bones, but again the fracture is healed." And plaintiff was also diagnosed with Arthritis, and I'm sure the 8/20/21 x-ray films will also show even to a lay person that it showed a fracture of plaintiff's right hand exposing the fact that Dr. Florence intentionally misdiagnosed plaintiff's right hand injury and falsified or misrepresented his findings which plaintiff doesn't yet have at the moment to further confirm this fact,

Keith Allen -M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

Respectfully Submitted,
Keith Allen - M21830

By: Keith Allen
pro se - Plaintiff

"Certificate of Service"

I, Keith Allen, hereby certify that on 11/3/25 , I caused the foregoing to be served on defendant via certified mail at:

James D. Sloan - # 6256682
Litchfield CAVO LLP
303 West Madion Street, Suite 300,
Chicago IL. 60606.

/S/ Keith allen
Keith Allen - M31830 - Plaintiff

Page (37) of (37)

In The United States District Court
For The Southern District Of Illinois

(Exhibit #5)

Keith Allen - #M21830,
      plaintiff,

v.

Wexford Health Sources, Inc, et al.
      Defendants.

No. 23-cv-3775-DWD

"Plaintiff's Response To Defendant Nicholas Florence, M.D.'s Request To Admit To Plaintiff"

"Response To Defendant's Request To Admission Request"

1.) Admit that Dr. Nicholas Florence did not personally examine you in connection with your right-hand injury in August 2021.

Answer: Deny Partially, Dr. Nicholas Florence did not examine plaintiff in person, if that's what he's referring to when he says he didn't examine plaintiff personally, but he didn't examine plaintiff in connection with his right-hand injury in August 2021 through medical reports, sick call records, and evaluations, prescriptions provided, x-ray film reviews provided to him by Menard Correctional Center Medical staff, and knowledge of plaintiff's complaints of pain and suffering.

2.) Admit that Dr. Nicholas Florence's involvement in your case was limited to interpreting an x-ray of your right hand taken on August 20, 2021.

Answer: Deny Partially, Dr. Nicholas Florence's involvement in plaintiff's case wasn't only limited to interpreting a x-ray of plaintiff's right hand taken on August 20, 2021, because he also reviewed other medical records, reports, complaints of plaintiff's pain, swelling, and sick call evaluations consisting of the various other symptoms he exhibited.

3.) Admit that you never communicated directly (in person or otherwise) with Dr. Nicholas Florence about your right-hand injury.

Answer: Plaintiff Admits, that he never communicated directly (in person or otherwise) with Dr. Nicholas Florence about plaintiff's right hand injury but Menard Correctional Center's medical

- staff Nurse Practitioner, Jilian Crane, did on plaintiff's behalf.

4.) Admit that Dr. Nicholas Florence did not have authority to determine what further treatment testing, or referrals you received after August 20, 2021.

Answer: Deny. Plaintiff states that had Dr. Nicholas Florence properly diagnosed plaintiff's right hand fracture injury on August 20, 2021, after reviewing the x-ray films, he would have had authority to determine what further treatment, testing, or referrals plaintiff would have received after August 20, 2021, in the form of treatment in Stronger pain medication, follow-up x-ray film testing by outside healthcare providers, and recommendation for plaintiff to see an Orthopaedic Hand Specialist for a second opinion due to questionable practices in comparision to N. Florence's findings and plaintiff's complaints of pain and possessed symptoms, for an evaluation of his right -hand injury which would have tooken place after August 20, 2021.

5.) Admit that you have not retained or identified any expert witness who will testify that Dr. Nicholas Florence's interpretation of the August 20, 2021 x-ray fell below the applicable standa -rd of care.

Answer: Plaintiff Admits, that no healthcare provider has told him that Dr. Nicholas Florenc -e misinterpreted the August 20, 2021 x-ray of his right hand, but Healthcare provider Orthopaedi -c Hand Specialist - Glen Babich, did diagnose that plaintiff did have an old fracture in his right hand approximately 6 months after plaintiff's sustained the injury, and Radiologists - N. Florence x-ray of his right hand, diagnosis alleging plaintiff had no fractures in his right hand 4 days after the injury, acknowledging a previous fracture in plaintiff's right hand; suggesting N. Florence intentionally misdiagnosed plaintiff's right hand injury.

6.) Admit that you have not retained or identified any expert witness who will testify that Dr. Nicholas Florence's interpretation of the August 20, 2021 x-ray fell below the applicable standard of care.

Answer: I admit, that I have not retained any expert witness, but I can't agree that I haven't identified any expert witness who wouldn't testify that Dr. Nicholas Florence's interpretation

Page (2.) of (4.)

— the August 20, 2021 x-ray film fell below the applicable standard of care, and plaintiff has lack of information at this time to say otherwise.

7.) Admit that you received additional x-ray of your right hand after August 20, 2021.

Answer: Admit.

8.) Admit that Dr. Nicholas Florence did not prevent you from receiving additional medical care, diagnostic testing, or treatment for your right hand injury.

Answer: Deny. Dr. Nicholas Florence did not prevent plaintiff from receiving timely and additional adequate medical care in the form of corrective bone surgery treatment for a fractured right hand injury, because due to N. Florence's misdiagnosis and failure to follow up on referrals to see outside healthcare provider, Orthopaedic Hand Specialists, it caused plaintiff's right hand injury fracture to heal improperly causing permanent disfiguration and deformity, etc., as a result.

9.) Admit, that Dr. Nicholas Florence did not make any statements or take any actions that were intended to cause you emotional distress.

Answer: Deny. Dr. Nicholas Florence made sarcastic statements in his x-ray film review findings stating the x-ray reviews were remarkable, and misdiagnosed plaintiff's injury stating there were no fractures, despite his knowledge of plaintiff's severe hand injury, pain, suffering, swelling, and other symptoms suggesting the need for further timely adequate medical treatment, all of which actions were intended to cause plaintiff emotional distress.

10.) Admit that you have no evidence that Dr. Nicholas Florence falsified, altered, or misrepresented any radiology report or x-ray finding regarding your right-hand injury.

Answer: Plaintiff neither admit, nor deny the requested fact because he do not have sufficient information to do so, and lack sufficient information at this time.

Keith Allen - M21830

Menard Correctional Center

P.O. Box 1000

Menard, IL. 62259

Respectfully Submitted,
Keith Allen - M21830

By: Keith Allen
    pro Se - Plaintiff.

page (3.) of (4.)

"Certificate OF Service"

I, Keith Allen, hereby certify that on __11/3/25__, I caused the foregoing to be served on ▓▓▓ defendant via certified mail at:

James D. Sloan - #6256682
Litchfield CAVO LLP
303 West Madison Street, Suite 300,
Chicago, IL. 60606

/s/ Keith Allen
Keith Allen - M21830 - Plaintiff

In The United States District Court
For The Southern District Of Illinois

(Exhibit #5)

Keith Allen - # M21830,
    Plaintiff,

v.                    )   Case No. 23-cv-3775-DWD

Wexford Health Sources, Inc, et al.
    Defendants.

"Plaintiff's Response To Nicholas Florence, M.D.'s Request For Production Of Documents To Plaintiff"

Plaintiff, Keith Allen - # M21830, pro se, pursuant to the Fed. R. Civ. P. 34, responds to requests from Defendant - N. Florence's, Requests For Production within (30) days following services:

"Plaintiff's Response To Requests For Production"

(1.) Enclosed are Documents in response to N. Florence's request for production of Documents of corresponding numbers #1 - #10 inside this envelope covering all the requested documents asked of in plaintiff's possession in support of claims against N. Florence, and the rest of the documents were already sent to Defendant as exhibits attached to plaintiff's filed verified civil complaint that was served on defendant upon filing this current lawsuit. Plaintiff is still in the process of subpoenaing other documents from various different institutions in support of his claims that haven't been approved by the court yet, nor obtained, yet when plaintiff receives them he may have more documents to supplement this production of documents request to defendant and it's still early in discovery and plaintiff is still seeking information that may produce other documents that he currently doesn't have, at this moment. Enclosed is 459 Documents, both side copies.

Keith Allen - M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL, 62259

Respectfully Submitted,
Keith Allen - M21830
By: Keith Allen
    Pro Se - Plaintiff

"Certificate Of Service"

I, Keith Allen - # M21830, hereby certify that on ___11/3/25___, I caused the foregoing to be served on defendant via certified mail at: "James D. Sloan - #6256682, Litchfield CAVO LLP, 303 West Madison st., Suite 300, Chi, Il. 60606." /s/ Keith Allen
    Pro Se - Keith Allen - M21830        page (1) of (1)



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee  $ 5.30

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postage  $ .74

Total Postage and Fees  $ 6.04

Sent To  Litchfield Cdo

Street and Apt. No., or PO Box No.  303 W. madison St.

City, State, ZIP+4®  chi. IL. 60606

9589 0710 5270 1701 5216 44

To - Litchfield (IN) LLP, Attorney, H4 Levy 303 West Madison Street Suite 300, ..., IL...

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## Authorization for Payment

(Exhibit # 2)

Posting Document # _____    Date __1/5/25__

~~PEC CUT~~

Individual in Custody Name __Keith Hillo__    ID# __M42132__    Housing Unit __C4F10-33__

Pay to __Litchfield L.C.__

Address __P.O. Box 1400__

City, State, Zip __Litchfield, IL 62056__

AH. Litchfield 30 cert
Oni IL 74 cert

The sum of _____ dollars and _____ cents charged to my trust fund account, for the purpose of __Mail/Postage - Certified Mail Postage - 84.85 Regular - x 2 Legal Mail__

☑ I hereby authorize payment of postage for the attached mail.    ☐ I hereby request information on electronic funds transfers to be placed in the attached mail.

Individual in Custody Signature __Keith Hillo__    ID# __M42132 O__

Witness Signature _____

☐ Approved ☐ Not Approved    Chief Administrative Officer Signature _____

Postage applied in the amount of __60__ dollars and __04__ cents.    Cert

DOC 0296 (Rev. 8/2021)

Distribution: Business Office, Individual in Custody, Mail Room

Printed on Recycled Paper

9589 0710 5270 1702 5636 44

| Date : 12/4/2025 | Menard Correctional Center | Page 1 of 2 |
|---|---|---|
| Time : 09:21:16 | Trust Fund | |
| CHAMP | Inmate Transaction Statement | |
| | 10/5/2025 to 12/4/2025 | |

**Inmate: M21830 Allen, Keith**                                    **Housing Unit: MEN-W -10-23**

| Date | Source | Transaction Type | Batch | Reference # | Description | | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Beginning Balance: | | 114.85 |
| 10/06/25 | Point of Sale | 60 Commissary | 2797353 | 1652657 | Commissary | | -51.13 | 63.72 |
| 10/06/25 | Disbursements | 80 Postage | 2793351 | Chk #234169 | 856944, Pitney Bowes, 10/02/2025 | Inv. Date: | -.74 | 62.98 |
| 10/08/25 | Payroll | 20 Payroll Adjustment | 2811330 | | P/R month of 9 2025 | | 10.40 | 73.38 |
| 10/09/25 | Mail Room | 10 Western Union | 282200 | 9384943338 | Johnson, Bobbie Jeane | | 50.00 | 123.38 |
| 10/10/25 | Disbursements | 80 Postage | 2833351 | Chk #234195 | 857044, Pitney Bowes, 10/06/2025 | Inv. Date: | -6.04 | 117.34 |
| 10/10/25 | Disbursements | 80 Postage | 2833351 | Chk #234195 | 857046, Pitney Bowes, 10/06/2025 | Inv. Date: | -6.04 | 111.30 |
| 10/10/25 | Disbursements | 80 Postage | 2833351 | Chk #234195 | 857093, Pitney Bowes, 10/06/2025 | Inv. Date: | -.74 | 110.56 |
| 10/17/25 | Disbursements | 84 Library | 2903351 | Chk #234327 | 857527, DOC: 523 Fun, 10/16/2025 | Inv. Date: | -1.80 | 108.76 |
| 10/17/25 | Disbursements | 84 Library | 2903351 | Chk #234327 | 857545, DOC: 523 Fun, 10/16/2025 | Inv. Date: | -38.60 | 70.16 |
| 10/17/25 | Disbursements | 80 Postage | 2903351 | Chk #234332 | 857687, Pitney Bowes, 10/17/2025 | Inv. Date: | -6.04 | 64.12 |
| 10/18/25 | Mail Room | 10 Western Union | 291200 | 7029241395 | Smith, Darren A | | 30.00 | 94.12 |
| 10/24/25 | Disbursements | 80 Postage | 2973351 | Chk #234348 | 857763, Pitney Bowes, 10/20/2025 | Inv. Date: | -.74 | 93.38 |
| 10/24/25 | Disbursements | 80 Postage | 2973351 | Chk #234348 | 857949, Pitney Bowes, 10/23/2025 | Inv. Date: | -6.04 | 87.34 |
| 10/24/25 | Disbursements | 81 Legal Postage | 2973351 | Chk #234349 | 857715, DOC: 523 Fun, 10/20/2025 | Inv. Date: | -.74 | 86.60 |
| 10/24/25 | Disbursements | 81 Legal Postage | 2973351 | Chk #234349 | 857791, DOC: 523 Fun, 10/21/2025 | Inv. Date: | -6.04 | 80.56 |
| 10/30/25 | Disbursements | 84 Library | 3033351 | Chk #234436 | 858343, DOC: 523 Fun, 10/30/2025 | Inv. Date: | -5.80 | 74.76 |
| 10/31/25 | Mail Room | 10 Western Union | 304200 | 2816458038 | Smith, Darren A | | 25.00 | 99.76 |
| 11/07/25 | Mail Room | 10 Western Union | 311200 | 4205098896 | Smith, Darren A | | 30.00 | 129.76 |
| 11/07/25 | Disbursements | 84 Library | 3113351 | Chk #234671 | 858761, DOC: 523 Fun, 11/06/2025 | Inv. Date: | -35.10 | 94.66 |
| 11/07/25 | Disbursements | 80 Postage | 3113351 | Chk #234675 | 858635, Pitney Bowes, 11/04/2025 | Inv. Date: | -18.00 | 76.66 |
| 11/10/25 | Point of Sale | 60 Commissary | 3147358 | 1655835 | Commissary | | -42.98 | 33.68 |
| 11/12/25 | Payroll | 20 Payroll Adjustment | 3161330 | | P/R month of 102025 | | 15.60 | 49.28 |
| 11/14/25 | Disbursements | 80 Postage | 3183351 | Chk #234709 | 858996, DOC: 523 Fun, 11/12/2025 | Inv. Date: | -2.22 | 47.06 |
| 11/19/25 | Disbursements | 84 Library | 3233351 | Chk #234710 | 859297, DOC: 523 Fun, 11/18/2025 | Inv. Date: | -6.50 | 40.56 |
| 11/23/25 | Mail Room | 10 Western Union | 327200 | 6770405791 | Smith, Darren A | | 35.00 | 75.56 |
| 11/28/25 | Mail Room | 10 Western Union | 332200 | 2828169344 | Smith, Darren A | | 100.00 | 175.56 |
| 12/01/25 | Disbursements | 84 Library | 3353351 | Chk #234816 | 859642, DOC: 523 Fun, 11/25/2025 | Inv. Date: | -7.00 | 168.56 |
| 12/01/25 | Disbursements | 80 Postage | 3353351 | Chk #234822 | 859377, Pitney Bowes, 11/19/2025 | Inv. Date: | -6.04 | 162.52 |
| 12/01/25 | Disbursements | 80 Postage | 3353351 | Chk #234822 | 859513, Pitney Bowes, 11/24/2025 | Inv. Date: | -6.33 | 156.19 |
| 12/01/25 | Disbursements | 80 Postage | 3353351 | Chk #234822 | 859693, Pitney Bowes, 11/26/2025 | Inv. Date: | -6.33 | 149.86 |
| 12/01/25 | Disbursements | 81 Legal Postage | 3353351 | Chk #234824 | 859411, DOC: 523 Fun, 11/20/2025 | Inv. Date: | -1.03 | 148.83 |
| 12/01/25 | Disbursements | 81 Legal Postage | 3353351 | Chk #234824 | 859708, DOC: 523 Fun, 11/26/2025 | Inv. Date: | -1.03 | 147.80 |
| 12/02/25 | Mail Room | 10 Western Union | 336200 | 3557423251 | Johnson, Bobbie Jeane | | 40.00 | 187.80 |
| 12/03/25 | Point of Sale | 60 Commissary | 3377354 | 1657847 | Commissary | | -57.20 | 130.60 |

**Date :** 12/4/2025
**Time :** 09:21:16
**CHAMP**

**Menard Correctional Center**
**Trust Fund**
Inmate Transaction Statement
10/5/2025 to 12/4/2025

Page 2 of 2

**Inmate: M21830 Allen, Keith**

**Housing Unit: MEN-W -10-23**

| | |
|---|---:|
| Total Inmate Funds: | 130.60 |
| Less Funds Held For Orders: | .00 |
| Less Funds Restricted: | 41.77 |
| Funds Available: | 88.83 |
| Total Furloughs: | .00 |
| Total Voluntary Restitutions: | .00 |

**RESTRICTIONS**

| Invoice Date | Invoice Number | Type | Description | Vendor | Amount |
|---|---|---|---|---|---:|
| 12/01/2025 | 859771 | Disb | Postage-Certifed | 100 Pitney Bowes Reserve Account | $24.32 |
| 12/01/2025 | 859772 | Disb | Postage-Certifed | 100 Pitney Bowes Reserve Account | $6.08 |
| 12/01/2025 | 859802 | Disb | Postage | 100 Pitney Bowes Reserve Account | $1.03 |
| 12/03/2025 | 859907 | Disb | Postage-Certified | 100 Pitney Bowes Reserve Account | $10.34 |
| | | | | **Total Restrictions:** | **$41.77** |



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Allen, Keith
Name

M21830
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?     Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?     Yes or (No)

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here: _____

3.  Should this document be filed in a pending case?     (Yes) or No

    If yes, please list case number:   23 - CV - 3775 - DwD

    If yes, but you do not know the case number mark here: _____

4.  Please list the total number of pages being transmitted:          51

5.  If multiple documents, please identify each document and the number of pages for each document.  For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
| --- | --- |
| Motion | 51 |
| | |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.   Discovery materials sent to the Court will be returned unfiled.