United States District Court For The
Southern District OF Illinois

Keith Allen-M21830
        Plaintiff,

V.

Wexford Health Sources, Inc., et al.
        Defendants.

Case Number: 23-cv-3775-DWD

Honorable Judge: David W. Dugan

"Memorandum OF Law In Support OF Plaintiff's Motion For The Appointment of Expert Witnesses -Orthopaedic Hand Specialist or Medical Doctor -Radiologist and a Nurse Practitioner, To Assist The Trier of Fact In Resolving The Complex Issues Of The Case."

("Statement OF The Case")

This is a civil rights case filed under 42 U.S.C. § 1983 by a state prisoner and asserting claims for the unconstitutional denial of adequate medical care for a broken right hand medical misdiagnosis, falsified medical reports, medical malpractice claims, deliberate indifference to his serious medical needs claims on multiple defendants, and intentional infliction of emotional distress claims against eight different defendants, multiple Monell unconstitutional medical policy claims against Medical Healthcare Service Provider -Wexford Health Sources, Inc., along with both United States Constitutional violations of the Eighth Amendment and two different state tort claims consisting of four medical malpractice claims and different state tort claims consisting of Intentional Infliction of Emotional Distress claims. Plaintiff seeks damages as to all claims, consisting of a declaration, and an injunction to ensure proper medical care in the future and to correct unlawful Wexford Health Sources, Inc, medical policies that are causing inmates serious injuries, irreparable damage, unnecessary pain and suffering, permanent damage and deformity, and even deaths of inmates under the

(1.) of (27.)

~ care.

("Statement OF Facts")

The complaint alleges that plaintiff suffered a severe hand injury in the form of a broken right hand he sustained in a fight in self-defense with another inmate, and sought medical care to repair the damage and relieve him of of his severe pain, but was denied and delayed access to adequate treatment due to him him having multiple X-ray film misdiagnosis by Nurse Practitioners and Medical Doctor-Radiologists, for nurses failure to adhere to medical treatment protocols, failing to follow the recommendations of Medical Doctor-Radiologists for plaintiff to see an Orthopaedic Hand Specialist for eval, delays for Orthopae-dic Eval for non-medical reasons for approximately two months; and was given inadequate courses of treatment knowingly and maliciously, causing him permanent deformity and lack of functioning, causing him extreme pain and suffering, worsening his injury and denying him bone corrective treatment surgery for an approximately 19 month period before receiving any form of meaningful treatment in the form of Carpal Tunnel Syndrome Nerve Damage Surgery on 3/3/23, Plaintiff was given known ineffective courses of medical treatment aimed at prolonging his pain and to save money due to Wexford's Unconstitutional policies and practices, nor was follow-up care conducted in a timely manner.

("Argument")

("The Court Should Grant Plaintiff The Appointment OF An Expert Witness")

A court in it's discretion, may appoint an expert for an indigent plaintiff pursuant to Federal Rules of Evidence 706 in appropriate cases. In general, if scientific, techni-cal, or other specialized knowledge will assist the trier of fact to understand the evidence or decide a fact in issue, court will utilize expert witnesses. See Fed. R-

(2.) of (27.)

Evid. 702. However, as the Seventh Circuit has pointed out, Rule 706 "allows appointment of an expert witness if necessary to help the court understand the issues, not to assist a party in preparing his case." Dobbey v. Carter, 734 F. App'x 362, 364-65 (7th Cir. 2018). Each of these factors weighs in favor of Appointment of an Expert Witness in this case.

(1.) (" Complex Evidence Of Medical Misdiagnosis") — Plaintiff's case consists of the need for scientific, technical, and specialized knowledge of an Orthopaedic Hand Specialist or Radiologist to assist the trier of fact to understand the evidence of the x-ray film medical misdiagnosis of plaintiff's severe right hand injury — fractured right hand and nerve damage he sustained on 8/16/21 in an alteration in self-defense. (See Exhibits #41," #16, #14, #1, #20, #19, #21, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #3-H, #3-I, #3-J"). Where plaintiff had three x-ray films conducted on 8/20/21, 8/31/21, 9/14/21 by nurse practitioners — Jilian Crane and Alisa Dearmond; and Medical Doctor — Radiologists — Nicholas Florence and Naveed Yousuf whose x-ray film review findings all come back negative for any fractures, despite being made aware of symptoms of severe swelling, purple discoloration, radical pulse, complaints of extreme pain, feeling like his hand was broken, restricted range of motion in being unable to make a fist, and repeatedly being prescribed pain medication for his pain within a 30 day period after sustaining his injury; and requests for a second opinion that were denied. (See Exhibits: #21, #16, #14, #18, #19, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F; and Exhibit numbers: #11, #13, attached to plaintiff's complaint). Only for plaintiff to be seen by an Orthopaedic Hand Specialist for eval, six months later where he was given a x-ray film review of his right hand injury with the Orthopaedic Hand Specialist diagnosing him with an old closed nondisplaced fracture of the base of fifth metacarpal bone of right hand, with the fracture

(3.)    of (27.)

—encroaching on the distal row of carpal bones, with the bones healing improperly due to the delay or denial of receiving adequate medical care as a result of multiple medical x-ray film misdiagnosis and lack of exercising professional judgment by nurse practitioners and medical Doctor-Radiologist, who reviewed plaintiff's three x-ray films. (See Exhibits: #41, #16, #19, #18, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #14, #21). Which will require an expert witness to review the evidence all four x-ray films conducted to confirm any misdiagnosis, determine whether they were done intentionally, to sort through the conflicting diagnosis of X-ray films, and to help explain the findings to the trier of fact consisting of possible fractures, swelling, and nerve damage seen on the x-ray films that were misdiagnosed, that led to plaintiff experiencing unnecessary pain, and the worsening of his injury, causing permanent and irreparable damage, and the lessening the effectiveness of the treatment, he received that denied him the necessary bone corrective surgery to repair his improperly healed fractured bone in his right hand. (See Exhibits: #41, #19, #14, #18, #21, #16, #19, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F).

Plaintiff's case involves multiple medical misdiagnosis of plaintiff's broken right hand via x-ray film reviews tooken four days after sustaining his right hand injury in a physical altercation in self-defense with another inmate, and a total of three x-rays within a thirty day period, by various medical staff employed by Wexford Health Sources, Inc., Nurse Practitioners —Jilian Crane and Alisa Dearmond, and Medical Doctor-Radiologists— Nicholas Florence and Naveed Yousuf, constituting Medical Malpractice and Deliberate Indifference to plaintiff's serious medical needs, that delayed and denied plaintiff access to adequate medical care as a result of following Wexford Health Sources, Inc.'s unconstitutional medical policies of deliberate indifference instructing medical staff to intentionally misdiagnose injuries to not have to pay for treating them to cut costs to save

4. of 27.

money and increase profits by denying patients access to adequate medical treatment maliciously, causing plaintiff unnecessary and wanton infliction of pain, exacerbating his injury, and prolonging his pain. (See Exhibits: # 14, # 41, # 16, # 18, # 19, # 20, # 21, # 22, # 24, # 29, # 35, # 36, # 37, # 38, # 39, # 42, # 43, # and see Exhibits numbers attached to Plaintiff's Complaint #'s 94, # 22, # 44, # 45, # 46, # 47, # 50). Fed. R. Evid. 702 (" Generally, if scientific, technical, or other specialized knowledge will assist the trier of fact to underst -and the evidence or decide a fact in issue, a court will utilize expert witnesses); Ledford v. Sullivan, 105 F. 3d 354 (7th Cir. 1997) (" Given the particular factual issues in this case, determining deliberate indifference was not so complicated that an expert was required to establish Ledford's case; Because the test for deliberate indiff -erence is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward Ledford's serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment; The test for deliberate indifference is not as involve -d as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care. See Franzen, 780 F.2d at 652-53).

② (Sort Through Conflicting Evidence) - Plaintiff's case will require the need of an expert witness Orthopaedic Hand Specialist to help the jury and court sort through the conflicting evidence surrounding his deliberate indifference claims of delays or denials of treatment, that worsened his injury and medical malpractice claims due to the medical misdiagnoses of his X-ray film review findings by Wexford's medical employe -d Nurse Practitioners- Jilian Crane and Alisa Dearmand and subcontracted community physicians medical doctor-Radiologist- Nicholas Florence and Naveed Yousuf. (See Exhibits attached to Plaintiff's Complaint numbers: #1, # 20, # 14, # 16, # 18, # 19, # 21, # 41, # 35). Whom all four medical personnel contributed to the X-ray film reviews of plaintiff's severe right hand injury upon X-rays conducted on 8/20/21, 8/31/21, and 9/14/21, all occurring within a-

⑤ of (27.)

– 30 day period after sustaining his severe right hand injury on 8/16/21 in a fight in self-defense, with their x-ray film review findings conflicting each other, conflicting plaintiff's symptoms and the Orthopaedic Hand Specialist – Glen Babich's x-ray film interpretation diagnostic contained in his medical records. (See Exhibits attached to Plaintiff's Complaint numbers: #1, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #24, #23, #27, #28, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #41, #42, #43, #44, #45, #46, #47, #48, #49, #94).

    Plaintiff was seen in person on nurses sick call where the evaluating nurse's "Offender Progress Notes" recorded the following symptoms observed of: right hand injury, any restriction in range of motion – "yes", pain scale 1–10? "8", presence of swelling – "yes", presence of discoloration – "no", radical pulse presented stray, distilled pulses – "present and stmy", access for active range of motion – "restricted unable to make a fist", plan: "refer to M.D.", gave an ice pack for 24 hours, prescribed 200 mg Ibuprofen." (See Exhibits # 11 attac-hed to Plaintiff's Complaint). On 8/20/21 plaintiff seen Nurse Practitioner – Jillian Crane, on another sick call visit where her "Offender Outpatient Progress Notes" noted the following symptoms exhibited by plaintiff: Subjective: "It's my right hand, it was more swollen that it is now," objective: right hand c̄ moderate swelling and purple discoloration to hand/palm, pulse ⊕ radical, cap refill < 3 seconds, Range of motion moderate/severe restricted, right hand pain, plan – right hand f/u pending x-ray results, prescribed Motrin 600 mg; and her x-ray film review findings of the x-ray she conducted of plaintiff right hand on 8/20/21 results stated: "The following check-ed results were found to be normal or stable by Crane N.P., N.D." (See Exhibit numbers attached to his Complaint numbers: #11, #13, #12, #1, #3-A, #3-B, #3-C).

    Jillian Crane, Nurse Practitioner, then ordered a x-ray film review consultation of plaintiff's 8/20/21 x-ray film by subcontracted community physician, Medical Doctor – Radiologist, Nicholas Florence, whose "M.D. Review" x-ray film findings stated: "Findings:

    ⑥ of (27)

—"Dependent edema; Findings: No evidence of acute fracture or malalignment; Normal joint spaces and mineralization is preserved; The soft tissues are unremarkable; Impression: Unremarkable radiographs of the right hand." (See Exhibit #14). On 8/31/21, plaintiff was given another X-ray film of his right hand injury by nurse practitioner, Jillian Crane, accompanied by Alisa Dearmond, where he was told by Jillian Crane came back negative for any fractures and that she'd forward it for review by a medical doctor -Radiologist, with Alisa Dearmond who accompanied her prescribing plaintiff Ibuprofen 600 mg. (See Exhibits Attached to Plaintiff's Complaint numbered: #16, #17, Upon Consultation Ordered by Jillian Crane that ncame back negative for any fractures and that she conducted on 8/31/21 for review by Medical Doctor-Radiologist -Naveed Yousuf whose "M.D. Review" of plaintiff's 8/31/21 x-ray film findings stated:" History: Pain, Findings:"Three views of the right hand are submitted, the joint spaces are intact; No fracture, destructive or erosive abnormality, the soft tissues are unremarkable; if symptoms persist or progress, a follow -ow -up study may be considered." (See Exhibit #16).

Then Plaintiff received another x-ray film conducted of his severe right hand injury by Nurse Practitioner, Alisa Dearmond, on 9/14/21 which she told him came back negative for any fractures and that she'd order a review of it by a medical doctor-Radiologist. (See Exhibits #19). Upon the ordered Consultation (#3-C, #3-D, of Plaintiff's 9/14/21 x-ray film sent to Medical Doctor-Radiologist- -by Alisa Dearmond, ~~ordered, where checked, which came back negative for any fractures~~ Naveed Yousuf whose "M.D. Review" of plaintiff's 9/14/21 x-ray film ~~ordered to be reviewed by a Medical Doctor Radiologist~~ review findings stating:" History: Injury and Pain; Mild degenerative changes are seen, but not acute bony fracture or dislocation is noted on this initial study; There is mild soft tissue swelling of the thenar and hypothenar eminences; if symptoms persist or progress a follow -up study may be considered"; which contradicted his other X-ray film findings conducted on 8/31/21, nor did he ensure plaintiff was referred to be seen by a physician for eval-

-despite him recommending upon both his 8/31/21 and 9/14/21 x-ray film reviews of plaintiff's right hand injury that he see a physician for eval. (See Exhibits #21, #14 #16).

Approximately six months after plaintiff sustaining his severe right hand injury on 8/16/21, he was finally sent to the Orthopaedic Institute of Southern Illinois for an Orthopaedic Hand Specialist's Evaluation of plaintiff's right hand injury, where an X-ray film was conducted at the outside clinic of plaintiff's right hand with the medical Doctor - Steven Young and orthopaedic Hand Specialist's - Glen Babich's Diagnostic Interpretation findings stating: "X-rays were obtained today. Three views of the right hand were taken. He did have an old fracture at the base of the 5th metacarpal. It did appear was impacted, but it was healed;" Clinical Assessment/Plan: "Pain in left hand;" Pain in right hand; Closed nondisplaced fracture of base of fifth metacarpal bone of right hand, initial encounter;" Assessment: ① Right 5th metacarpal fracture malunion; ② Bilateral Carpal Tunnel Syndrome;" Plan: "At this time, we did discuss nerve studies and carpal tunnel release. However the patient states he is not interested at this point in carpal tunnel surgery. He was told that if the symptoms became worse or he would like to have this addressed that he can have a follow-up made here at the clinic. It was explained to the patient that the fracture itself is healed. There is not much that can be done. An Osteotomy more than likely would not provide any benefit due to the nature of the fracture and it did appear that the fracture had encroached on the distal row of carpal bones, but again the fracture is healed. He had very little pain on palpation of the fracture site and was able to make a complete fist. At this time it was explained to the patient this does not appear to be a surgical issue. Surgery would be less than optimal. He does have a full function and range of motion, so we would not suggest surgery at this point. The patient agreed. He was instructed to take anti-inflammatories for his intermittent pain and to use the hand with no

restrictions, we will go ahead and release him p.r.n." (see EXhibits #4).

Due to the conflicting evidence contained in plaintiff's x-ray films review findings conducted on 8/20/21, 8/31/21, 9/14/21, 8/8/22, which are also inconsistent with the symptoms he possessed that were observed in person by nurses on sick call visits recorded the day after sustaining his injury and on 8/20/21, with the inconsistent x-ray film findings being recorded by two different Nurse Practitioners, Jilian Crane and Alisa Deurmond, Medical Doctor-Radiologists, Nicholas Florence and Naveed Yousuf, which contradicted the Orthopaedic Hand Specialist-Glen Babich's and Medical Doctor-Steven Young x-ray film Diagnostic Interpretation tooken on 2/8/22 that acknowledged plaintiff having an old closed nondisplaced fracture of the base of the fifth metacarpal base of his right hand, where the other three x-ray films recorded no fractures, with the conditions and symptoms shown being very complicated and technical on the x-ray film reviews of plaintiff's fractured and severely injured right hand as noted with there being significant disputes in the medical records being in sharp conflict by several different specialized medical professionals that will require an expert witness Medical Doctor - Orthopaedic Hand Specialist or Radiologist to help the jury understand the various x-ray film review findings, conflicting medical records, and identify whether their were any misdiagnosis by medical staff that led to delays in receiving treatment that caused permanent damage and worsened his injury, which is outside the skill level, Knowledge, and understanding of the jury that will require the specialized knowledge of an Expert witness (see Exhibits Attached to Plaintiff's Complaint numbered: #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #41, #41, #42, #43, #44, #45, #46, #47, #94). Baker v. Hertz, Case No. 3:15-cv-600-JPG-DGW (S.D. Ill. Aug 18, 2015) ("The appointment of medical expert pursuant to Federal Rule of Evidence 706 may be necessary to "help sort through conflicting evidence... but [the court] need not appoint an expert for a partie's own Benefit or to explain symptoms that

(9.) of (27.)

— can be understood by a layperson." Turn v. Cox, Fed. Appx. 463, 468 (7th Cir 2014)); Ledford v. Sullivan, 105 F.3d 354 (7th Cir. 1997) (" In Ledford, the Seventh Circuit noted that "the test for deliberate indifference is not as involved as that for medi-cal malpractice" and requires a subjective determination of whether an official "Knows of and disregards a **substantial** risk of an inmate's health or safety." Id. at 359. Plaintiff has alleged a wide range of medical conditions that necessitated care but that was not provided. These conditions range from pain to headaches, vomiting and other injuries. None the conditions, however are outside of the understanding of a jury. Plaintiff has not shown that his conditions were overly complicated or obscure, that there is a significant dispute in the medical record, or that there was a misdiagnosis. See id. at 360 (distinguishing cases). While the negative consequences of a delay in treatment may require presentation of "verifyin -g medical evidence," William v. Liefer, 491 F.3d 710, 716 (7th Cir. 2007), Plaintiff indicate that the delay caused pain; again, a condition that a jury should understand without the necessity of an expert. Id. at 715 -716). Ledford v. Sullivan, 105 F.3d 354 (7th Cir. 1997) (" The court in Greason observed that often "whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." Greason, 891 F.2d at 835 (emphasis added). Medical misdiagnosis is distinguishable from a delay in examination").

(3.) ("Help Understand Medical Evidence of Medical Malpractice") — Plainti -ff's case of four medical Malpractice claims against several medical professionals such as Nurse Practitioners -Jilian Crane and Alisa Dearmond, and Medical professionals Medical Doctor -Radiologists, Nicholas Florence and Naveed Yousuf, which will involve facts too complex or technical for the jury and court to understand the evidence with the need of an Expert Witness Medical Doctor -Orthopaedic Hand Specialist or Radiologist to help explain the evidence that will be presented. (See Plaintiff's Complaint.). Plaintiff's —

(10.) of (27.)

- Medical Malpractice claims which delves into the reasonable standards of medical care will require an expert witness to help the jury and court understand the standard of care against which the nurse practitioner's and medical Doctor-Radiologist's conduct is measured, whether they deviated from those standards, and whether plaintiff -'s resulting injury was proximately caused by their deviation from the standard of care; with the need of expert testimony to evaluate, and establish proximate cause whether defendants' conduct "increased the risk of harm to the plaintiff or "lessened the effectiveness" of plaintiff's treatment, which is fact specific and uniquely in the jury's determination. (See Plaintiff's Complaint and Dugan's "Memorandum And Order" Merit Review).

Plaintiff's Medical Malpractice Claims Consist of Some of the following claims against medical nurse Practitioners, Jilian Crane and Alisa Dearmond, and Medical Doct -or-Radiologists, Nicholas Florence and Naveed Yousuf by failing to adhere to the Standard of care in the medical community by which the medical Professionals treat -ment is measured by the National Commission of Corrections Health Care Standards by nurse practitioners and Medical Doctor-Radiologists, in one or more of the following ways: for being made aware of plaintiff's severe right hand injury, his continued complaints of pain and suffering among various symptoms of deformity , severe pain, swelling, loss of range of motion, on multiple occasions, and via the Medical Doctor-Radiologists X-ray film findings and didn't refer plaintiff to be seen for Orthopaedic Hand Specialist Eval, for misdiagnosing plaintiff's X-ray film review findings , failure to follow the recommendations of Specialists to refer plaintiff to see a physician for an examination for failure to communicate to physician hand specialist plaintiff's continued Symptoms and complaints of pain, failure to report accurate information to treating physicians, for Nurse Practitioner's practing outside the scope of their licensure by providing medication without a prescription from a doctor, for —

(11.) of (27)

- persisting in a known ineffective course of treatment, for significantly diminish the seriousness of plaintiff's severe right hand injury which was later found to be broken, for nurses practicing outside their scope of practice by assessing and diagnosing plaintiff's injury, making full determinations for plaintiff's care and denying him access to adequate medical treatment, failure to follow their or independant duty to ensure that plaintiff received constitutionally adequate care, for delaying or denying plaintiff access to see a doctor for eval at an outside clinic, for being made aware of plaintiff's severe hand injury in person and on medical records and complaints of pain and other severe symptoms and having knowledge of a risk of harm to his health and disregarded it when it was obvious plaintiff had a serious medical need; with the professional's subjective response being so blatantly inadequate that it demonstrated an absence of professional judg -ment which no minimally competent professional would have so responded under those circumstances, with the blatantly inappropriate medical treatment, delayed adequate treatment for non-medical reasons, persisting in a course of treatment known to be ineffective; failing to adhere to their independant duty and professional obligation that when confronted with an inappropriate or questionable practice should not simply defer to that practice, but rather has a professional obliga -tion to that patient to "take appropriate action", whether by discussing their concerns with the treating physician or by contacting a responsible admini - strator or higher authority; failure to provide a complete description of the situation surrounding plaintiff's injury and symptoms for Doctor's review upon evaluation, or by misleading medical professionals about plaintiff's health condition leading to him not being referred to see an Orthopaedic Medical Doctor, denying and delaying him access to adequate medical care, for failure to follow Illinois Department of Corrections Administrative Directive,

(12.) of (27.)

number: 04.03.121, Title: "Treatment Protocols", which required that any offender evaluated for the same complaint three times within 30 days be referred to the physician for evaluation, for misdiagnosis of plaintiff's severe right hand injury and fractured right hand on the X-ray films conducted on 8/24/21, 8/31/21, and 9/14/21, which caused plaintiff the unnecessary pain and suffering, prolonged pain, permanent damage, irreparable damage, disfiguration, improperly healed fractured bone, diminished loss of functioning and range of motion, the worsening of his injury, with the intentional and negligent failure by medical professionals to adhere to the standard of care and plaintiff's resulting injuries was proximately caused by the deviation from the standard of care." (See Plaintiff' Complaint, and the following Exhibits attached to it: #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50).

Grieveson v. Anderson, 538 F.3d 736, 779 (7th Cir. 2008)("The Seventh Circuit has stated that an expert is not necessarily needed to prove deliberate indifference, as it is not like medical malpractice which, "delves into reasonable standards of medical care"). Walski v. Tiesenga, Supra at 262, 21 Ill. Dec. 201, 381 N.E.2d 279("Both plaintiff and defendant, relying on Borowski v. Von Solbrig (1975), 60 Ill.2d 418, 328 N.E.2d 301, agree that in order to prove a medical malpractice case: " Plaintiff, by the use of expert testimony must establish the standard of care against which the defendant doctor's conduct is measured. The Plaintiff must then further prove by affirmative evidence that, judged in the light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff."(60 Ill.2d 423, 328 N.E.2d 304-305). Where as here, the case concerns complications arising from highly specialized art of performing a cardiac catherization, the court is dependent on the testimony of medical experts to establish the standard of care against which the defendant's conduct must be measured. Failure to establish this standard of care is fatal to a

(13) of (27.)

-finding of malpractice"). Graham v. St. Luke's Hosp., 46 Ill. App. 2d 147, 158, 196 N.E. 2d **355** (1964) (" In Graham and Comte, it was held that expert test -imony was required to establish the standards for failure to refer patient."). Taber v. Riordan, 83 Ill. App. 3d 900, 403 N.E. 2d 1349, 38 Ill. Dec. 745 (Ill. App. 1980) (" Particularly in the circumstances of this case, the question of when to seek outside consultation and what procedures are to be used to correct complicat -ions are complex questions which are not within the common knowledge exception").

(4.) ("Help Understand Issues OF The Case")- Plaintiff's case invo -lves deliberate indifference claims against defendants nurse practitioner- Jilian Crane and Alisa Dearmond, and Medical Doctor-Radiologists, Nichol -as Florence and Naveed Yousuf for delays or denials of adequate medical care that unnecessarily prolonged his pain and exacerated his injury. (See Plaintiff's Complaint). Specifically, plaintiff sustained a severe right hand injur -y in a physical altercation in self-defense where he injured his hand by break -ing it in the altercation, exhibiting symptoms of extreme pain, severe swell -ing, purple discoloration, radical pulse, deformity and restricted range of motion in being unable to make fist. (See Exhibits Attached to Plaintiff's Verified Compl -aint numbered: "#1, #11, #12, #13, #41). Where defendants Jilian Crane and Alisa Dearmond conducted x-ray films of plaintiff's right hand injury on 8/20/21, 8/31/ 21, and 9/14/21 with Nicholas Florence reviewing the 8/20/21 x-ray film and N. Yousuf reviewing the 8/31/21 and 9/14/21 x-ray films with all their findings coming back negative for any fractures and misdiagnosing plaintiff's injury that prevented him from receiving access to adequate medical care and eval by an orthopaedic Hand Specialist in a timely manner that exacerbated his condition. (See Exhibits Attached to Plaintiff's Complain numbers: "#11, #12, #13, #14, #16, #18, #20, #21, #41, #22,

[14.] of (27.)

~mony to assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him. (See Plaintiff's Complaint and See the Exhibits attached to plaintiff's verified complaint numbered: #1, #10, #22, #27, #11, #13, #14, #16, #18, #19, #20, #21, #35, #41). McGee v. Macon County, Sheriff's Department, 473 F.Supp. 3d 818(2020) ("Plaintiff also brings a claim against Nurse Bates for delay or denial of care under section 1983; To show that a delay in provide evidence that the delay exacerbated the injury or unnecessarily prolonged pain."). See Also William v. Liefer, 491 F.3d 710, 715 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental."). Williams v. Lie—fer, 491 F.3d 710, 715 (7th Cir. 2007) ("We recently considered what qualifies as "verifying medical evidence" in Williams v. Liefer: Clerly, expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement. On the other hand, evidence of a plaintiff's diagnosis and treatment, standing alone, is insuf—ficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him"). Garde v. Wexford Health Source, Inc., Case No. 3:18-cv-1226-NJR-GCS (S.D. Ill. Jul 25, 2019) ("Rule 706 allows appointment of a neutral to help the trier-of-fact understand complex information. Kennedy v. Huibregtse, 831 F.3d 441, 443 (7th Cir. 2016). Winger v. Jeffre—ys, Case No. 19-cv-00236-SPM (S.D. Ill. Oct 29, 2020). ("An Expert witness would be required where the facts appear to be so complex or technical for a trier of fact to understand the evidence, and to explain the evidence that will be presented").

(5.) (Complicated Conflicting Evidence) — Plaintiff's case will require the appointment of an expert witness Medical Doctor — Radiologist to help the jury and court sort through complicated conflicting evidence, pertaining to conflicts surrounding his 8/20/21 x-ray film review findings, diagnosis and inconsistancies. (See Plain

-tiff's verified Complaint and Exhibits Attached to his Complaint numbered: Exhibits # 1, # 3-A, # 3-B, # 3-C, # 3-D, # 3-E, # 3-F, # 35, # 19, # 2-B, # 20, # 10, # 11, # 13, # 14, # 41, # 22, # 27, # 16, # 18, # 21, # 94). Plaintiff sustained a severe right hand injury on 8/16/21 in a physical altercation in self-defense with another inmate. (See Exhibits attached to Complaint numbered: # 1, # 10, # 11, # 13, # 14, # 16, # 18, # 17, # 15, # 19, # 20, # 21, # 22, # 27, # 41, # 94). Where he filed a sick call request that led to him being seen on nurses sick call for eval on 8/17/21 on an in person visit with the reviewing nurse noting plaintiff's symptoms that consisted of - right hand injury, any restrictions in range of motion - "yes", pain scale 1-10? an "8", inspection for anat -omical alignment - "Unl", presence of swelling - "yes" presence of discoloration - "no", skin integrity - "intact", radical pulse present and stray, distill pulses - "present and stray", assess for active range of motion - "restricted - unable to make fist, plan - "refer to MD", plaintiff was given an Ice pack and Ibuprofen 200 mg. See Exhibits attached to verified Complaint number: Ex. # 11). Plaintiff was then seen on another in person nurse -s sick call on 8/20/21 by Nurse Practitioner - Jilian Crane, who upon sick call eval of plaintiff's severe right hand injury and his complaints of experiencing extreme pain she noted the following symptoms: "Subjective: It's my right hand, it was more swoll -en than it is now"; right hand c̄ moderate swelling and purple discoloration to hand / palm, pulse radical, cap refill < 3 seconds, Range of motion - moderate/severe restricted, right hand which Jilian Crane's x-ray film review findings coming back negative for any fractures. with her diagnosis, specifically stating: "The following check results were found to be normal or stable by Crane, N.P." (See Exhibits: # 18, # 3-A, # 3-B, and the following Exhibits attached to plaintiff's Verified Complaint number: # 11, # 12, # 13).

With Jilian Crane, Nurse Practitioner, ordering a consultation of Plaintiff's x-ray film review second opinion from Medical Doctor - Radiologist - Nicholas Florence, whose "M.D. Review"

(17.) of (27.)

-dated -9/7/21 Radiology Report of the 8/20/21 x-ray film review findings coming back negative for any fractures, with his diagnosis of plaintiff's severe right hand injury stating:" Findings: Dependent edema; findings: No Evidence of acute fract -ure or malalignment. Normal joint spaces and mineralization is preserved. The soft tissues are unremarkable; Impression: Unremarkable radiographs of the right hand.(see Exhibits #14, #3-A, #3-B). Plaintiff then had another x-ray film review conducted on 8/31/21 by Nurse Practitioner - Jilian Crane; who upon completion of plaintiff's 8/31/21 x-ray film review, second opinion from Medical Doctor - Radiologist - Naveed Yousuf, whose "M.D. Review" dated 9/14/21, Radiology Report 8/31/21 x-ray film review findings coming back negative for any fractures again, with his diagnosis of plaintiff's severe right hand injury stating: "History: Pain; Findings: Three views of the righ -t hand are submitted. The joint spaces are intact. No fracture, destructive or erosive abnormality. The soft tissues are unremarkable. If symptoms persist or progress, a follow-up study may be considered." (see Exhibits #16, #A-C, #A-D). Then on 9/14/21, plaintiff had his third x-ray film within a 30 day period after sustaini -ng his severe right hand injury on 8/16/21 by Nurse Practitioner -Alisa Dearman -d who told him the results came back negative for any fractures, and then orde -red a second opinion Consultation of plaintiff's 9/14/21 x-ray film review by Medical Doctor-Radiologist, whose "M.D. Review" dated -10/13/21, Radiology Report of the 9/14/21 x-ray film review findings coming back negative for any fractures again with his diagnosis of plaintiff's severe right hand injury stating: "History : Injury and pain; mild degenerative changes are seen, but no acute bony fract -ures ~~or diolocation is noted on this initial~~ study. There is mild soft tissue swe -lling of the thenar and hypothenar eminences. If symptoms persist or progress a follow-up study may be considered." (See Exhibits #21, #3-E, #3-F, #19, #35). Then on 2/8/22, approximately 6 months after plaintiff sustained his

18. of 27.

-severe right hand injury on 8/16/21, he was sent to the Orthopaedic Institute of Southern Illinois for eval of his right hand injury where he was given a x-ray ordered by Medical Doctor-Steven Young with the Orthopaedic Hand Specialist -Glen-Babich's Diagnostic Interpretation Findings which stated "X-rays were obtained today. Three views of the right hand were taken. He did have an old fracture at the base of the 5ᵗʰ metacarpal. It did appear was impacted, but it was healed. Clinical Assessment/Plan: 1. Assessment - Pain in left hand, 2. Assessment Pain in right hand, 3. Assessment -Closed nondisplaced fracture of base of metacarpal bone of right hand; Assessment:① Right 5ᵗʰ metacarpal fracture malunion; ② Bilateral Carpal Tunnel Syndrome; Plain: At this time, WB did discuss nerve studies and carpal tunnel release. However, the patient states he is not interested at this point in carpal tunnel surgery. He was told that if the symptoms become worse or he would like to have this addressed that he can have a have a follow up made here at the clinic. It was explained to the patient that the fracture itself is healed. There is not much that can be done. An Osteotomy more than likely would not provide any benefit due to the nature of the fracture and did appear that the fracture had encroached on the row of carpal bones, but again the fracture is healed. He had very little pain on palpation of the fracture site and was able to make a complete fist. At this time it was explained to the patient this does not appear to be a surgical issue. Surgery would be less than optimal. He does have full function and range of motion, so we would not suggest surgery at this point. The patient agreed. He was instructed to take anti-inflammatories for his intermittent pain and to use the hand with no restrictions." (See Exhibits #41, #35, #42, #33, #36, #37, #38, #39, #43, #29, #91). All of plaintiff's symptoms documented by various different nurses upon sick call review contradicts Nichols

(19.) of (27.)

- las Florence's x-ray film Radiology Report x-ray film finding of plaintiff's 8/20/21 x-ray film despite it being the first x-ray tooken of plaintiff's right hand, for days after he injured it which he had severe swelling and experienced extreme pain that felt "like it was broke." Not only did his findings show no fractures, it also showed no swelling, but the other radiologist Naveed Yousuf's x-ray film review of plaintiff's 9/14/21 x-ray showed mild soft tissue swelling, and the Orthopaedic Hand Specialist - Glen Babich's 2/8/22 x-ray film review findings noted Carpal Tunnel Syndrome nerve damage, and an old improperly healed fracture which he identified approximately 6 months after plaintiff sustaining his injury. (See Exhibits #22, #2-B, #14, #18, #3-A, #3-B).

Despite the overwhelming conflicting evidence to the contrary, Dr. Florence is of the opinion that his interpretation of the August 20, 2022 x-ray was within the applicable standard of care, which will require an expert witness to examine his x-ray film review to determine if he misdiagnosed plaintiff's injury and to determine if he agrees that Dr. Florence's Interpretation of the August 20, 2021 x-ray was within the applicable standard of care. (See "Defendant Nicholas Florence, M.D.'s Motion To OPT Out OF Mandatory Mediation", and also Exhibits #14, #21, #19, #16, #41, #18, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #35, #2-B, #91). The results being dependent upon whether Nicholas Florence misdiagnosed plaintiff's 8/20/21 x-ray film review or not, with such issues and conditions being overly complicated and outside the knowledge, skill, and understanding of the jury with there being a significant dispute in the x-ray film Radiology Report findings that suggests there was a misdiagnosis of plaintiff's severe right hand injury by several different medical professionals that will require the appointment of an expert witness Medical Doctor - Radiologist or Orthopaedic Hand Specialist to help the jury sort through. (See Exhibits (20) of (27.)

#14, #21, #19, #16, #41, #18, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #35, #28, #91, #53, #1, #20, #A, #34, #22, #28, #30). Winger v. Siddiqul, 19-CV-474-RJD( S.D. Ill. Sept. 27, 2021)("In general, court-appointed experts are utilized only if "scientific, technical, or other specialized knowledge" will help the trier of fact understand complex evidence or facts at issue. Ledford, 105 F. 3d at 358-59 (citing Fed.R. Civ.P. 702)."). Dobbey v. Carter, 734 Fed. Appx. 36 -2, 364-65 (7th Cir. 2018)(" Experts may be appointed if necessary to help the court understand the issues, not to assist the party in preparing his case." ). Turn v. Cox, Fed. Appx. 463, 468 (7th Cir. 2014)(" The Appointment of a medic -al expert pursuant to Federal Rule of Evidence 706 may be necessary to "help sort through conflicting evidence... but [the court] need not appoint an expert for a party's own benefit or to explain symptoms that can be understo -od by a layperson."). Baker v. Hertz, Case No. 3:15 -cv-600-JPG-DGW (S.D. Ill. Aug 18, 2015)(" These conditions range from pain to headaches, vomiting and other injuries; None the conditions, however are outside the understanding of a jury; Plaintiff has not shown that his condits were overl -y complicated or obsure, that there is a significant dispute in the med -ical record, or that there was a misdiagnosis"). Greason v. Kemp, 891 F.2 829, 835 (11th Cir. 1990)(" The court in Greason observed that often "whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses"

(6.) (Plaintiff Is Indigent) - Plaintiff's case contains multiple delib -erate indifferent claims against eight different defendants, some supervisory prison officials, Nurse Practitioners, and medical doctor -Radiologists whose conduct caused him various delays and denials of access to adequate care that worsene -d his condition for a severe right hand injury a fractured hand, with symptoms

(21.) of [27.]

— of extreme swelling, being unable to make a fist, purple discoloration, Arth ~itis, nerve damage, experiencing severe pain. (See Plaintiff's Complaint). Plaintiff's case which involves complex issues regarding x-ray film misdiagno -sis by various medical professionals, four intricate medical malpractice clai ~ms against two nurse practitioners and two medical doctors – Radiologists as to whether they violated the standard of care, that involves complicated, techni ~cal, and specialized knowledge beyond the jury's grasp, requiring the sorting -g out of significant disputes in medical records involving conflicting x-ray film -s findings also that are beyond the comprehension and expertise of the jury, which will require the assistance of an expert witness Orthopaedic Hand Specialist to aid the jury in understanding the facts and complex issues nece -ssary to make an informed decision to resolve the case. (See Plaintiff's Verified Complaint and Exhibit numbers: #14, #21, #19, #16, #18, #1, #20, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #35, #14, #34, #41, #22, #2-B, #28, #30, #24, #33, #91, #53, #54). Despite the obvious need of an expert witness to help assist the court and jury in understanding the highly complex issues and evide ~nce involved in this case as plaintiff has demonstrated he is indigent and unable to afford to hire or locate an expert witness even though an expert ~'s testimony would substantially aid the court; therefore the court should appoint and compensate an expert witness. (See plaintiff's Complaint and all attached exhibits numbered: #14, #3-G, #21, #19, #16, #18, #2, #20, #3-A, #3B, #3-C, #3-D, #3-E, #3-F, #35, #34, #41, #2-B, #91). See, e.g., Steele v. Shah, 87 F.3d 1266, 1271 (11th Cir 1996) ("remanding the case because the lower court failed to exercise its discretion to appoint and compensate an exper ~t if the plaintiff was in fact indigent"). McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir.), vacated and remanded on other grounds, 502 U.S. 903, 112

(22) of (27)

- S.Ct. 291, 116 L.Ed.2d 236 (1991) ("Finding that the phrase "such proportions as the court directs," in an appropriate case, permits the district court to apportion all costs to one side."); Webster v. Sowders, 846 F.2d 1032, 1038-39 (6th Cir. 1988) (stating that "a District Court has authority to apportion costs under this rule [706(b)], including excusing impecunious parties from their share."); United States Marshalls Serv. v. Means, 741 F.2d 1053, 1059 (8th Cir. 1984) (stating that discretionary power to advance fees of expert witnesses should be exercised only under compelling circumstances"). See Michael H. Graham, Federal Practice and Procedure § 6681, at 355 (interim ed. 1992) ("noting that one of the rationales for Rule 706 is that some litigants may not have the wherewithal to locate and/or pay for an expert").

(7.) (Defendants Retained An Expert) - Plaintiff's case involves complicated matters of medical misdiagnosis, complex medical standards of care, conflicting specialized medical records and technical medical evidence which the Jury is unable to understand without an expert interpretation and that's beyond the knowledge of plaintiff who is not a licensed medical professional along with conflicting X-ray film diagnosis between several different nurses, Orthopaedic Hand Specialist, and Medical Doctor-Radiologists on multiple occasions, which will require an expert witness to help the jury and court understand and resolve such complex issues which are based on medical science with plaintiff being indigent and unable to afford to hire an expert witness to assist the jury. (See Plaintiff's Complaint and all attached Exhibit numbers, and Exhibit numbers: #14, #21, #19, #16, #18, #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #35, #44, #91). Then one of plaintiff's defendants Medical Doctor-Radiologist-Nicholas Florence who reviewed plaintiff's first x-ray film dated 8/20/21 which his diagnosis showed no fractures of soft tissues swelling, four days after plaintiff sustained

(23.) of (27.)

—d his injury with his right hand severely swollen with him being unable to make a fist, the day that X-ray was tooken, and the Orthopaedic Hand Specialist diagnosis showed that plaintiff did have an old fracture in his x-ray review dated 2/8/22 suggesting Dr. Florence intentionally misdiagnosed plaintiff's injury on his 8/20/21 X-ray film review findings tooken 4 days after plaintiff sustained his injury on 8/16/21, (See Exhibit numbers: #14, #21, #3-A, #3-B, #3-C, #21, #18, #3-C, #3-D, #3-E, #3-F, #91). Yet Dr. Florence believes his interpretation of the August 20, 2021 x-ray was in the applicable standard, and he have retained a board-certified diagnostic radiologist to review the x-ray films and records, and is under the impression that his expert witness consultant-radiologist is likewise of the opinion that Dr. Florence's interpretation of the August 20, 2021 X-ray was within the standard of care. (See "Defendant's Nicholas Florence, M.D.'s Motion To OPT Out OF Mandatory Mediation", and Exhibits #14, #41, #3-A, #3-B, #21, #18, #3-C, #3-D, #3-E, #3-F, #91).

By Dr. Florence's retaining an expert witness Radiologist to review x-ray films, medical records, form opinions on whether he misdiagnosed plaintiff's 8/20/21 X-ray film he reviewed, and forming an expert opinion and providing specialized expert testimony on such issues to the jury as a medical professional, when plaintiff is not a qualified medical professional, nor does he have a hired expert witness which places him in a position where he is not legally qualified to dispute or provide any fact based or expert based refutation in the manner the rules provide; to aid the jury in getting to the truth of the matter and creating a wholly one-sided presentation of opinions on the issues, which doesn't help the jury accurately assess the evidence or facts in dispute only another expert is qualified to adequately contest such scientific medical evidence, interpret the evidence, and properly explain the required standard

(24.) of (27.)

~s of care, whether defendant deviated from it, and if it was the proximate cause of exacerbating plaintiff's injury and unnecessarily prolonged his pain; and deliberate indifference claims consisting of delays and denials that worsened his injury which will require the court to appoint an expert witness to prevent an uncontested or biased opinion or one sided evaluation of the facts to assist the jury in adequately sorting through the conflicting evidence, highly complicated issues of the case and increase their chances of getting to the truth of the matter. (See Plaintiff's Complaint and Exhibits attached to it numbered:" 1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #41, #42, #43, #46, #94, #91, # , and see Exhibit numbers: #3-A, #3-B, #3-C, #3-D, #3-E, #3-F, #2-B, #3-H, #3-I, #3-J, ; and see "Defendant Nicholas Florence, M.D." Motion To Opt out of Mandatory Mediation"). See Steele v. Shah, 87 F.3d 1266 (11th Cir. 1996) ("If, as he claims, Steele is indigent, this could provide further reason to appoint an expert to avoid a wholly one-sided presentation of opinion on the issue"); See Beard v. Banks, 584 U.S. 521, 534, 126 S.Ct. 2572 (2006) ("The Supreme Court recently confirmed the importance of expert testimony in upholding a grant in summary judgment against a prisoner and First Amendment issue, stating that the prisoners did not offer any fact based or expert based refutation [of prison officials] Argument] in a manner that the rules provide"). Ledford v. Sullivan, 105 F.3d 854 (7th Cir. 1997) ("Where Indigent Plaintiff's need an expert witness the court has discretion to apportion all costs of an expert to one side and advance fees of an expert witness, when expert testimony would substantially aid the court, and appoint an expert."); See Also Smith v. Jenkins, 919 F.2d 90, 93-94 (8th Cir. 1990) ("noting in another case of claimed deliberate ─

(25.) of (27.)

"Certificate OF Service"

The undersigned hereby certifies that on this 8 day of April, 2026, the Foregoing "Motion For Expert Witness and Memorandum and Exhibits" was served via United States Postal Service to be filed with the United States Southern District of Illinois District Court, 750 Missouri Ave., East St. Louis, IL. 62201, and plaintiff asks the Clerk of the court to please forward a copy of this motion to all parties of the record - All Defendants lawyers please. This is being mail out certified mail postage also.

Keith Allen - M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

Dated 4/8/26

/S/ Keith Allen - M21830

Page 27 of 27.

~ indifference by a prison doctor the necessity of expert witnesses and the advisability of the court's appointing an expert on remand.")。
("Conclusion")

For the foregoing reasons, the court should grant plaintiff's motion to appoint and advance fees of an expert witness Nurse Practitioner and either an Orthopaedic Hand Specialist or Medical Doctor-Radiologist to assist the jury and trier of fact in understanding the complexities of this and and conflicting evidence involved, and to help resolve the complicated issues in this, as plain -tiff has demonstrated many different valid grounds in support of the Honorab -le Judge of this court to Appoint Plaintiff the expert witnesses reques -ted. Respectfully Requested!

Date: 4/8/26
Name And Address: Keith Allen - M21830
/S/ Keith Allen - M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

(26.) of (27.)

| Date: | 3/25/2026 | Menard Correctional Center | Exhibit #3 G | Page 1 |
|---|---|---|---|---|
| Time: | 8:42am | Trust Fund | | |

d_list_inmate_trans_statement_composite

## Inmate Transaction Statement

REPORT CRITERIA - Date: 03/24/2026 thru End;     Inmate: M21830;     Active Status Only ? : No;     Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include Inmate Totals ? : Yes;     Print Balance
Errors Only ? : No;     Statewide ? : No

**Inmate:** M21830 Allen, Keith                                          **Housing Unit:** MEN-W -10-23

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance: | | 50.87 |
| 03/24/26 | AP Correction | 88 Miscellaneous Payables | 0835332 | Chk #235852 Voided | 8833192 - Secretary of State I | 36.00 | 86.87 |

ITF Check was Voided

☒ Return to Sender

☐ Over 90 Days Old

| | |
|---|---|
| Total Inmate Funds: | 86.87 |
| Less Funds Held For Orders: | .00 |
| Less Funds Restricted: | 25.00 |
| Funds Available: | 61.87 |
| Total Furloughs: | .00 |
| Total Voluntary Restitutions: | .00 |

### RESTRICTIONS

| Invoice Date | Invoice Number | Type | Description | Vendor | Amount |
|---|---|---|---|---|---|
| 03/24/2026 | 866018 | Disb | Legal Copies | 2 DOC: 523 Fund Library | $0.20 |
| 03/24/2026 | 866019 | Disb | Legal Copies | 2 DOC: 523 Fund Library | $24.50 |
| 03/24/2026 | 866056 | Disb | Legal Copies | 2 DOC: 523 Fund Library | $0.30 |
| | | | | Total Restrictions: | $25.00 |

| | |
|---|---|
| **From:** | ilsd_nef@ilsd.uscourts.gov |
| **Sent:** | Monday, February 9, 2026 11:48 AM |
| **To:** | ilsd_nef@ilsd.uscourts.gov |
| **Subject:** | [External] Activity in Case 3:23-cv-03775-DWD Allen v. Jeffreys et al Motion to Opt Out of Mediation |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Southern District of Illinois

## Notice of Electronic Filing

The following transaction was entered by Stillman, Zachary on 2/9/2026 at 11:47 AM CST and filed on 2/9/2026

| | |
|---|---|
| **Case Name:** | Allen v. Jeffreys et al |
| **Case Number:** | 3:23-cv-03775-DWD |
| **Filer:** | N. Florence |
| **Document Number:** | 124 |

**Docket Text:**
**MOTION to Opt Out of Mediation by N. Florence. (Stillman, Zachary)**

**3:23-cv-03775-DWD Notice has been electronically mailed to:**

James D. Sloan    sloanj@litchfieldcavo.com, davies@litchfieldcavo.com, jimsloan44@gmail.com

Keith B. Hill    khill@heylroyster.com, edwecf@heylroyster.com, sprenzel@heylroyster.com

Margaret Rhoades    mrhoades@lbbs.com

Peter W. Brandt    pbrandt@lbbs.com, kosborne@lbbs.com

Todd Nelson    todd.nelson@ilag.gov, ashley.drowns@ilag.gov, courtney.masters@ilag.gov, gls@ilag.gov, jennifer.reid@ilag.gov

Zachary G Stillman    stillman@litchfieldcavo.com, davis@litchfieldcavo.com, zstillman@recap.email

1

**3:23-cv-03775-DWD Parties and Attorneys without registered email addresses requiring notice by other means:**

Keith Allen
M21830
MENARD CORRECTIONAL CENTER
711 Kaskaskia Street
PO Box 1000
Menard, IL 62259



W: 10-23

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1047403380 [Date=2/9/2026] [FileNumber=6068153-0]
[a7f9ce662fcfc5093333f4be37725094dc39130f3840c472c2486610ebe2e85d48a4
1423e11826f83abac2a89520ce2fb34d84df04c9c97eee9f235727ede792]]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEITH ALLEN, #M21830,                )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )     No. 23-cv-3775-DWD
                                     )
WEXFORD HEALTH SOURCES,              )
INC, et al.                          )
                                     )
        Defendants.                  )

**DEFENDANT NICHOLAS FLORENCE, M.D.'S
MOTION TO OPT OUT OF MANDATORY MEDIATION**

This Defendant, NICHOLAS FLORENCE, M.D., by and through his attorneys, James D.

Sloan, Zachary G. Stillman, and LITCHFIELD CAVO LLP, pursuant to this Court's Instructions

in its January 28, 2026, Order, referring this Case to Mediation (ECF No. 123), and for his Motion

to Opt out of Mandatory Mediation, states as follows:

1.  On January 28, 2026, this Court entered its Mediation Referral Order referring this prisoner

civil rights matter to a single mandatory mediation session and permitting any party to move to

opt out within fourteen days upon a showing of "good cause." (ECF No. 123 at p. 2.)

2.  The Mediation Plan provides that motions to opt out shall be granted only for "good cause"

shown and must set forth specific and articulable reasons why mediation has no reasonable chance

of being productive and identify when the case may be in a better posture to explore settlement.

3.  Good cause exists to excuse Dr. Florence from mandatory mediation because mediation at

this juncture has no reasonable likelihood of being productive as to him.

4.  Plaintiff's claims against Dr. Florence arise from his involvement as a radiologist who

reviewed and interpreted an x-ray of Plaintiff's right hand, taken on August 20, 2021.

5.  The x-ray films were taken at Menard Correctional Center and send by either mail or FedEx to Bloomington Radiology in Bloomington, Illinois, for interpretation.

6.  Dr. Florence was employed by Bloomington Radiology at the time.  He reviewed and interpreted the films on August 26, 2021, and subsequently prepared a written radiology report summarizing his findings which was transmitted back to Menard Correctional Center.

7.  There is no evidence that Dr. Florence had any further involvement in Plaintiff's medical care, treatment decisions, follow-up, or grievance process.

8.  Dr. Florence is of the opinion that his interpretation of the August 20, 2021 x-ray was within the applicable standard of care.

9.  Defendants have retained a board-certified diagnostic radiologist to review the films and records.  That consultant-radiologist is likewise of the opinion that Dr. Florence's interpretation of the August 20, 2021 x-ray was within the standard of care.

10. Plaintiff's Eighth Amendment claim requires proof of deliberate indifference, which is a high standard requiring evidence that Dr. Florence knowingly disregarded a substantial risk of serious harm.

11. The facts of the case nevertheless are that Dr. Florence reviewed the films, issued a written report, and had no subsequent role in Plaintiff's treatment.

12. The state law negligence claim similarly lacks evidentiary support given the expert opinion confirming that Dr. Florence's interpretation met the standard of care.

13. In light of the limited scope of Dr. Florence's involvement and the expert support for his interpretation, there is no realistic settlement value attributable to him.

14. Moreover, any settlement payment made on behalf of Dr. Florence would be reportable to the National Practitioner Data Bank, whereupon a reportable payment would require disclosure by

Case 3:23-cv-03775-DWD    Document 138-1    Filed 04/13/26    Page 33 of 81    Page
Case 3:23-cv-03775-DWD    Document 124    Filed 02/09/26    Page 3 of 4    Page ID
#2562 ·

Dr. Florence to future employers and hospitals for credentialing and privileging purposes and may adversely affect his professional standing and future insurance premiums.

15. Because even a nominal settlement would carry significant professional consequences unrelated to the merits of the claims, Dr. Florence prefers to continue defending this case.

16. Under these circumstances, Dr. Florence respectfully requests that this Honorable Court excuse him from a mandatory mediation.

WHEREFORE, Defendant, NICHOLAS FLORENCE, M.D., respectfully requests that this Court find good cause and enter an Order excusing him from participation in the Mandatory Mediation Program, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,
LITCHFIELD CAVO LLP

By: /s/ Zachary G. Stillman
One of the Attorneys for Nicholas Florence, M.D.

James D. Sloan #6256682
Zachary G. Stillman #6342749
Litchfield Cavo LLP
303 West Madison Street
Suite 300
Chicago, IL 60606
(312) 781-6650 Phone
sloanj@litchfieldcavo.com
stillman@litchfieldcavo.com

Case 3:23-cv-03775-DWD    Document 138-1    Filed 04/13/26    Page 34 of 81    Page
Case 3:23-cv-03775-DWD    Document 124-82 Filed 02/09/26    Page 4 of 4    Page ID
·    #2563

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 9, 2026, I filed the foregoing document with the clerk of the U.S. District Court Southern District of Illinois ECF system. I also served this pleading via U.S. Mail to the address listed below.

/s/ Zachary G. Stillman

Keith Allen, M21830
Menard Correction Center
P.O. Box 1000
Menard, IL 62259

OneRadiology
Normal, IL 61761
Date : 8/26/2021

ALLEN, KEITH
ID#: M21830
D.O.B.: 6-4-88
Ordered by: Crane
Menard Correctional Center

THREE VIEWS OF THE RIGHT HAND 8-20-2021:

HISTORY: Status post fall.

FINDINGS: Dependent edema.

FINDINGS: No evidence of acute fracture or malalignment. Normal joint spaces and mineralization is preserved. The soft tissues are unremarkable.

IMPRESSION: Unremarkable radiographs of the right hand.

Signed _____
N. Florence, M.D.

Dic.: 08/26/2021

Films from Menard Correctional Center

received
8/31/21

M.D. REVIEW
DATE _____
DOCTOR _____
PULL CHART _____
SEE PATIENT _____ CC/PE/HIV
FILE _____

Exhibit # 21

OneRadiology
Normal, IL 61761
Date: 09/16/2021

ALLEN, KEITH
ID#: M21830
D.O.B.: 6-4-88
Ordered by: Dearmond
Menard Correctional Center

RIGHT HAND, THREE VIEWS 9-14-2021:

HISTORY: Injury and pain.

Mild degenerative changes are seen, but no acute bony fracture or dislocation is noted on this initial study. There is mild soft tissue swelling of the thenar and hypothenar eminences. If symptoms persist or progress a follow up study may be considered.

Signed _____

N. Yousuf, M.D.

Dic.: 09/16/2021

Films from Menard Correctional Center

M.D. REVIEW
DATE 10/13/21
DOCTOR
PULL CHART
SEE PATIENT _____ CC/PE/HIV
FILE _____

10/5/21

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_____**Menard Correctional**_____ Center

| Offender Information: |
|---|
| _Allen_ Last Name   _Keith_ First Name   ___ MI   ID#: _M21830_ |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 9/14/21 | X-RAY NOTE | |
| 1:40p | (2) hand xrays completed | K 2 ___ MT(K) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Distribution: Offender's Medical Record

DOC 0094 (Eff. 9/2002)
(Replaces DC 7147)

*Printed on Recycled Paper*

OneRadiology
Normal, Illinois
September 2, 2021

ALLEN, KEITH
ID #: M21830
DOB: 06-04-88
Ordered by: Crane NP
Menard Correctional-Center

RIGHT HAND THREE VIEWS 08-31-2021

HISTORY: Pain.

FINDINGS:
Three views of the right hand are submitted. The joint spaces are intact. No fracture, destructive or erosive abnormality. The soft tissues are unremarkable. If symptoms persist or progress, a follow-up study may be considered.

Signed_____
N. Yousuf, M.D.

Dic: 09-02-2021

Films from Menard Correctional Center

M.D. REVIEW
DATE 9/14/21
DOCTOR
PULL CHART
SEE PATIENT _____ CC/PE/HIV
FILE

received
9/14/21

Exhibit #18

ILLINOIS DEPARTMENT OF CORRECTIONS
**Laboratory and Radiology Summary**

<u>Menard Correctional Center</u>
Facility

Date: <u>9/7/21</u>

Offender/Patient Name: <u>M12830</u>

Offender ID Number: <u>ALLEN, KEITH</u>

Housing Unit: <u>N2 8-47</u>

The following checked results were found to be normal or stable by ___*Crane*___, M̶D̶. N.P

Laboratory completed: _____

Radiology completed: <u>X-RAY COMPLETED ON 8/20/21</u>

Distribution:    Offender Medical Record
                 Offender

*Printed on Recycled Paper*

DOC 0510 (Eff 9/2016)

ILLINOIS DEPARTMENT OF CORRECTIONS
Disciplinary Report

**Type of Report:**
☐ Disciplinary  ☒ Investigative    Facility: Menard Correctional Center

Name of Individual in Custody: Keith ALLEN    ID #: M21830    SMI: ☐ yes ☐ no    Race: Black

Observation Date: 8/16/2021    Approximate Time: 2:10    ☐ a.m. ☒ p.m.    Location: Internal Affairs

**Offense(s): DR 504:**    Investigative Status

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On the above date and approximate time, Individual in Custody Keith ALLEN M21830 is being placed on Investigative Status for the safety and security of the Institution. Individual in Custody Keith ALLEN M21830 was identified by State I.D. and Offender 360. End of Report.

**Witness(es):**

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| C/O J. Huffman | 13822 | | 8/16/2021 | 2:12 | ☐ a.m. ☒ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement    ☐ Investigative Status    Reasons: _____

Printed Name and Badge # _____    Shift Supervisor's Signature _____    Date _____
(For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment: _____

☐ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ Minor Infraction, submitted to Program Unit

Print Reviewing Officer's Name and Badge # _____    Reviewing Officer's Signature _____    Date _____

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only)

Print Hearing Investigator's Name and Badge # _____    Hearing Investigator's Signature _____    Date _____

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign    Individual in Custody's Signature _____    ID# _____

Serving Employee (Print Name) _____    Badge # _____    Signature _____    ☐ a.m. ☐ p.m.

Date Served _____    Time Served _____

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Individual in Custody's Signature _____    ID# _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

Date of Disciplinary Report _____    Print individual in custody's name _____    ID# _____

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

Print Name of witness _____    Witness badge or ID# _____    Assigned Cell (if applicable) _____    Title (if applicable) _____

Witness can testify to: _____

Print Name of witness _____    Witness badge or ID# _____    Assigned Cell (if applicable) _____    Title (if applicable) _____

Witness can testify to: _____

Page 1 of 1

Distribution:    Master File
                Individual in Custody

Printed on Recycled Paper

DOC 0317 (Rev. 7/2021)

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Disciplinary Report**

| Type of Report: | | | | |
|---|---|---|---|---|
| ■ Disciplinary | ☐ Investigative | Facility: Menard Correctional Center | | Date: 9/15/2021 |

Name of Individual in Custody: KEITH ALLEN      ID #: M21830      SMI: ☐ yes ☐ no      Race: Black

Observation Date: 9/15/2021      Approximate Time: 1:00      ☐ a.m. ■ p.m.      Location: WCH Flag

**Offense(s): DR 504:**      102c: Assault to an Offender

**Observation:** (NOTE: Each offense identified above must be substantiated.)

Upon the conclusion of an investigation which concluded on today's date it was determined that Keith ALLEN M21830 assaulted another Individual in Custody (Identified but not named due to the Safety and Security of the Institution) on 8/16/2021 on the front of 8 gallery in the West cell house. Based on statements given by two confidential sources, as well as other information discovered during the investigation, Keith ALLEN M21830 is being issued a disciplinary report for 102c: Assault of An Offender. Keith ALLEN M21830 was identified by State Identification and O360.

**Witness(es):** _____

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| C. Lauer | 13596 | | 9/15/2021 | 1:30 | ☐ a.m. ■ p.m. |
|---|---|---|---|---|---|
| **Reporting Employee (Print Name)** | **Badge #** | **Signature** | **Date** | **Time** | |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement      ☐ Investigative Status      Reasons: _____

Printed Name and Badge #      |      Shift Supervisor's Signature
(For Transition Centers, Chief Administrative Officer)      |      Date

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer      Comment: _____

☐ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ **Minor Infraction,** submitted to Program Unit

Print Reviewing Officer's Name and Badge #      |      Reviewing Officer's Signature      |      Date

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

Print Hearing Investigator's Name and Badge #      |      Hearing Investigator's Signature      |      Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign      |      Individual in Custody's Signature      |      ID#

Serving Employee (Print Name)      |      Badge #      |      Signature  ☐ a m ☐ p m

Date Served      |      Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Individual in Custody's Signature      |      ID#

---

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

Date of Disciplinary Report      |      Print individual in custody's name      |      ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

Print Name of witness      |      Witness badge or ID#      |      Assigned Cell (if applicable)      |      Title (if applicable)

Witness can testify to: _____

Print Name of witness      |      Witness badge or ID#      |      Assigned Cell (if applicable)      |      Title (if applicable)

Witness can testify to: _____

Page ____ of ____

Distribution:    Master File
                 Individual in Custody

Printed on Recycled Paper

DOC 0317 (Rev. 7/2021)

Exhibit #"3-A"



KEITH

Illinois Department Of Correction

2514143643

9-December-2025 14:16:0

1988 M

R

ALLEN, KEITH
0912283514439643
4-June-1988 M

Illinois Department Of Correction
9-December-2025 14:22:

ST: 0.00 mm
CR
LittleEndianExplicit
Images: 6/6

WL: 159 WW:









Exhibit #35

**Wexford Health**
SOURCES INCORPORATED

## NOTICE OF CLAIM AUTHORIZATION NUMBER

To:         HEALTHCARE UNIT
From:       Utilization Management
Date/Time:  12/02/2021 / 10:53:49

Inmate Name:   KEITH ALLEN
Inmate Number: M21830
Date of Birth:  06/04/1988
Site:   MENARD
Service:   95860-MUSCLE TEST ONE LIMB
Authorization No:  455417170

Service is Authorized.

Comments:    12-2-21 RUE EMG authorized for a patient with R hand pain and swelling on Xrays. No fracture seen on Xray.

---

INFORMATION CONTAINED IN THIS DOCUMENT IS PRIVILEGED AND CONFIDENTIAL

Wexford Health Sources
Phone: 877-939-2884 -or- 800-353-8384
Fax: 412-937-9151

Case 3:23-cv-03775-DWD    Document 84    Filed 02/06/24    Page 1 of 1    Page ID #673

JB Pritzker
Governor



Latoya Hughes
Acting Director



(Exhibit A)

## The Illinois Department of Corrections

Menard Correctional Center
711 Kaskaskia Street • Menard, IL  62259 • (618) 826-5071 TDD: (800) 526-0844

February 6, 2024

Ms. Tanya Kelley
Deputy Clerk
United States District Court
Southern District of Illinois
750 Missouri Avenue
East St. Louis, IL  62201

RE:    **Keith Allen #M21830 v. Rob Jeffreys, et al.**
        **Cause no. 23-3775-DWD**

Dear Deputy Clerk Kelley:

Enclosed please find signed Waivers of Service for Anthony Wills, Angela Crain, Kelly Pierce and Wexford employees, J. Crane, Alisa Dearmond and M. Moldenhauer.  The Wexford supervisor says they are unable to identify medical providers, N. Florence and N. Yousef, concerning the above captioned matter.

If you have any questions or need any additional information, please feel free to contact me at Menard Correctional Center Legal Service Office at (618) 826-5071, ext. 7893.

Sincerely,

Shelley A. Shevlin
Legal Services

Enclosures

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

# MEDICATION ADMINISTRATION RECORD    BOSWELL PHARMACY SERVICES

814-629-1397 • Fax: 814-629-7644



Exhibit 34

| EFFECTIVE DATES | MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Original Order 12/1/21 Discontinue 2/1/22 Rx # | Naproxen 500mg PO BID PRN Moldenhauer | | | | | #39 | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Original Order Discontinue Rx # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Original Order Discontinue Rx # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Original Order Discontinue Rx # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Original Order Discontinue Rx # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Original Order Discontinue Rx # | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| Initial | Signature | Initial | Signature | Initial | Signature | Initial | Signature | Initial | Signature |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Location: E8-13

Date of Birth or Soc. Sec. No.

Allergies: NKA

Diagnosis

Inmate Name and Number: Allen, Keith M21830

Facility: INCC

Charting for: Dec

Through: 2021

Exhibit # 41





THE
## ORTHOPAEDIC
INSTITUTE
OF SOUTHERN ILLINOIS



RECEIVED
MAR - 3 2022

Patient:           Keith Allen   m21830
Date of Birth:     06/04/1988 Age: 33
Date:              02/08/2022 9:20 AM
Visit Type:        Office Visit

## CHIEF COMPLAINT:
Right hand pain.

## HISTORY OF PRESENT ILLNESS:
1. rt hand

Patient is a 33-year-old right-hand dominant male who states that in September 2021 he got into a fight. He states that since then he has had pain in the hand. States his pain level varies between a 1 and 9 and describes it as a sharp, burning, stabbing pain. States he occasionally has numbness in the thumb, index finger and long finger as well. He has been taking ibuprofen. He is an inmate and he did state he was very apprehensive about surgical procedures due to the conditions he lives in.

Today we reviewed his past medical history, medications, allergies, surgical history, social history, family history, and review of systems. They are all part of his electronic medical record.

## PAST MEDICAL HISTORY (Detailed)

| Disease | Onset Date | Comments |
|---------|-----------|----------|
| Arthritis | | |

## PAST SURGICAL HISTORY

| Management | Laterality | Date | Comments |
|-----------|-----------|------|----------|
| no known surgical history | | | |

## SOCIAL HISTORY (Detailed)
Tobacco use reviewed.
Preferred language is English.
Tobacco use status: Cigarette smoker.
Smoking status: Current every day smoker.

m21830

RECEIVED MAR - 3 2022



## FAMILY HISTORY (Detailed)

Condition
Family history of Cardiovascular disease
Family history of Cancer, unknown
Family history of Diabetes mellitus

## MEDICATIONS:

Patient Status
Completed with information received for patient transitioning into care.
Medication Reconciliation
Medications reconciled today.
Medication Reviewed

| Medication Name | Prescribed Elsewhere | Status |
|---|---|---|
| naproxen 500 mg tablet | Y | Verified |

## ALLERGIES:

| Ingredient | Reaction (Severity) | Medication Name | Comment |
|---|---|---|---|
| NO KNOWN ALLERGIES | | | |

## REVIEW OF SYSTEMS:

| System | Neg/Pos | Details |
|---|---|---|
| Constitutional | Negative | Chills, Fever and Night sweats. |
| Eyes | Negative | Blurred vision. |
| Respiratory | Negative | Asthma, Cough and Dyspnea. |
| Cardio | Negative | Chest pain and Irregular heartbeat/palpitations. |
| GI | Positive | Abdominal pain. |
| GI | Negative | Black tarry stools, Nausea and Vomiting. |
| GU | Negative | Dysuria and Urinary incontinence. |
| Endocrine | Negative | Cold intolerance and Heat intolerance. |
| Neuro | Positive | Paresthesia, Numbness in extremities. |
| Neuro | Negative | Dizziness and Headache. |
| Psych | Negative | Anxiety. |
| Integumentary | Negative | Rash and Skin lesion |
| MS | Negative | Except as noted in HPI and Chief complaint and Muscle weakness. |
| Hema/Lymph | Negative | Bruising and Easy bleeding. |
| Allergic/Immuno | Negative | Contact dermatitis. |

Vital Signs

## VITAL SIGNS

| BP mm/Hg | Ht ft | Ht in | Ht cm | Wt lb | BMI kg/m2 | Pulse /min | Resp /min | Temp F | Time | Measured_by |
|---|---|---|---|---|---|---|---|---|---|---|
| | 5.0 | 9.00 | 175.26 | 185.00 | 27.32 | | | | 9:43 AM | April Hines |

## PHYSICAL EXAM:

GENERAL: Patient is a well-developed, well-nourished 33-year-old male who looks to be stated age. He is in no acute distress at this time. Mood and affect were appropriate. He was alert and oriented x3. He is 5 feet 9 inches and weighed 185 pounds.

Allen, Keith    000000272220 06/04/1988 02/08/2022 09:20 AM Page: 2/4

Exhibit # 11



M218630

MUSCULOSKELETAL: On inspection of the upper extremities, he was able to make a complete fist with both hands and extend the fingers past neutral. Light touch sensation was intact at the tips of the fingers in both hands. Capillary refill was brisk at 2+ to the tips of the fingers of both hands. On examination of the wrist themselves, they have full range of motion of both wrists to include flexion, extension, pronation, supination, radial and ulnar deviation. He had a mildly positive Tinel's and median nerve compression test bilaterally.

## DIAGNOSTICS:

| Ordered Date | Completed Date | Dx./Indication | Study | Result | orderedBy |
|---|---|---|---|---|---|
| 02/08/2022 | | Pain in right hand | Hand Xray Min 3 Views | | Young MD, Steven D MD |

Diagnostic Interpretation: X-rays were obtained today. Three views of the right hand were taken. He did have an old fracture at the base of the 5th metacarpal. It did appear was impacted, but it was healed.

## CLINICAL ASSESSMENT/PLAN:

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Pain in left hand (M79.642). |
| 2. | Assessment | Pain in right hand (M79.641). |
| 3. | Assessment | Closed nondisplaced fracture of base of fifth metacarpal bone of right hand, initial encounter (S62.346A). |

Assessment:
1. Right 5th metacarpal fracture malunion.
2. Bilateral carpal tunnel syndrome.

Plan:
At this time, we did discuss nerve studies and carpal tunnel release. However, the patient states he is not interested at this point in carpal tunnel surgery. He was told that if the symptoms become worse or he would like to have this addressed that he can have a follow-up made here at the clinic. It was explained to the patient that the fracture itself is healed. There is not much that can be done. An osteotomy more than likely would not provide any benefit due to the nature of the fracture and it did appear that the fracture had encroached on the distal row of carpal bones, but again the fracture is healed. He had very little pain on palpation of the fracture site and was able to make a complete fist. At this time it was explained to the patient this does not appear to be a surgical issue. Surgery would be less than optimal. He does have full function and range of motion, so we would not suggest surgery at this point. The patient agreed. He was instructed to take anti-inflammatories for his intermittent pain and to use the hand with no restrictions. We will go ahead and release him p.r.n.

Electronically signed by : **Phillip R. Erthall PA** 02/08/2022 09:20 AM

Allen, Keith   000000272220 06/04/1988 02/08/2022 09:20 AM Page: 3/4

Exhibit # 41

M21830



CC Providers:
Glen Babich MD
10940 Lawrence Rd
Lawrence Correctional Center
Sumner, IL, 624661205
6189362859

Phillip R Erthall, PA-C/60023

510 Lincoln Drive Herrin, IL 62948 - Phone: 618.997.6800 - Fax: 618.998.9385 - www.orthopaedicinstitute.com

Allen, Keith   000000272220 06/04/1988 02/08/2022 09:20 AM Page: 4/4





# THERAPY ORDERS

**DATE:** 03/03/2023 6:50 AM
**PATIENT:** Keith Allen
**DOB:** 06/04/1988
**ADDRESS:** 711 Kaskaskia St
**CITY:** Menard **STATE: ZIP:** 62259-9999
**TELEPHONE:** (618)826-5071

PT Eval & Treat or OT Eval & Treat

**FREQUENCY:** 1
**DURATION:** 2

## TREATING ASSESSMENT

| Diagnosis description | Dx code | Status |
|---|---|---|
| Carpal tunnel syndrome of right wrist | G56.01 | Right |

## OTHER PHYSICIAN GOALS
CTR p/o protocol

## TREATMENT
PT evaluate & treat
OT evaluate & treat
Home exercise

## EXERCISE
range of motion
strengthening

## MODALITIES
Modalities of Choice

Provider: Steven D. Young MD  03/03/2023 06:50 AM

Supervising: 03/03/2023 06:50 AM

Allen, Keith    000000272220 06/04/1988 03/03/2023 06:50 AM Page: 1/2

KEITH ALLEN 000516

Exhibit # 3-H, p.2of2

Document generated by: Carlos Cerrato 03/03/2023

510 Lincoln Drive Herrin, IL 62948 - Phone: 618.997.6800 - Fax: 618.998.9385 - www.orthopaedicinstitute.com

Allen, Keith    000000272220 06/04/1988 03/03/2023 06:50 AM Page: 2/2

KEITH ALLEN 000517



# Pre-Op/Surgery Orders

**Today's Date: 02/20/2023 11:11 AM**        **Encounter Date: 02/03/2023**

**Patient Name:**        Keith Allen
**DOB:**        06/04/1988
**SSN:**
**Primary Insurance:**    Wexford Health Sources Claims
**Other Insurance:**
**Phone:**        H: (618)826-5071

| Side | Indication | Diagnosis | Type of Treatment | Proc Code | Date |
|------|-----------|-----------|-------------------|-----------|------|
| right | Carpal tunnel syndrome of right wrist | G56.01 | Carpal Tunnel Release | 64721 | 03/03/2023 |

**Surgery Date:**        **03/03/2023**
**Operative Consent:**    **Rt. hand CTR, PAN**

**Surgeon:**        **Steven D. Young, MD**
**Facility:**        Marion Healthcare
**Preop H&P Physician:**        Physician at Menard 826-5071 x2467
**Send Pre-Op Testing to PCP:**    fax 826-1746

**Anesthesia:**        Beir Block.

**Lab Diagnosis:**    Carpal tunnel syndrome of right wrist  G56.01

**Pre-Op Labs**        Per Anesthesia

**Pre-op Prep:**
    NPO past midnight
    Routine clip and skin cleanse to operative site
    Patient to initial operative site
    IVNS{Unexpected Value}
    IVLR 1000cc @ KVO
    Accucheck if diabetic
**Pre-op Meds:**
80-120 kilograms - 2 gm Ancef IVPB in holding area (if < 80 give 1 gm Ancef, if >120 give 3 gm Ancef)

**Allergies:**
| Ingredient | Reaction (Severity) | Medication | Comment |
|------------|--------------------|-----------|---------|

Allen, Keith    06/04/1988                    1/2

KEITH ALLEN 000518

**NO KNOWN ALLERGIES**

**Name**

**Vitals:**

| Ht (In) | Wt (Lb) | BP | Pulse | BMI | Temp (F) | Resp |
|---------|---------|----|-------|-----|----------|------|
| 69.00 | 185.00 | | | 27.32 | | |

Electronically signed by : *Steven D. Young MD 02/03/2023 08:00 AM*

Document generated by:  Carlos Cerrato  02/20/2023

510 Lincoln Drive Herrin, IL 62948 - Phone: 618.997.6800 - Fax: 618.998.9385 - www.orthopaedicinstitute.com

Allen, Keith    06/04/1988                    2/2

KEITH ALLEN 000519

Allen, Keith (MR # 1537618)

SIH Medical Group Neurology
305 West Jackson Suite 103
Carbondale IL 62901-1474
Phone: 618-351-4972

Allen, Keith
MRN: 1537618, DOB: 6/4/1988, Sex: M
Visit date: 6/17/2022

## Media Information

Nerve Conduction Study - Scan on 6/23/2022 1500: Nerve Conduction Study Results

| Keith Allen | 1537618 | 6/17/2022 16:45 |
|---|---|---|

### SIH Brain & Spine Institute
305 W. Jackson Street, Suite 103
Carbondale, IL 62901
Phone (618) 351-4972 Fax (618) 351-6522

Full Name: Keith Allen     Gender:     Male
Patient ID: 1537618        Date of Birth: 6/4/1988

Visit Date:              6/17/2022 16:45
Age:                     34 Years
Examining Physician:     Tiffany Ward, MD
Referring Physician:     Michael Modenhauer, NP
Patient History:         This is a 34 year-old right honed man with numbness in the right hand and pain in the
ular portion of the hand.

### Motor NCS

| Nerve / Sites | Muscle | Lat ms | Amp mV | Segments | Dist mm | Lat Diff ms | Vel m/s |
|---|---|---|---|---|---|---|---|
| R Median - APB | | | | | | | |
| Wrist | APB | 3.7 | 6.4 | Wrist - APB | 70 | | |
| Elbow | APB | 8.4 | 5.2 | Elbow - Wrist | 272 | 4.7 | 58 |
| R Ulnar - ADM | | | | | | | |
| Wrist | ADM | 2.6 | 11.3 | Wrist - ADM | 70 | | |
| B.Elbow | ADM | 6.6 | 11.2 | B.Elbow - Wrist | 232 | 3.9 | 59 |
| A.Elbow | ADM | 8.4 | 10.7 | A.Elbow - B.Elbow | 100 | 1.8 | 58 |

### Sensory NCS

| Nerve / Sites | Rec. Site | Lat ms | Amp µV | Segments | Dist mm | Peak Diff ms | Vel m/s |
|---|---|---|---|---|---|---|---|
| R Median, Ulnar - Transcarpal comparison | | | | | | | |
| Median Palm | Wrist | 1.6 | 202.0 | Median Palm - Wrist | 70 | | 45 |
| Ulnar Palm | Wrist | 1.3 | 20.3 | Ulnar Palm - Wrist | 70 | | 55 |
| | | | | Median Palm - Ulnar Palm | | 0.3 | |
| R Radial - Superficial (Antidromic) | | | | | | | |
| Forearm | Wrist | 1.8 | 42.6 | Forearm - Wrist | 100 | | 55 |

### Summary

The motor conduction test was normal in all 2 of the tested nerves: R Median - APB, R Ulnar - ADM.

The sensory conduction test was performed on 2 nerve(s). The results were normal in 1 nerve(s): R Radial - Superficial (Antidromic). Results outside the specified normal range were found in 1 nerve(s), as follows:
- In the R Median, Ulnar - Transcarpal comparison study
  - the take off velocity result was reduced for Median Palm - Wrist segment

1 of 3

Allen, Keith (MR # 1537618)

| Keith Allen | 1537618 | 6/17/2022 16:45 |

**Conclusion:**

1. There is evidence of a mild median neuropathy at the right wrist.
2. The dorsal ulnar cutaneous nerve is normal.

Tiffany Ward, MD

2 of 3

Printed by [3004749] at 9/27/2022 12:06 PM

Allen, Keith (MR # 1537618)



3 of 3

**Document Information**

Name: Allen, Keith                                    DOB: 06/04/1988                    KEITH ALLEN 000537          Date:

Exhibit # "3-J", p. 4 of 4.

Allen, Keith (MR # 1537618)

Nerve Conduction Study
  Nerve Conduction Study Results
  06/17/2022 16:32
Attached To:
  Nerve Conduction Test - Neurology Brain And Spine [68837251]
  Procedure visit on 6/17/22 with Tiffany Ward, MD

## Source Information

Cherice Parker | Him Department

Name: Allen, Keith                    DOB: 06/04/1988              KEITH ALLEN 000538      Date:

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**

E-7-13

2nd Lvl rec

| Date 10/15/2021 | Offender (please print) Keith Allen | ID #: M21830 | Race (optional) Blk |

Present Facility: Menard Correctional Center

Facility where grievance issue occurred: Menard Correctional Center

**Nature of grievance:**

☐ Personal Property
☒ Staff Conduct
☐ Transfer Denial by Facility
☐ Disciplinary Report

☐ Mail Handling
☐ Dietary
☐ Other (specify):

☒ Medical Treatment
☐ HIPAA

232-10-21 MEN
☒ ADA Disability Accommodation
☐ Restoration of Sentence Credit

RECEIVED
OCT 21 2021
MENARD CC

Date of report

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance".

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
Chief Administrative Officer, only if EMERGENCY grievance
Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drug issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On 8/16/21, I, Keith Allen - M21830 was housed in the West House where I had a physical altercation in self-defense trying to defend and protect myself from harm and I hurt my right hand in the process and it was swollen like a baseball glove and felt like it was broken, causing me severe pain and discomfort. Had you could tell something was wrong with it just by looking at how swollen it was compared to my left hand. Then I was sent to segregation under investigation and placed in cell # 847 in the North Tier housing Unit. The next I told the nurse (Riki) John Doe that I needed some pain pills and my hand was in serious pain and I needed medical treatment, and showed her how swollen my right hand was

☒ Continued on reverse

**Relief Requested:**

Some strong pain pills for the pain, a second opinion X-ray from an outside hospital to check for bone damage, a "MRI" to check for nerve damage X-rays can't detect, and if my bone damage or nerve damage is discovered, I'd like the proper treatment and or surgery to repair it. Also for "Wexford" to change it's inadequate healthcare policies that blatantly disregards inmates serious medical needs and for all staff responsible for being deliberately indifferent to my serious medical needs to be fired.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self

☐ Check if this is NOT an emergency grievance

| Keith Allen | M21830 | 10/15/21 |
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)** Date Received: _____ ☐ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

_____

_____

_____

| Print Counselor's Name | Sign Counselor's Name | Date |

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance office

**EMERGENCY REVIEW:** Date Received: 10-21-21

Is this determined to be of an emergency nature?

☒ Yes, expedite emergency grievance
☐ No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

| Chief Administrative Officer's Signature | 10-21-21 |
| | Date |

Distribution: Master File; Offender                Page 1 of 2                DOC 0046 (Rev. 01/20)

Allen v. Hunter (23-3775) Bates Document No.:        000023

 

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**RESPONSE TO OFFENDER'S GRIEVANCE (Continued)**

Continued...

The Assistant ADA Coordinator advised that this issue does not require and ADA accommodation.

Angela Crain, HCUA, RN, BSN advised that per review of the individual in custody's medical records, he was seen by NSC on 8/17/21 for right hand pain and referred to an MD/NP call line. The individual in custody was seen by NP Crane on 8/20/21 and an x-ray was done. He was given Motrin 600mg TID PRN #17 from stock. The individual in custody was seen by NP Dearmond on 9/1/21 for expiration of Ibuprofen due to hand pain. The individual in custody received a renewal of his Ibuprofen and another x-ray was ordered for 2 weeks time. The individual in custody received hand x-rays on 8/31/21. The individual in custody is scheduled to discuss his hand x-ray results and possible future treatment with a healthcare provider. He is awaiting his scheduled appointment to discuss his medical concerns with a healthcare provider.

Distribution   Master File: Offender                    Page 2                          DOC 0047 (Rev. 3/2019)
                                          Printed on Recycled Paper

Allen v. Hunter (23-3775) Bates Document No.:    000022

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | M21830 | **Counseling Date** | 11/04/21 08:31:36:920 |
| **Offender Name** | ALLEN, KEITH | **Type** | Collateral |
| **Current Admit Date** | 06/16/2011 | **Method** | Grievance |
| **MSR Date** | 08/24/2055 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | E -08-13 | **Staff** | RAMSEY, SHEILA M., Office Coordinator |

Grievance Office received grievance #95-11-21 marked emergency by the individual in custody regarding sick call denial and request for outside medical treatment, dated 11/3/2021.

Exhibit # 30

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | M21830 | **Counseling Date** | 11/08/21 08:40:42:530 |
| **Offender Name** | ALLEN, KEITH | **Type** | Collateral |
| **Current Admit Date** | 06/16/2011 | **Method** | Grievance |
| **MSR Date** | 08/24/2055 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | E -08-13 | **Staff** | HARGIS, ALLISON P., Office Associate |

Emergency grievance #95-11-21 dated 11/3/2021 regarding sick call denial & outside medical treatment has been deemed emergency by CAO for expedited grievance review.

**Print Date** 11/8/2021

Exhibit # 24

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | M21830 | **Counseling Date** | 10/21/21 13:06:13:047 |
| **Offender Name** | ALLEN, KEITH | **Type** | Personal |
| **Current Admit Date** | 06/16/2011 | **Method** | Face To Face |
| **MSR Date** | 08/24/2055 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | E -08-13 | **Staff** | RAMSEY, SHEILA M., Office Coordinator |

Emergency grievance #232-10-21 dated 10/15/2021 regarding medical treatment has been deemed emergency by CAO for expedited grievance review.

**Print Date** 10/21/2021

Exhibit #33

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ MCC _____ Center

**Offender Information:**

ALLEN (Last Name)  KEITH (First Name)  MI ___  ID#: 21830

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 12.1.21 10⁵⁵ A | NP NOTE S: Scheduled for rev. of Rt hand X-ray results _____ O: No results in chart. Evaluating pt - Previous 8/21 X-ray _____ Pt S/R "I have severe pain in my Rt hand, can't ball up my fist, (while making a fist c̄ Rt hand) Pt also c/o Rt hand disfigurement — (No noted deformity) No swelling will refer pt ortho for eval. _____ C/o pain - Denied numbness today A: Rt hand discomfort. | ① P: NAPROXEN 500 mg ī PO BID PRN X2 mos. ② ref req. to Orthopedic eval Rt hand. ③ EMG RT hand ④ F/u in 2 months. MD/NP < L  additional note 9/21 essenti normal — "only symptom continued may need F/U." |
| | M. Moldenhauer NP C) | |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Exhibit "-36

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Menard Correctional Center

**Offender Information:**

| Keith | Allen | M21830 |
|---|---|---|
| Last Name | First Name | MI  ID#: |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| | **Med Furlough Clerk Note:** | |
| 12/2/21 8:48 am | S) | P) Send referral to utilization management for approval/auth#. |
| | O) Received an urgent referral for Ortho Eval | |
| | A) referral | L. Miles Med Furlough Clerk |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ **Menard Correctional** _____ Center

| Offender Information: | | | |
|---|---|---|---|
| **Allen** | **Keith** | | **M21830** |
| Last Name | First Name | MI | ID#: |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 12/3/21 3:24 pm | **Med Furlough Clerk Note:** | |
| | S: | P.) Schedule approved referral |
| | O.) received approval for Ortho Eval with auth 267756914 | L. Miles Med Furlough Clerk |
| | A.) Approved Referral | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

ILLINOIS DEPARTMENT OF CORRECTIONS

Distribution: Offender's Medical Record

_Printed on Recycled Paper_

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Exhibit # 38

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ **Menard Correctional** _____ Center

| Offender Information: | | | |
|---|---|---|---|
| **Allen** | **Keith** | | **M21830** |
| Last Name | First Name | MI | ID#: _____ |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 12/6/21 4:07 pm | **Med Furlough Clerk Note:** | |
| | S.) | P.) Complete med furlough notification for Angela Crain approval/signature. Copies provided to Record office, scanned and emailed via institutional email to staff assigned to med furlough contact list. |
| | O.) Scheduled individual in custody for an Ortho Eval Auth: 267756914 | L. Miles Med Furlough Clerk |
| | A.) Med Furlough appointment | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002) (Replaces DC 7147)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ Menard Correctional _____ Center

| Offender Information: | | |
|---|---|---|
| **Allen** | **Keith** | **M21830** |
| Last Name | First Name | MI    ID#: _____ |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 12/10/21 11:36 am | **Med Furlough Clerk Note:** | |
| | S.) | P.) Complete med furlough notification for Angela Crain approval/signature. Copies provided to Record office, scanned and emailed via institutional email to staff assigned to med furlough contact list. |
| | O.) Scheduled individual in custody for an RUE EMG Auth: 455417170 | L. Miles Med Furlough Clerk |
| | A.) Med Furlough appointment | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/200? (Replaces DC 714?

_Printed on Recycled Paper_

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

**Offender:** Allen_____ Keith_____ ____ M21830_____

Last Name                          First Name                          MI        ID#

**Facility:** Menard_____

☒ Grievance: Facility Grievance # (if applicable) 95-11-21_____ Dated: 11 3 2021_____ or ☐ Correspondence: Dated: _____

Received: 11/18/2021____ Regarding: Medical Treatment - 08 16 21- right hand injured in fight_____

Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:
Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

---

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☒ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☒ This office previously addressed this issue on __11·29·21__
Date

☒ No justification provided for additional consideration.

---

**Other** (specify): The date of incident is outside of 60 days, does not meet DR504F guidelines.   Also, GO indicates this is a Duplicate GRV with #232-10-21._____

---

Completed by: DeAnna Kink_____   _____   12·1·21
Print Name                          Signature                          Date

Distribution:   Offender                  Printed on Recycled Paper                  DOC 0070 (Rev. 3/2018)
                Inmate Issues

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ Menard Correctional _____ Center

| Offender Information: | | | | |
|---|---|---|---|---|
| Allen | Keith | | ID#: | M 2830 |
| Last Name | First Name | MI | | |

| Date/Time | RN Note:    Subjective, Objective, Assessment | Plans |
|---|---|---|
| 2/8/22 | S) Medical Furlough Return | P) Follow up with MD/NP in 5 days |
| 1145a | O) Inmate returned from medical furlough. No | |
| 973  124 | complaints voiced. | |
| 78    80 | | |
| 16 | Paperwork received and forwarded to Medical Furlough clerk. | |
| | No paperwork received. | |
| | A) Medical Furlough Return | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Distribution: Offender's Medical Record

Printed on Recycled Paper

Exhibit " 45

# State of Illinois - Department of Corrections
## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | M21830 | **Counseling Date** | 02/22/22 08:48:30:103 |
| **Offender Name** | ALLEN, KEITH | **Type** | Collateral |
| **Current Admit Date** | 06/16/2011 | **Method** | Grievance |
| **MSR Date** | 08/24/2055 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | E -08-13 | **Staff** | HARGIS, ALLISON P., Office Associate |

Emergency grievance #121-2-22 dated 2/15/2022 regarding medical treatment & surgery has been deemed emergency by CAO for expedited grievance review.

# State of Illinois - Department of Corrections
## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | M21830 | **Counseling Date** | 02/17/22 09:08:50:060 |
| **Offender Name** | ALLEN, KEITH | **Type** | Collateral |
| **Current Admit Date** | 06/16/2011 | **Method** | Grievance |
| **MSR Date** | 08/24/2055 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | E -08-13 | **Staff** | RAMSEY, SHEILA M., Office Coordinator |

Grievance Office received grievance #121-2-22 marked emergency by the individual in custody regarding medical treatment/surgery, dated 2/15/2022.

Exhibit # 43

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### Menard Correctional Center

| Offender Information: | | | |
|---|---|---|---|
| *allen* | *Kuth* | | ID#: *M21830* |
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 2-9-20 | **Med Furlough Note:** | |
| 830 AM | S.) | P.) Waiting for report, will schedule with a N/P or MD once records are received. |
| | O.) Faxed Wexford Health Services Form | |
| | | |
| | | |
| | To: OISI | |
| | | |
| | At Fax # 618·993·8188 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | T. Klein Med Furlough Clerk J. Klein |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

*Printed on Recycled Paper*

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ Menard Correctional _____ Center

**Fracture, Dislocation, Sprains**

Offender Information:

Allen _____ Keith _____ ___ ID#: M21830
Last Name            First Name            MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 11/6/21 8:11A | **RN NOTE**     **LPN/CMT NOTE** | **P) Refer to MD if:** |
| | S) – When did the injury occur? in WCH | - Any deformity, severe pain or swelling, discoloration, limited motion, lack of warmth to touch, pulses diminished or absent (symptoms of impaired circulation) |
| | - How did it happen? altercation | |
| | - Location of injury? Rt hand | **No MD Referral:** |
| | - Any restriction in range of motion? ∅ | - Cold pack PRN for 24 hrs. |
| | - Pain scale 1 -10? SR "8" | - **Splint and elevate extremity**<br>- Discuss management of injury with MD on-call if necessary |
| NKDA On meds | O) T 98 P 70 R 20 BP 130/80 WT 146.2 | - FIRST GIVE – Ibuprofen 200mg 1-2 tabs t.i.d. PRN X 3 days (18 tabs) |
| | - Inspection for anatomical alignment WNL | - Acetaminophen 325 mg, 1 – 2 tablets t.i.d. PRN X 3 days (18 tablets)   OR |
| | - Presence of swelling none @ this time | |
| | - Presence of discoloration ∅ | **Patient Teaching:** |
| | - Skin integrity WNL | - **Medication use**<br>- **Application of cold** |
| | - Check for circulatory integrity WNL | - No weight bearing, elevation |
| | - Capillary refill instantaneous | - **Crutch walking if applicable**<br>- Safety measures |
| | - Distil pulses WNL palpable | - Importance of follow up<br>**Follow-Up:** |
| | - Assess for active ROM WNL | Return to sick call for increased pain, numbness or skin color changes.<br>Nurse Signature |
| | A)  R/O Skeletal Injury | Payment voucher     YES     (NO) |

IBUPROFEN 200MG TAB
56837282  MENARD, STOCK
09/28/21   09/27/21   09/27/22

Distribution: Offender's Medical Record

*Printed on Recycled Paper*

DOC 0084 (Eff. 9/
(Replaces DC



JB Pritzker
Governor

Latoya Hughes
Acting Director

## The Illinois Department of Corrections

Menard Correctional Center
711 Kaskaskia Street • Menard, IL  62259 • (618) 826-5071 TDD: (800) 526-0844

# MEMORANDUM

DATE:    May 24, 2023

TO:    Clara Richmond, Corrections Counselor II

FROM:    Angela Crain, RN, BSN, HCUA

SUBJECT: Allen, Keith M21830 Medical Grievance #296-11-22

I am in receipt of Individual Allen, Keith M21830 medical grievance 296-11-22 regarding medical treatment. Individual grieves his wrist brace is not helping with pain. He requests carpel tunnel surgery. Mr. Allen was referred for carpel tunnel surgery on 12/1/22. He was scheduled for an offsite surgery on 1/9/23. The carpel tunnel surgery was completed on 3/3/23. He has been receiving physical therapy. At this time, the individual's medical concerns have been addressed.

Angela Crain, RN, BSN, HCUA

---

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

Exhibit # 53

"Sick Call Request Slip"

Keith Allen
M21830
5/16/23
East House
Cell # 813

I'm experiencing pain in my right hand, a numbing feeling, which is preventing me from writing at times, headaches, and mental anguish due to me breaking my hand and it's not healing properly. I've also been diagnosed with Carpal tunnel and Arthritis and I need some pain pills to cope with numbing the pain until I can have surgery to fix my hand properly and correct the nerve damage.

Respectfully Requested!

(Carbon Copy)

Exhibit 51

Keith Allen
M21830
East House
Cell # 813
5/10/22

"Request To Mental Health"

I'd like to speak to Mental Health personell about some serious mental health issues I'm needed to address with MHP. I've been experiencing mental anguish, headaches, chronic inflammation in my hand due to the pain and suffering I'm being forced to endure because of a broken hand I have that hasn't healed properly, which is now causing me pain.

Respectfully Requested!

(Carbon Copy)