# UNITED STATES DISTRICT COURT

## for the
### Southern District of Illinois

SCANNED at MENARD and E-mailed
11-22-23 by RM   600 pages
Date      initials    No.

Keith Allen - M21830 )
                     )   Case Number: __23-3775-DWD__
                     )
                     )   *(Clerk's Office will provide)*
                     )
*Plaintiff(s)/Petitioner(s)* )
         v.          )   ☒ CIVIL RIGHTS COMPLAINT
                     )   pursuant to 42 U.S.C. §1983 (State Prisoner)
(See Attached Page)  )   ☐ CIVIL RIGHTS COMPLAINT
                     )   pursuant to 28 U.S.C. §1331 (Federal Prisoner)
                     )   ☒ CIVIL COMPLAINT
                     )   pursuant to the Federal Tort Claims Act, 28 U.S.C.
*Defendant(s)/Respondent(s)* )   §§1346, 2671-2680, or other law

## I.    JURISDICTION

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of
      confinement. Keith Allen - M21830, Menard Correctional Center, P.O. Box 1000,
      Menard, IL. 62259

**Defendant #1:**

B.    Defendant __Rob Jeffreys__ is employed as
                  (a)   (Name of First Defendant)

__Director of Illinois Department of Corrections__
                  (b)            (Position/Title)

with __Illinois Department of Corrections, 1301 Concordia Court,__
                  (c)   (Employer's Name and Address)

__P.O. Box 19277, Springfield, IL. 62794-9277__

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?   ☒ Yes   ☐ No

If your answer is YES, briefly explain: Rob Jeffreys was the acting Director of Illinois
Department of Corrections who creates Policies and shall review the inmate grievance and
submit a written response.

Rev. 10/3/19

② 

Exhibit A

**Defendant #2:**

C.    Defendant <u>Wexford Health Source, Inc.</u>    is employed as

(Name of Second Defendant)

<u>Medical Service Provider for Illinois Department of Corrections</u>
(Position/Title)

with <u>Wexford Health Sources, Inc., Foster Plaza 2, 425 Holiday</u>
(Employer's Name and Address)

<u>Drive, Pittsburgh, PA. 15220.</u>

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If you answer is YES, briefly explain: Illinois Department of Corrections hired and contracted Wexford to provide healthcare to inmates in adherance to the standards forth by National Commission on Correctional Health Care ("NCCHC"), and the medical service contractor has a direct responsibility to represent the State with the proper provision of medical services to the inmate. Also, each medical staff member has a direct responsibility to respect the inmate's civil right for reasonable medical service.

**Additional Defendant(s) (if any): #3:**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant: Anthony Wills
Title: Warden of Corrections / Chief Administrative Officer
Place of Employment: Menard Correctional Center, P.O. Box 1000,
Menard, IL. 62259.

At the time the claim(s) alleged in this complaint arose, was Defendant #3 employed by the state, local, or federal government? ☒ Yes.
If you answer is Yes, briefly explain: The Warden of this correctional center is also known as its Chief Administrative officer. The CAO is responsible for the overall operation of the facility, the supervision and protection of its in custody assigned to this institution, as well as the supervision of staff members. The CAO is ultimately responsible for overseeing both programs and operational services of this facility, as well as ensuring compliance with all departmental directives and rules.

Rev. 10/3/19

③

United States District Court
for the
Southern District of Illinois

Keith Allen – M21830
         Plaintiff,

   -VS-                                          Case No:

                                    in their
individual and Official Capacity; Director: Rob
Jeffreys, in his individual and official Capacity;
Medical Service Provider for IDOC:
Wexford Health Sources, Inc, in their individual and official Capacity; Warden: Anthony Wills, in his individual and official Capacity; Administrative Review Board Administrator: DeAnna Kink, in her individual and official Capacity; Health Care Unit Administrator And Medical Director: Angela Crain, in her individual and official Capacity; LPN (NP): J. Crane, in her individual and official Capacity; Registered Nurse (RN): Alisa Dearmond, in her individual and official capacity; Registered Nurse (RN): Nicole Brand, in her individual and official Capacity; LPN (NP): M. Moldenhauer, in her individual and official Capacity; LPN(NP): _____ her individual and official Capacity; Medical Doctor Radiologist: N. Florence, in his individual and official Capacity; Medical Doctor Radiologist: N. Yousuf, in his individual and official Capacity; Counselor: Clara Richmond, in her individual and official Capacity; Grievance Officer: Kelly Pierce, in her individual and official Capacity; Registered Nurse (RN): Reva Jane Doe, in her individual and official Capacity; Registered Nurse (RN): Jane Suzie Doe, in her individual and official Capacity.

                  Defendants,

                      (1.)

E.  Defendant #4:

Defendant: DeAnna Kink.

Title: Administrative Review Board Administrator.

Place of Employment: Illinois Department Of Corrections, 1301 Concordia Court, P.O. Box 19277, Springfield, IL. 62794-9277.

At the time the claim(s) alleged this complaint arose, was Defendant #4 employed by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: The Administrative Review Board Administrator shall meet as frequently as necessary and may schedule hearings on grievances of inmate's complaints, whether in person or via video or telephone conference; the board may call witnesses or examine records at its discretion. And the Administrative Review Board shall submit to the Director of IDOC a written report of its findings and recommendations.

F.  Defendant #5:

Defendant: Angela Crain.

Title: Health Care Unit Administrator And Medical Director.

Place of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

At the time the claim(s) alleged this complaint arose, was Defendant #5 employed by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: The HCUA's prime objective is to provide high quality medical service, and is the administrative leader of Health Care Unit who provides individuals in custody with medical and dental services at a level commensurate with good medical practices for all individuals in custody and staff. This position manages all administrative aspects of the medical operation.

G.  Defendant #6:

Defendant: J. Crane.

Title: (LPN) Nurse Practitioner.

Place Of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

(4.)

At the time the claim(s) alleged this complaint arose, was Defendant #6 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Nurse Pratitioner J. Crane worked at Menard at all relevant times pertaining to this civil suit dealing personally with plaintiff, practicing beyond the scope of her license by assessing and diagnosing plaintiff. An LPN is licensed to perform care within a scope that includes collecting data, but is not licensed to assess or make full determinations for a plan of care for an individual. (LPN) Nurse Practitioner has an independent duty to ensure that inmates receive constitutionally adequate care.

H. Defendant #7.
Defendant: (RN) **Alisa** Dearmond.
Title : Registered Nurse.
Place Of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.
At the time the claim(s) alleged the complaint arose, was Defendant #7 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: (RN) Registered Nurse has an independent duty to ensure that inmates receive constitutionally adequate care.

I. Defendant #8.
Defendant: Nicole Brand.
Title : Registered Nurse or (LPN) Nurse Practitioner.
Place Of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.
At the time the claim(s) alleged the complaint arose, was Defendant #8 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Registered Nurse or Nurse Practitioner has an independent duty to ensure that inmates receive constitutionally adequate care.

J. Defendant #9.
Defendant: **M. Moldenhauer.**
Title : LPN (NP) Nurse Practitioner.
Place of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.
At the time the claim(s) alleged the complaint arose, was Defendant #9 employed –

⑤

- by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: (LPN) Nurse Practitioner has an independent duty to ensure that inmates receive constitutionally adequate care.

K. Defendant #10.

Defendant: Amanda Choate.

Title: LPN (NP) Nurse Practitioner.

Place of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

At the time the claim(s) alleged the complaint arose, was Defendant #10 employed by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Nurse Practitioner has an independent duty to ensure that inmates received constitutionally adequate care.

L. Defendant #11.

Defendant: N. Florence.

Title: Medical Doctor Radiologist.

Place of Employment: One Radiology, Normal, IL. 61761.

At the time the claim(s) alleged the complaint arose, was Defendant #11 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Medical Doctor Radiologist conducts routine radiology X-ray evaluations and is the definitive interpreter of X-ray films whose X-ray readings and acute findings shall be immediately called back to the unit physician.

M. Defendant #12.

Defendant: N. Yousuf.

Title: Medical Doctor Radiologist.

Place of Employment: One Radiology, Normal, IL. 61761.

At the time the claim(s) alleged the complaint arose, was Defendant #12 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Medical Doctor Radiologist conducts routine radiology X-ray evaluations and is the definitive interpreter of X-ray -

(6)

films whose X-ray readings and acute findings shall be immediately called back to the unit physician.

N. Defendant #13.

Defendant : Clara Richmond.

Title : Counselor (Corrections Counselor II).

Place of Employment : Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

At the time the claim(s) alleged the complaint arose, was Defendant #13 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: The purpose of the Clinical Services Department at Menard Correctional Center is to provide support and services to individual in custody in order to assist them in their adjustment, involvement in programs, reintegration into society, providing crisis intervention and referrals of individual in custody; and is the initial person who assesses the various requests made by an inmate.

O. Defendant #14.

Defendant : Kelly Pierce.

Title : Grievance Officer.

Place Of Employment : Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

At the time of the claim(s) alleged the complaint arose, was Defendant #14 employed by the State, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Grievance officer shall review issues involving discipline at the present facility or issues that have not been resolved by the Counselor.

P. Defendant #15.

Defendant : Reva (Jane Doe).

Title : Registered Nurse (RN).

Place Of Employment : Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

⑦

At the time the claim(s) alleged the complaint arose, was Defendant #15 employed by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Registered Nurse an independent duty to ensure that inmates receives receive constitutionally adequate care.

Q. Defendant #16.

Defendant: Jane Doe — Suzie.

Title: Registered Nurse(RN).

Place of Employment: Menard Correctional Center, P.O. Box 1000, Menard, IL. 62259.

At the time the claim(s) alleged the complaint arose, was Defendant #16 employed by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: Registered Nurse has an independent duty to ensure that inmates receives receive constitutionally adequate care.

R. Defendant #17.

Defendant: Illinois Department Of Corrections.

Title: IDOC becomes the "guardian" of each inmate, and has "parental" responsibility.

Place of Employment: Illinois Department of Corrections, 1301 Concordia Court, P.O. Box 19277, Springfield, IL. 62794-9277.

At the time the claim(s) alleged this complaint arose, was Defendant #17 employed by the state, local, or federal government? ☒ Yes.

If your answer is Yes, briefly explain: IDOC becomes the "guardian" of the inmates, and is responsibility to provide a comprehensive medical service equal to "that found in the local community."

Plaintiff state each of the parties (defendants') is sued in his or her individual and official capacity. At all times mentioned in this complaint each defendant act under the color of law.

8.

II. "Previous Lawsuits"

C. 1. Parties to previous lawsuits: Plaintiff(s): Keith Allen (m21830).

Defendant(s): Adrian Corley, Jacob Dalton, Lance Evans, Randell Meister, Michael Melvin, Susan K. Prentice, Christopher Shumaker.

2. Court (if federal court, name of the district; if state court, name of the county): United States District Court Central District of Illinois.

3. Docket number: 18-cv-1345.

4. Name of Judge to whom case was assigned: Joe B. McDade.

5. Type of Case (for example: Was the case dismissed? Was it appealed? Is it still pending?): ~~Constitutio~~ Civil Rights Action.

6. Disposition of Case (for example: Was the case dismissed? Was it appealed? Is it still pending?):

7. Approximate date of filing lawsuit: January 1, 2020.

8. Approximate date of disposition: 2022 sometime.

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" Case was settled out.

9. b. b.

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☐Yes ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s): Keith Allen (M21830).

Defendant(s): Darren Hunter, Jerry Baldwin, Tarry Williams.

2.   Court (if federal court, name of the district; if state court, name of the county): United States District Court Northern District of Illinois.

3.   Docket number:  17-cv-1900.

4.   Name of Judge to whom case was assigned: Honorable Elaine E. Bucklo.

5.   Type of case (for example: Was it a habeas corpus or civil rights action?): Civil Rights Action.

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Settlement.

Rev. 10/3/19

7.   Approximate date of filing lawsuit: 2017 to 2018.

8.   Approximate date of disposition: February 15, 2021.

9.   Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" *Case was settled out.*

## III.   GRIEVANCE PROCEDURE

A.   Is there a prisoner grievance procedure in the institution? ☒ Yes   ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?   ☒ Yes   ☐ No

C.   If your answer is YES,
   1.   What steps did you take? *Plaintiff filed multiples grievances to the counselor, grievance officer, Warden, ARB Board, and Director of IDOC for all claims and all grievances were denied, falling on deaf ears.*

   2.   What was the result? *I didn't receive adequate relief through the grievance process since all my grievances were denied with adequate treatment being denied and delayed.*

D.   If your answer is NO, explain why not. *N/A.*

E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?   ☒ Yes   ☐ No

F.   If your answer is YES,
   1.   What steps did you take? *I filed grievances with the counselor, the grievance officer, the warden, ARB Board Administrator, and Director of IDOC. The plaintiff has exhausted his Administrative Remedies with respect to all claims and all defendants. (See Exhibit 22, Exhibit 27, 31, 32, 45, 46, 48, 49, 85, 86) Plaintiff has exhausted all of his Administrative Remedies available to him.*

Rev. 10/3/19



2.    What was the result? All my grievances were denied, deemed moot, or fell on deaf ears delaying and denying me adequate medical treatment until finally receiving

G.    If your answer is NO, explain why not. N/A.

H.    Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not: Copies of grievances, responses, and appeals all attached to complaint. See Exhibits 22, 27, 31, 32, 45, 46, 48, 49, 85, 86).

Rev. 10/3/19

(12)

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments or citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

Rev. 10/3/19

**III.**   "Jurisdiction And Venue"

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, or rights secured by the U.S. Constitution. The court has jurisdiction under 28 U.S.C. section 1331 and 1343(a)(3). The Court has supplemental jurisdiction **over** the plaintiff's state law tort claims under 28 U.S.C. 31367; Plaintiff, Keith Allen, seeks declaratory relief pursuant to 28 U.S.C. 2201 and 2202, and injunctive relief under 28 U.S.C. Section 2283 and 2284 **and** Rule 65 of the Federal Rules of civil Procedure.

The United States District Court Southern District of Illinois is the **a**ppropriate Venue under 28 U.S.C. section 1391(b)(2) because it is where the event giving rise to the claims arose. Furthermore, this complaint holds "Class Action Allegations."

This court has authority pursuant to 42 U.S.C. 1983 to award appropriate actual, consequential, compensatory and punitive damages, and has authority under 42 U.S.C. 1988 to award attorneys' fees and cost to successful civil rights plaintiffs.

In addition, where a district court has original jurisdiction over related state law claims pursuant to 28 U.S.U. 1367(a), as long as the state claims "derive from a common nucleus of operative fact" with the original Federal claims. A loose factual connection is generally sufficient.

Among other things, plaintiff states an Eighth and Fourteenth Amendment claim against all Defendants for Denied "reasonably adequate" medical care, delay in medical treatment, denial and untreated and inadequately being treated for a severe broken hand injury, following a course of treatment that medical staff knows is ineffective that unnecessarily prolongs plaintiff's pain and exacerbates his injury, failure to follow their own policy, or rules and regulations, and lack of adequate policies to address particular issues, unconstitutional policies and custom by medical staff and medical providers inaction, refusing to follow the advice of a specialist, for converting, facilitating, approving, condoning, and turning a blind eye for fear of what they might see.

This summary of journalized events is comprised of claims of deliberate indifference to the infliction of suffering upon plaintiff, serious medical needs, inadequate medical treatment and—

~ and cruel and unusual punishment. As well as intentional infliction of emotional distress, medical malpractice, medical negligence, retaliation, and unconstitutional policy claim.

**IV.**   Statement of Claim:

1.) With the temporary and inconsistent assistance of jailhouse lawyers (whenever one can be found), this action is brought to redress the defendant(s) various deprivations of plaintiffs rights under the constitution and laws of the United States.

(14.)

(Statement of Claim)

1.) With the temporary and inconsistent assistance of jailhouse lawyers (whenever one can be found), this action is brought to redress the defendants income deprivations of plaintiffs rights under the constitution and laws of the United States.

"Denial of Adequate Access to Medical Care / Jane Doe Nurse Reva"

2.) On 8/16/21, the plaintiff was housed at Menard Correctional Center's West House Unit where he had physical altercation with another inmate trying to defend and protect himself in self-defense where he suffered a severe hand injury to his right hand breaking it causing it to swell up very bad, (see Exhibit #1, #2, #3, #4, #5) and was taken to segregation and placed in cell number 847 in the North Two Housing Unit.

3.) On 8/16/21, while in segregation cell 847 on second shift around med line time, Jane Doe Nurse (Reva) walked on my gallery passing out medication and plaintiff stopped her at his cell in extreme pain after suffering a severe hand injury in a physical altercation in self-defense, complaining to her to see a doctor and requesting for pain pills while showing her my severely swollen right hand, only to be told there's nothing she can do and to put in for a sick call.

4.) On 8/16/21, plaintiff made Jane Doe Nurse (Reva) aware of his severe right hand injury in person and after showing her his swollen hand and asking for pain pills and to see a doctor to relieve him of his pain and suffering; she failed to provide treatment to inmate herself, such as by giving him pain pills and an ice pack for the swelling, or referring him to see a physician, or to ensure others did, such as by contacting supervisory personnel to voice any concerns about the treatment being provided to him, exhibiting deliberate indifference to plaintiffs serious medical needs in denying adequate access to medical care and turning a blind eye with plaintiff's complaints falling on deaf ears, unnecessarily prolonging his pain and exacerbating plaintiff's injury.

5.) Jane Doe Nurse (Reva)'s failure to provide plaintiff any medical treatment, provide pain medication, an ice pack on the day of his injury or refer him to see a physician, and thereafter to ensure he received constitutionally adequate care, constituted deliberate indifference.

6.) Illinois Department of Corrections Administrative Directive, number: 03.02.108, Title: Standard of Conduct, (G)(1)(a)(b) states, "Employees shall obey all federal, State and local laws; and shall obey all applicable court decisions and orders relat-

(15.)

related to the performance of their job duties which Jane Doe Nurse Reva didn't do in violation of state law, (see exhibit #110).

7. Illinois Department of Corrections Administrative Directive, number 04.03.103, Title: Offender Health Care Services, (F. 3. (b. (c. (i) states, "all offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; and offenders shall be referred for specialty services if determined medically necessary, (See Exhibit #112), with Jane Doe Nurse exhibiting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines causing plaintiff unnecessary pain and suffering exacerbating his injury.

8. Jane Doe Nurse (Reva) has a Professional Obligation and independent duty to ensure that inmates receive constitutionally adequate care. (See Exhibit #117).

9. Plaintiff is supposed to have access to Emergency care twenty-four (24) hours a day, seven days a week; Any inmate must have access to health care unit personnel for immediate medical service any time an emergency arises; Medical personnel (or teams) are also available to respond to a call or other areas in the prison to meet medical needs; Another option for Emergency Care is referral to a local emergency department if a physician is not on site AND the medical personnel deems this appropriate, or if the needed medical service is beyond the capability of the unit personnel; Medical personnel must contact the medical director/designee first unless the emergency is life/limb threatening; once again exhibiting Deliberate and Intentional Indifference by Jane Doe Nurse (Reva) for not following their own policy, or rules and regulations causing plaintiff unnecessary pain and suffering worsening his injury. (See Exhibit #94, #41).

10. Plaintiff has a right to request to see a physician and the request should be honored within seventy-two (72) hours, with inmates seen in sick call by nurses are frequently "referred" to Doctor's call for evaluation, diagnosis, and/or treatment, and Jane Doe Nurse (Reva) denied me that right for not following their own policy, rules and regulations exhibiting Deliberate and Intentional Indifference to Plaintiff's serious medical needs causing him unnecessary and suffering worsening his injury. (See Exhibit #91, #41).

16.

" J. Crane - LPN (NP) Nurse Practitioner / Denial Of Access To Adequate Medical Care And Deliberate Indifference To Serious Medical Needs "

11. On 8/17/21, plaintiff was called to sick call in North Two Housing Unit Segregation where I was seen by LPN (NP) Nurse Practitioner J. Crane. (See Exhibit # 11).

12. On 8/17/21, upon seeing Nurse Practitioner J. Crane I complained to her about the excruciating pain I was experiencing in my right hand due to my severe hand injury, showing her my swollen hand which looked like a baseball glove, the purple discoloration, my restricted range of motion being unable to make a fist, telling her it felt like it was broken and needed to obtain pain medication, and may need surgery. (See Exhibit # 11)

13. On 8/17/21, J. Crane gave me a Ice pack and some Ibuprofen 200mg tablets for my pain and said she's gone put me in for a follow-up visit, (See Exhibit # 11).

14. On 8/17/21, J. Crane was made aware of plaintiff's severe hand injury, swelling, restricted range of movement in being unable to make a fist and being told of the extreme pain and suffering he was enduring feeling like his hand was broken and needing to see a physical for emergency care, yet plaintiff was denied access to adequate medical treatment, was administered blatantly inappropriate medical treatment, delayed adequate treatment for non-medical reasons, thereby exacerbating his pain and suffering and injury unnecessarily, persisting in a course of treatment known to be ineffective, with professional's subjective response being so inadequate that it demonstrated an absence of professional judgement which no minimally competent professional would have so responded under those circumstances exhibiting Deliberate Indifference to plaintiff's serious medical needs. (See Exhibit # 11), and Exhibit # 41).

15. On 8/17/21, when visiting Nurse J. Crane at sick call for my severe hand injury and extreme pain and suffering with her being aware of and documenting my severe pain, swelling, diminished range of movement unable to move a and I had purple discoloration yet she falsified the medical incident report, nor did she refer plaintiff to see a Medical Doctor when he possessed such symptoms that medical guidelines, rules, regulations, and policies required patient to be referred to see a Medical Doctor causing plaintiff unnecessary pain and suffering, prolonging pain-

(17.)

and worsening injury exhibiting Deliberate and Intentional Indifference to his serious medical needs. (See Exhibit # 11, #41, #110, #94, #112, #117,).

16. Illinois Department of Correction Administrative Directive, number: 03.02.108, Title: "Standard of Conduct," F.(1)(a.)(b.) states, "Employees shall obey all federal, State and local laws; and shall obey all applicable court decisions and orders related to the performance of their job duties which J. Crane Nurse Practitioner didn't do in violation of state law, (See Exhibit #110) exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing him the infliction of pain and suffering, by not following their own policies, rules, regulations, guidelines.

17. Illinois Department of Corrections Administrative Directive, number 04.03.103, Title: Offender Health Care ~~personal/administration~~ services (F.)(3.)(b.)(e.)(1.) states, "all offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; and Offenders shall be referred for specialty services if determined medically necessary, with Nurse Practitioner J. Crane exhibiting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines causing plaintiff unnecessary pain and suffering exacerbating his injury.(See Exhibit #112)

18. Nurse Practitioner J. Crane has a Professional Obligation and independent duty to ensure that inmates receive constitutionally adequate care. (See Exhibit #117).

19. Plaintiff is supposed to have access to Emergency care twenty-four (24) hours a day, seven days a week; Any inmate must have access to health care unit personnel for immediate medical service any time an emergency arises; Medical personnel (or teams) are also available to respond to a cell or others areas in the prison to meet medical needs; Another option for emergency care is referral to a local emergency department if a physician is not on site AND the medical personnel deems this appropriate, or if the needed medical service is beyond the capability of the unit personnel; Medical personnel must contact the medical director/designee first unless the emergency is life/limb threatening once again exhibiting Deliberate and Intentional Indifference by J. Crane Nurse Practitioner for not following their own Policy or rules and regulations causing plaintiff unnecessary pain and suffering worsening his injury. (See Exhibit # 94, #41).

18.

20. Plaintiff has a right to request to see a physician and the request should be honored within seventy (72) hours, with inmates seen in sick call by nurses are frequently "referred" to Doctor's call for evaluation, diagnosis, and/or treatment, and Nurse Practitioner J. Crane denied him that right for not following their own policy, rules and regulations exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing him unnecessary pain and suffering worsening his injury. (See Exhibit # 91, #41).

21. J. Crane violated Illinois Department of Corrections Administrative Directive, number 03.02.108, Title: Standards of Conduct, Effective 1/1/2021, (10.) "Giving False Information" — states, " Any employee who knowingly provides false information, including, but not limited to, false information provided in statements, incident reports, correspondence or an interview shall be subject to disciplinary action, action, including discharge; which J. Crane committed by providing false information on a medical incident report assessment taken on 8/17/21, when she wrote "No" presence of discoloration when there was symptoms of it leading to plaintiff not being referred to see a Medical Doctor which her report on 8/20/21 proves where she acknowledge purple discoloration exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs denying him adequate medical treatment inflicting unnecessary pain and suffering exacerbating his injury for a severe hand injury. (See Exhibit # 11, #41, #110,).

23. On 8/20/21, Plaintiff had another sick call visit with Nurse Practitioner J. Crane where she assessed plaintiff's severe hand injury, listing to his complaints of extreme pain and suffering with the pain pills being ineffective, hand still swollen like a baseball glove, purple discoloration, limited range of motion and due to it being worser than another patients injury by the looks of It she scheduled plaintiff an X-ray for later that day cancelling the other inmates X-ray pass replacing it for plaintiff.

24. On 8/20/21, Plaintiff was given an X-ray, by J. Crane accompanied by Registered Nurse Alisa Dearmond, of his right hand only to be told it came back negative for any fractures or broken bones by J. Crane with J. Crane and Alisa Dearmond both laughing and joking about It with J. Crane saying, sarcastically that it's remarkable that your hand can be that swollen and you not have any broken bones or fractures misdiagnosing plaintiff's injury causing

(14.)

— unnecessary and wanton infliction of pain and suffering exacerbating his injury denying him adequate medical treatment being deliberate indifferent to his serious medical needs. (See Exhibit #11, #13, #18, #14, #12).

(25.) On 8/20/21, After being told plaintiff had no fractures J. Crane prescribed him some Motrin 600 mg pain medication for a broken hand following a course of treatment Nurse knows is ineffective exacerbating plaintiff's injury and unnecessarily prolonging his pain; denying adequate medical care by preventing him to see a physician, delaying necessary treatment and being presented with a questional practice yet still not referring him to a physician being deliberate indifferent to his serious medical needs constituting the unnecessary and wanton infliction of pain (see Exhibit #12).

(26.) On 8/20/21, J. Crane sent the x-ray findings to the Outside Medical Doctor N. Florence Radiologist to be evaluated whose findings came back negative for any fractures stating the impressions were Unremarkable radiographs of the right hand, misdiagnosing plaintiff's broken hand constituting medical malpractice and deliberate indifference to plaintiff's serious medical needs, denying access to adequate medical care as a result of following Weford's unconstitutional policies of deliberate indifference instructing medical staff to intentionally misdiagnose injuries to not have to pay for treating them to cut costs to save money, and increase profits by denying patients access to adequate medical treatment maliciously causing plaintiff unnecessary and wanton infliction of pain and suffering exacerbating his injury, prolonging his pain. (See Exhibit #14, #94,).

(27.) Nurse Practitioner J. Crane received the 8/20/21 X-ray findings from Medical Doctor N. Florence's report and again violated Administrative Directive, number 03.02.108, Title: Standards of Conduct, by giving false information, knowingly providing false information, and falsifying incident reports by forging her signature on documents "Laboratory and Radiology Summary" reports meant for Medical Doctors to sign and as a "LPN" Nurse Practitioner practicing outside her scope of licensure by providing mediation with a prescription from a doctor, assing, and diagnosing plaintiff constituting medical malpractice by not following the National Commission of Corrections Standards of professional care and treatment which resulted

(20.)

-in plaintiff being denied access to adequate medical ~~treatment~~ treatment causing him the unnecessary and wanton infliction of pain and suffering, and for not following their own policies, rules, and regulations exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs, prolonging and exacerbating his injury. (See Exhibits #18, #10, #14).

"Medical Doctor N. Florence / Denial of Access to Adequate Medical Care And Deliberate Indifference to Plaintiff's Serious Medical Needs"¾ "Medical Malpractice"

28.) On 8/26/21, Medical Doctor N. Florence was made aware plaintiff's severe hand injury by X-ray report sent to Radiologist (N. Florence) from (NP) J. Crane on 8/20/21 with him knowingly disregarding obvious risks to inmate's health being deliberate indifference to plaintiff's serious medical needs via misdiagnosis of plaintiff's injury causing him unnecessary and wanton infliction of pain, exacerbating his injury, and **delaying** and denying access to medical personnel qualified to ex~~er~~cise judgment about a particular medical problem. (See Exhibit #14, #13), and Exhibit #41).

29.) Medical Doctor N. Florence, Radiologist had knowledge of plaintiff's severe hand injury and pain he experienced, yet failed to provide adequate medical treatment to plaintiff himself, by referring him to see a physician for evaluation or to ensure that others did, e.g. by contacting supervisory personnel to voice any concerns about the treatment being provided to him constituting Deliberate Indifference to plaintiff's serious medical needs causing him the unnecessary and wanton infliction of pain, and prolonging his pain for non-medical reasons exacerbating his injury. (See Exhibit # 14, #13, #117, Exhibit #41,

30.) Medical Doctor Radiologist N. Florence by him or her knowingly ignoring obvious risks to inmate's health constituted Deliberate and Intentional Indifference to plaintiff's serious medical needs causing unnecessary and wanton infliction of pain since confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing Radiologist's concerns with the treating physician or by contacting a responsible administrator or higher authority which he failed to do not following their own policy of Medical Professional Standards of the National Commission of Corrections Health Care Standards to ensure plaintiff received constitutionally adequate care. (See Exhibit #14, #13, #117, #41, N'CCHC Standards).

(21.)

31. Medical Doctor Radiologist N. Florence's negligent failure by a medical professional to comply with the Standard of care resulting in plaintiff's injury of pain and suffering being proximately caused by the deviation from the standard of care set by the National Commission of Corrections (NCCHA) Standard guidelines which required Radiologist N. Florence to report accurate information to treating physicians, to fulfill his professional obligation and independent duty to ensure that inmates receive constitutionally adequate care, misdiagnosing plaintiff resulting from failure to exercise ordinary knowledge, skill, constituting medical malpractice State Tort Claims violation, and for not referring patient to see a Medical Doctor / Physician for examination constituting Deliberate and **Intentional Infliction** of Indifference to plaintiff's serious medical needs causing unnecessary pain and suffering and exacerbating his injury for a broken hand. (See Exhibit #118, #14, #13, NCCHC Standards, #110, #112).

32. Medical Doctor Radiologist also constituted deliberate and intentional indifference for not exercising his professional judgment and fulfilling his obligation and duty to adhere to the policies and National Commission of Corrections (NCCHC) Standard constituting unnecessary and wanton infliction of pain and suffering on plaintiff, prolonging his pain, exacerbating his injury to his broken / fractured right hand, by interfering with reasonable medical judgment by factors unrelated to **plaintiff's** medical needs in adhering to Wexford 's Health Source, Inc's unconstitutional policies and procedures restricting adequate medical care that doesn't allow for **proper** diagnosis and treatment, aimed at cutting costs to save money and increase profits by denying inmate's who rely on them as their only means of seeking medical treatment being deliberate and intentionally indifferent to their serious medical needs. (See Exhibits # 13, #14, #18, #94, #110, #112, #113, #117, #118, National Commission of Corrections Standards).

33. Illinois Department of Correction Administrative Directive, number: 03.02.108, Title: "Standard of Conduct," (G.)(1.)(a.)(b.) states, "Employees shall obey all federal, State and local laws; and shall obey all applicable court decisions and orders related to the performance of their job duties which Medical Doctor Radiologist didn't do by denying plaintiff access to adequate medical care, delaying treatment, committing medical malpractice, in violation of state law exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing him the infliction of pain and suffering, by not following their own policies, rules, regulations, NCCHC guidelines. (See Exhibit # 110, #94, #13, #14, #110, #112, #113, #117, #118, NCCHC standards).

22.

33. Illinois Department of Corrections Administrative Directive, number 04.03.103, Title: Offender Health Care Services (F.)(3.)(b.)(c.)(l.) states, "all offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; and offenders shall be referred for specialty services if determined medically necessary, with Medical Doctor Radiologist exhibiting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines causing plaintiff unnecessary pain and suffering exacerbating his injury. (see Exhibit #112).

"J. Crane—LPN (NP) Nurse Practitioner / Denial of Access To Adequate Medical Care And Deliberate Indifference To Serious Medical Needs" Additional Claims!

34. On 8/31/21, I was called to an in person sick call visit with J. Crane, a week and a half after my first X-ray that came back negative by Nurse Practitioner J. Crane and Medical Doctor Radiologist on 8/20/21, only for J. Crane to tell me I had no fractures or broken bones in my right hand with my swelling gone down now and I showed her where my hand was disformed where the bone was out of place and obviously visible in comparison to my left hand with Registered Nurse Alisa Dearmond Accompanying her again turning a blind eye, having knowledge about the conduct, facilitated it, approved it, condoned it, for fear of what she might see after plaintiff voiced his complaints to Alisa Dearmond in person along with J. Crane misdiagnosising him again exhibiting deliberate indifference to plaintiff's serious medical needs denying access to adequate medical care, and following a course of treatment that Nurses know is ineffective giving him only pain medication that does relieve him of his pain and suffering inflicted by both Alisa Dearmond and J. Crane. (See Exhibit #16, #15, #17,).

35. Plaintiff received only ineffective and inadequate medical treatment by J. Crane by her refusing to follow the advice of Medical Doctor Radiologist requesting that plaintiff be seen by a Doctor at an Outside Clinic for evaluation, and delaying necessary treatment and thus aggravating an injury needlessly prolonging an inmate's pain, by persisting with inappropriate treatment in prescribing only ineffective pain pills that only treat the symptoms and not the cause for a broken hand, (see Exhibit #16, #17, #41), exhibiting deliberate indifference to plaintiff's serious medical needs constituting unnecessary and wanton infliction of pain and suffering.

23.

36.) Nurse Practitioner J. Crane intentionally interfered with Medical Doctor Radiologist's recommended course of treatment when she denied me access to see a physician at an outside clinic when reffered by specialist N. Yousuf, treating plaintiff "not as a patient, but as a nuisance," and "were insufficiently interested in his health to take even minimal steps to guard against the possibility that the injury was severe, exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs constituting the unnecessary and wanton infliction of pain and suffering. (See Exhibit # 16).

37.) Illinois Department of Corrections Administrative Directive, Number: 03.02.108, Title: "Offender Health Care Services, (F) (3) (a) (b) (c) (1). states, " all offenders shall have access daily to health care personnel and be referred to a facility physician as needed; offenders shall be referred for speciality services if determined medically necessary; and if facility physician deems specialty services necessary, medical special services referral and report, DOC 0254, shall be submitted to the facility Medical Director, yet J. Crane didn't do denying plaintiff access to see an outside Medical Doctor and adequate medical treatment exhibiting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines causing plaintiff unnecessary pain and suffering exacerbating his injury. (See Exhibit # 112, # 16).

38.) Illinois Department of Corrections Administrative Directive, number 04.03.121, Title: Treatment Protocols: (G) (3) (g) states, " Any offender evaluated for the same complaint three times within 30 days be referred to the physician, physician's assistant or nurse practitioner for evaluation, which J. Crane failed to do by not referring plaintiff to be evaluated by a physician even after the Medical Doctor Radiologist N. Yousuf recommend Doctor to "See patient" exhibiting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines causing plaintiff unnecessary pain and suffering exacerbating his Injury. (See Exhibit # 111, # 16).

39.) Pursuant to "Doctor's Sick Call" under Wexford policy, "an inmate has the right to request to see a physician; this request should be made honored within seventy-two (72) hours, which Inmates seen in sick call by the nurses are frequently "referred" to Doctor's call for evaluation, diagnosis, and for treatment, with Nurse Practitioner J. Crane denying plaintiff access to medical care intentionally worsening his injury exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing unnecessary Infliction of wanton pain and suffering.) (See Exhibit # 94, # 16).

24.

Intentional State Tort Claim —

"LPN (NP) Nurse Practitioner J. Crane / Malpractice Intentional Medical Negligence"

40. J. Crane LPN (NP) Practitioner was made aware of plaintiff's severe hand injury in person by continued complaints of pain and suffering among various symptoms of deformity, severe pain, swelling, loss of range of motion on three seperate occasions and via Medical Doctor Radiologist's X-ray findings requesting ~~the~~ patient see an outside doctor at an outside clinic from his "M.D. Review" (N. Yousuf) of the X-ray conducted on 8/31/21, yet LPN (NP) Nurse Practitioner didn't adhere to the standard of care in the medical community by which the medical professional's treatment is measured by National Commission of Corrections Health Care Standards by not following the recommen-dations of specialist to refer plaintiff to see a physician for an examination, for not communicating to physician hand specialist plaintiff's continued symptoms and complaints of pain, for not following NCCHC standard of care requiring LPN (NP) Practitioner to report accurate information to treating physicians, for practicing outside the scope of her licensure by providing medication without a prescription from a doctor, for persisting in an ineffective course of treatment, for significantly diminishing the seriousness of plaintiff's severe hand injury which was later found out to be broken/fractured causing permanent damage, irreparable damage, disfiguration, healed improperly, diminished loss of function and range of motion, as a result of J. Crane's intentional and negligent failure by the medical professional to comply with the NCCHC standard of care for practicing outside her scope of practice by assessing and diagnosing plaintiff's injury, making full determinations for plaintiff's care and denying him access to adequate medical treatment; and his resulting injury and unnecessary pain and suffering was proximately caused by J. Crane's deviation from the standard of care. (See Exhibit #11, #12, #13, #14, #16, #12, #110, #111, #94, #112, #117, #118, #113).

25.

"(RN) Alisa Dearmond - Registered Nurse / Delay And Denial of Adequate Medical Care And Deliberate Indifference to Plaintiff's Serious Medical Needs "/ Medical Malpractice State Claim

41. Registered Nurse Alisa Dearmond was made aware of Plaintiff's complaints of pain and suffering from his severe hand injury with her witnessing how swollen it was due to her accompanying (NP) JaCrane at my first two X-rays conducted on 8/20/21 and 8/31/21, yet failed to provide adequate treatment to inmate herself, such as by referring him to see a physician for corrective treatment, or to ensure that others did, such as by contacting supervisory personnel to voice any concerns about the treatment being provided to him, constituting deliberate indifference to plaintiff's serious medical needs causing unnecessary and wanton infliction of pain and suffering; (See Exhibit #14, #16, #11, #12, #13); and constituting deliberate and intentional Indifference by not following Policy.

42. After being seen by Registered Nurse Alisa Dearmond at my second X-ray taken on 8/31/21 She was made aware of plaintiff's severe hand injury for the second time seeing how swollen it was Constantly complaining of severe pain and suffering in dire need of seeing a doctor, only for Nurse Alisa to prescribe Ibuprofen 600 mg pain medication which she knows is an ineffective course of treatment by repeated complaints of pain and suffering with plaintiff saying it's not fixing the problem exhibiting deliberate indifference to plaintiff's serious medical needs prolonging his pain exacerbating his injury. (See Exhibit # 15, #16, #14).

43. Nurse Alisa Dearmond has a professional obligation and duty independently to ensure that inmates receive constitutionally adequate care and when confronted with an "inappropriate or questionable practice" should not simply defer to that practice, but rather has a professional obligation to the patient to take appropriate action, whether by discussing the nurse's concerns with the treating physician which wasn't done, or by contacting a responsible administrator or higher authority, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing him unnecessary and wanton infliction of pain and suffering for not following her own laws, rules, regulations, policies, and guidelines. (See Exhibit # 110, #117), and #11, #12, #13, #14, #15, #16, #17, #18).

44. Illinois Department of Correction Administrative Directive, number: 03.02.108, Title: "Standard of Conduct," G.(I.)(a.)(b.) states, "Employees shall obey all Federal, State and local laws; and shall obey all applicable court decisions and orders related

26.

to the performance of their job duties which Registered Nurse (RN) Alisa Dearan and didn't do by denying plaintiff access to adequate medical care, delaying access to adequate treatment, committing medical malpractice in violation of state law exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing him the infliction of pain and suffering, by not following their own policies, rules, regulations, NCCHC standards and guidelines, (See Exhibit #11, #12, #13, #14, #15, #16, #17, #18, #94), constituting unnecessary and wanton infliction of pain.

45.) On 9/14/21, I went to a sick call visit with Registered Nurse (RN) Alisa Dearmond where I had my third X-ray with her present for the same severe hand injury in the form of a fractured hand with her telling me that it came back negative for the third time within 30 day with her forwarding the results to the Medical Doctor Radiologist N. Yousuf, with Alisa Dearmond misdiagnosing me and providing me no adequate medical treatment despite being made aware of my hand injury which ████ constantly causes plaintiff extreme pain and suffering yet my complaints are disregarded and fall on deaf ears with Alisa Dearmond turning a blind eye to my serious medical needs for fear of what she might see constituting deliberate indifference causing plaintiff unnecessary pain and wanton infliction of pain. (See Exhibit #21).

46.) Upon Alisa Dearmond Register Nurse receiving the Medical Doctor Radiologist findings and review of the x-ray results he noticed there was mild soft swelling of the thenar and hypothenar eminences, and referred plaintiff to be seen by a physician, yet Nurse Alisa Dearmond having knowledge of a significant risk to plaintiff's health and safety administered "blatantly inappropriate" medical treatment, acting in a manner contrary to the recommendation of specialists, and denying and "delaying plaintiff ██ access to adequate medical treatment for non-medical reasons, thereby exacerbating his pain and suffering constituting deliberate indifference to plaintiff's serious medical needs. (See Exhibit #21), and Exhibit #19).

47.) Illinois Department of Correction Administrative Directive, number: 04.03.103, Title: Offender Health Care Services, (F.)(3.)(b.)(c.)(1.) stating: "All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant; offenders shall be referred for specialty services if determined medically necessary, and

27.

if a facility physician, physician's assistant or nurse practitioner deems specialty services necessary, a Medical Special Services Referral and Report, DOC 0254, shall be submitted to the Facility Medical Director; yet Nurse Alisa Dearmond denied plaintiff access to a hand specialist physician as needed nor did she refer him for specialty services as determined medically necessary as recommended by Medical Doctor Radiologist, never submitting a Medical Special Services Referral and Report, DOC 0254, to the Facility Medical Director, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs by not following their own rules, regulations, state laws, policies and NCCHC guidelines. (See Exhibit # 112).

(48.) Illinois Department of Corrections Administrative Directive, number: 04.03.121, Title: Treatment Protocols, effective: 5/1/2019, states: "Any offender evaluated for the same complaint three times within 30 days be referred to the physician, physician's assistant or nurse practitioner for evaluation, yet Alisa Dearmond after evaluating plaintiff for the same complaint of his severe broken hand injury three times, conducting three x-rays, within 30 days with her being present at each one still didn't refer the plaintiff to see a physician for evaluation, exhibiting Deliberate and Intentional Indifference to his serious medical needs causing unnecessary and wanton pain and suffering. (See Exhibit #11, #12, #13, #14, #15, #16, #17, #18, #21, #19, #22, #111  ).

(49.) Illinois Department of Corrections Administrative Directive, number 04.03.103, Title: Offender Health Care Services, effective: 1/1/2020, states: 6.b.6 "Upon determination that a nursing evaluation is appropriate, health care staff shall schedule an evaluation; the evaluation shall take place within 24 hours of receipt of the request, 72 hours on weekends, or sooner, as clinically indicated; and further states: When an offender's request for non-emergency medical attention results in referral to a primary care physician by the screening health care staff, the primary care evaluation shall take place within 72 hours or upon the next scheduled visit by a primary care physician, yet Nurse Alisa Dearmond upon receiving plaintiff's referral request to a primary physician by Medical Doctor N. Yousuf after review of swelling seen on x-ray findings report, plaintiff was never seen within 72 hours for a primary care evaluation or upon the next scheduled visit by a primary care physician exhibiting Deliberate and Intentional Indifference to plaintiff's serious medical needs causing the unnecessary and wanton infliction of pain and suffering. (See Exhibit #112, #16, #91).

28.

**50.** Emergency care is available twenty-four (24) hours a day, say days a week; Any inmate must have access to health care unit personnel for immediate medical service any time an emergency arises; Medical personnel (or teams) are also available to respond to a cell or other areas in the prison to meet medical needs. Another option for Emergency Care is referral to a local emergency department if a physician is not on site AND the medical personnel deems this appropriate, or if the needed medical service is beyond the capability of the unit personnel; with Medical personnel must contact the medical director/designee first unless the emergency is life/limb threatening; yet plaintiff was denied access to emergency care after being referred to see a physical by a Medical Doctor N. Yousuf but Alisa Dearmond failed to follow the Doctor's recommendation despite plaintiff's injury being limb threatening suffering from a broken hand constituting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines being deliberate indifferent to his serious medical needs. (See Exhibit # 19, # 21, #41, # 94    ).

"Intentional State Tort Claim – Registered Nurse (RN) Alisa Dearmond/Malpractice Intentional Medical Negligence"

**51.** Alisa Dearmond Registered Nurse (RN) committed intentional medical negligence, medical Malpractice, by her failure to provide plaintiff the standard of care in the medical community by which the medical professional's treatment is measured and plaintiff is entitled to that caused him unnecessary pain and suffering, Worsening his injury resulting in Irrepairable damage, permanent disfiguration and deformity, loss of function and range of motion, prolonged pain and denying adequate medical care for a broken right hand, by refusing to refer to see an Orthopaedic Hand Specialist Medical Doctor after being made aware of injury on three seperate in person X-ray visits; and Medical Doctor Radiologist recommendations requesting plaintiff to be seen by Doctor at Outside Clinic; constituting deliberate and Intentional indifference to his serious medical needs, causing unnecessary and wanton infliction of pain and suffering. (See Exhibit #11, #12, #13, #14, #15, #17, #18, #16, #31, #19, #41, #94, #93, #22, #112, #113, #111, #110, #117, #118, see NCCHA Standards).

**52.** Registered Nurse Alisa Dearmond has an Independent duty to ensure that plaintiff receive constitutionally adequate care, even though nurses may generally defer to instructions given by physicians, which Alisa Dearmond failed to do when she had knowledge of-

29.

plaintiff's severe hand injury and continued pain, yet still delayed and denied him access to see a Doctor by refusing to refer him to the outside clinic for an evaluation, and exacerbating his injury as a result of her deviating from the standard of care exhibiting Malpractice via medical intentional negligence. (See Exhibit #11, #12, #13, #14, #15, #17, #18, #22, #16, #21, #19, #41, #94, #111, #112, #113, #110, #117, #118).

53. Alisa Dearmond violated the standard of care owed to plaintiff who suffered a sever hand injury by failing to communicate to Orthopaedic Hand Specialist Doctor describing the symptoms and information about plaintiff's complaints of pain and suffering, injury, deformity, swelling, loss of range of motion, and for persisting with providing ineffective medical treatment in prescribing only pain pills for a broken hand exacerbating his injury, prolonging his pain and suffering. (See Exhibit #19, #21, #11, #13, #14, #15, #16, #22, #).

54. Alisa Dearmond Registered Nurse violated the standard of care owed to plaintiff who suffered a severe hand injury by her in person observation and knowledge of a risk to plaintiff's health on three different occasions and disregarding it when it was obvious that plaintiff/patient had serious medical needs. (See Exhibit #11, Exhibit #16, Exhibit #19, #21, #13, #14, #15, #17, #18, #22).

55. Registered Nurse Alisa Dearmond's duty when confronted with an inappropriate or questionable practice should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority. (See Exhibit #117).

56. Alisa Dearmond Registered Nurse's failure to refer or contact an Orthopaedic Hand Specialist Doctor when she was confronted with questionable or inappropriate practices such as: LPN (NP) J. Crane practicing beyond her scope of practice when she made an assessment and diagnoses of plaintiff's hand injury after an X-ray Alisa was present at leading to a misdiagnoses resulting in denial of emergency referral to see Orthopaedic Hand Specialist Doctor exacerbating his injury prolonging his pain; her knowledge of severe swelling and repeated complaints of pain and suffering yet only receive ineffective pain pills not reffered to see Doctor for evaluation; witnessing plaintiff be seen for the same complaint 3 times in 30 day with the same complaints of pain; receiving X-ray findings of Radiologist Medical Doctor identifying soft tissue swelling

(30.)

swelling yet no fractures but referring plaintiff to see a Doctor at an Outside Clinic which Alisa didn't adhere to advice of physician only giving pain medication violated the standard of care owed to the injured plaintiff constituting Medical Malpractice and medical negligence by her deviation of standard of care resulting in worsening his injury causing permanent irrepairable damage, loss of function, range of motion, deformity, unnecessary and wanton infliction of pain and prolonged suffering. (See Exhibit #11, #12, #13, #14, #15, #17, #18, #22, #16, #21, #19, #94, #118, #117, #110, # ).

(57) Alisa Dearmond Register Nurse (RN) violated the standard of Care owed to the injured plaintiff by failure to provide a complete description of the situation for Doctor's review upon evaluation, significantly diminishing the seriousness of plaintiff's symptoms, or by misleading medical professionals about plaintiffs health condition leading to him not being referred to see a Orthopaedic Hand Specialist Medical Doctor, denying and delaying his access to adequate medical care, causing unnecessary and wanton infliction of pain and exacerbating his injury. (See Exhibit #16, #21, #14).

(58.) Alisa Dearmond, Registered Nurse (RN) violated the standard of Care owed to the injured plaintiff by failure to report accurate information to treating physicians when she didn't report the symptoms of "mild soft tissue swelling of the thenar and hypothenar eminences", and constantly repeated complaints of pain and suffering on "Offender Outpatient Progress Notes" conducted after X-ray Note taken on 9/14/21. (See Exhibit #21, #16, #14), and #110).

(59) Alisa Dearmond, Registered Nurse (RN) violated the standard of Care owed to the injured plaintiff by her failure to follow "Illinois Department of Corrections Administrative Directive" number: 04.03.121, Title: Treatment Protocols, effective: 5/1/19, which states, "Any offender evaluated for the same complaint three times within 30 days be referred to the physician, physician's assistant or nurse practitioner for evaluation," which plaintiff was seen by Alisa Dearmond three times for the same severe hand injury on 8/20/21, 8/31/21, and 9/14/21 and she still didn't refer plaintiff to see a Orthopaedic Hand Specialist denying him access to adequate medical treatment and constituting Deliberate And Intentional Indifference for not following their own policies, regulations, and guidelines, causing unnecessary and wanton infliction of pain and suffering and exacerbating his injury. (See

(31.)

Exhibit #111, #112, #11, #12, #13, #14, #15, #17, #18, #21, #19, #16, #94).

60. Alisa Dearmond, registered nurse(RN) violated the standard of care owed to the injured plaintiff by her failure to follow "Illinois Department of Corrections Administrative Directive", number: 03.02.108, Title: Standards of Conduct, effective: 1/1/2021, which states, "G. I. 6. 5. § 10. "Giving False Information" - a. Employees shall obey all federal, state and local laws; b. Employees shall obey all applicable court decisions and orders related to the performance of their job duties; 10. Giving False Information: Any employee who knowingly provides false information, including, but not limited to, false information provided statements, incident reports, correspondence or an interview shall be subject to disciplinary action, including discharge; which Alisa Dearmond failed to follow by fasify the X-ray not incident report on 9/14/21 by not listing plaintiff's complaints of pain and suffering for his severe hand injury or reporting the mild soft tissue swelling on the Medical Doctor's Radiologist X-ray report and him requesting that plaintiff be referred to see a Doctor at an outside clinic, which led to him being denied and delayed access to adequate medical care and personnel, exacerbating his injury and causing unnecessary and wanton infliction of pain, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs. (See Exhibit # 110, # 21, # 19, # 94).

N. Yousuf (M. D.) -
("Medical Doctor Radiologist's Deliberate Indifference To Plaintiff's Serious Medical Needs" And Medical Malpractice State Claim)

61. On 9/2/21, Medical Doctor, N. Yousuf Radiologist had knowledge of plaintiff's severe hand injury by X-ray reports sent to him for review and findings of extreme pain and excessive risk to inmate's health, yet disregard it, and failed to remedy it or take action constituting Deliberate Indifference to plaintiff's serious medical need constituting unnecessary and wanton infliction of pain, prolonging his suffering exacerbating his injury. (See Exhibit # 16, # 21, # 41).

62. On 9/2/21, Medical Doctor Radiologist N. Yousuf misdiagnosed plaintiff's severe hand injury stating, "the joint spaces are intact, no fracture, destructive or

32.

- erosive abnormality; the soft tissues are unremarkable," delaying and denying plaintiff access to adequate medical care constituting deliberate indifference, worsening his injury and prolonging his pain. (See Exhibit #16, #21, #19, #41).

63. a.) Medical Doctor, N. Yousuf, Radiologist didn't follow his duty and professional obligation to ensure that inmate received constitutionally adequate care after he requested that plaintiff be referred to see a Doctor at an outside clinic constituting deliberate and intentional indifference by not following their own rules, regulation, policies, guidelines, causing plaintiff unnecessary and wanton infliction of pain prolonging his suffering, exacerbating his injury. (See Exhibit #16, #19, #21, #41, #117).

64. a.) On 9/16/21, Medical Doctor, N. Yousuf, Radiologist's review of x-ray report findings identified mild degenerative changes are seen, but no acute bony fracture or dislocation is noted on this initial study, but did notice mild soft tissue swelling of the thenar and hypothenar eminences that weren't recognized in his X-ray findings on 8/31/21, yet when confronted with an inappropriate ~~action~~ or questionable practice, he deferred to it, disregarding his professional obligation to patient to "take appropriate action," whether by discussing his concerns with the Orthopaedic Hand Specialist physician, or by contacting a responsible administrator or higher authority; again knowingly disregarding a risk to plaintiff's health, constitution Deliberate and Intentional Indifference, causing plaintiff unnecessary and wanton infliction of pain, prolonging his suffering and exacerbating his injury. (See Exhibit #21, #16, #19, #41) and Exhibit #117).
" N. Yousuf (M.D.) Radiologist's Medical Malpractice / Medical Negligence Claim "

65. a.) Medical Doctor, Radiologist, N. Yousuf, committed intentional medical negligence, medical malpractice, by his or her failure to provide plaintiff the standard of care in the medical community by which the medical professionals treatment is measured and plaintiff is entitled to, with N. Yousuf's misdiagnoses of his fractured right hand on X-ray reviews on 8/31/2021 and 9/14/2021 Films from Menard Correction Center, which plaintiff's approximate five months later Orthopaedic Hand Specialist physician eval-

confirmed when Orthopaedic Hand Specialist's conducted one X-ray and determined in his Diagnostic Assessment that plaintiff, "did have an old fracture at the base of the 5ᵗʰ metacarpal; it did appear was impacted and healed improperly, with Right 5ᵗʰ metacarpal malunion, Bilateral carpal tunnel syndrome, and Arthritis," causing him unnecessary pain and suffering, worsening his injury resulting in irrepairable damage, permanent disfiguration and deformity, loss of function and range of motion, prolonged pain and denying him access to adequated medical care for a broken right hand, by refusing to refer him to see an Orthopaedic Hand Specialist Medical Doctor after Radiologist recommendations requesting plaintiff to be seen by a Doctor at an Outside Clinic; constituting deliberate and intentional indifference to his serious medical needs, unnecessary and wanton infliction of pain and suffering. (See Exhibit #16, #21, #19, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #94, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #110).

66. ● Medical Doctor Radiologist, N. Yousuf, has an independent duty to ensure that plaintiff received constitutionally adequate care, which N. Yousuf failed to do when he or she had knowledge of plaintiff's severe hand injury and continued pain, yet still misdiagnosed him, falsified information in statements and incident report of X-ray findings, delaying and denying him access to see an Orthopaedic Hand Specialist Doctor; by refusing to ensure he seen a physician Orthopaedic at an Outside Clinic for an evaluation; and exacerbating his injury as a result of his or her deviating from the standard of care, exhibiting Medical Malpractice via intentional medical negligence. (See Exhibit #117, #110, #94, #16, #21, #19, #22, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53).

67. ● Medical Doctor Radiologist, N. Yousuf, violated the standard of care owed to plaintiff who suffered a severe hand injury by failing to communicate to Orthopaed-ic Hand Specialist Doctor describing the symptoms and information about plaintiff 's complaints of pain and suffering, injury, swelling, and for failing to act on ensuring plaintiff received adequate medical care after obtaining evidence and knowledge he was at risk of harm to his health, by delaying or denying necessary treatment and thus aggravating an injury and needlessly prolonging his pain, by persisting with →

34.

inappropriate treatment in repeated X-ray reviews never contacting a Hand Specialist + Orthopaedic physician, resulting in unnecessary and wanton infliction of pain exacerbating his injury leading to irreparable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, prolonging pain and suffering, ~~XXXXX~~ that was proximately caused by the deviation from the standard of care. (See Exhibit #16, #21, #19, #41, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51)

(68.)(■.) Medical Doctor, N. Yousuf, has an independent duty to ensure that plaintiff receives adequately constitional care and violated the standard of care owed to plaintiff who suffered a severe hand injury when he was confronted with "inappropriate and questionable practices" when reviewing plaintiff's X-ray film by Menard's medical staff on 9/2/21, where N. Yousuf Radiologist Findings discovered, "the joint spaces are intact, no fracture, destructive or erosive abnormality; with the soft tissues are unremarkable; yet Radiologist's X-ray review findings of x-ray films by Menard's medical staff on 9/16/21 were inconsistent with the previous one stating, "mild degenerative changes are seen, but no acute bony fracture or dislocation is noted on this initial study; there is mild soft tissue swelling of the thenar and hypothenar eminences; and deferring to that practice inspite of referring that plaintiff be seen by a Doctor at Outside Clinic on 9/14/21 only for it to not be done with him having to conduct another review of x-ray film findings on 9/16/21 leading to him referring plaintiff be seen by a Orthopaedic Hand Specialist Doctor at an Outside Clinic again; yet he didn't fulfill his professional duty obligation to plaintiff/patient to ensure he recieved constitutionally adequate care by "taking appropriate action", whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority, with the negligent failure by Medical Doctor Radiologist, N. Yousuf, to comply with the standard of care; and plaintiff's resulting injury of irreparable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, unnecessary and wanton infliction of pain, and prolonged suffering, which was proximately caused by the deviation from the standard of care, constituting Deliberate and Intentional Indifference for not following their own rules, regulations, policies, NCCHC standards of Care, state law, and Constituting Medical Malpractice.

(35.)

(See Exhibits #16, #21, #19, #18, #110, #41, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53, #54, #94,    ).

69. ⬤. Medical Doctor Radiologist, N. Yousuf, violated the standard of care owed to plaintiff who suffered a severe hand injury by failure to provide a complete description of the situation for Doctor's review upon eval, and significantly diminishing the seriousness of patients symptoms, or by misleading medical professionals about patients health, which N. Yousuf, Radiologist did when he misdiagnosed plaintiff's fractured hand in X-ray report review on 9/2/21, which approximately 5 months later the Orthopaedic Hand Specialist Doctor's assessment diagnoses conducted one X-ray and determined plaintiff, "did have an old fracture at the base of the 5th metacarpal; it did appear was impacted and healed improperly, with Right 5th metacarpal malunion, Bilateral Carpal Tunnel Syndrome, and Arthritis; with Radiologist's 9/2/21 report finding stating, "the soft tissues are unremarkable," yet his findings review X-ray report on 9/16/21 stated, "there is mild soft tissue swelling of the thenar and hypothenar eminences," and "Mild degenerative changes are seen, but no acute bony fracture or dislocation is noted on this initial study," and the 9/2/21 X-ray findings review report stating, "The joint spaces are intact, with no fracture, destructive or erosive abnormality," with Radiologist Medical Doctor, N. Yousuf's negligent failure by not complying with the standard of care; and plaintiff's resulting injury of irrepairable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing unnecessary and wanton infliction of pain, and prolonging his suffering, which was proximately caused by the deviation from the standard of care, constituting Deliberate and Intentional Indifference for not following their own rules, regulations, policies, NCCHC standards of care, state laws, and constituting Medical Malpractice. (See Exhibit #16, #21, #19, #41, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #94, #110).

70. ⬤. Medical Doctor Radiologist, N. Yousuf, violated the standard of care owed to plaintiff who suffered a severe hand injury by failure to report accurate information to treating physicians, which Radiologist's inconsistent X-ray findings reviews confirm and his or her findings on multiple occasions stating no fractures found-

(36.)

, no dislocation, or destructive or erosive abnormality, with joint spaces being intacted, which approximately **5** months later at the evaluation at the Outside Clinic with the Orthopaedic Hand Specialist Doctor his diagnostic interpretation assessment of X-rays findings contradicted Medical Doctor Radiologist, N. Yousuf's finding reports, with the Orthopaedic Hand Specialist Doctor's findings stated, "plaintiff did have an old fracture at the base of the 5th metacarpal; it did appear was impacted and healed improperly, with Right 5th metacarpal malunion, Bilateral Carpal Tunnel Syndrome, and Arthritis; with ~~metacarpal~~ Radiologist Medical Doctor, N. Yousuf's negligent failure to comply with the standard of care; and plaintiff's resulting injury of irrepairable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing unnecessary and wanton infliction of pain and prolonging his suffering, which was proximately caused by the deviation from the standard of care, constituting Deliberate and Intentional Indifference for not following their own rules, regulations, policies, NCCHC standards of care, state law; and constituting Medical Malpractice. (See Exhibits #16, #21, #19, #41, #22, #14, #23, #24, #110, #25, #26, #27, #28, #29, #30, #31, #32, #33, #94, #111).

71. 📖 Medical Doctor, Radiologist, N. Yousuf, violated the standard of care owed to plaintiff who suffered a severe hand injury by failure to report accurate information to treating physicians and violating Illinois Department of Corrections Administrative Directive, number: 03.02.108, Title: Standards of Conduct, effective: 1/1/2021 (E) (G.) (by) (a.) (b.) — (G.) Requirements: (1.) "Compliance with Laws and Regulations" — (a.) states," Employees shall obey all Federal, State, and local laws; (b.) stating, "Employees shall obey all applicable court decisions and orders related to the performance of their job duties; which Radiologist, N. Yousuf, failed to do when he or she didn't uphold their independent duty to ensure that plaintiff received constitutionally adequate medical care, **also** when confronted with an inappropriate or questional' practice of knowledge or **risks** of harm to plaintiff's health, inconsistent x-ray findings, witnessing persistant inappropriate courses of treatment by Nurses failure to refer plaintiff to see Orthopaedic Doctor for evaluation after they failed to heed Radiologist's recommendation the first time, yet N. Yousuf simply deferred to that practice-

37

, inspite of having a professional obligation to the plaintiff/patient to "take appropriate action," whether by discussing their concerns with the treating physician or by contacting a responsible administrator or higher authority; which N. Yousuf failed to do with that negligent failure to comply with the standard of care lending to plaintiff being denied and delying access to adequate medical care; resulting in injuries of irrepairable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing him unnecessary and wanton infliction of pain, and prolonging his suffering, which was proximately caused by the deviation from the standard of care, constituting Deliberate and Intentional Indifference for not following their own rules, regulations, policies, NCCHC standards of care, state law; and constituting Medical Intentional Malpractice. (See Exhibits #110, #16, #19, #18, #21, #111, #112, #135, #36, #37, #38, #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53, #54, #94, #59,).

(70.) Medical Doctor, Radiologist, N. Yousuf, violated the Standard of care owed to plaintiff who suffered a severe hand injury by failure to report accurate information to treating physicians and violating Illinois Department of Corrections Administrative Directive, number: 03.02.108, Title: Standards Of Conduct, effective: 1/1/21 (G.) Requirements; (10.) "Giving False Information" stating, "All employees who knowingly provides false information, including, but not limited to, false information provided in statements, incident reports, correspondence or an interview shall be subject to disciplinary action, including discharge;" Which N. Yousuf, violated by providing false information on X-rays tooken on 9/2/21 and 9/16/21 review findings reports that stated no fractures seen, yet approximately 5 months later at plaintiff's Orthopaedic Hand Specialist Medical Doctor Evaluation, plaintiff had one X-ray tooken with the Orthopaedic Hand Specialist's diagnostic interpretation assessment of X-rays finding contradicting Medical Doctor Radiologist, N. Yousuf's finding reports, with the Orthopaedic's X-ray reports findings stating: "plaintiff did have an old fracture at the base of the 5th metacarpal ▆▆▆; it did appear was impacted and healed improperly, with Right 5th metacarpal malunion, Bilateral Carpal Tunnel Syndrome, and Arthritis, proving N. Yousuf's X-ray misdiagnoses with Radiologist's knowingly providing false information in

38.

– incident reports and statements on Radiologist's Review reports; with N. Yousuf's negligent failure to comply with the standard of care leading to a denial of plaintiff's access to adequate medical care and delays of proper treatment exacerbating his injury; resulting in injuries of irrepairable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing him unnecessary and wanton infliction of pain, and prolonging his suffering, which was proximately caused by the deviation from the standard of care, constituting Deliberate and Intentional Indifference for not following their own rules, regulations, policies, NCCHC standards of care, state law; and constituting Medical Intentional Malpractice. (See Exhibits #110, #16, #19, #18, #21, #111, #112, #35, #36, #37, #38, #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53, #54, #94, #59 ).

73. Medical Doctor, Radiologist, N. Yousuf, violated the standard of care owed to plaintiff who suffered a severe hand injury by failure to report and adhere to by state law by violating "Illinois Department of Corrections Administrative Directive number: 04.03.103, Title: Offender Health Care Services, Effective: 1/1/2021, (F.) (3.) (b.) – (F.) Requirements, (3.) "Offender Access", (b.) All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; (c.) Offenders shall be referred for specialty services if determined medically necessary; " which N. Yousuf failed to do by denying plaintiff access adequate medical care by misdiagnosing him and delaying proper treatment exacerbating his injury by N. Yousuf's negligent failure to comply with the standard of care leading to plaintiff's resulting injuries of irrepairable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing him unnecessary and wanton infliction of pain, and prolonging his suffering, which proximately was caused by the deviation from the standard of care, constituting Deliberate and Intentional Indifference for not following their own rules, regulations, policies, state laws, NCCHC standards of care; and constituting Medical Intentional Malpractice. (See Exhibits # 112, #16, #19, #21, #94, #110, #41, #22, #23, #24, #25, #26, #27, #28, #29, #36, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #44, #45, #46, #47, #48, 

39.

— #49, #50, #51, #52 ).

**74.** Illinois Department of Corrections Administrative Directive, number: 04.03.103, Title: Offender Health Care Services, effective: 1/1/2020; (F.) Requirement; (6.) Review of Sick call Requests; (C) states, "When an offender's request for non-emergency medical attention results in referral to a primary care physician by the screening health care staff, the primary care evaluation shall take place within 72 hours or upon the next scheduled visit by a primary care physician; yet N. Yousaf's negligent failure to comply with the standard of care by not ensuring plaintiff was seen by a primary care physician within 72 hours constituting Deliberate and Intentional Indifference for not following their own policy and NCCHC standards, guidelines, delaying and denying plaintiff access to adequate medical care exacerbating his injury; resulting in the unnecessary and wanton infliction of pain, irrepairable damage, permanent disfiguration and deformity, loss of functioning and loss of range of motion in his predominate right hand, causing him unnecessary prolonging his suffering, which proximately caused by the deviation from the standard of care, constituting Medical Intentional Negligence. (See Exhibit # 112, #12, #16, #19, #81, #94, #110, #41, #21, #94, #22, #23, #24, #25, #26, #27, #28, #29, #36, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52).

"Grievance Personnel Shelia M. Ramsey And Allison P. Hargis/Denial of Adequate Medical Care And Deliberate Indifference To Plaintiff's Serious Medical Needs In Violation of The Eighth Amendment prohibition of Cruel And Unusual Punishment;"

"Warden-Anothony Wills/Denial Of Adequate Medical Care And Deliberate Indifference To Plaintiff's Serious Medical Needs in Violation Of The Eighth Amendment"

75.) Warden, Anothony Wills is the Warden of Menard Correctional Center and is also known as it's Cheif Administrative Officer. (See Exhibit #116).

76.) The Cheif Administrative Officer is responsible for the overall operation of the facility, the supervision and protection of its individual in custody assigned to this Institution, as well as the supervision of staff members. (See Exhibit #116).

77.) The Cheif Administrative Officer is ultimately responsible for overseeing both programs and operational services of this facility, as well as ensuring compliance with all departmental directives, and rules. (See Exhibit #116).

78. The Warden is the Leader of the institution with the authority and responsibility to manage and direct the total operations of the facility; and under this authority, the warden shall operate the facility in accordance with state and federal laws, states statutes, administrative directives, executive orders and judicial decisions. (See Exhibit #122).

79.) Warden, Anthony Wills was deliberately Indifferent to plaintiff's serious medical needs when plaintiff suffered a severe hand injury in a physical alteration in self defense and dispite his severe swelling and deformity and filing of two grievances emergency directly to the Warden with him deeming them as an emergency and several forms of ineffective medical treatment by his medical staff Who it's his responsibility to oversee, and continued complaints of pain and suffering for approximately 6 months repeatedly being denied and delayed adequate medical treatment before plaintiff was sent to see an Orthopaedic Hand Specialist, by which time it was too late to obtain proper surgery to repair a broken hand because the specialist focuses on mobility verses pain and due to the fractured right hand healing though improperly exacerbating his injury causing him nerve damage, Arthritis, permanent irreparrable damage, disfiguration, loss of range of motion and loss of function in his hand, and plaintiff had to wait 4 months after seeing a specialist and finding out he was misdiagnosed to see a nerve specialist + for an evaluation, and three months after that to see a hand specialist, and given several different courses of ineffective courses of treatment before experiencing a 19 month delay from time of injury until receipt of meaningful treatment in the form of Carpal Tunnel Surgery, despite his complaints of ongoing symptoms, —

(41)

-including pain, suffering, migraines, headaches, insominia, loss of range of motion and functioning, severe hand cramps, loss of feeling in **hand**, fingers, all the way up to his elbow, mental anguish and extreme depression. (See Exhibits #1 through #94     )

80. Plaintiff suffered a severe hand injury on 8/16/21 and had three X-rays in 30 days and being given inadequate medical treatment in the form of pain pills and killing sick calls to no relief by Menard's medical staff nurses and Medical Doctor Radiologists. (See Exhibit #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #53, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #45, #44, #46, #47, #49, #50, #48, #1).

81. On 10/15/21, the plaintiff filed an emergency grievance by having it placed in the Warden's box informing **him** of my severe hand injury that felt like my hand was broken due to me getting into a physical altercation in self-defense which was causing him severe pain and suffering and discomfort, how swollen it was and how you could see it was deformed, requesting pain pills for the excruciating pain, how I put in for multiple sick calls, receiving **only** ineffective pain pills, x-rays 3 of them in 30 days that all came back negative, with my right hand injury preventing me from sleeping, migraines, headaches, writing since I'm right handed and doing normal activities like washing up and cleaning due to pain suffered, and requesting to receive a second opinion and x-ray from an outside nurse at a hospital, and 'MRI' to check for nerve damage and if it shows that my hand is fractured or I have nerve damage I'd like to have surgery to fix it and any other treatment I may need, yet the Warden, after being informed of plaintiff's serious medical needs and receiving knowledge of a substantial risk of serious harm to plaintiff existed he disregarded it even after deeming it an emergency through a report or appeal or grievance, he failed to remedy the wrong causing plaintiff unnecessary and wanton pain, prolonging his pain for 4 months until seeing a physician because of Warden being deliberate Indifference to plaintiff's serious medical needs. (See Exhibit #22, #24, #23, #25, #41, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #45, #44, #46, #47, #49, #50, #48)

42.

82) On 10/21/21, the warden after receiving plaintiff's Emergency grievance # 232-10-21 dated 10/15/2021 regarding medical treatment has been deemed emergency by CAO for expedited grievance review and sent to Menard's Grievance Office personnel staff Ramsey, Sheila M., Office Coordinator. (See Exhibit # 24), #22).

83) On 10/20/21, the Grievance Office received grievance # 232-10-21 marked emergency by the individual in custody regarding medical treatment dated 10/15/2021. (See Exhibit # 23, Exhibit #22).

84) After plaintiff's grievance filed with Warden that was forwarded to grievance personnel Sheila M. Ramsey - Office Coordinator, Allison P. Hargis, - Office Associate, Grievance officer Kelly Pierce, Correctional Counselor III plaintiff's which was deemed an emergency by the Warden Anthony Wills that grievance fell on "deaf ears" leading to plaintiff never receiving a response to that grievance with plaintiff receiving no relief or treatment for his severe hand injury by none of the grievance personnel exercising their authority to ensure plaintiff received adequate medical treatment despite all of them being made aware of his predicament by way of his grievances and other correspondences causing him unnecessary and wanton pain and prolonging his suffering which lead to his injury worsening to permanent disfigurement, deformity, loss of range of motion and loss of function, delaying him to see a physician for an evaluation for approximately 4 months later only to find out he had a fractured hand and it healed improperly and would need multiple surgeries to fix yet the physician didn't feel it was needed at that point because he only focuses on mobility and not the pain, (See Exhibit # 22, # 23, # 24, # 25, #41) with all defendant's Warden Anthony Wills, Grievance personnel Sheila M. Ramsey, Allison P. Hargis, and grievance officer Kelly Pierce all being deliberate indifferent to plaintiff's serious medical needs.

85) Plaintiff filed a sick call request on 10/28/21 complaining to Menard's medical staff about his severe right hand injury which felt broken and causing him pain and suffering due to it being broke on 8/16/21 requesting pain pills, with the Warden deeming his grievance an emergency on 10/21/21 yet plaintiff still hasn't seen a nurse or received any treatment. (See Exhibit # 25).

86) Then On 11/3/21, plaintiff filed another "Supplemental Grievance" as a follow up to his first grievance # 232-10-21 filed on 10/15/21 because he still haven't received

43.

a response from the grievance officer nor received any medical treatment for his severe hand injury after multiple complaints in attempt obtain adequate medical care, with this grievance seeking medical treatment in the form of an X-ray from an outside nurse on my right hand because plaintiff was still experiencing severe pain and suffering causing him extreme discomfort and feel as if it's broke and will cause permanent disfiguration if not treated soon, due to him breaking it in a fight on 8/16/21, and he's filed multiple sick calls that have been ignored, nor have he received the pain pills requested to numb the pain; with this grievance # 95-11-21 being filed emergency to the Warden on 11/3/21, with him signing off on it on 11/5/21 but yet plaintiff still didn't gain/receive any adequate medical treatment nor was he sent out to have a second opinion or X-ray from an outside hospital or see a physician for an evaluation until 3 months later causing plaintiff unnecessary and wanton infliction of pain, delaying and denying access to adequate medical care and exacerbating his injury causing him permanent damage, deformity, irreparable damage, loss of function and loss of range of motion exhibiting deliberate Indifference to plaintiff's serious medical needs, by Warden Anthony Wills in violation of his Eighth Amendment Rights prohibition against Cruel and unusual punishment. (See Exhibit # 27, # 22, # 23, #24, #25, #28, #30).

(857.) On 11/3/21, Grievance personnel Allison P. Hargis, office Associate counselor received plaintiff's forwarded Emergency grievance # 95-11-21, dated 11/3/21 regarding sick call denial and outside medical treatment which has been deemed emergency by the Chief Administrative Officer for expedited grievance review for his complaints of pain and suffering for his severe hand injury, yet Allison P. Hargis grievance personnel counselor who received actual knowledge of a serious risk to plaintiff's health due to his severe hand injury and complaints of pain and suffering feeling as if his hand was broken but she failed to act reasonably to avert it, despite his highly detailed grievances exhibiting deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment right to prohibition against Cruel and Unusual punishment, causing him unnecessary and wanton infliction of pain, prolonging his suffering and worsening his injury. (See Exhibit # 30, # 22, # 27, # 23), #41).

(88.) On 11/4/21, Grievance personnel Shelia M. Ramsey, office Coordinator counselor received plaintiff's forwarded Emergency grievance # 95-11-21, dated 11/3/21 regarding sick call

(44.)

– denial and outside medical treatment which has been deemed emergency by the individual in custody regarding sick call denial and request for outside medical treatment, dated 11/3/21, which was deeded an emergency by the warden expedited by the Grievance Office review for plaintiff's complaints of pain and suffering for severe hand injury, yet Shelia M. Ramsey, grievance personnel counselor who received actual knowledge of a serious risk to plaintiff's health due to his severe hand injury and complaints of pain and suffering feeling as if his hand was broken but she failed to act reasonably to avert it, despite his highly detailed grievances exhibiting deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment right to prohibition against Cruel and Unusual punishment, causing him unnecessary and wanton infliction of pain, prolonging his suffering and worsening his injury. (See Exhibit # 30, #22, #27, #23, #41, #28, #26, #24).

89.) Counselor's duty and the purpose of Clinical Services Department at Menard Correctional Center is to provide support and services to individual in Custody in order to assist them in their adjustment, involvement in programs, reintegration, and is the initial person who assesses the various requests made by an individual in custody. The counselor is responsible for providing crisis intervention and referrals of individual in custody to the psychiatrist, and initial efforts to resolve grievances should also be initially presented to counselors. (See Exhibit #116).

90.) Counselor Shelia M. Ramsey and Allison P. Hargis both Grievance Personnel has a duty and responsibility to address plaintiff's issues, review his grievance and seek to provide inmate's help, support and exercise their authority to resolve the medical problems complained about and assist plaintiff in ensuring he receive adequate medical care which grievance personnel Shelia and Allison didn't do constituting Deliberate and Intentional Indifference for not following their own rules and regulations causing plaintiff unnecessary and wanton infliction of pain, prolonging his pain and suffering and worsening his injury. (See Exhibit #116, #95).

91.) Plaintiff filed a sick call request slip to nurse on 11/3/21 about the pain and suffering he experienced for his broken hand, his discomfort and undue suffering in dire need of some pain pills 600 mg to numb the pain and filing an emergency grievance with the Warden seeking treatment for his serious medical needs which he deemed an emergency on 10/21/21, but he still haven't been seen–

45.

by any nurse personnel, LPN, or been prescribed any pain pills after putting multiple sick calls and complaints, seeking help because the pain is only getting worse. (See Exhibit # 26).

92. Illinois Department of Corrections Administrative Directive, number: 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, Policy states, " The Department shall ensure offenders have access to adequate health care; (F.)(3.)(b.) states, "All offenders shall **have** daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; (F.)(3)(c.) states, " Offenders shall be referred for specialty services if determined medically necessary (Specialty Service - includes non-routine services and items including, but not limited to, off-site consultations, off-site x-rays, non-formulary medications and medical equipment); yet Grievance personnel counselors Shelia M. Ramsey and Allison P. Hargis both denied plaintiff access to adequate health care, nor did they ensure he received adequate medical care when plaintiff filed two emergency grievances seeking treatment for his severe hand injury for a broken hand and them being aware of the inappropriate treatment he's been receiving up until that point, constituting Deliberate and Intentional Indifference for not following their own policies, guidelines, and state law, causing plaintiff unnecessary and wanton infliction of pain, prolonging his suffering and exacerbating his injury leading to irreparable damage, permanent disfiguration, loss of functioning, and loss of range of motion in violation of the Eighth Amendments prohibition of Cruel and Unusual Punishment. (See Exhibit #112, #22, #27, #30, #23, #24, #25, #28, #26, #).

93. IDOC Administrative Directive, number: 03.02.108, Title: Standards of Conduct", effective: 1/1/2021, Policy - (G.) Requirements - (I.) Compliance With Laws and Regulations: (a.) Employees shall obey all Federal, State and local laws; (b.) Employees shall obey all applicable court decisions and orders related to the performance of their job duties; (d.) Employees shall comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities; which both grievance personnel Shelia M. Ramsey and Allison P. Hargis counselors violated state law policies A.D. 04.03.103 and plaintiff's

46.

Eighth Amendment rights prohibition of Cruel and Unusual punishment by being deliberate indifferent to his serious medical needs when they denied him access to adequate medical care causing plaintiff unnecessary and wanton infliction of pain, (See Exhibit #110, #112, #22, #27, #30, #23, #24, #25, #28, #26), constituting Deliberate and Intentional Indifference for not following their own policy, rules, regulations, and state law.

94. IDOC Administrative Directive 03.01.307, Title: Discrimination and Harassment, effective 9/1/2022, Policy states, "The department prohibits any form of unlawful discrimination and harassment; II. Procedure - (A.) The purpose of this directive is to establish written procedures governing the responsibilities of staff for compliance with Department policy prohibiting unlawful discrimination and harassment; (F.) General Provision - (1.) For purposes of this directive, examples of discrimination include, but are not limited to, the following: (a.) Less favorable treatment because of race, color, religion, gender, national origin, ancestry, age, marital status, citizenship status, sexual orientation, military status, unfavorable military status, arrest record, language, order of protection status, pregnancy or disability; and (b.) Use of a neutral employment practice that has a disparate impact on a protected class group and is not justified by business needs. (See Exhibit #123).

95. Menard Correctional Center and it's staff specifically grievance personnel **Shelia M.** **Ramsey** and **Allison P. Hargis** have a policy and custom of _unlawful discrimination_ and harassment through the use of the grievance process that has a disparate impact on Blacks by them having to disclose their race on the grievance form when filing complaints and seeking to obtain adequate medical care for their serious medical needs thats leads to Black inmates being discriminated against by being denied constitutionally adequate medical treatment, and are instead maliciously receiving less favorable treatment because of race, or citizenship status, being inmates with arrest records, the color of our skin, and constantly being **harassed** by hostile acts that relate to race, negative stereotyping as being labeled prisoners with criminal records; and plaintiff was unlawfully discriminated against by grievance personnel Shelia M. Ramsey and Allison P. Hargis by the disparate treatment I received based

47.

— his race of African American, color of his Black Skin, and ethnicity, resulting in him being denied access to adequate medical care for his broken hand, constituting Deliberate and Intentional Indifference for not following their own policy, state law, guidelines, exhibiting deliberate indifference to plaintiff's serious medical needs, causing him unnecessary and wanton infliction of pain, exacerbating his injury and prolonging his suffering. (See Exhibit # 123, #41, #22, #27, #30, #23, #24, #25, #88, #26, #110).

96.) IDOC Administrative Directive, number: 01.02.350, Title: Addressing and Reducing Disparate Treatment and Impact, effective: 7/1/2023, ⓐ Policy: The Department shall ensure fair and equitable distribution of benefits in the assignment of individuals in custody to custody levels, living units, job assignments of individuals, program assignments, education and Career and Technical Education program opportunities and preparation and support for community re-entry; ensure all processes associated with institutional custody and classification, discipline and grievances are conducted fairly, and that decisions are not influenced by stereotypes or bias based on race, color or ethnicity, and provide an environment for individuals in custody that is free from harassment or disparate treatment based on race, color, ethnicity. (See Exhibit #124).

97.) IDOC Administrative Directive, number: 01.02.350, Title: Addressing and Reducing Disparate Treatment and Impact, effective: 7/1/2023, - (II.) Procedure - (A.) Purpose - The purpose of this policy is to establish a means of identifying and addressing issues of disparity and to ensure respect and fair treatment of individuals in custody by implementing procedures and practices that rely on equitable and relevant criteria. (F.) The following processes shall be processed in a manner free of discrimination, bias, or any other action that contributes to or perpetuates disparate treatment based on race, color, or ethnicity; (6.) Individual in Custody Grievance; (a.) Individual in custody grievances shall be processed in a manner free of discrimination, bias, or any other action that contributes to or perpetuates disparate treatment based on race, color, or ethnicity; (b) Individuals in custody shall have the opportunity to resolve issues and incidents in an informal setting prior to utilizing the formal grievance process as well as access to appeal; (c) All individuals in custody are entitled to invoke the grievance procedure for a broad —

48.

range of complaints including, but not limited to: (1) Policies and Procedures within the facility that impact the individual in custody; (2) Actions by Department employees including contractual employees, volunteers and other individuals in custody; (3) Incidents or conditions occurring within the facility that impact the individual in custody personally; and (4) Issues relating to health care and other concerns. (See Exhibit # 124).

98. Grievance personnel counselors Shelia W. Ramsey and Allison P. Hargis violated A.D. 01. 02. 350, (II.)(F.)(F.)(6.)(●)(a.)(d.)(1.)(2)(3)(4.) which states in (6.)(d.)(4.) that states, "all individuals in custody are entitled to invoke the grievance procedure for a broad range of complaints including, but not limited to: Issues relating to health care and other concerns without disparity and to ensure respect and fair treatment of individuals in custody by implementing procedures and practice that rely on equitable and relevant criteria but plaintiff was unlawfully discriminated against when seeking to obtain adequate medical care for a six month period, filing multiple grievances for a broken hand only for his grievance to be deemed an emergency, yet still fell on deaf ears with his grievances being denied preventing plaintiff from having access to adequate medical care constituting Deliberate and Intentional Indifference for not following their own policy and state law and guidelines, exhibiting deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment prohibition of Cruel and Unusual punishment, causing him unnecessary and wanton infliction of pain, prolonging his suffering and worsening his injury leading to irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion. (See Exhibits # 124, #41, #42, #43, #33, #34, #35, #36, #37, #38, #39, #40, #22, #27, #30, #23, #24, #25, #28, #26, #10).

99. In the "Wexford Health Sources Incorporated Provider Handbook" which lists it's policies it states under "Emergency Care" that emergency care is available twenty four (24) hours a day, seven days a week. Any inmate must have access to health care unit personnel for immediate medical service any time an emergency arises. Medical personnel (or teams) are also available to respond to a cell or other areas in the prison to meet medical needs. Another option for emergency care is referral to a local emergency department if a physician is not on site AND the medical personnel deems this appropri-

49.

ate, or if the needed **medical** service is beyond the capability of the unit personnel. Medical personnel must contact the medical **director**/designee first unless the emergency is life/limb threatening. (See Exhibit # 94).

100.) The "Wexford Health Sources Incorporated Provider Handbook" states: "Inmates have access to emergency service anytime there is no scheduled service available; Emergency service can be provided onsite by whatever level of provider able to meet the level of care necessary. If the unit ▮▮▮ has sufficient equipment and personnel skill to meet the patient's problem, it should be managed there; if the facility, equipment, or skill level of the onsite personnel is inadequate, the patient may be transferred to the nearest hospital emergency department; If no staff physician is on site and the situation is **life**-threatening, the attending nurse may make the decision to transfer the patient; in such an event, the unit _medical director_ must be notified at the earliest possible time; Wexford must authorize payment for this service, so an Emergency Referral Sheet should be faxed to the Wexford Pittsburgh office as soon as reasonably possible. (See Exhibit # 94).

101.) The "Wexford Health Sources Incorporated Provider Handbook" states: under "Doctor's Sick call", an inmate has the right to request to see a physician; this request should be honored within seventy-two (72) hours, inmates seen in sick call by the nurses are frequently "referred" to Doctor's Call for evaluation, diagnosis, and/or treatment. (See Exhibit # 94).

102.) Grievance Personnel counselors, Shelia M. Ramsey and Allison P. Hargis both denied plaintiff access to adequate medical care and personnel despite him having a right to emergency care that's supposed to be made available 24 hours a day, seven days a week, inspite of him filing multiple grievances complaining of the severe pain and suffering he was experiencing for a broken hand injury he suffered in a fight in self-defense trying to protect himself and both emergency grievances filed were deemed as an emergency by the warden, which according to their own policies, rules, regulations, and state law plaintiff should've been referred to an outside physician since Menard C.C. doesn't have a physician on site at all times to assess or examine or diagnose **inmates** injuries which lead to his **misdiagnoses** of his **fractured** hand due to Wexford's unconstitutional policies, and with Shelia M. Ramsey and Allison P. Hargis both being Deliberate and Intentional Indifferent

50

to plaintiff's serious medical needs by not following their own policies, rules, laws. of the state, and regulations which lead to plaintiff's unnecessary and wanton infliction of pain, prolonging his suffering by denying him access to adequate emergency medical care, and exacerbating his injury causing him irreparable damage, prolonged pain, loss of function, loss of range of motion, permanent disfiguration as well. (See Exhibit # 94, #41, #22, #27, #30, #23, #24, #26, # 28, #25, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #45, #44, #46, #47, #50, #48, # 29), #31, #32).

Grievance Officer - Kelly Pierce / "Denial Of Adequate Medical Care And Deliberate Indifference To plaintiff's Serious Medical Needs In Violation Of The Eighth Amendment Prohibition Of Cruel And Unusual Punishment "

103. Section 504.830 Grievance Procedures (a.) state's grievances shall be reviewed and a written response provided to the individual in custody. Grievances on issues that are deemed without merit may be returned as denied to the sender without further investigation. (See Exhibit # 116).

104. Section 504.830 Grievance Procedures (e.) states the grievance officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance when reasonably feasible under the circumstances; The Chief Administrative Officer shall review the findings and recommendation and advise the individual in custody of his or her decision in written; and responses to duplicate grievances on issues that are currently being grieved may be combined in one response. (see Exhibit #116).

105. Section 504 Department Rules 415 in the Grievance Officer's Section states, "when reviewing the offender's grievance avoid using language wherein you indicate medical treatment the offender received is appropriate; and ensure medical treatment is being afforded to the offender, medication received, etc; and the issue of treatment being appropriate is to be determined by professionals. (see Exhibit #.95).

106. Section 504 Department Rules in the Grievance officer's Section under Medical states the following guidelines for the following medical complaints: under "Diagnostic" - Determine the issue; "Institution Medical Staff" should be contacted

51.

— to review offender's concerns and a response provided; "Medication"- determine the issue; and Contact Health Care Unit Staff ( Physician, Health Care Unit Administrator, Director of Nursing, etc); to verify medication ordered, the offender's receipt of medication, change of medication in compliance with doctor's order, etc; "Outside Screening / Furlough" - Determine the issue ( offender has not received medication change in medication, etc.); "Contact Facility Medical staff ( physician, Health Care Unit Administrator, Director of Nursing, etc) to review offender's concerns documenting information provided; "Treatment" - Determine the issue ( offender is grieving lack of medical treatment, inappropriate treatment, etc; "Contact Facility Medical Staff" ( physician, Health Care Unit Administrator, Director of Nursing) to verify medical treatment provided and offender's compliance with treatment protocol; Note: If there is a question as to whether an offender should pay the medical co-pay due to chronic illness, follow-up appointment, etc., the issue should be received with the Health Care Unit Administrator for clarification. ( See Exhibit # 95).

107. On 10/15/21, plaintiff filed an emergency grievance with the Warden who deemed it an emergency and on 10/20/21 it was forwarded to the grievance Officer who sent me a receipt stating the grievance office received his grievance # 232-10-21 marked emergency by the individual in custody regarding medical treatment, dated 10/13/21 regarding his complaints of receiving inadequate medical treatment for his severe hand injury in the form of a broken right hand he suffered in a fight in self-defense, how he was misdiagnosed and had 3 X-rays in 30 days with all them coming back negative for any fractures with plaintiff request to be seen by an outside hospital for a second opinion and X-ray by a nurse from an outside hospital and trying to gain access to adequate medical care. ( See Exhibit # 23).

108. Plaintiff never received a response to that grievance filed on 10/15/21 deemed an emergency by the warden nor did he ever receive any medical treatment or relief for his severe hand injury for his broken hand or any pain medication for the numbing of the excruciating pain he was suffering. ( See Exhibit # 23, # 22, # 26, # 25).

52.

**109.** (CVXO) On 11/3/21, plaintiff still haven't received any treatment or response to his grievance deemed an emergency by the Warden from the grievance officer and still suffering pain and suffering for a broken hand, being forced to endure the extreme pain for three months now at this point being given only ineffective and courses of known inappropriate medical treatment dispite repeated complaints over a three month period trying desperately to obtain adequate medical care, so he filed another grievance on 11/3/21 Emergency to the Warden as a **duplicate** grievance on plaintiff's requests for adequate medical treatment for his severe hand (injury broken hand, that was currently being grieved that he never received any response from, nor any relief for his pain requesting to get a x-ray by an outside hospital nurse, second opinion, an 'MRI' to check for any nerve damage, some pain pills to numb the pain until he could get the proper treatment, and wants whatever treatment necessary if it show his hand is broke or he has any nerve damage. (See Exhibit # 27, #22, #28, #23, #26, #30, #24, #25, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #51, #52, #41).

**110.** (MP.) Then On 11/8/21, Emergency grievance # 95-11-21 I filed 11/3/21 seeking to **obtain adequate** medical treatment, the grievance officer Kelly **Pierce**'s response to that grievance in his Grievance Officer's Report stated, " Individual in custody submitted a grievance dated 11/3/2021 and grieves treatment for his right hand when it was injured in a fight on 8/16/2021; Relief Requested: "I get an X-ray by a outside hospital nurse, a second opinion, an "MRI" to check for any nerve damage, some pain pills to numb the pain until I can get the prop treatment, and I want whatever treatment necessary if it shows my hand is broke or I have any nerve damage,' Grievance # 95-11-21 was received on 11/3/2021 and marked emergency by the offender; it was deemed of emergency nature by the Warden on 11/5/2021 and returned to grievance Office for processing on 11/8/2021; this is a duplicate grievance issue addressed in Grievance # 232-10-21 and will not be addressed further; recommend -ing: It is the recommendation of this grievance Officer that the inmate's grievance be MOOT denying plaintiff's grievance without providing him any treatment and the warden concured with the grievance officers findings, and plaintiff appealed the denial of receiving access to adequate medical treatment to the ARB Board. (See Exhibit # 31.

53.

**(111.)** Grievance officer, Kelly Pierce, grievance personnel, non-medical prison official was made aware of plaintiff's predicament by way of his grievances and other correspondences when plaintiff sustained a severe hand injury and broke his hand in a fight in self defense seeking to protect himself from another inmate and Kelly pierce obtained actual knowledge of plaintiff's objectively serious medical condition through two of inmate's coherent and highly detailed emergency grievances that were deemed an emergency by the Warden and other correspondences, and that grievance officer and each of the other grievance officials, Sheila M. Ramsey and Allison P. Hargis failed to exercise his or her authority to intervene on inmate's behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his ~~emergency~~ unconstitutional treatment exhibiting deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment rights to prohibition of Cruel and Unusual punishment, causing him unnecessary and wanton infliction of pain, prolonging his suffering for approximately 4 additional months from the time they received his grievance before he seen a physician at the outside clinic, exacerbating his injury, causing him irrepairable damage, permanent disfigurement, deformity, loss of functioning in his dominate right hand, and loss of range of motion, preventing him from being able to receive the corrective surgery from his broken hand due to the 6 month delay from the date of his injury and the date he was evaluated by the Orthopaedic Hand Specialist Medical Doctor at the outside Clinic. (See Exhibits #31, #28, #23, #27, #32, #25, #24, #30, #26, #29, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #45, #44, #46, #47, #49, #50, #48, #22, #95, #116, #110, #94).

**(112.)** Grievance officer had a duty and responsibility to review emergency grievances and respond to them, and to ensure medical treatment is being afforded to the offender, the pain medication received, and the issue of treatment being appropriate is to be deemed and determined by professionals; and contact Facility Medical staff to verify medical treatment provided to plaintiff and his compliance with treatment protocol which he didn't do, because if he did he would've been aware of the Medical Doctor's Radiologist, N. Yousuf, X-ray report findings on two different occassions prior to filing his emergency grievances dated 9/14/21 and 10/13/21 M.D. Review referral for plaintiff to see an outside Doctor at a clinic for an

**154.**

evaluation constituting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, state laws, guidelines, duties and job responsibilities, resulting in plaintiff being caused unnecessary and wanton pain, prolonging his suffering for a severe hand injury in a broken hand due to him being denied access to adequate medical care, which exacerbated his ███ injury causing him irreparable damage, permanent disfiguration, deformity, loss of functioning in his predominate right hand, loss of range of motion, in violation of his Eighth Amendment right to prohibition of Cruel and Unusual punishment and exhibiting deliberate indifference to his serious medical needs. (See Exhibits #31, #28, #23, #27, #32, #25, #24, #30, #26, #29, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #45, #44, #46, #47, #49, #50, #48, #22, #95, #116, #110, #14, #21, #16, #11, #12, #13, #14, #15, #17, #18, #19, #20, #110).

**11B.** Illinois Department of Corrections Administrative Directive, number: 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, Policy states, "the Department shall ensure offenders have access to adequate health care; (F.)(3.)(b.) states, "All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse ███ practitioner as needed; (F.)(3.)(C.) states, "offenders shall be referred for specialty services if determined medically necessary (specialty Services - includes non-routine services if determined and items including, but not limited to, off-site consultations, off-site x-rays, non-formulary medications and medical equipment; yet the grievance officer, Kelly Pierce, denied plaintiff access to adequate health care, nor did they ensure he received adequate medical care when plaintiff filed two emergency grievances seeking treatment for his severe injury for a broken hand and them being aware of the inappropriate treatment he's been receiving up until that point, constituting Deliberate and Intentional Indifference for not following their own policies, guidelines, and state law, causing plaintiff unnecessary and wanton infliction of pain, prolonging his suffering and exacerbating his injury leading to irreparable damage, permanent disfiguration, loss of functioning, and loss of range of motion in violation of the Eighth Amendments prohibition of Cruel and Unusual Punishment. (See Exhibits #112, #22, #26, #30, #24, #25, #33, #27, #23, #28, #31, #110).

**11C.** Illinois Department of Corrections Administrative Directive, number: 03.02.108, Title:

[54.] [55.]

- Standard Of Conduct", effective 1/1/2021, Policy - (G.) Requirements - (I.) Compliance with Laws and Regulations : (a.) Employees shall obey all federal, state, and local laws; (b.) Employees shall obey all applicable court decisions and orders related to the performance of their job duties; (d.) Employees shall comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities; which both grievance grievance officer, Kelly Pierce, violated state law policies A.D. 04.03.103 and plaintiff's Eighth Amendment rights prohibition of Cruel and Unusual punishment by being deliberate indifferent to his serious medical needs when they denied him access to adequate medical care causing plaintiff unnecessary and wanton infliction of pain, constituting Deliberate and Intentional Indifference for not following their own policy, rules, regulations, state law, and for violating IDOC Department Rule 504 Grievance Officer regulations under Medical (OR 415) by not fulfilling his duty and responsibility to review emergency grievances and respond to them, and to ensure medical treatment was being afforded plaintiff, pain medication was given to him, leaving the treatment issue of whether it was appropriate or not to **be** determined by Professionals, and for not contacting Facility Medical Staff to verify medical treatment provided to plaintiff and his compliance with treatment; and for not properly investigating plaintiff severe hand complaints and the Medical Doctor's Radiologist X-ray finding reports where they reffered plaintiff twice to be seen by an Outside Clinic Doctor for an evaluation by Radiologist M.D. N. Yousuf. (See Exhibit # 95, # 110, # 112, #11, #12, #13, #14, #15, #16, #17, #18, #19, #21, #22, #28, #23, #27, #32, #25, #24, #30, #26, #31, #123, #119, #121, #116, #117).

(115.) In the "Wexford Health Source Incorporated Provider Handbook" which lists it's policies it states under "Emergency Care" that emergency care is available twenty four (24) hours a day, seven days a week. Any inmate must have access to health care unit personnel for immediate medical service any time an emergency arises. Medical personnel (or teams) are also available to respond to a cell or other areas in the prison to meet medical needs. Another option for emergency Care is referral to a local emergency department if a physician is not on site AND the medical personnel deems this appropriate, or if the needed medical service is beyond the capability of the unit personnel. Medical personnel must contact the medical

56.

Director / designee first unless the emergency is life/limb threatening. (See Exhibits # 94).

116. The "Wexford Health Sources Incorporated Provider Handbook" states: "Inmates have access to emergency service anytime there is no scheduled service available; Emergency service can be provided onsite by whatever level of provider able to meet the level of care necessary. If the unit has sufficient equipment and personnel skill to meet the patient's problem, it should be managed there; if the facility, equipment, or skill level of the onsite personnel is inadequate, the patient may be transferred to the nearest hospital emergency department; ~~transferring~~ if no staff physician is on site and the situation is life-threatening, the attending nurse may make the decision to transfer the patient. in such an event, the unit medical director must be notified at the earliest possible time; Wexford must authorize payment for this service, so an Emergency Referral Sheet should be faxed to the wexford Pittsburgh office as soon as reasonably possible. (See Exhibit # 94).

117. "The Wexford Health Sources Incorporated Provider Handbook" states: under "Doctor's Sick call" an inmate has the right to request to see a physician; this request should be honored within seventy-two (72) hours, inmates seen in sick call by the nurses are frequently "referred" to Doctor's call for evaluation, diagnosis, and/or treatment. (See Exhibit # 94).

118. The Grievance Officer, Kelly Pierce, denied plaintiff access to adequate medical care and personnel despite him having a right to emergency care that's supposed to be made available 24 hours a day, seven days away, inspite of him filing multiple grievances complaining of the severe pain and suffering he was experiencing for a broken hand injury he suffered in a fight in self-defense trying to protect himself and both emergency grievances filed were deemed as an emergency by the warden, which according to their own policies, rules, regulations, and state law plaintiff should've been referred to an outside physician since Menard C.C. doesn't have a physician on site at all times to properly assess or examine or diagnose inmates injuries which lead to his misdiagnoses of his Fractured hand due to Wexford's unconstitutional policies, and with Kelly Pierce being Deliberate and Intentional In-

57.

-difference to plaintiff's serious medical needs by not following their own policies, rules, laws of the state, and regulations which lead to plaintiff's unnecessary and wanton infliction of pain, prolonging his suffering by denying him access to adequate emergency medical care, and exacerbating his injury, causing him irreparable damage, prolonged pain, loss of function, loss of range of motion, permanent disfiguration as well. (See Exhibit # 94, #41, #22, #27, #30, #23, #24, #26, #28, #25, #33, #34, #35, #36, #37, #38, #39, #40, #42, #43, #45, #44, #46, #47, #50, #48, #29, #31, #32).

Warden - Anthony Wills / Denial Of Access To Adequate Medical Care And Deliberate Indifference To Plaintiff's Serious Medical Needs

119. Plaintiff's reallege and incorporate by reference paragraphs 73-84.

120. On 11/9/21, Warden, Anthony Wills concurred with the grievance officer's Kelly Pierce denial of plaintiff's grievance denying him adequate medical care saying, "this is a duplicate grievance issue addressed in Grievance #232 10-21 and will not be addressed further", and the Warden, Anthony Wills signed off checking the box "I Concur" on 11/10/21, constituting deliberate and intentional indifference to plaintiff's serious medical needs, causing him unnecessary and wanton infliction of pain, exacerbating his injury by delaying him access to be seen by a physician at an outside clinic until three months after the Warden's denial of his grievance and having knowledge of his severe hand injury and inadequate treatment he was receiving, that caused him irreparable damage, permanent disfiguration, deformity, loss of functioning, loss of range of movement, prolonging my suffering. (See Exhibit # 31, #30, #22, #26, #24, #25, #32, #27, #23, #28, ).

121. IDOC Administrative Directive, 04.03.112, Title: Medical and Health Care, effective: 9/1/02, States the Department shall ensure that each **offender** placed within a transition center has access to necessary medical and dental services that are provided either within the community or at the nearest appropriate adult level one through level seven or Juvenile Level One through Level Four correctional facility. (See Exhibit # 121).

122. IDOC Administrative Directive, 04.03.112, Title: Medical and Health Care, effective: 9/1/02, (I.) Procedure, (A.) Purpose; states the purpose of this directive is to establish written

58.

guidelines for staff governing availability of medical and dental services for offenders placed within a transition center (prison). (See Exhibit # 121).

123. IDOC Administrative Directive, 04.03.112, Title: Medical and Health Care, effective: 9/1/02, (F.) Requirements – states it's the Chief Administrative Officer who shall establish written guidelines including the following provisions: (1.) A current list shall be maintained of available medical and dental facilities within the community, that shall be used when appropriate; the list shall include "free clinics" where available; (2) All necessary medical and dental services shall be arranged and approved by the Chief Administrative Officer which shall include: (a.) Making appointments; (b.) Arranging for prescriptions to be filled; and (c.) Arranging for hospitalization within the community, when necessary. (See Exhibit # 121).

124) When plaintiff suffered a severe hand injury in a fight and broke his right hand and filed multiple complaints to medical personnel seeking relief for his pain and suffering only to be misdiagnosed, given ineffective and inadequate medical care, not following the Medical Doctor's recommendations one two seperate occassions to refer plaintiff to be seen by an outside Clinic Orthopaedic Hand Specialist for an evaluation to properly assess and examine his injury, and filling multiple emergency grievances to the warden Anthony Wills making him aware of his receipt of inadequate treatment by medical staff and repeated complaints of pain and suffering and request to go to an outside hospital and second opinion, x-ray to relief him of his pain, which Warden deemed as an emergency in response of the two grievances plaintiff filed within a 30 period only for it to fall on deaf ears and be denied access to adequate medical care after being made knowledgeable of an excessive risk to plaintiff's severe hand injury with the warden disregarding that risk by denying the grievance and concurring with the grievance officers finding, when it was Anthony Wills responsibility and Duty by state law, policy, guidelings to ensure all necessary medical care was afforded and arranged and approved for plaintiff's medical emergency and need to be seen by an Orthopaedic Hand specialist which he didn't do; constituting Deliberate and Intentional Indifference for not follow his own policies, state law, regulations, procedures, which caused plaintiff's unnecessary and wanton infliction of pain, prolonged suffering, and exacerbating his injury due to the 6 month delay in seeing an Orthopaedic after injury, leading to irrepairable damage, permanent disfiguration, deformity, loss of functions, loss of

59.

of range of motion, depression, migraines, headaches, insomnia, and extreme discomf
-ort for being Deliberate Indifferent to plaintiff's serious medical needs in
violation of the Eighth Amendments prohibition of Cruel and Unusual Punishment.
(See Exhibits # 121, #110, #28, #23, #27, # 32, #25, #24, #30, #26, #22, #31, #1,
#10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #51, #52, #41, #42, #43, #40, #39,
#38, #37, #36, #35, #34, #33, #94, #116, #117).

125. I DOC Administrative Directive, number 04.03.105, Title: Cronic Illnesses, effective:
5/1/19, state law and policy guidelines state, "in (I.) Policy: The Department shall
monitor offenders who have chronic illnesses at regular intervals to ensure continuity
and quality of medical care; and (II.) Procedure: (A.) Purpose - the purpose of
this directive is to establish uniform procedures to ensure adequate medical care
is provided to offenders who have chronic illnesses. (See Exhibit # 93).

126. IDOC Administrative Directive, number 04.03.105, Title: Cronic Illnesses, effective: 5/1/19,
(E.) Requirements, (3.) state law policy states the Chief Administrative Officer shall ensure
that, at minimum, offenders who have a stable chronic illness are monitored and seen
by health care professionals in accordance with the following schedules, or as indicate
-d by a physician; (1.) Documentation of the control, such as good, fair or poor, should
be included in all chronic clinic assessments; (4.) Offenders who have a chronic illness
that is unstable (poor control) shall be seen more frequently at intervals determined
by the physician; (6.) Each chronic clinic health visit shall be documented on the DOC
0552 or the, Patient education shall also be documented; The chronic illness forms shall
be filed in the offender's medical record in chronological order behind the chronic clinic
tab; and Tele-med will use a documented SOMPE note. (See Exhibit # 93).

127. Warden, Anothony Wills, violated State law Policy when he failed to fulfill his
Job title duty and responsibility to ensure, plaintiff who had a chronic Illness
of a severe hand injury in the form of cronic pain and discomfort for a broken
hand, received adequate medical care and making sure it was provided to plaintiff,
as well as ensure, at minimum, plaintiff with a chronic illness was monitored and
seen by a health care professionals in accordance to policies, which Anothony Wills,
the Chief Administrative Officer, didn't do when plaintiff filed multiple grievances
complaining about **inadequate** medical treatment given to him and his continued pain
and suffering experienced for a broke hand severe hand injury providing plaintiff-

60.

no relief to his serious **medical needs** and denied him access to adequate medical care and to see a physician for evaluation for 6 months after sustaining injury, constituting Deliberate and Intentional Indifference for failing to follow ~~their~~ own policy, procedure, regulation, and state law, which caused plaintiff unnecessary and wanton infliction of pain, prolonged suffering, irreparable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, migraines, headaches, depression, loss of sleep, and extreme discomfort. (See Exhibit # 93, #110, #28, #23, #27, #32, #25, #24, #30, #26, #22, #31, #1, #10, #11, #12, #13, #14, #16, #17, #18, #19, #20, #21, #51, #41, #42, #43, #40, #39, #38, #37, #36, #35, #34, #94, #116, #117).

128.) IDOC Administrative Directive, number. 04.03.108, Title: "Response To Medical Emergencies; effective: 3/1/2023, (I.) Policy -states the Department shall have an emergency response team at each facility, with the exception of Transitional Security Facilities, that is prepared and equipped to respond to all medical emergencies in a timely and orderly fashion; and (II.) Procedure — (A.) Purpose — **states** the purpose of this directive is to establish a written procedure governing the responsibilities of staff responding to medical emergencies. (See Exhibit # 119).

129. IDOC Administrative Directive, number. 04.03.108, Title: "Response To Medical Emergencies; effective: 3/1/2023; (G.) Requirements For Transitional Security Facilities: States in event of a medical emergency: Security staff shall initially provides assistance for techniques in which training has been completed in accordance, with this directive; if deemed a medical emergency, any additional staff on the scene may contact outside emergency medical services to prevent delay in care. (See Exhibit # 119).

130.) IDOC Administrative Directive, number. 04.03.108, Title: "Response To Medical Emergenc; effective: 3/1/2023, (G.) (2.) states the individual in custody shall not be transported from the facility until notification has been made to the Shift Supervisor or above. (See Exhibit # 119).

131. IDOC Administrative Directive, number. 04.03.108, Title: "Response To Medical Emergencies", effective: 3/1/2023, (G.) (3.) states when time allows, the shift supervisor (or designee) shall notify the Duty Administrative Officer prior to the individual in custody leaving the facility. (See Exhibit # 119).

132.) IDOC Administrative Directive, number. 04.03.108, Title: "Response To Medical Emergency

...es, effective: 3/1/2023, (G.) (4.) "States," the situation, contacts and resolution shall be documented in the individual in custody's center file. (See Exhibit # 119).

132. IDOC Administrative Directive, number. 04.03.108, Title: "Response To Medical Emergencies; effective: 3/1/2023, (G.) (5.) states, Emergency response drills shall be conducted on each shift at least semi-annually; At least one of these drills shall be a mass casualty drill covering relevant medical situations, such as multiple stabbings and chemical agents, and must be conducted annually. (See Exhibit # 119)

134. Warden, Anthony Wills, has responsibility to establish an emergency response team who is equipped to respond to all medical emergencies in a timely and orderly fashion, and when deemed a medical emergency any additional staff on the scene may contact outside emergency medical services to prevent delay in care, and transported to an outside clinic, which Warden Anthony Wills didn't do to ensure plaintiff was taken to an outside clinic for an emergency care after he filed two emergency grievances that the Warden deem emergencies yet provided No medical care and denied access to medical professionals and adequate medical care constituting Deliberate and Intentional Indifference for not following their own state law, policies, regulations, procedures, which caused plaintiff unnecessary and wanton infliction of pain, prolonged suffering, irreparable damage, exacerbating his injury due to a 6 month delay from date of injury before he was seen by an outside physician, permanent disfiguration, deformity, loss of functionly, loss of range of motion, severe depression, migraine, headache, extreme discomfort. (See Exhibit # 119, # 93, # 110, # 28, # 23, # 27, # 32, # 25, # 24, # 30, # 26, # 22, # 31, # 1, # 10, # 11, # 12, # 13, # 14, # 16, # 17, # 18, # 19, # 20, # 21, # 51, # 41, # 42, # 43, # 40, # 39, # 38, # 37, # 36, # 35, # 34, # 94, # 116, # 117).

135. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 5/19/19, (I.) Policy - states the department shall ensure offenders have to adequate health care; (II.) Procedure: (A.) Purpose - the purpose of this directive is to establish a uniform procedure for the provision of health care services to offenders in correctional facilities. (See Exhibit # 112).

136. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 5/19/19, (E.) Requirements - the Chief Administrative Office (CAO) shall develop a written procedure covering the provision of health care services within the facility: (a.) 62.1

the procedure shall be dated and signed by the "CHO" and the designated health care authority for the facility and approved by the Agency Medical Director, with the procedure shall provide the following: (1.) Direction - the health care services programs shall be directed by a designated health care authority whose scope of duties are detailed in a written agreement, contract or job description that is reviewed annually and revised when necessary; (3.) Offender Access: (a.) All offenders shall have an an Intake exam upon admission to a reception and classification center, performed in accordance with Administrative Directive 04.03.101. (See Exhibit # (12).

137. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, (F.) (b.) states all offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed. (See Exhibit # 112).

138. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, (F.) (C.) states offenders shall be referred for specialty services if determined medically necessary; (Specialty Service - includes non-formulary medications and medical equipment). (See Exhibit # 112).

139. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, (F.) (1.) (C.) (1.) states if a facility physician, physician's assistant or nurse practitioner deems specialty services necessary, medical services referral report, DOC 0254, shall be submitted to the Facility Medical Director. (See Exhibit # 112).

140. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, (F.) (5) Medical Treatment (b.) state's the physician's opinion and recommendation and the Chief Administrative Officer or the Duty Administrative Officer's approval shall promptly be documented on an offender Medical Emergency Consent Waiver, DOC 0095, and placed in the offender's medical record. (See Exhibit # 112).

141. IDOC Administrative Directive, number. 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, (F.) (6) Review of Sick Call Requests, (a.) Health care staff shall review offender sick call requests within 24 hours of receipt; medical emergencies shall be addressed as they occur; (b.) Upon determination that a nursing evaluation is appriate, health care staff shall schedule an evaluation; the evaluation shall take place within 24 hours of receipt of the request, 72 hours on weekends, or sooner, as

63.

clinically indicated, (See Exhibit # 112).

142.) IDOC Administrative Directive, number 04.03.103, Title: Offender Health Care Services, effective: 1/1/84, (F.)(6.)(C.) states when an offender's request for non-emergency medical attention results in referral to a primary care physician by the screening health care staff, the primary care evaluation shall take place within 72 hours upon the next scheduled visit by a primary care physician. (See Exhibit # 112).

143.) Warden, Anthony Wills, failure to provide and ensure plaintiff had access to health care personnel and be referred to a Orthopedic physician as needed for emergency care after plaintiff's severe hand injury was deemed an emergency on two different occassions, and the Warden was supposed to promptly approve the medical doctor' Radiologist recommendation and referral to the outside clinic on two different occassion on dates 9/14/21 and 10/13/21 by Radiologist N. Yousuf, nor did plaintiff's referral to a primary care physician by screening health care staff lead to plaintiff being seen and evaluated within 72 hours as state law and policy requires, constituting Deliberate and Intentional Indifference for not following their own policy, state laws, rules and regulation, causing plaintiff unnecessary and wanton infliction of pain, exacerbating his injury by it leading to irreparable damage, permanent disfiguration, loss of function-ing, loss of range of motion, extreme suffering and discomfort, depression, headaches, insomnia. (See Exhibit # 112, # 28, # 23, # 27, # 32, # 25, # 24, # 30, # 26, # 22, # 31, # 29, # 50, # 48, # 41, # 49, # 47, # 43, # 42, # 40, # 39, # 38, # 37, # 36, # 35, # 34, # 33, # 11, # 12, # 13, # 14, # 15, # 16, # 17, # 18, # 19, # 20, # 21, # 110).

144.) 🔲 IDOC Administrative Directive, number: 03.02.108, Title: Standards of Conduct, effective: 1/1/2021, Policy - (G.) Requirement - (1.) Compliance with laws and regulations: (a.) employees shall obey all federal, state and local laws; (b.) employees shall obey all applicable court decisions and orders related to the performance of their job duties; (d.) Employees shall comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities; which Warden Anthony Wills violated state law policies A.D. 04.03.103, A.D. 03.02.108, A.D. 04.03.108, A.D. 04.03.105, A.D. 04.03.112, and plaintiff's Eighth Amendment rights prohibition of Cruel and Unusual punishment by being deliberate indifferent to his serious medical needs when they denied him access to adequate medical care causing plaintiff unnecessary and wanton infliction of pain, constituting Deliberate and Intentional

🔲 64.

~ Indifference for not following their own policy, rules, regulations, and state law, causing him irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion, prolonged suffering and extreme discomfort, depression, headaches, migraines. (See Exhibit #110, #112, #122, #93, #121, #119, #113, #28, #23, #27, #32, #25, #24, #30, #26, #22, #31, #29, #50, #48, #41, #49, #47, #43, #42, #40, #39, #38, #37, #36, #35, #34, #33, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #110).

(145.) IDOC Administrative Directive, number: 04.03.121, Title: Treatment Protocols, effective: 5/1/2019, (G.) Requirements: (3.) - States Chief Administrative Officer of each facility using treatment protocols shall ensure a local procedure is developed for the use of treatment protocols by non-physicians health care staff, with the procedure shall require the following: (9.) Any offender evaluated for the same complaint three times within 30 days be referred to the physician, physician's assistant or nurse practitioner for evaluation. (See **Exhibit #111**).

(146.) Warden, Anthony Wills, violated A.D. 04.03.121, because it was his responsibility to ensure a local procedure is developed for the use of treatment protocols by non-physicians health care staff which shall require that when plaintiff was evaluated for the same complaint of his severe hand injury via sick calls and X-rays which the Medical Doctor Radiologist referred plaintiff to see a physician in 30 days by Nurse Practitioner J. Crane and Nurse Alisa Dearmond, yet Warden Anthony Wills still didn't ensure or refer plaintiff to see a physician Ortopaedic Hand Specialist for an evaluation, constituting Deliberate and Intentional Indifference for not follow their own policy, rules, regulations, state law, causing plaintiff unnecessary and wanton infliction of pain, exacerbating his injury with irrepairable damage, permanent **disfiguration**, deformity, loss of functioning, loss of range of motion, prolonged suffering, and severe discomfort and depression. (See Exhibit #111, #110, #23, #28, #27, #32, #25, #24, #30, #26, #22, #31, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #41, #29, #43, #42, # ).

65.

" Director - Rob Jeffreys / And -
" Administrative Review Board - DeAnna Kink / Denial Of Access To Adequate Medical Care And Deliberate Indifference To Plaintiff's Serious Medical Needs In Violation of The Eighth Amendment prohibition of Cruel And Unusual Punishment" )

147.) Department Rules Section 504:850 Appeals, guidelines states : (a.) If, after receiving the response of Chief Administrative Officer, the individual in custody still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director; The Appeal must be received by the Administrative Review Board within 30 days after the date of the decision, with copies of the grievance officer's report and the Chief Administrative Officer's decision should be attached. (See Exhibit # 116).

148.) Department Rules Section 504:850 Appeals, guidelines states : (b.) An Administrative Review Board shall be appointed by the Director. (See Exhibit # 116).

149.) Department Rule Section 504:850 Appeals, guidelines states : (c.) The Administrative Review Board shall meet as frequently as necessary and may schedule hearings on grievances, and hearings may be conducted in person or via video or telephonic conference; the board may call witnesses or examine records at its discretion. (See Exhibit # 116).

150.) Department Rules Section 504:850 Appeals, guidelines states : (d.) The Administrative Review Board shall submit to the Director a written report of its findings and recommendations. (See Exhibits # 116).

151.) On 11/20/21, plaintiff appealed the denial of supplemental grievance # 95-11-21, which was a duplicate grievance of emergency grievance filed on 10/15/21 to the Warden, that the grievance officer and warden both denied plaintiff access to adequate medical care and treatment from an outside physician for his severe hand injury (broken hand), to the Administrative Review Board along with attached "Grievance Officer's Report", "Chief Administrative Officer's Response" and copy of Emergence Grievance # 95-11-21. (See Exhibit # 27, # 22, # 31, # 32          ).

152.) Administrative Review Board Administrator, DeAnne Kink, and Director, Rob Jeffreys, received appeal of emergency grievance # 95-11-21 on 11/18/2021, both reviewing it and denying plaintiff's appeal seeking access to adequate medical care and treatment on 12/1/21, for his severe hand injury (broken right hand) and continued pain and suffering constituting deliberate indifference to his serious medical needs in violation of his —

66.

Eighth Amendment prohibition of **Cruel** and Unusual Punishment, constituting unnecessary and wanton infliction of pain, exacerbating his injury causing irreparable damage, permanent disfiguration, deformity, loss of functioning, loss or range of motion, prolonged suffering, depression, headaches, migraines, (See Exhibit # 116, # 22, # 32, # 31, # 27, # ).

153. Administrative Review Board Administrator, DeAnna Kink, and Director, Rob Jeffreys, non medical prison officials were made aware of plaintiff's predicament by way of his grievances and other correspondences when plaintiff sustained a severe hand injury and broke his hand in a fight in Self defense seeking to protect himself from another inmate and DeAnna Kink and Rob Jeffreys obtained actual Knowledge of plaintiff's objectively serious medical condition through two of inmate's coherent and highly detailed emergency grievances that were deemed an emergency by the warden and other correspondences, and that grievance officer and each of the other grievance officials, and Administrative Review Board Administrative, DeAnna Kink, and Director, Rob Jeffreys all failed to exercise his or her authority to intervene on inmate's behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his █ unconstitutional treatment exhibiting deliberate indifference to plaintiff's serious needs in violation of his Eighth Amendment rights to prohibition of Cruel and Unusual punishment, causing him unnecessary and wanton infliction of pain, prolonging his suffering for approximately █³ additional extra months from the time they reviewed his grievance before he seen a physician at the outside clinic, exarcerbating his injury, causing him irrepairment damage, permanent disfiguration, deformity, loss of functioning in his dominate right hand, and loss of range of motion, preventing him from being able to receive the corrective surgery from his broken hand due to the 6 months delay from the date of his injury and the date he was evaluated by the Orthopaedic Hand Specialist Medical Doctor of the outside clinic. (See Exhibits # 31, # 28, # 23, # 27, # 32, # 25, # 24, # 30, # 26, # 29, # 33, # 34, # 35, # 36, # 37, # 38, # 39, # 40, # 41, # 42, # 42, # 43, # 45, # 44, # 46, # 47, # 49, # 50, # 48, # 22, # 95, # 116, # 110, # 94).

154. On 12/1/21, DeAnna Kink and Rob Jeffreys, both after review of the findings and recommendations of the board they determined the following which led to the denial of his emergency grievance : ① this office previously addressed the issue on 11/29/21, ②

67.

no justification provided for additional consideration, (3.) the date of the incident is outside of 60 days, does not meet DR 504 guidelines, and also, Grievance Officer Indicates this is a Duplicate Grievance with # 232-10-21, constituting deliberate indifference to plaintiff's serious medical needs for after being aware of inmates severe hand injury via grievances, reports, and appeals they denied him access to adequate medical care and provided him no treatment and access to see a physician for none medical reasons, exacerbating his injury leading to irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion, prolonged suffering, and unnecessary and wanton infliction of pain in violation of the Eighth Amendment right to prohibition of Cruel and Unusual punishment. (See Exhibit # 32, # 31, # 116, # 110, # 27, # 22, # 28, # 23, # 24, # 30, # 29, # 44, # ).

155. Department Rules Section 504:850 Appeals, guidelines states: (e.) The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonable fesible under the circumstances; the individual in custody shall be sent a copy of the Director's decision. (See Exhibit # 116).

156. Department Rules Section 504: 850 Appeals, guidelines states: (f.) In those instances in which an individual in custody is appealing a grievance determined by the Cheif Administrative Officer to be of an emergency nature, the Administrative Review Board shall expedite processing of the grievance. (See Exhibit # 116).

157. IDOC Administrative Directive, 04.03.112, Title: Medical and Health Care, effective: 9/1/02, states the department shall ensure that each offender placed within a transition center has access to necessary medical and dental services that are provided either within the community or at the nearest appropriate adult facilities, yet DeAnna Kink and Rob Jeffreys failed to do despite having knowledge of the inadequate medical treatment plaintiff received, them being aware of his severe hand injury (broken hand), complaints of pain and suffering, and repeated request to be seen by an outside hospital for a second opinion, and constant requests for access to adequate medical care for approximately 6 months after sustaining his hand injury, causing him unnecessary and wanton infliction of pain, exacerbating his injury in irreparable damage and permanent disfiguration, loss of functioning, loss of range of motion, prolonged suffering, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs

68.

—for not following their own policies, state laws, rules, and regulations in violation of the Eighth Amendment's prohibition of Cruel and Unusual punishment. (See Exhibit #121, #33, #22, #31, #27, #1, #10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #28, #23, #25, #24, #30, #26, #29, #48, #49, #47, #46, #44, #45, #43, #42, #41, #40, #39, #38, #37, #36, #35, #34, #33, #110).

158. IDOC Administrative Directive, number: 04.03.103, Title: Offender Health Care Services, effective: 1/1/20, Policy states, "The Department shall ensure offenders have access to adequate health care, (F.)(3.)(b.) states, "All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; (F.)(3.)(c.) states, "offenders shall be referred for specialty services if determined medically necessary (specialty Service - includes non-routine services and items, including, but not limited to, off-site consultations, off-site x-rays, non-formulary medications and medical equipment); yet DeAnna Kink and Rob Jeffreys both denied plaintiff access to adequate health care, nor did they ensure he received adequate medical care when plaintiff filed two emergency grievances seeking treatment for his severe had injury for a broken hand and then being aware of the inappropriate treatment he's been receiving up until that point, constituting Deliberate and Intentional Indifference, for not following their own policies, guidelines, and state law, causing plaintiff unnecessary and wanton infliction of pain, prolonging his suffering and exacerbating his injury leading to irrepairable damage, permanent disfiguration, loss of functioning, loss of range of motion in violation of the Eighth Amendments prohibition of Cruel and Unusual Punishment. (See Exhibit #112, #22, #27, #30, #23, #24, #25, #28, #26, #32, #31, #110, #50,           ).

159. IDOC Administrative Directive, number: 03.02.108, Title: "Standards of Conduct," effective: 1/1/2021, Policy - (G) Requirements - (1) Compliance with Laws and Regulations: (a.) Employees shall obey all federal, state and local laws; and (b.) employees shall obey all applicable court decisions and orders related to the performance of their job duties; (d.) employees shall comply with departmental rules, written procedures, bulletins and written or verbal orders issued by proper authorities, which both DeAnna Kink and Rob Jeffreys violated state law policies A.D. 04.03. 112, A.D. 04.03.103, A.D. 03.02.108, Department Rules 504, Eighth Amendments Cruel—

69.

and Unusual Punishment, constituting Deliberate and Intentional Indifference for not following their own policy, rules, regulations, and state law, by being deliberate indifferent to plaintiff's serious medical needs when they denied him access to adequate medical care causing plaintiff unnecessary and wanton infliction of pain, exacerbating his hand injury causing him irreparable damage and permanent disfiguration, loss of functioning, loss of range of motion, prolonged suffering. (See Exhibit # 110, # 112, # 22, # 27, # 32, # 31, # 27, # 50, # 116, # 117, # 10, # 11, # 12, # 13, # 14, # 15, # 16, # 17, # 18, # 19, # 20, # 21, # 41, # 124, ).

(160.) (■.) Illinois Department Of Correction Administrative Directive, 03.01.307, Title: Discrimination and Harassment, effective: 9/1/2022, (I.) Policy states, "The department prohibits any form of unlawful discrimination and harrassment; (II.) Procedure - (A.) The purpose of this directive is to establish written procedures governing the responsibilities of staff for compliance with Department policy prohibiting unlawful discrimination and harassment; (E.) General Provision - (1.) For purposes of this directive, examples of discrimination include, but are not limited to, the following: (a.) Less favorable treatment because of race, color, religion, gender, national origin, ancestry, age, marital status, citizenship status, sexual orientation, military status, unfavorable military status, arrest record, language, order of protection status, pregnancy or disability; and (b.) Use of a neutral employment practice that has a disparate impact on a protected class group and is not justified by business needs. (See Exhibit # 123).

(161.) (■.) Menard Correctional Center and it's staff specifically non-medical personnel, Kelly Pierce, Grievance office, Warden - Anothany Wills, ARB Board Administrator - DeAnna Kink, Director - Rob Jeffreys, have a policy and custom of unlawful discrimination and harassment through the use of the grievance process that has a disparate impact on Blacks by them having to disclose their race on the grievance form when filing complaints and seeking to obtain adequate medical care for their serious medical needs thats leads to Black inmates being discriminated against by being denied constitutionally adequate medical treatment, and are instead malicously receiving less favorable treatment because of race, or citizenship status, being harassed by hostile acts that relate to race, negative stereotyping as being labeled prisoners with criminal records, and plaintiff was unlawfully discriminated against by grievance officer and non-medical personnel, DeAnna Kink,

(■.) [70.]

, Anthony Wills, Kelly Pierce, Rob Jeffreys, by the disparate treatment plaintiff received based on his race of African American, color of his Black skin, and ethnicity, resulting in him being denied access to adequate medical care for his broken hand, constituting Deliberate and Intentional Indifference for not following their own policy, state law, guidelines, exhibiting deliberate indifference to plaintiff's serious medical needs, causing him unnecessary and wanton infliction of pain, exacerbating his injury and prolonging his suffering. (See Exhibit # 123, # 41, # 22, # 110, # 32, # 27, # 71, # 50, # 30, # 24, # 26, # 28, # ).

162. IDOC Administrative Directive, number: 01.02.350, Title: Addressing and Reducing Disparate Treatment and Impact, effective: 7/1/2023, (I) Policy: The Department shall ensure fair and equitable distribution of benefits in the assignment of individuals, ~~programs~~ in custody to custody levels, living units, job assignments of individuals, program assignments, education and Career and Technical Education programs opportunities ~~~~ and preparation and support for community re-entry; ensure all processes associated with institutional custody and classification, discipline and grievances are conducted fairly, and that decisions are not influenced by stereotypes or bias based on race, color or ethnicity, and provide an environment for individuals in custody that is free from harassment or disparate treatment based on race, color, ethnicity. (See Exhibit # 124).

163. IDOC Administrative Directive, number: 01.02.350, Title: Addressing and Reducing Disparate Treatment and Impact, effective: 7/1/2023, (II.) Procedure - (A.) Purpose - the purpose of this policy is to establish a means of identifying and addressing issues of disparity and to ensure respect and fair treatment of individuals in custody by implementing procedures and practices that rely on equitable and relevant criteria; (F.) The following processes shall be processed in a manner free of discrimination, bias, or any other action that contributes to or perpetuates disparate treatment based on race, color, or ethnicity; (C.) Individuals in custody shall have the opportunity to resolve issues and incidents in an informal setting prior to utilizing the formal grievance process as well as access to appeals; (d.) 1411 individuals in custody are entitled to invoke the grievance procedure for a broad range of complaints including, but not limited to: (1.) Policies and procedures

71.

—within the facility that impact the individual in custody; ② Actions by Department employees including contractual employees, volunteers and other individuals in custody; ③ Incidents or conditions occurring within the facility that impact the individual in custody personally; and; ④ Issues relating to health care and other concerns. (See Exhibit # 124).

164. [redacted] Grievance personnel and non-medical personnel, Kelly Pierce, Anthony Wills, Rob Jeffreys, and DeAnna Kink violated A.D. 01.02.350, (II.) (A.) (F.) (6.) (a.) (d.) (1.) (2.) (3.) (4.) which states in (6.) (d.) (4.) that states, "all individuals in custody are entitled to invoke the grievance procedure for a broad range of complaints including, but not limited to: Issues relating to health care and other concerns without disparity and to ensure respect and fair treatment of individuals in custody by implementing procedures and practice that rely on equitable and relevant criteria but plaintiff was unlawfully discriminated against when seeking to obtain adequate medical care and denied it, constituting Deliberate and Intentional Indifference for not following their own policy and state law and guidelines, exhibiting deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment prohibition of Cruel and Unusual punishment, causing him unnecessary and wanton infliction of pain, prolonging his suffering and worsening his injury leading to irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion. [See Exhibits # 124, #24, #41, #22, # 50, #31, #27, # 32, #110, #112, #34, #35, #36, #37, #38, #39, #40, #30, # 23, #24, #25, # 28, #26, ].

[71.] [72.]

" Nurse Practitioner- M. Moldenhauer / Denial Of Access To Adequate Medical Care And Deliberate Indifference To Plaintiff's Serious Medical Needs In Violation of The Eighth Amendment prohibition of Cruel And Unusual Punishment "

165. Medical Staff, Nurse duties requires that medical unit personnel should provide an area where inmates are treated with respect and concern, even if "extra effort" is necessary to make that happen, with medical services being a support service, with medical staff's concern and responsibility being with inmates medical care, and in spite of their situation inmates deserve to be treated with respect and concern. (See Exhibit # 94).

166. Nursing Sick Call Wexford Policy states that this service is provided daily by staff members, specifically nurses; inmates desiring to be seen usually signs up for sick call the day before; and after, protocols are used to guide the nurses triaging sick call, which such protocols should first be read and approved by the medical director, and once in use they be reviewed by the medical director to assure compliance. (See Exhibit # 94).

167. On 11/6/21, plaintiff was seen by sick call Nurse Practitioner, M. Moldenhauer, where plaintiff told M. Moldenhauer of his severe pain and suffering he was experiencing due to injuring his hand in a fight with it feeling like it was broke, with him unable to make a complete fist, and he showed her the deformity of his right hand where you could see the bone clearly and obviously out of place in comparison to his left hand, along with telling the nurse of all the ineffective and inappropriate forms of treatment he's been receiving by medical staff and only being prescribed inadequate pain pills for a severe hand injury which doesn't stop the pain or solves the problem and how he would like to be sent out to an outside clinic for a second opinion and see a physician because all 3 x-rays he had by Menard's medical staff all came back negative for any fractures which he felt a misdiagnosis; which is preventing him from receiving access to adequate medical care, yet dispite plaintiff's complaints and Nurse M. Moldhauer's knowledge of plaintiff receiving inadequate treatment ■ in the form of pain pills for a severe hand injury (broken hand), Nurse M. Moldenhauer persisted by giving plaintiff inappropriate treatment in the form of Ibuprofen 200 mg pain medication and following

73.

a course of treatment that she knew was ineffective, and failed to act reasonably to avert it, constituting deliberate indifference to plaintiff's serious medical needs, and denying him *or delaying* access to adequate medical care and access to see an Orthopaedic Hand Specialist physician, which exacerbated his injury and unnecessarily prolonging his pain, causing him unnecessarily prolonging his pain, causing him unnecessary and wanton infliction of pain, irrepairable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, depression, severe discomfort, migraines, headache all in violation of his Eighth Amendment right of prohibition of Cruel And Unusual Punishment. (See Exhibit #29, #1, #10, #12, #11, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #25, #26, #27, #28, #30, #31, #32.)

On 11/6/21, Nurse Practitioner, M. Moldenhauer, upon in person sick *call* evaluation had knowledge of plaintiff's constant complaints of pain and suffering due to his severe hand injury (broken hand) that he injured in a fight and the ineffective courses of treatment he received for 3 months by Menard's medical staff via only receiving pain pills and X-rays which all came back negative and several refusals from Radiologists requesting plaintiff be reffered to a physician yet wasn't done, and in M. Moldenhauer's "Offender Outpatient Progress Notes" protocol guidelines and regulations which states to "refer to MD (medical Doctor) if: any of the following symptons, *exist* – "Any deformity, severe pain or swelling, discoloration, limited motion, lack of warmth to touch, pulses diminished or absent or symptoms of impaired circulation" which she acknowledge in her report under pain scale 1-10? Severe pain rating was a "8" on a pain scale between ranges 1-10 and that plaintiff experienced severe pain, yet M. Moldenhauer refused to follow their own medical protocol guidelines, regulations, and policies by not reffering him to see

74.

a Medical Doctor as required by the symptoms plaintiff possessed and the medical protocol guidelines, regulations, and policies, constituting deliberate and intentional indifference and deliberate indifference to his serious medical needs, exacerbating his injury and prolonging his pain by denying and delaying him access to adequate medical care and access to a physician who's qualified to **properly** assess and diagnose, treat his severe hand injury by giving him ineffective treatment of pain medication, Ibuprofen 200mg tablets which she knew was inadequate and inappropriate course of treatment by repeated complaints of pain and suffering with plaintiff saying it's not fixing the problem, causing unnecessary and wanton infliction of pain, worsening his injury by the 3 month delay of see a physician leading to irrepairable damage, permanent disfiguration, loss of function, loss of range of motion, depression, headaches, migraines, severe discomfort, loss of sleep, for not following their own policies, medical protocol guidelines, in violation of the Eighth Amendment's prohibition of Cruel And Unusual Punishment. (See Exhibit #39, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #41, #23, #24, #25, #94, #26, #27, #28, #30, #31, #32, #).

169.) Nurse Practitioner, M. Moldenhauer as a nurse has a professional obligation and duty independtly to ensure that inmates receive constitutionally adequate care and when confronted with an "inappropriate or questionable practice" should not simply defer to that practice, but rather has a professional obligation to the patient to take appropriate action, whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority, which M. Moldenhauer didn't refer plaintiff to a Orthopaedic hand Specialist physician to discuss her concerns about plaintiff's continued complaints of pain and suffering -

[75.]

+ and the inappropriate treatment he was receiving for his severe hand injury and the questionable practice of all three X-rays coming? conducted in 30 days, one 4 days after the sustaining his injury which all came back negative for any fractures by other nurses and Radiologist Medical Doctors and Radiologists referring plaintiff to to see a physician at an outside Clinic, nor did M.Moldenhauer share her concerns with the Warden or Angela Crain, Medical Director and Health Care Unit Administrator higher authority, constituting Deliberate and Intentional Indifference to plaintiff's Serious medical needs, ~~causing~~ for not following medical staffs own laws, rules, regulations, guidelines, and policies, causing plaintiff unnecessary and wanton infliction of pain and suffering, for exacerbating his injury as a result of the 3 month delay from seeing a physician from the day of this sick call visit, causing permanent disfiguration, irrepairable damage, loss of functioning, loss of range of motion, extreme discomfort, depression, headaches, migraines, and prolonged suffering. (See Exhibit # 29, # 10, # 11, # 12, # 13, # 14, # 15, # 16, # 17, # 18, # 19, # 20, # 21, # 22, # 41, # 110, # 117, # 116,           ).

**(170.)** (~~~~) IDOC Administrative Directive, number: 03.02.108, Title: "Standard of Conduct," (G)(1)(a) (b) states, "Employees shall obey all federal, state and local laws, and shall obey all applicable decisions and orders related to the performance of their job duties which Nurse Practitioner (NP) M. Moldenhauer didn't do by violating his Eighth Amendment right by denying and delaying plaintiff access to adequate medical care and physician personnel, not following their own medical protocol guidelines to refer him to a physician if severe pain symptoms existed, which did yet still didn't refer him to be seen for an Orthopaedic Hand specialist for an Evaluation, for not ~~~~ ensuring he received emergency care by being transferred to see a physician at an outside Clinic, for not ensuring he was seen by a physician within 72 hours

(~~~~) 176.

to receive an assessment, evaluation, diagnosis, proper medical treatment, for not fulfilling their state law duties and professional obligations to ensure that plaintiff received adequate and timely medical care, which **led** to a three month delay in being seen by an Orthopaedic Hand Specialist **physician** and persisting in known ineffective courses of treatment in the form of **giving** only pain medication **despite** continued complaints of it not fixing the problem, constituting Deliberate and Intentional Indifference by not following their own state laws, rules, regulations, medical protocol guidelines, policies, exhibiting deliberate Indifference to his serious medical needs, causing him unnecessary and wanton infliction of pain, prolonged suffering, which exacerbated his injury in the form of irrepairable damage, permanent disfiguration, loss of functioning, loss of range of motion, extreme discomfort, depression, headaches, mirgaines, mental anguish, unnecessary suffering as well, all in violation of the Eighth Amendment's prohibition of Cruel And Unusual Punishment. ( See Exhibit #29, #33, #34, #40, #41, #36, #37, #38, #39, #42, #43, #48, #49, #47, #46, #44, #45, #23, #24, #25, #26, #27, #28, #30, #31, #32, #50, #1, #10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #94, #110, #117, #111, #123, #121, #112. ).

In the Wexford Health Sources Incorporated "Provider Handbook" of their medical staff policy guidelines and procedures under "Policies and Procedures" states, medical staff personnel shall be aware of the basic policies guiding the correctional operations which are found in the department's administrative directives where they are working; and it is vital that staff (medical personnel) read, know and develop the medical operation within the guidelines of these directives, which there will be a section that addresses the general operational policies of the medical unit, and the specific medical operations in

+ your assigned unit are described in the Institutional directives of each individual unit, with Wexford providing a set of medical policies and procedures as well as operational policies from which the medical staff can develop their own, and they're prepared with cross-references between the various standards to facilities. (See Exhibits # 94).

172. In the Wexford Health Sources Incorporated "Provider Handbook" of their medical staff policy guidelines and procedures under "The Basis for Care" (C.) states: The DOC/County (and medical contractor) is prohibited from practicing "deliberate indifference to serious medical needs" in the course of medical service, and are obligated to provide medically necessary care consistent with community standards; and (E.) states: also, each medical staff member has a direct responsibility to respect the inmate's civil right for reasonable medical service. (See Exhibit # 94).

173. In the Wexford Health Sources Incorporated "Provider Handbook" of their medical staff policy guidelines and procedures under "Emergency Care", shall be made 24 hours a day, seven days a week available with inmates having access to emergency care at anytime there is no scheduled service available; which emergency service can be provided onsite by whatever level of provider able to meet the level of care necessary; and if the facility, equipment, or skill level of the onsite personnel is inadequate, the patient may be transferred to the nearest hospital emergency department; and if no staff physician is on site and the situation is life threatening, the attending nurse may make the decision to transfer the patient; and in such an event, the unit medical director must be notified at the earliest possible time. (See Exhibit # 94).

174. On 12/1/21, Nurse Practitioner, M. Moldenhauer, evaluated plaintiff in person on a sick call request visit where he continued to complain about the pain and suffering he experienced due to his severe hand injury and seeking to be seen —

 (78.)



**174.**
**Cont.**

by a physician and nurse for an X-ray at an outside hospital for a second opinion and evaluation in attempt to seek adequate medical care to obtain proper treatment and be **relieved of** his pain an suffering, and M. Moldenhaner acknowledged his pain and **discomfort** and gave him some "Naproxen 500 mg pain medication to help cope with the pain, and requested he be referred to see an Orthopaedic Hand Specialist physician for an Eval of his **severe** right hand injury; Nurse practitioner deemed it an emergency, yet scheduled it for 2 months out from 12/1/21, even after being **made** aware **of** the 3 x-rays which all came back negative for no fractures and the Medical Doctor **Radiologist** review findings report referring plaintiff to be seen by an outside Clinic physican and receiving knowledge of him being seen for the same complaint of his severe hand injury within a 30 day period, yet (she) Nurse Practitioner, M. Moldenhaner still didn't ensure plaintiff was seen in 24 hours for emergency care, nor did she ensure he was seen by the physician for eval and proper treatment in a timely ~~manner~~ manner, denying or delaying him access to adequate medical care for non-medical reasons, ~~resulting in~~ exacerbating his injury and prolonging his pain and suffering, and causing him irrepairable damage, permanant disfiguration, deformity, loss of functioning, loss of range in motion, severe discomfort, **distress**, mental anguish, headaches, depression, loss of sleep, interfering with enjoying daily activities, constituting **deliberate indifference** to **plaintiff's** serious medical needs and unnecessary **and wanton** infliction of pain in violation of the **Eighth Amendments** prohibition **against** Cruel And Unusual Punishment. (See Exhibits # 33, #34, #40, #41, #36, #35, #37, #38, #39, #42, #43, #48, #49, #47, #46, #23, #24, #25, #26, #27, #28, #30, #31, #32, #50, #29, #1, #10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #94, #110, #111, #121, #119, #112, # ).

**79.**

175. IDOC Administrative Directive, number 04.03.103., Title: Offender Health Care Services, effective: 1/1/2020; (6) "Review of Sick Call Requests", (c.) states: "when an offender's request for non-emergency medical attention results in referral to a primary care physician by the screening health care staff, the primary care evaluation shall take place within **72 hours** or upon the next scheduled visit by a primary care physician. (See Exhibit # 112).

176. Upon plaintiff's sick call review on 12/1/21 by Nurse Practitioner, M. Moldenhauer, which his non-emergency medical attention resulted in referral to a primary care Orthopaedic Hand Specialist physician by nurse practitioner screening, which plaintiff should've been seen by the Orthopaedic physician within 72 hours for evaluation, M. Moldenhauer scheduled the "emergency eval" for 2/8/22, 2 months later, constituting Deliberate and **Intentional Indifference** for not following their own state law Administrative Directives, rules, regulations, policies, guidelines, and Wexford policies, constituting unnecessary and wanton infliction of pain, and exacerbating his injury resulting in irreparable **damage**, permanent disfiguration, deformity, loss of functioning, loss of range of motion, severe discomfort, prolonged suffering, depressing, **distress**, mental anguish, headaches, migraines, and loss of sleep, in violation of the Eighth Amendment's prohibition against Cruel and **Unusual** Punishment. (See Exhibits # 112, #33, #29, #41, #34, #40, #99, #36, #35, #37, #38, #39, #42, #43, #48, #49, #47, #46, #44, #45, #50, #32, #31, #30, #28, #27, #26, #25, #24, #23, #110, #117, # ).

179. Wexford's Health Sources Incorporated "Provider Handbook" of their medical staff policy guidelines and procedures under "Doctor's Sick Call" states: "An **inmate** has the right to request to see a physician; which this request should be honored within seventy-two (72) hours; and inmates seen in Sick Call by the nurses are frequently "referred"

80.

* to Doctor's Call for evaluation, diagnosis, and/or treatment. (See Exhibit # 94).

178. Upon plaintiff's sick call review on 12/1/21 by Nurse Practitioner, M. Moldenhauer, where Nurse Practitioner referred him to Doctor's Call for evaluation, diagnosis, and possible treatment, but she scheduled it for 2 months later instead of ensuring plaintiff was seen and evaluated by an Orthopaedic Hand Specialist Physician within 72 hours. Which was required by Wexford's Policy, constituting Deliberate and Intentional Indifference, for not following their own **Wexford** Policy, rules, **regulations**, guidelines, medical protocols, constituting unnecessary and wanton infliction of pain, ~~exacerbated~~ exacerbating his injury resulting in irrepairable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, severe discomfort, prolonged suffering, depression, distress, mental anguish, headaches, migraines, and loss of sleep, in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment. (See Exhibit # 94, #29, #33, # 34, #40, #36, #35, #37, #38, #39, #42, #43, #41, #48, #49, #47, #46, #44, #45, #50, #32, #31, #30, #28, #27, #26, #25, 24, #23, #94, #110, #112 #117, # ).

179. On 12/1/21, on plaintiff's sick call review by Nurse Practitioner, M. Moldenhauer, who deemed his severe hand injury an emergency and requested referral to be seen by an **Orthopaedic Hand** Specialist but scheduled it for 2/8/22, 2 months later, instead of providing him access to emergency care which is available twenty-four (24) hours a day, seven days a week, which plaintiff was required to have access to in the form of transport to a local emergency department if a physician isn't on site And the medical staff deems appropriate and if the needed medical service is beyond the capability of the unit personnel, which it was, yet Nurse Practitioner, M. Moldenhauer, didn't ensure he received —

80. 81.

(179. cont.)

—immediate Emergency Care access the same day or with 24 hours for non-medical reasons, constituting Deliberate and Intentional Indifference by not following their own rules, regulations, policies, guidelines, constituting unnecessary and **wanton** infliction of pain, and exacerbating his injury causing irrepairable damage, permanent disfiguration, deformity, loss of function-ing, loss of range of motion, depression, headaches, mental anguish, severe discomfort, prolonged suffering unnecessarily, and loss of sleep in violation of the Eighth Amendment's prohibition of Cruel and Unusual Punishment. (See Exhibit # 94, # 33, # 29, # 41, # 29, # 33, # 34, # 40, # 36, # 35, # 37, # 38, # 39, # 42, # 43, # 48, # 47, # 46, # 44, # 45, # 50, # 32, # 31, # 30, # 28, # 27, # 26, # 25, # 24, # 23, # 110, # 112, # 117,                                               ).

(82.)

"Health Care Unit Administrator / Medical Director - Registered Nurse - Angela Crain Denial And/or Delay of Access to Adequate Medical Care and Deliberate Indifference to Plaintiff's Medical Needs in Violation of Eighth Amendment's Prohibition of Cruel And Unusual Punishment"

180. Angela Crain is the Designee Medical Director at Menard Correctional Center whose position has the prime responsibility for establishing medical policy, with the corporate medical director will assure that all corporate medical policies comply with the state medical directive, and all unit medical directors will keep both the regional and the agency medical director informed of critical problems. (See Exhibit 94).

181. Angela Crain is also the Health Care Unit Administrator / Health Services Administrator (HSA) Site Manager at Menard C.C. who is the administrative leader of the unit is the health care unit administrative (HCUA) whose position manages all the administrative aspects of the medical operation with the goal of optimal unit efficiency with the key leadership personnel needing to become a tightly unit team with the prime objective of providing high medical service at ~~the most~~ the best possible price; who deals most frequently with the corrections staff, regional staff, and local health service administrators, since the administrator is expected to manage all the unit administrative details and orchestrate the staff functions, it is easy to understand the necessity of developing a close and interdependent relationship with this person; the HCUA/HSA deals extensively with the correctional staff and solves most of those inter-staff problems, and is the one most likely to represent your interests and/or concerns to the corrections staff. (See Exhibit "94")

182. "IDOC Department Rule 504" - "Health Care Services" guidelines and regulations states, the Menard health Care Unit provides the individual in custody population of Menard Correctional Center with medical, dental and mental health services, with the health care unit consisting of a first aid room, treatment/exam rooms, medical record department

 83.

, dental Clinic, laboratory, X-ray, eye clinic and infirmary; With the healthcare unit providing 24-hour nursing coverage and a physician on call 24hours a day 7 days a week; when medical problems develop that cannot be handled at menard's medical facility an individual in custody will receive off site medical care. (See Exhibit # 116).

183. IDOC Department Rules 504, "Sick Call Procedures" guidelines and regulations states the health care unit has developed a system for providing healthcare needs while you are an individual in custody at menard C.C.; you are requested to report any non-emergency health problem in writing on a sick call slip, which shall be placed in the sick call box located in your cell house during lockdown status sick call slips can be given to security staff, nurse, counselor; the assigned cell house nurse will review these slips daily and place you on the nurse sick call line for the next day; the morning you are scheduled for nurse sick call you will be deadlocked; Once the nurse sick call visit is complete and your symptoms warrant you will be reffered to a practitioner, and emergency health situations should be reported to cell house staff immediately for treatment. (See Exhibit # 116).

184. Under Wexford's Policy "Quality Assurance" management programs which requires leadership to constantly identifies quality medical services, persistently pursuing the goals identified by medical directors and maintains the levels achieved, also as part of that process is the candid review of error, mistake and disappointing outcomes, with the objective of continual review through quality assurance serves to identify deficiencies and improves patient outcomes. (See Exhibit # 94).

185. Under Wexford's Policy "Quality Assurance" peer reviews it is one of the responsibilities of the unit medical director is to provide review of provider medical care; although this is usually physician-physician review, in our units, physician-nurse or CMT review is also

+included; and generally, peer review should be performed at least annually by the regional regional medical director (or his disignee) and the unit medical director or as designated by the Doc/county, which Angela Crain's duty is requiring all peer reviews should give feedback to those healthcare providers being reviewed and must be kept confidential, and a copy of the peer reviews should be forwarded to Wexford's credentialing department for use as a reference during the reappointment process. (See Exhibit # 94).

(186.) (208.) Under Wexford's Policy "Administrative Services – (1.) Policies and Procedures" states, the basic policies guiding the correctional operations are found in the department's administrative directives where you are working, and it is vital that you read, know and develop the medical operation within the guidelines of these directives, and there will be a section that addresses the general operational policies of the medical unit, with specific medical operations in your assigned unit are described in the institutional directives of each individual unit, with Weford providing a set of medical policies and procedures as well as operational policies from which the medical staff can develop their own, these are prepared with cross-references between the various standards to facilitate compliance. (See Exhibit # 94).

(187.) On 12/1/21, plaintiff went on a sick call review for his severe hand injury (broken hand) and extreme pain and suffering and severe discomfort which Nurse Pratitioner prescribed Naproxen 500mg pain medication, referral requested to Orthopaedic evaluation of right hand, as an emergency for right hand injury, due to constant complaints of pain, negative x-ray results, being seen by medical staff for the same complaint in 30 days requiring referral to see a physician, Medical Doctors Radiologist referral to physician for evaluation for swelling seen on x-rays. (See Exhibit # 33).

(188.) On 12/2/21, the Utilization Management's "Notice Of Claim Authorization Number" was sent to the Health Care Unit authorizing Wexford to reimburse for the services of referral to Orthopaedic Hand Specialist Physician for "RUE Emergency" care and evaluation

 (85.)

for plaintiff/patient with right hand pain and swelling on X-rays, no fracture seen on X-ray. (See Exhibit # 35).

189. On 12/2/21, the "Med Furlough Clerk" L. Miles, received an urgent referral for Ortho Eval and sent the referral to Utilization management for approval/authorization #. (See Exhibit # 36).

190. On 12/3/21, the "Med Furlough Clerk" L. Miles, received approval for Ortho Eval with authorization # 267756914 and approved referral. (See Exhibit # 37).

191. On 12/6/21, the "Med Furlough Clerk" L. Miles objective states, "Scheduled individual in custody for an Ortho Eval Authorization # 267756914", Assessment states," Med Furlough appointment", Plans states, " Complete med furlough notification for Angela Crain approval/signature. Copies provided to Record Office, scanned and emailed via institutional email to staff assigned to med furlough contact list." (See Exhibit # 38).

192. On 12/10/21, the "Med Furlough Clerk" L. Miles, signed off on med furlough, Objective states," Scheduled individual in custody for an RUE EMG Authorization # 455417170", Assessment stating," Med Furlough Appointment", and Plans stating,' Complete med Furlough notification for Angela Crain approval/signature. Copies provided to Record office, scanned and emailed via institutional email to staff assigned to med furlough contact list." (See Exhibit # 39).

193. On 8/16/21, plaintiff sustained a severe hand injury in a fight in self-defense and that Angela Crain, the Health Care Unit Administrator and Unit Medical Director, who was the individual responsible for approving requests for inmates to be seen by outside doctors, that despite ▓▓▓▓ Medical Doctor's Radiologist review findings of X-rays that show mild degenerative changes and mild soft tissue-

swelling of the thenar and hypothenar eminences of plaintiff's right hand injury were so serious that physician's determination on two seperate **occassions** he referred patient/plaintiff to see a specialist, yet administrator, Angela Crain refused to grant plaintiff's referral request without explanation and for non-medical reasons for approximately 2 1/2 months, and that because of the delay, the Orthopaedic Hand Specialist was unable to provide necessary surgery to repair his fractured right hand, causing plaintiff needless pain and suffering and worsening the injury, causing irrepairable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, severe discomfort, depression, mental anguish, headaches, migraines, loss of sleep, loss of feeling in right hand, and preventing plaintiff from performing and enjoy daily activities, constituting Deliberate and Intentional Indifference to his serious medical needs in violation of Eighth Amendment's prohibition against Cruel And Unusual Punishment. (See Exhibit #33, #35, #36, #37, #38, #39, #32, #31, #30, #28, #27, #26, #25, #24, #23, #29, #40, #34, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #1, #22, #41, #42, #43, #45, #44, #46, #47, #49, #94, #112, #110, ).

194. On 2/8/22, plaintiff was sent on a med furlough at the Orthopaedic Institute of Southern Illinois where he had an X-ray and the diagnostic interpretation determined plaintiff did have an old fracture at the base of the 5th metacarpal, it did appear it was impacted, but it was healed; and Medical Doctor, Glen Babich's clinical Assessment found pain in left hand, pain in right hand, a closed nondisplaced fracture of base of fifth metacarpal bone of right hand, initial encounter; Right 5th metacarpal fracture malunion and Bilateral Carpal tunnel syndrome, proving that plaintiff was misdiagnosed by menard's medical staff, and Radiologist hired by Wexford, and the —

(87)

+ denial and delayed access to adequate medical care and to be seen by a physician Hand Orthopaedic Specialist has exacerbated plaintiff's injury causing irrepairable damage, lead to not being able to receive corrective surgery for a broken and fractured hand because it healed improperly, permanent disfiguration, and deformity with the ▆▆▆▆ fracture having encroached on the distal row of carpal bones, resulting in intermittent pain requiring anti-inflammat ories, and has nerve damage Carpal Tunnel syndrome. (See Exhibit # 41).

195.) On 2/8/22, plaintiff returned from med furlough at the Orthopaedic Institute of Southern Illinois and upon return he was never scheduled or seen for by a physician, physician's assistant or nurse practitioner who was supposed to conduct a physical examination of plaintiff within seven working days of plaintiff's admission to a reception and classification center or another designated intake facility with the examination results being documented on the DOC 0099, with the physical examination pursuant to Administrative Directive, 04.03.103, title: Offender Physical Examinations, effective 5/1/2021 requiring the following : HIV testing, Tuberculosis testing, offering counseling and HIV, follow procedures outlined in the Chronic Illness Treatment Guidelines Manual, A chest x-ray if the offender is known to be PPD positive prior to incarceration, a complete physical examination including all systems such as cardiovascular, respiratory, etc; other tests and examinations that may be indicated, the following additional testing if the offender's term of incarceratio n is expected to extend beyond 15 calendar days : (i) Sexually Transmitted Disease testing (RPR or VDRL for syphilis), if new syphilis is determined, off HIV testing and counseling , (iii) Hepatitis C screening unless the offender opts to not receive the test; (iv) Eye screening , if under 40 years of age, a visual examination of the anus, and if 40 years of age or order older, a digital rectal exam with guaiac test, which Angela Crain as the

🍎. 88.)

active Unit Medical Director is responsible for approving and implementing all medical protocols and such protocols should first be read and approved by the medical director, and once in use they should be reviewed by the medical director to assure compliance, which Angela Crain failed to do when upon plantiff's return from the Outside Orthopaedic Hand Specialist Clinic she didn't ensure he was given an eval and physical examination by a physician, physician's assistant or nurse practitioner nor were the examination results shall be documented within 7 days of an offender's admission to a reception and classification center or another designated intake facility, constituting Deliberate and Intention Indifference to plantiff's Serious medical needs for not following their own rules and regulations, state law Administrative Directives, policies, resulting in plaintiff not receiving his ~~recommend~~ anti-inflammatory pain medication for his intermittent pain and putting his health and safty at risk for not being tested after being in contact with people at the outside clinic, causing unnecessary and wanton infliction of pain. ( See Exhibit # 113, # 94, # 41, # 42, #43, #48, #110, #111,             ).

(198.) Illinois Department of Corrections Administrative Directives, number: 04.03.103, Title: Offender Health Care Services", effective: 1/1/2020, Policy state's: "(F.)(8.) - "Review of Health Care Complaints" - that reports of health problems or other medical complaints made by offenders shall be reviewed within 24 hours, or immediately in the event of an emergency, by designated trained staff, with appropriate referrals to scheduled or unscheduled health care services shall be made as needed; which Angela Crain the Health Care Unit Administrator and acting Unit Medical Director failed to review plaintiff's many health Care Complaints via sick call nurse visits, emergency grievances, appeals, reports, Medical Doctor Radiologist physician referrals to see outside physician, X-ray report findings, Various sick call requests, in addition to it being her Duty under Wexford's "Health Care Roles" as the unit Medical Director to review medical staff providers not

(88.)        (89.)

and inmate evaluations and nursing sick call complaints to ensure compliance with medical protocols, and had Angela Crain adhered to "IDOC A.D. Policies" she would've been aware of plaintiff's three emergency grievances he filed with two of them being deemed emergencies by the Warden for his severe hand injury, and seeking a second opinion from an outside physician and X-ray, along with him being seen for the same complaint in 30 days in 3 x-rays on sick call visit requiring referral to see a physician for eval, and the last two x-ray review findings by Medical Doctor Radiologists referring plaintiff to be seen by outside Doctor at Clinic for eval, which lead to plaintiff suffering a 6 month delay and ineffective courses of treatment in being prescribed pain medication by low level nurses and nurse practitioners that caused him unnecessary and wanton infliction of pain, exacerbating his injury in the form of irrepairable damage, permanent disfiguration, loss of range of motion, loss of functioning, depression, mental anguish, loss of sleep, extreme discomfort, prolonged suffering, constituting Deliberate and Intentional Indifference for not follow their own State law policies, Wexford Medical Provider Policies, rules and regulations, and being deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition against Cruel And Unusual Punishments. (See Exhibits # 121, #116, # 42, #43, #48, #41, #39, #38, #37, #36, #35, # 31, #34, #40, #29, #23, #24, #25, #26, #27, #28, #30, #31, #32, #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #91, #92, #94, #112,                                                    )

197. In the Wexford Health Sources Incorporated "Provider Handbook" outlining their medical policies for hired medical staff to follow, under "Infirmary Care" it states, "that Clinical issues, i.e., having to do with the direct treatment and observation of patients and medical clinic reviews, are the responsibility of the Site Medical Director or designee and operational issues are the responsibility of the Health Services Administrator and that's the position and duty of Angela Crain who is the Health Care Unit Administrative/Health Services Administrator and the

90.

active site Medical **Director** whose job and responsibility is to oversee all medical staff, supervise all medical staff, **cr**eate medical protocols to guide nurses handling inmate medical complaints on sick calls and ensure their compliance to ensure adequate medical care is provided and afforded to all inmates for proper treatment of their serious medicals needs, reviewing staff evaluations of inmates medical complaints, all of which Angela Crain failed to do in violation of Wexford's policy and State law Administrative Directives and her own protocols she approved for nurses to follow, constituting Delibera -te and Intentional Indifference for not following their own policies, Administrative Directives, rules and regulations, causing plaintiff ▬▬▬ unnecessary and wanton infliction of pain, because had Angela Crain **did** her job by properly supervising medical staff and reviewing their evaluations, notes, reports, sick call findings, inmate grievances pertaining to medical complaints seeking adequate medical care, x-ray review findings she would've been able to ensure plaintiff was immediately seen by an Outside clinic Orthopaedic Hand Specialist to have the proper surgery to repair his fractured right hand and relieved him of his pain and suffering before exacerbating his injury leading to irrepairable damage, permanent disfiguration, loss of functioning, loss of range of motion, extreme discomfort, prolonged suffering and mental anguish and depression for a six month period from the date of 8/16/21 when he injured his hand until 2/8/21 when he was finally seen by an Orthopaedic Hand specialist and futher suffering thereafter constituting deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against ▬▬▬ Cruel and Unusual Punishment. (See Exhibits # 94, # 110, # 121, # 42, # 43, # 48, # 41, # 39, # 38, # 37, # 36, # 35, # 31, # 34, # 40, # 29, # 23, # 24, # 25, # 26, # 27, # 28, # 30, # 31, # 1, # 11, # 12, # 13, # 14, # 15, # 16, # 17, # 18, # 19, # 20, # 21, # 22, # 91, # 92, # 112, # 45, # 44, # 46, # 47, # 49, # 50, # ).

198. In the Wexford Health Sources Incorporated "Provider Handbook" outlining their Medical policies -

90. 91.

for hired medical staff to follow, under "Health Care Roles" state's it's the Unit Medical Director Duty to conduct the peer review on unit staff providers and is responsible for their peer review (excluding psychiatrists) and generally, peer review should be performed at least annually by the unit medical director or as designated by the DOC/County; with all peer reviews should give feedback to those healthcare providers being reviewed and must be kept confidential, and a copy of the peer review be forwarded to Wexford's credentialing department for use as a reference during the reappointment process, which Angela Crain didn't do and had she would've she would've noticed her staff Nurse Practitioner, J. Crane not following medical protocols requiring plaintiff be referred to Medical Doctor when symptoms of limited motion in hand, severe pain, presence of swelling, discoloration, restricted movement - unable to make a fist, existed on plaintiff's nursing sick-call evaluation "Offender Outpatient Progress Notes" on 8/17/21, when plaintiff possessed all the above symptoms, yet wasn't referred to see a physician until approximately 6 months later for a severe hand injury (broken hand), constituting Deliberate and Intentional Indifference for not following their own policies, and rules, regulations, state law Administrative Directives, causing plaintiff unnecessary and wanton infliction of pain, irreparable damage, permanent disfiguration, deformity, prolonged suffering, loss of functioning, loss of range of motion, extreme discomfort, mental anguish, depression, headaches, loss of sleep, constituting deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment. (See Exhibit # 11, #94, #12, #13, #41, #14, #15, #16, #17, #18, #19, #21, #20, #22, #110, #93, #111).

199. In the Wexford Health Sources Incorporated "Provider Handbook" outlining their Medical policies for hired medical staff to follow, under "Relationships" with Angela Crain being the Health Care Unit Administrator/Health Services Administrator and acting Unit Medical Director she is responsible for developing positive professional relationships with her medical staff, correctional staff-

(199 cont.)

and supporting specialists which greatly helps her job, having discussions about her patients' problems, treatment plans, new developments, security, and other issues that will help administrators and medical staff better understand what must be done and when it should be done; and also instructing the HCUA and Unit Medical Director on the importance of considering the public health and institutional aspect of correctional medicine, alone with the administrative directives of the corrections which are important documents that must be applied to your decision making; all of which Angela Crain failed to do, nor did she apply the IDOC Administrative Directives to her decision making by practically violating every medical policy, Administrative Directive on medical concerns, rules, regulations, Wexford medical policies, her Nurse's Professional Duty and state law Obligations, and had she followed them she would've been aware of plaintiff needing to be seen by a Orthopaedic Hand Specialist for his severe hand injury on his first sick call visit on 8/17/21, one day after he broke his hand in a fight in self-defense, or the 3 x-rays he had within 30 days which Administrative Directive - 04.03.121 - "Treatment Protocols" requires plaintiff be referred to a physician if evaluated for the same complaint three times within 30 days which plaintiff was, and she would've noticed the Medical Doctor Radiologists x-ray review findings for plaintiff being referred to see a Doctor at outside clinic on 10/31/21 and 9/14/21, or Wexford's policies under Doctor's Sick Call request referrals being honored within 72 hours which it took Angela Crain over 2 months after plaintiff was approved and referred to see an Orthopaedic Hand Specialist for non-medical reasons, constituting Deliberate and Intentional Indifference for not following their own Policies, Administrative Directives, rules, and regulations, causing plaintiff unnecessary and wanton infliction of pain, worsening his injury by causing irreparable damage, permanent disfiguration, extreme discomfort, prolonged suffering, loss of functioning, loss of range of motion, depression, headaches, loss of sleep, constitution deliberate indifference to his serious medical needs

( . ) (93.)

in violation of the Eighth Amendment's prohibition against Cruel and Unusual punishment. (See Exhibit #94, #110, #111, #117, #42, #43, #48, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #33, #34, #40, #29, #23, #24, #25, #26, #27, #28, #30, #31, #32, #1, #10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #)

200. In the Wexford Health Sources Incorporated "Provider Handbook" outlining their Medical policies for hired medical staff to follow, under "Nursing Sick Call", as the HealthCare Unit Administrative/Health Services Administrator and active Unit Medical Director, Angela Crain's duty is to conduct the peer review on unit staff providers and is responsible for developing, reading, approving all protocols used to guide care given by nurses and the appropriate routines in the chronic clinics that guide nurses triaging sick call, and once in use they should be reviewed by the medical director to assure compliance, and as part of the unit Quality Assurance Program, both acute care and chronic clinic protocols will be reviewed each month by the unit medical director, which Angela Crain failed to do on several occassion, like on 8/17/21 when plaintiff showed multiple symptoms requiring that nurse practitioner J. Crane refer him to see a Medical Doctor for Evaluation which she didn't and on 2/8/22 when plaintiff returned from outside med Furlough with medical protocol requiring that he be seen by a Medical Doctor or Nurse practitioner for a physical examination and various testings with 5 days, which never occurred not once in a 19 month period with plaintiff going on at least six different med furloughs, constituting Deliberate and Intentional Indifference for not following their own medical protocols, policies, rules, regulations, Administrative Directives, Wexford policies, causing plaintiff unnecessary and wanton infliction of pain, and exacerbating his injury by prolonging his suffering, mental anguish, depression, extreme discomfort, irreparable damage, permanent disfiguration, deformity, loss of functioning, loss of range of motion, loss of sleep, being deliberate indifferent to plaintiff's serious medical needs, in violation of the Eighth Amendment's prohibition against Cruel and Unusual punishment. (See Exhibit# #110, #94, #42, #41, #43, #48, #44, #45, #46, #47, #49, #50, #39, #38, #37, #36, #35, #33, #34, #29, #25, #26, #23, #24, #27, #28, #30, #31, #32, #1, #10, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #65, #66, #77, #).

201. IDOC Administrative Directive, number: 03.03.103, title: "Offender Health Care Services," effective: 1/1/2020, (6.)(C.) - (G.) "Review of sick call Request: (C.) When an offender's request for

201. (cont.) non-emergency medical attention results in referral to a primary care physician by the screening health care staff, the primary care evaluation shall take place within 72 hours or upon the next scheduled visit by a primary care physician; which Angela Crain failed to adhere to by not ensuring nurse practitioner, J. Crane, or herself made sure plaintiff was seen within 72 hours by an Orthopaedic Hand Specialist physician when Medical Doctor Radiologist, N. Yousuf, x-ray review findings resulted in referral for plaintiff to see primary care physician on 9/14/21; and Angela Crain's failure to review sick call evaluations and supervise registered Nurse, Alisa Dearmond, and ensure she or herself made sure plaintiff was seen within 72 hours by an Orthopaedic Hand Specialist physician when Medical Director Radiologist, N. Yousuf, x-ray review findings resulted in referral of plaintiff to see primary care physician on 10/13/21; and on 12/1/21 Nurse Practitioner, M. Moldenhauer, on review of sick call request reffered plaintiff to see Orthopaedic Hand Specialist for Emergency Evaluation of his right hand, yet Angela Crain failed to ensure he was seen within 72 hours by Orthopaedic physician and wasn't sent to the Outside Clinic for Orthopaedic Eval until 2/8/22, approximately 2 1/2 months later, constituting Deliberate and Intentional Indifference for not following their own IDOC Administrative Directives, policies, rules and regulations, Wexford policies, causing plaintiff unnecessary and wanton pain and suffering and prolonging his suffering, irrepairable damage, permanent disfiguration, loss of functioning in his hand, loss of range of motion, extreme discomfort, depression, mental anguish, headaches, migraines, loss of sleep, constituting deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment. (See Exhibit #33, #21, #16, #10, #94, #42, #43, #48, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #34, #40, #29, #23, #24, #25, #26, #27, #28, #30, #31, #32, #1, #10, #11, #12, #13, #14, #15, #17, #18, #19, #20, #22, #        ).

202. IDOC Administrative Directive, number: 04.03.108, Title: Response to Medical Emergencies, effective: 3/1/2023, Angela Crain, the medical director and HCUA, is responsible for designating an emergency response team consisting of at least 3 persons per shift who are trained in first and CPR with team members may be selected from security staff and ~~~~

95.

where available, one member shall be a licensed medical professional or a health care staff person. (H.)(1.)(a.)(b.)(5.) — (1.) The CAO, in consultation with the medical director or HCUA, shall establish a written procedure for responding to medical emergencies; the procedure shall be ~~dated and signed~~ by the CAO and, where applicable, the Health Care Unit Administrator of the facility; Listing (a.) the name shift and work location of each member of the emergency response team shall be maintained in the shift supervi -sor's office and, where applicable, in the ~~Health Care Unit;~~ (b.) the notification process of the response team and, where no on-site medical personnel are available, the process for referring persons to outside emergency medical services shall be identified; (3.) emergency response drills shall be a mass casualty drill covering relevant medical situations such as multiple stabbings and chemical agents, and must be conducted annually. (a.) respons -e times appropriateness of clinical decisions and the skill which procedures are performed, shall be evaluated by the facility medical director; (b.) Written summaries of the evaluations of these drills shall be maintained at the facility for review by DHS during annual assessments, (c.) each drill shall be followed by staff discussions led by the facility Medical Director analyzin -g strengths and weaknesses of the responses, a written summary of this review shall be available for all medical staff, the agency Medical Director, CAO's and Duty Administrative Officers; (d.) Actual emergency responses may be used one time per shift to fulfill the requirement outlined above; (Note: In Facilities where one person serves as the facility Medical Directiv -e for more than one facility, a local physician may be designated to evaluate the semi-annual emergency response drills, The Facility Medical Director shall be in attendance at, shall evaluate, the mass casualty drill). (See Exhibit # 119).

(203.) Angela Crain, the Unit Medical Director and Health Care Unit Administrative, is responsible designating an emergency response team to respond to medical emergenc -ies, establish written procedures for responding to medical emergencies, and when medical emergencies exist and no on-site medical personnel are available inmates shall be processed for referrals to outside emergency medical services with the Medical—

\- Director overseeing and making clinical decisions and establishing procedures to accomodate emergency responses which are available and may be used one time per shift to fulfull the requirements; yet Angela Crain failed to exercise the emergency response team or drills and ensure plaintiff was referred to outside emergency medical services for his severe hand injury for a broken hand when he filed two emergency grievances to the warden that were both deemed emergencies on 10/15/21 and 11/3/21, yet he was never sent out to see an Orthopaedic physician denying him adequate access to medical care, constituting **Deliberate** and **Intentional** Indifference for not following their own **policies**, Administrative Directives, rules and regulations, and delaying him to see a physician for four months later on 2/8/22, resulting in unnecessary and wanton infliction of pain, exacerbating his injury causing irreparable damage, permanent disfiguration, deformity, extreme discomfort, depression, mental anguish, loss of functioning, loss of range of motion, being deliberate indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment. (See Exhibit # 32, #31, #30, #28, #27, #26, #25, #25, #23, #45, #44, #46, #47, #49, #41, #39, #38, #37, #36, #35, #34, #40, #29, #43, #42, #16, #21, #33, #11, #12, #13, #14, #15, #16, #18, #19, #20, #22, # ).

(204.) In the Wexford Health Sources Incorporated "Provider Handbook" outlining their Medical policies for hired medical staff to follow, state's inmates are supposed to have access to emergency service at anytime there is no scheduled service available; with emergency service can be provided onsite by whatever level of provider able to meet the level of care necessary; if the unit has sufficient equipment and personnel skill to meet the patient's problem, it should be managed there; if the facility, equipment, or skill level of the onsite personnel is inadequate, the patient may be transferred to the nearest hospital emergency department; and if no staff physician is on site and the situation is life threatening, the attending nurse may make the decision to transfer the patient; in such an event, the unit medical director must be notified at the earliest possible time, and Wexford must authorize payment for this service, so an Emergency Referral sheet should be faxed to the Wexford Pittsburgh office as soon as reasonably possible. (See Exhibit # 94).

(8.)    (97.)

**205.** Plantiff after suffering a severe hand injury (broken right hand) and filed two emergency grievances to the warden who deemed them emergencies on 10/15/21 and 11/3/21 was supposed to have **access** to emergency service and be sent out to see an Orthopaedic Hand Specialist at an outside Clinic since Menard C.C. has no doctor on site or the **equipment** or skill to provide the needed medical care to correct and fix plaintiff's injury with Angela Crain being responsible to approve patient transfers to outside hospitals and clinics to provide adequate medical care for plaintiff's serious medical needs by her being the Health Care Unit Administrator / Health Services Administrative and active Unit Medical Director, who is notified whenever medical emergencies **arise**, yet Angela Crain denied plaintiff access to adequate medical care emergency service and **immediate care** for **his** severe hand injury (broken hand), and he wasn't actually seen at an outside Clinic Orthopaedic Hand Specialist physician until 6 months after he sustained his injury on 8/16/21, constituting Deliberate and Intentional Indifference for not following their own Wexford policy, IDoc Administrative Directives, rules and regulations, causing plaintiff unnecessary and wanton infliction of pain in violation of the Eighth Amendment's prohibition against Cruel and Punishment. (See Exhibits #1, #32, #31, #30, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #50, #41, #39, #39, #38, #37, #36, #35, #34, #40, #29, #48, #43, #42, #16, #21, #33, #10, #11, #12, #13, #14, #15, #17, #19, #18, #20, #22, #94, #110, #91, #92, ).

**206.** IDoc Administrative Directive, number: 04.03.121, Title: Treatment Protocols, effective: 5/1/2019, (G.)(3)(2) (e.)(g.)(b.)(a.)(F.)(1.)(3.)(a.) States: (F.) General Provisions - (1.) Treatment protocols, as issued or approved by the Agency Medical Director, may be used by each facility; (3.) If treatment protocols are utilized, the facility Medical Director and the Health Care Unit Administrator shall develop a procedure outlining the use of protocols; (6.) Requiremen-s, (1.) The Agency Medical Director shall notify Health Care Unit Administrators of any new or revised protocols via memorandum; (2.) Staff shall receive documented training and privileging prior to utilization of the protocols; (G.)(3.) The Chief Administrative officer of each facility using treatment protocols shall ensure a local procedure is developed for the use of treatment protocols by non-physician health care staff, with the following procedure shall require the following: (a.) Use of the treatment protocols that have been signed and dated

**98.**

by the Agency Medical Director; (b.) Each non-physician Health Care Unit staff member to receive documented training and certification by the facility Medical Director prior to utilizing a treatment protocol and on an annual basis, thereafter; the facility Medical Director shall notify the facility training coordinator of the names of employees attending and the dates of attendance at the treatment Protocol Training; the training Coordinator shall maintain this documentation; (d.) a monthly audit be conducted by the facility Medical Director of two medical records for each non-physician staff member who utilizes treatment protocols during the month; (e.) Documentation of the monthly audits and discussion of the findings and corrective action plans, as indicated, be included in the minutes of the monthly Quality Improvement Program meeting; and (g.) Any offender evaluated for the same complaint three times within 30 days be referred to the physician, physician's assistant or nurse practitioner for evaluation. (See Exhibit # III).

207. Angela Crain is the Health Care Unit Administrator and acting Unit Medical Director at Menard C.C. who is responsible for developing a procedure outlining the use of protocols to give provision of health care services to offenders by nursing staff and health trained personnel, overseeing the training and receive documentation of the training of non-physician Health Care Unit staff members and nurses, on an annual basis, with monthly audits being conducted of two medical records for each non-physician staff member who utilizes treatment protocols during the month by the facility medical director, with documentation of the monthly audits and discussions of the findings and corrective action plans, along with any offender evaluated for the same complaint three times within 30 days be referred to the physician or physician's assistant for evaluation pursuant to IDOC Administrative Director, number: 04.03.121, title: Treatment Protocols, effective: 5/1/2019; which Angela Crain didn't do by failing to conduct monthly audits of nurses sick calls evaluations of plaintiff medical complaints and X-ray review findings on dates: 8/17/21, 8/20/21, 8/31/21, 9/14/21, 9/7/21, 11/6/21, 12/1/21 which if she would've she would've learned that her non-physician medical staff (nurses) weren't following protocols requiring that plaintiff be referred to see a physician at an outside Clinic for possessing symptoms requiring an evaluation from a Medical doctor for Menard C.C. not having an Doctor onsite to treat plaintiff's needs, and she would've learned that he was

99.

- Seen and evaluated for the same severe hand injury (broken hand) complaint three times within 30 days requiring he be referred to see a physician or physician's assistant at an outside clinic, and she would've realized that the Medical Doctor Radiologist, N. Yousuf, after his last two X-ray review findings report on 9/14/21 and 10/13/21 requesting that plaintiff be referred to see a Doctor at an outside Clinic for his severe hand injury which he wasn't, and she would've discovered that upon return from his med furlough from the Orthopaedic Hand Specialist physician Clinic for eval on 2/8/22 that non-physician medical staff didn't conduct an evaluation or physical examination by a physician or nurse practitioner within 5 days upon return required by protocols and State law administrative policy number: 04.03.101, title: Offender Physical Examinations effective 5/1/2021, constituting Deliberate and Intentional Indifference for not following their own policies, Administrative Directives, rules and regulations, state laws, causing plaintiff unnecessary and wanton infliction of pain and irreparable damage, permanent disfiguration, prolonged suffering, extreme discomfort, loss of functioning in his right hand, loss of range of motion, depression, headaches, loss of sleep, in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit #21, #18, #19, #29, #33, #16, #111, #110, #113, #14, #13, #11, #48, #43, #42, #94, #12, #15, #17, #20, #1, #22, #32, #31, #30, #22, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #34, #40, #95, #116).

#(209.) In the Wexford Health Sources Incorporated "Provider Handbook" outlining their Medical policies for hired medical staff to follow, state's inmates are supposed to have access to emergency service at anytime along with plaintiff having the right to request to see a physician, and his request should be honored within 72 hours, also inmates seen in sick call by nurses are frequently "referred" to Doctor's call for evaluation, diagnosis, and or treatment, yet Angela Crain failed to ensure plaintiff was seen for doctor's call for evaluation, a second opinion, x-ray, diagnosis, and to receive adequate medical care and treatment for his severe hand injury (broken hand) without unnecessary delay despite numerous emergency grievances filed seeking access to adequate medical care, various sick call request, Medical Doctor Radiologist's request referrals on two seperate occassions ordering —

100

[■.]

— that plaintiff be seen by an outside **Clinic** Medical Doctor, within 72 hours, and various Administrative Directives, policies, and rules and regulations and state laws mandating plaintiff be referred to see a physician under his specific conditions, constituting Deliberate and Intentional Indifference for not following their own medical policies, protocols, IDOC Administrative Directives, Wexford Policies, rules and regulations, causing unnecessary and wanton infliction of pain, and irreparable damage, permanent disfiguration, deformity, loss of functioning in his right hand, loss of range of motion, extreme discomfort, prolonged suffering, depression, headaches, migraines, loss of sleep, all in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit # 94, # 91, # 22, # 21, # 18, # 19, # 29, # 33, # 16, # 14, # 13, # 11, # 48, # 43, # 42, # 12, # 15, # 17, # 20, # 1, # 32, # 31, # 30, # 28, # 27, # 26, # 25, # 24, # 23, # 45, # 44, # 46, # 47, # 49, # 50, # 39, # 38, # 37, # 36, # 35, # 34, # 40, # 110, # 116).

✱(209.) IDOC Administrative Directive, number: 04.03.103, Title: "Offender Health Care Service", effective: 5/19/19 - (F.) <u>Requirements</u>— state's the following state law policies: The Chief Administrative Officer (CAO) shall develop a written procedure covering the provision of health care services within the facility; The procedure shall be dated and signed by the (CAO) and the designated health care authority for the facility and approved by the Agency Medical Director; with the procedure shall provide for the following: (1.) Direction: the health care services programs shall be directed by a designated health care authority whose scope of duties are detailed in a written agreement, contract or job description that is reviewed annually and revised when necessary; (3.) Offender Access: (a.) All offender shall have an intake exam upon admission to a reception and classification center, performed in accordance with administrative directive 04.03.101; (b.) All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant or nurse practitioner as needed; (c.) Offenders shall be referred for Specialty Services if determined medically necessary; (Specialty Service — includes non-routine services and items including, but not limited to, off-site consultations, off-site x-rays, non-formulary medications and medical equipment (1.) If a ~~special~~ facility physician, physician's assistant or nurse practitioner deems specialty services necessary, with medical special services ~~referral and report, DOC~~ referral and report, DOC 0254, shall be submitted to the facility (101.)

– medical Director; C. iii) If the referral is approved, the facility Medical director shall forward the referral to the facility Health Care Unit Administrator for Utilization Review in accordance with Administrative Directive 04.03.125; 3.) If approved, health care staff shall schedule the pending Specialty service; 4.) If denied, the facility Medical Director shall notify the offender in writing on the Medical Special Service Referral Denial or Revision, DoC 0255.

* ☒: 210.) * Angela Crain failed to adhere to IDOC Administrative Directive, number: 04.03.103, Title: Offender Health Care Service, effective: 5/19/19, as the Health Care Unit Administrator/ Health Services Administrator and Unit Medical Director at Menard C.C. and the designated health care authority whose duty and responsibility requires her to oversee all non-physician medical staff at Menard C.C. and ensure that plaintiff had access to daily health care personnel and be referred to physician or physician's assistant as needed for his severe hand injury(broken hand) which she didn't, nor did Angela Crain ensure that plaintiff had a physical examination intake exam upon his return from med furlough from Orthopaedic Hand Specialist on 2/8/22 upon return from Writ and admission to a reception and classification center, denial of specialty service when plaintiff's severe hand injury (broken hand) required it necessary, in the form of a second opinion X-ray off-site, off-site consultations from physician, medications for pain, nor did she approve and schedule specialty service for plaintiff to see an Orthopaedic Hand Specialist in a timely manner and delayed him for 2 months to see a physician on top of an already 4 month denial and delay by non-physician medical nurses whom she oversees and supervises, constituting Deliberate and Intentional Indifference for not following their own policy, IDOC Administrative Directives, rules and regulations, protocols, causing plaintiff unnecessary and wanton infliction of pain, irrepairable damage, permanent disfiguration, extreme discomfort, loss of functioning in right hand, loss of range of motion, depression, mental anguish, headaches, loss of sleep, in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment. (See Exhibit #21, #18, #19, #29, #33, #16, #14, #13, #48, #43, #42, #12, #15, #17, #20, #22, #1, #32, #31, #30, #28, #27, #94, #110, #26, #25, #24, #23, #45, #44, #46, #47, #49 #112, #50, #41, #39, #38, #37, #36, #35, #34, #40, #

102.) 100.)

**#211.** IDOC Administrative Directive, number: 04.03.103, Title: "Offender Health Care Services", effective: 1/1/2020, (F)(5)(a)(1)(2)(b) - States, "under "Medical Treatment", when, in the opinion of an Illinois licensed physician, immediate treatment is required under the following circumstances a(1.) to protect the offend' from a physical condition threatening to cause death, damage or impairment of bodily functions or disfigurement and the offender is incapable of giving consent; (2.) Where death of the offender or serious permanent bodily injury is likely to result in the near future if treatment is not provided; (b.) the physician's opinion and recommendation and the CAO's or the Duty Administrative Officer's approval shall promptly be documented on an offender Medical Emergency Consent Waiver, DOC 0095, and placed in the offender's medical record. (See Exhibit # 112).

**#212.** Angela Crain, as the Health Care Unit Administrator / Health Services Administrator and Unit Medical Director she is responsible for overseeing all medical staff and operations and ensure plaintiff has access to adequate medical care when necessary as was with plaintiff's severe hand injury (broken right hand, requiring emergency medical treatment which was deemed an emergency on two seperate occassion via emergeny grievances and when an Illinois licensed physician opinion (Medical Doctor Radiologist - N.Yousuf) requested referral for plaintiff to be seen by a Medical Doctor at an outside Clinic upon X-ray review finding on 9/14/2 and 10/13/21, which state law policy 04.03.103 required immediate treatment, along with the duty to protect plaintiff from a physical condition threatening to cause damage, impairment of bodily functions, disfiguration, to prevent risk of serious permanent bodily injury from likely to result in the near future if treatment is not provided, which eventually occurred to plaintiff due to Angela Crain's failure to adhere state law policy, constituting Deliberate and Intentional Indifference for not following their own medical policies, rule, regulations, IDOC State law policies, causing plaintiff unnecessary and wanton infliction of pain, exacerbating his injury resulting in irrepairable damage, permanent disfiguration, loss of functioning, loss of range of motion, prolonged suffering, depression, mental anguish, headaches, loss of sleep all in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment, constituting deliberate indiff- ~rence to plaintiff's serious medical needs. (See Exhibit # 112, # 110, # 16, # 21, # 18, # 19, # 29, # 33, # 14, # 13 # 11, # 48, # 43, # 42, # 12, # 15, # 17, # 20, # 22, # 1, # 32, # 31, # 30, # 28, # 27, # 26, # 25, # 24, # 23, # 45, # 44, # 46, # 47, # 49, # 50, # 41, # 39 # 94, # 38, # 37, # 36, # 35, # 34, # 40, #

103.

**#213.** IDOC Administrative Directive, number: 04.03.105, Title: Chronic Illnesses, effective: 5/1/2019, (E.)(#2) A. C. I.) state law policy requirement states, "(E.) Requirements.(2.) The Health Care Unit Administrator shall ensure that all chronic illness baseline evaluations and **clinic** visits are conducted in accordance with the Chronic Illness Treatment Guidelines manual and as follows: (A.) All examinations shall be preformed by a physician, physician's assistant or nurse practitioner unless specifically indicated otherwise in the Chronic Illness Treatment Guidelines Manual; (C.) Chronic illness baseline evaluations shall: (I.) Be performed within 30 days of arrival from a reception and classification unit, or following initial diagnosis; ( See Exhibit # 93).

**#214.** Angela Crain as the Health Care Unit Administrator/ Health Services Administrator and Unit Medical Director failed to adhere to her duties, responsibilities required by her **under** state law Administrative Directive, number 04.03.105, policy by not ensuring that all chronic Illness baselines evaluations and clinic visits were conducted in accordance with Chronic Illness Treatment Guidelines Manual, for not ensuring plaintiff's examination for his chronic illness severe hand injury and pain he suffered was preformed by a physician, physician's assistant or nurse practitioner when he was examined by registered nurse Alisa Dearmond at sick call evaluation and X-ray examination on 9/14/2021, nor did she ensure plaintiff's chronic illness baseline evaluations was performed within **30 days** of arrival from return of writ med furlaughs or from receptions and classification units or following initial diagnosis on 2/8/22, 9/14/2021, 8/31/21, 9/7/21, 8/20/21, 6/17/22, 9/27/22, and 6/17/22, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs for not following their own policies, administrative directives, rules and regulations, guidelines, causing plaintiff unnecessary and wanton infliction of pain and exacerbating his injury with irrepairable damage, permanent disfiguration, loss of functioning in right hand, loss of range of motion, prolonged suffering, depression, mental anguish, headaches, loss of sleep, all in violation of the Eighth Amendments prohibition of Cruel and Unusual Punishment. (see Exhibit # 94, #93, #14, #19, #21, #48, #43, #42, #15, #17, #20, #22, #1, #33, #31, #30, #28, #27, #26, #25, #23, #45, #44, #46, #47, #49, #50, #41, #39, #33, #37, #36, #35, #65, #77, #110 ).

104.

#215. Angela Crain, the Health Care Unit Administrator / Health Services Administrator, Unit Medical Director, and Registered Nurse, has the leadership responsibility and prime objective of providing high medical service, who duty is also to manage all administrative aspects of the medical operation, and is also expected to manage all the medical unit administrative details and orchestrate the staff functions, review the lower level provider nurses medical care through quality assurance to identify deficiencies and improve patient outcomes, along with an independent duty to ensure that plaintiff received constitutionally timely adequate medical care, with Angela Crain having knowledge of plaintiff's severe hand injury (broken hand) via emergency grievances on several occasions, reports, complaints, through sick call nursing staff evaluation reports, Medical Doctor Radiologists physician referrals for plaintiff to see outside Doctor, sick call requests, her job titles and duties required her to review all medical provider evaluations which showed plaintiff's repeated complaints for pain for his severe hand injury (broken hand) seeking adequate medical care, yet Angela Crain failed to provide adequate medical treatment to plaintiff herself or to ensure that others did for a 6 month period of constant complaints for his pain and suffering for his severe hand injury (broken hand), nor by contacting supervisory personnel to voice any concerns about the treatment being provided him after being confronted with an inappropriate or question practice of repeated complaints of pain for his severe hand injury over a 6 month period, 3 X-rays coming back negative within a 30 day period despite complaints of pain and only being given pain medication and denied access to see a physician or have a second opinion and X-ray by an outside hospital, and ignoring obvious risks to inmates health and denying and delaying plaintiff access to adequate medical care, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs for not following her duty and professional obligation to ensure plaintiff received constitutionally adequate care policy, state law, rules, regulations, Medical Profession Standard of NCCHC, causing plaintiff unnecessary and wanton infliction of pain, exacerbating his injury resulting in irreparable damage, permanent disfiguration, loss of functioning in his right hand, loss of range of motion, prolong suffering, depression, mental anguish, headaches, loss of sleep, all in violation of the Eighth Amendment

105.

prohibition of Cruel and Unusual Punishment. (See Exhibit #110, #117, #116, #14, #29, #33, #19, #18, #16, #21, #13, #11, #48, #43, #42, #12, #15, #17, #30, #22, #1, #32, #31, #30, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #34, #40, #94, #93, #112, #111, #122, #119).

#216. Inside the Wexford Health Sources Incorporated "Provider Handbook" medical policies for Medical staff to follow under "Correctional Staff" states, "every institution has a set of Doc/County policies, usually called administrative directives as well as Wexford's own set of operational policies, and in both cases, some of the policies apply to the medical and mental health services, which medical staff must be familiar with all of these policies, which Angela Crain violated administrative directive numbers: 04.03.103, 03.02.103, 04.03.108, 04.03.121, 04.03.105, 03.02.108, 04.03.112, 03.01.007, 01.02.350; and Wexford's Health Sources Incorporated "Provider Handbook" Policies under sections: "Infirmary Care", "Health Care Roles", "Relationships", "Nursing Sick Call", "Emergency Care", "Doctor's Sick Call", "Correctional Staff", and Nurses Duty And Professional Obligation to ensure plaintiff received constitutionally adequate medical care, constituting Deliberate and Intentional Indifference to plaintiff's serious medical need with non-compliance to these Administrative Directives and Wexford Policies inside the "Provider Handbook", causing him unnecessary and wanton infliction of pain and resulting in irrepairable damage, permanent disfiguration, prolonged suffering, loss of functioning in my right hand, deformity, loss of range of motion, depression, mental anguish, headache, extreme discomfort, all in violation of the Eighth Amendment's prohibition of Cruel And Unusual Punishment. (See Exhibit # 94, # 93, # 112, # 113, #111, #121, # 122, # 123, #124, #110, #119, # 117, #116, #14, # 29, #33, #19, #18, #16, #21, #13, #11, #48, #43, #42, # 12, #15, #17, #30, #22, #1, #32, #31, #30, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #34, #40, # ).

#217. IDOC Administrative Directive, number - 03.02.108, Title: "Standards of Conduct", effective 1/1/2021 (F.)(G.)(I.)(a)(b.) states,: (F.) General Provisions - All employees shall be informed of the provisions of this directive and the directive shall be accessible to employees; (G.) Requirements: (I.) Compliance with Law and Regulations - (a.) Employees shall obey all federal, State and local laws; (b.) Employees shall obey all applicable court decisions and orders related to the performance of their job duties. (See Exhibit # 110 106.)

**218.** Angela Crain violated IDOC Administrative Directive state law policy for failing to comply with Laws and Regulations requiring that all employees conduct themselves in a professional manner and not engage in conduct that is unbecoming of a State employee or that may reflect unfavorably on or impair operations of the Department, and the law requiring all employees shall obey all federal, State and local laws, all applicable court decisions and orders related to the performance of their job duties with failure to comply with any of the standards of conduct may result in discipline including discharge, for Angela Crain violating the "Standards of Conduct" by failing to obey Federal laws when she violated plaintiff's Eighth Amendment Rights in being Deliberate and Intentional Indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment, when she violated State laws Administrative Directives: 04.03.103, 03.02.103, 04.03.108, 04.03.121, 04.03.105, 03.02.108, 04.03.112, 03.01.107, 01.02.350; and for violating court decision Perez v. Fenoglio, 792 F.3d 768 (2015) for being deliberately indifferent to plaintiff's severe hand injury, and for failing to perform her job duties and Professional Obligation to ensure plaintiff received constitutionally adequate medical care, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs, for not following their own policies, state law Administrative Directives, Rules and Regulations, Applicable Court Decisions, and Wexford Policies, causing plaintiff unnecessary and wanton infliction of pain, and exacerbating his injury (broken right hand) resulting in irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion, deformity, extreme discomfort, unnecessary prolonging his pain and suffering, depression, mental anguish, headaches, loss of sleep, all in violation of plaint -f's Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit #110, #44, #93, #112, #113, #111, #121, #122, #123, #124, #119, #117, #116, #14, #29, #33, #19, #18, #16, #21, #11, #48, #43, #42, #12, #15, #17, #30, #22, #1, #32, #31, #30, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #34, #40).

(107.)

**# 214** IDoc Administrative Directive number: 04.03.112, Title: Medical and Health Care, effective: 9/1/2002, **F.1.(2)(a)(b)** states: (F.) Requirements - The Chief Administrative Officer (CAO) shall develop a written procedure covering the provision of health care services within the facility; The procedure shall be dated and signed by the "CAO" and the designated health care authority for the facility and approved by the Agency Medical Director, which the procedure shall provide for the following: (1.) Direction - The health care services program shall be directed by a designated health care authority whose scope of duties are detailed in a written agreement, contract or job description that is reviewed annually and revised when necessary; (2.) Scope of Services - (a.) The method by which all offenders of a facility, regardless of custody status or other factors, can obtain health care services at the level of self care, first-aid, emergency care, clinic care, specialty care, infirmary care and hospitalization shall be identified and described (Note: This may include the ~~services~~ Services provided by an outside or community hospital); (b.) The method for providing a health education program, health education program, health maintence program, chronic and convalescent ~~care~~ care, continuing care and emergency care shall be identified and described. (See Exhibit # 112)

**# 215.** Angela Crain as the acting Unit Medical Director has the duty to approve and sign the developed written procedures governing the health care services program and such programs shall be directed by Angela Crain the Health Care Unit Administrator / Health Service Administrator and Unit Medical Director and to ensure plaintiff had access to health care services as needed for his severe hand injury and access to emergency care, clinic care, specialty care, and timely access to outside clinics, which Angela Crain violated by denying ~~you~~ and delay plaintiff access to emergency care for his severe hand injury (broken hand) despite being made aware of his complaints of experiencing pain and suffering via two emergency grievance deemed emergency by the warden yet plaintiff still wasn't approved by Angela Crain to be transported to see the Orthopaedic Hand Specialist for approximately 4 months ~~after~~ filing his emergency grievance seeking access to adequate medical care, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs, causing him unnecessary and wanton infliction of pain and

(108.) [109.]

exacerbating his injury causing him irreparable damage, permanent disfiguration, loss of functioning, loss of range of motion, extreme discomfort, unnecessary prolonging of suffering, depression, mental anguish, headaches, loss of sleep, all in violation the Eighth Amendments Prohibition of Cruel and Unusual Punishment. (See Exhibit #112, #110, #14, #29, #33, #19, #18, #16, #21, #13, #11, #48, #43, #42, #12, #15, #17, #20, #22, #1, #32, #31, #30, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #59, #41, #39, #38, #37, #36, #35, #34, #40, #94, ).

**#221.** The Illinois Department of Correction Administrative Directive, 03.01.307, Title: Discrimination and Harassment, effective: 9/1/2022; (I.) Policy States," The department prohibits any form of unlawful discrimination and harrasment; (II.) Procedure - (A.) The purpose of this directive is to establish written procedures governing the responsibilities of staff for compliance with Department policy prohibiting unlawful discrimination and harassment; (F.) General Provision - (1.) For purposes of this directive, examples of discrimination include, but are not limited to the following: (a.) Less favorable treatment because of race, color, relion, gender, national origin, ancestry, age, marital status, citizenship status, sexual orientation, military status, unfavorable military status, arrest record, language, order of protection status, pregnancy or disability; and (b.) use of a neutral employment practice that has a disparate impact on a protected class group and is not justified by business needs. (See Exhibit # 123).

**#222.** Menard Correctional Center and medical staff, Medical Director and Health Care Unit Administrator, has a policy and custom of unlawful discrimination and harassment through the use of the grievance process that has a disparate impact on Black inmates by them having to disclose their race on the grievance form when filing complaints and seeking to obtain access to adequate medical care for their serious medical needs that led to plaintiff being discriminated against by Angela Crain for being denied access to adequate medical care for a severe hand injury (a broken hand) he sustained in a fight in self defense on 8/16/21, and was given inappropriate and knowingly ineffective treatment in pain medication that did nothing to repair or relieve plaintiff of his pain, and suffering and not being approved by Angela Crain to see an Orthopaedic Hand Specialist f

**109.**

approximately 6 months despite being referred to see a physician on two different occasions via X-ray findings on 9/14/21, and 10/13/21 by Medical Doctor, N. Yousuf, and their own Administrative Directives, Protocols, rules, regulations, state law decisions, Nurse Duty and Professional Obligation, and Wexford Policies all requiring plaintiff be seen for care by a physician for a severe hand injury (broken hand), and instead plaintiff maliciously received less favorable treatment because of race, or citizenship status, along with him being harrassed by hostile acts that relate to race, or citizenship, negative stereotyping as being labeled a prisoner with a criminal record, and plaintiff was unlawfully discriminated against by Angela Crain by the disparate treatment plaintiff received based on his race of African American, color of his dark Black skin, and ethnicity, resulting in him being denied access to adequate medical care for his broken hand, constituting Deliberate and Intentional Indifference for not following their own policy, state law, guidelines, exhibiting deliberate indifference to plaintiff's serious medical needs, causing him unnecessary and wanton infliction of pain, exacerbating his injury resulting in irrepairable damage, permanent disfiguration, loss of functioning, loss of range of motion, extreme discomfort, unnecessarily prolonging his suffering, depression, mental anguish, headaches, loss of sleep, all in violation of the Eighth Amendment's prohibition against Cruel and Unusual Punishment. (See Exhibit #124, #16, #21, #14, #29, #31, #19, #18, #13, #11, #48, #43, #42, #12, #15, #17, #20, #22, #1, #32, #31, #28, #27, #26, #25, #23, #45, #44, #46, #47, #49, #50, #41, #39, #33, #37, #36, #35, #34, #40, #86, #87, #91, #92, #94, #110, #116, #223.) IDOC Administrative Directive, number: 01.02.350, Title: Addressing and Reducing Disparate treatment and Impact, effective: 7/1/2023, (I.) Policy: The Department Shall ensure fair and equitable distribution of benefits in the assignment of individuals, in custody to custody levels, living units, job assignments of individuals, program assignments, education and Career and Technical Education programs opportunities and preparation and support for community re-entry, ensure all processes associated with institutional custody and classification, discipline and grievances are conducted fairly, and that decisions are not influenced by stereotypes or bias based on race, color or ethnicity,

110.

and provide an environment for individuals in custody that is free from harassment or disparate treatment based on race, color, or ethnicity. (See Exhibit # 124).

#224.) IDOC Administrative Directive, number: 01.02.350, Title: "Addressing and Reducing Disparate Treatment and Impact", effective: 7/1/2023, — (II.) Procedure — (A.) Purpose — the purpose of this policy is to establish a means of identifying and addressing issues of disparity and to ensure respect and fair treatment of individuals in custody by implementing procedures and practices that rely on equitable and relevant criteria; (F.) The following processes shall be continually reviewed to identify and address areas of disparate treatment and impact, and processed in a manner free of discrimination, bias, or any other action that constitutes or perpetuates disparate treatment based on race, color, or ethnicity; (C.) Individuals in custody shall have the opportunity to resolve issues and incidents in an informal setting prior to utilizing the formal grievance process as well as access to appeal; (d.) All individuals in custody are entitled to invoke the grievance procedure for a broad range of complaints including, but not limited to: (1.) Policies and procedures within the facility that impact the individual in custody; (2.) Actions by Department employees including contractual employees, volunteers and other individuals in custody; (3.) Incidents or conditions occurring within the facility that impact the individual in custody personally, and; (4.) Issues relating to health care and other concerns. (See Exhibit # 124).

#225.) Angela Crain, the Health Care Unit Administrator / Health Services Administrator and acting Unit Medical Director at Menard C.C., violated Administrative Directive, 01.02.350 (II.)(A.)(F.)(C.)(a.)(d.)(1.)(2.)(3.) which states in (C.)(d.)(4.) that, "all individuals in custody are entitled to invoke the grievance procedure for a broad range of complaints including, but not limited to: Issues relating to health care and other concerns without disparity and to ensure respect and fair treatment of individuals in custody by implementing procedures and practice that rely on equitable and relevant criteria but plaintiff was unlawfully discriminated against when seeking to obtain adequate medical care and denied constituting/the Deliberate and Intentional Indifference to plaintiff's serious medical needs in violation of the Eighth Amendment's prohibition of Cruel And Unusual punishment, causing him unnecessary and —

(111)

"Warden Anthony Wills, HCUA-Unit Medical Director-Registered Nurse Angela Crain, Grievance Personnel (counselor) Allison P. Hargis, (counselor), Chief M. Ramsey, Grievance Officer Kelly Pierce, ARB Administrator DeAnna Kin, Director-Rob Jeffreys, and Jane Doe Nurse Suzie /All Exhibited Deliberate Indifference To Plaintiff's Serious Medical Needs by Denial or Delay of Treatment, Inaction, Refusal to follow Physician's Recommended course of treatment, Refusing to Provide Pain Medication for Carpal Tunnel Syndrome Nerve Damage and Intermittent Pain, constituting Unnecessary ■ And Wanton Infliction of Pain in Violation of The EIGHTH Amendment's Prohibition Against Cruel And Unusual Punishment" (Claim)

-wanton infliction of pain, prolonging his suffering and worsening his injury leading to irrepairable damage, permanent disfiguration, loss of functioning, loss of range of motion. (See Exhibit #124, #110, #16, #21, #14, #29, #33, #19, #18, #13, #11, #48, #43, #42, #12, #15, #17, #20, #22, #1, #32, #31, #30, #28, #27, #26, #25, #24, #23, #45, #44, #46, #47, #49, #50, #41, #39, #38, #37, #36, #35, #34, #40, #94, #116, #117,    ).

(#226) Plaintiff was subjected to deliberate indifference to his serious medical needs over a 19 month period of time from 8/16/21 to 8/3/23 by various medical personnel at Menard correctional Center and prison staff members along with various grievance personnel staff also, with the various failures to provide adequate medical treatment were all part of the same series of transactions and occurrences. (See Exhibits #1 - #126   ).

(#227.) On 2/8/22, upon return from my med Furlough Writ to "The Orthopaedic Institute OF Southern Illinois where plaintiff ∧ was seen by Medical Doctor, Glen Babich, who conducted an X-ray and did an assessment evaluation on my right hand and diagnosed me with an old fracture that healed improperly over a carpal bone, with the bone marrow and protective coating over the broken bone being damaged and gone, and it started healing incorrectly on it's own and have been infused together, overlapping each other with the bones touching and rubbing against each other which is one cause and form of the pain and suffering plaintiff's experiencing on top of Carpal Tunnel Nerve Damage Syndrome which is causing the symptoms complained about and experienced such as weakness in the hand, severe pain and discomfort, throbbing and numbness, and a burning sensation in his hand, fingers, along with a pinching pain in his wrist, all of which would require surgery to repair for the nerve damage and for plaintiff's permanent disfiguration and irrepairable damage surgery would be needed to fix the improperly healed fracture too. (see Exhibit #41).

(#228.) On 2/8/22, Medical Doctor, Glen Babich, upon releasing plaintiff he stated that since plaintiff wasn't interested in Carpal Tunnel Release Nerve surgery at the moment due to being vulnerable in a violent maximum security prison, if the symptoms became worse or plaintiff would like to have this addressed that he can have a follow-up made here at the clinic; and he said for the fracture

(112.) ■.

—itself it had healed though improperly; there isn't much that can be done, and he didn't feel it was a surgical issue with surgery being less than optimal since plaintiff does have full range of motion and surgery wouldn't improve his range of motion even though plaintiff was more so focused on the pain the improperly healed fracture was causing him and the permanent deformity, and Doctor Glen Babich instructed plaintiff to take anti-inflammatories for his intermittent pain and to use the hand with no restrictions. (See Exhibit # 41, #42, #43).

#229. On 2/15/22, plaintiff filed an emergency grievance (# 121-2-22) to the Warden, Anthony Wills, explaining the Orthopaedic Hand Specialist's findings of my right hand being fractured and healing improperly over a nerve, the permanent disfiguration and irrepairable damage due to Menard's C.C. medical staff misdiagnosing me on multiple x-rays; requesting surgery to repair the damage of my fractured bones rubbing up against each other and overlapping, being infused together with the bone marrows and protective coating gone and damaged which is causing me pain and suffering and requesting regularly prescribed 500 mg Ibuprofen pain medication until able to receive proper treatment to fix plaintiff's improperly healed broken hand. (See Exhibit # 46, # 45, #41).

# 230. Plaintiff's Emergency Grievance # 121-2-22 dated 2/15/22 regarding medical treatment and surgery has been deemed emergency by CAO (Warden) for expedited grievance review and filed with Grievance Personnel Counselor Allison P. Hargis on 2/2/22. (See Exhibit # 45, # 46).

# 231. On 2/17/22, plaintiff's Emergency Grievance # 121-2-22 regarding medical treatment and surgery dated 2/15/22 was received by the Grievance Office via grievance personnel counselor Sheila M. Ramsey. (See Exhibit # 44).

# 232. On 2/22/22, the grievance officer's Report in response to plaintiff's grievance # 121-2-22 requesting surgery and medical treatment to repair his damage to his fractured hand and pain from the improperly healed bones rubbing against each other and regularly prescribed pain pills and to fix his permanent disfiguration of his right hand, which the grievance officer forwarded the grievance to Angela Crain, RN, HCUA, who reviewed plaintiff's medical records and the appointment report from the Orthopaedic Specialist and decided to deny plaintiff's grievance and request for a follow-

13.

— with the Orthopaedic Hand Specialist to be evaluated again to consider Plaintiff having surgery to repair the improperly healed fractured bones in his right hand that are rubbing together and causing him pain and to fix the permanent disfiguration that resulted so it can heal properly, and the Warden, Anthany Wills, concurred with the grievance officer's findings. also, (see Exhibit #47).

#233. On 3/28/22, the IDOC Administrative Review Board Denied plaintiff's Grievance #121-2-22, which was denied by DeAnna Kink (ARB Board Administrator) and Concurred by Director, Rob Jeffrey stating, "this office denied grievance for surgery of broken improperly healed hand and wants meds, finding the issue was appropriately addressed by the facility administration, and per HCUA - medical reports from orthopaedic specialist indicate surgery is not suggested at this point, with plaintiff instructed to take anti-inflammatory for pain, and treatment is at the descretion of the licensed medical provider. (see Exhibit #50, #47, #41, #46).

#234. On 5/10/22, plaintiff filed a nursing sick call request slip explaining he was experiencing pain in his right hand, a numbing feeling, which prevents him from writing at times, headaches, mental anguish due to his broken hand injury that's not healing properly; and that he's also been diagnosed with Carpal Tunnel and Arthritis and he needs some pain pills to cope with the numbing the pain until he could have surgery to fix his hand properly and correct the nerve damage. (See Exhibit #53, #41).

#235. On 5/13/22, while in the East House Unit, cell #813, the counselor, Allision P. Hargis, walked through on 8 gallery and ones stopped her and plaintiff told her he was experiencing severe pain and discomfort in his right hand due to an injury he sustained that hasn't healed properly and the Carpal Tunnel Syndrome Nerve Damage he's suffering from as well and he asked her could she help him obtain some pain medication for his intermittent pain and she did nothing and walked off.

#236. On 5/10/22, plaintiff filed a Mental Health Request Slip to address his mental health issue due to him experiencing mental anguish, headaches, chronic inflammation in his hand due

114.

* to the pain and suffering he's being forced to endure because of a broken hand he had that hasn't healed properly, which is now causing him pain. (See Exhibit # 54).

**#237.** On 5/14/22, Plaintiff was called for eval on nursing sick call and was seen by Jane Doe nurse Suzie, who he told of his hand injury, Angela Crain denying him for a physician's follow-up to consider having surgery to repair his improperly healed broken right hand and permanent disfiguration that was causing him a form of pain, the multiple requests and grievance filed to Angela Crain that fell on deaf ears requesting anti-inflammatory pain medication for his Carpal Tunnel Nerve Damage pain and suffering he's been experiencing over the past months, and his need for anti-inflammatory pain medication to cope with the pain, with the Jane Doe Nurse Suzie stating she'll contact Angela Crain for the pain pills and that Angela Crain is only a nurse and not qualified to deny plaintiff surgery.

**#238.** On 5/17/22, Plaintiff was seen by Mental Health Personnel Ms. Bidner on Tuesday around 10:15a right before he went to law library when he was housed in East House cell # 813, where he expressed to her his issues with his hand injury, Angela Crain not providing him any relief after several requests of pain pills and proper treatment, along with the pain and suffering and depression he's experiencing due to the inadequate treatment and lack thereof plaintiff's been receiving by Menard's medical staff, and how he needed surgery and anti-inflammatory pain medication for his intermittent pain, which she said she'd contact Angela Crain the Health Care Unit Administrator provide me relief.

**#239.** On 5/18/22, Plaintiff wrote a correspondence to Angela Crain explaining to her he broke his hand which is causing him severe pain and suffering and he'd like to have surgery to fix it and until then he'd like regularly prescribed Anti-Inflammatory pain pills for his intermittent pain he's experiencing; how he's put in sick call request slips over a month ago and still haven't received any pain medication, and the pain is stressing him out causing him emotional distress, depression, that's giving him headaches and migraines, preventing him from sleeping and doing legal work due to his hand going numb, weakness and pain in his hands, and he'd like for her to please provide him some pain pills. (See Exhibit # 55).

115.

**#240.** On 5/24/22, Plaintiff seen Telesight Doctor Brian Blackmon (DO) on the television screen about how plaintiff went through everything surrounding his misdiagnosis with his fractured hand, then being denied surgery to repair his improperly healed broken bone that's causing him pain, the lack of adequate medical treatment, Carpal Tunnel Nerve damage nerve pain he's experiencing and need some anti-Inflammatory pain pills, which he's written Angela Crain and sick call request slips seeking to obtain to no prevail, and Doctor Brian Blackmon prescribed anti-depression pain pills to help with plaintiff's depression and his mental anguish he suffering from the maltreatment he's been receiving from medical staff at Menard C.C. and Carpal Tunnel Nerve Damage and being denied surgery to repair his improperly healed fractured hand and permanent disfiguration; and he said he'll put me in for mental health group and contact medical and try to get me some pain pills. (See Exhibits # 56, # 57, # 58, # 59, # 41, # 63                ).

**#241.** On 5/24/22, plaintiff had to get shot with a needle by nurse to have blood drawn to make sure I'm taking my psy-meds anti-depression medication and to run tests on my vitals. (See Exhibit # 60).

**#242.** On 5/31/22, plaintiff sent a request Correspondence to Angela Crain, Head Medical Director a Health Care Unit Administrator at Menard C.C., explaining to her the pain I was experiencing and suffering from an old fractured hand injury about nine months prior and how I've been experiencing a sharp pain, numbing in my hand, pinching feelings in my hand and wrist, shocking painful sensations in my my hand that are constant and reoccurring; also experiencing headaches, migraines, emotional distress that's agitating plaintiff mentally, how he've requested pain pills to cope with the chronic pain he's suffering , by putting in sick calls, he's wrote Angela Crain a letter requesting pain pills for his medical needs , and surgery to correct this issue, on 5/18/22 to have pain pills regularly prescribed until he's able to have surgery, but he still haven't received anything and he's been requesting them constantly for approximately 4 months now and haven't gotten any medical treatment for his pain, and he also requested to have a follow-up examination to consider having surgery for his nerve damage in his hand due to his improperly healed fractured hand to be relieved of his pain and suffering. (See Exhibit # 11)

(116.)

**#243.** On 5/31/22, plaintiff sent a Request Slip to the Warden, Anthony Wills, expressing to him he's been experiencing severe pain and suffering in his hand that was fractured over 8 months ago, how he's been putting in sick calls, writting letters to Ms. Angela Crain, Head Medical Director, and complaining to nurses in attempt to get some medical treatment for his pain in his hands, which is causing him sharp shocking pain, a pinching sensation in his hand, and wrist, loss of feeling in my hand, and chronic weakness and numbness in my hand, and fingers; also causing him headaches, migraines, ~~constant worried~~, emotional distress, making it hard for him to sleep or concentrate on his legal work. How he's been requesting pain pills for about 4 months now dropping sick call slips, asking nurses passing out medication, he asked the couselor in person, he's filed grievances, wrote letters to medical staff and haven't received anything; and he'd like to have regularly prescribed anti-inflammatory pain pills for his for his constant pain in his hand due to his improperly healed fracture, a follow-up examinat-on with the Outside Clinic Orthopaedic Specialist for his pain because he feel like it's getting worser, and he'd like to have surgery to relieve him of his pain and suffering. (See Exhibit # 62).

**#244.** On 6/2/22, plaintiff went on a nursing sick call and was seen by nurse Amanda Choate who he told of his pain and suffering he's been experiencing in his right hand, how his fractured hand injury months prior healed improperly over a nerve and nerve damage of Carpal Tunnel and the extreme discomfort, sharp pains, burning throbbing sensations he's experiencing, the excessive hand cramps, loss of feeling in his fingers and hands sometimes extending to his elbow, the pinching pains in his wrist, headaches, migraines, emotion distress, agitation and irritation, loss of sleep and lack of anti-inflammatory pain medication for approximately 4 months leading up until 6/2/22, where nurse Amanda finally gave him some Ibuprofen tablet pain pills and she said she'd refer him to see a Doctor for his nerve pains.

**#245.** On 2/15/22, plaintiff filed an emergency grievance with the Warden, Anthony Wills, which he deemed an emergency for expedited grievance review regarding medical treatment, requesting surgery to repair his improperly healed fractured hand, and requested regularly prescribed 500 mg Ibuprofen anti-

117.

-inflammatory pain medication, for his intermittent pain, chronic pain and suffering due to his Carpal Tunnel Nerve Damage in his right hand, which Grievance Personnel counselor Allison P. Hargis was made aware of plaintiff's predicament by way of his grievances, other correspondence and being told of in person on 8 gallery tour on 5/13/22, yet Allison after being alerted of an excessive risk to plaintiff's safety and health through his correspondence refused to exercise ~~the~~ authority of her office to ~~ensure~~ provide or ~~provide~~ ensure plaintiff received prescribed anti-inflammatory medication or substitute, despite his repeated complaints over an approximately 4 month period without and worsening pain, constituting Deliberate Indifference to his serious medical needs and unnecessary and wanton infliction of pain, resulting in prolonged pain and suffering, denying and delaying treatment, suffering from sharp stabbing pains in his right hand, pinching pains in his wrist, extreme discomfort, numbness of hand, loss of feeling in his fingers, excessive hand cramps, throbbing and burning sensations, joint pains, mental anguish, severe emotional distress, headaches, migraines, loss of sleep, chronic intermittent pain, all in violation of the Eighth Amendment's Prohibition against Cruel And Unusual Punishment. (See Exhibits # 45, #41, # 46, #48, # 60)

#246.) Defendants, Grievance Personnel, Counselor - Sheila M. Ramsey, Grievance Officer - Kelly Pierce, Angela Crain - Unit Medical Director / Health Care Unit Administrator, Warden - Anothany Wills, ARB Admin -istrator - DeAnna Kink, Director of IDOC - Rob Jeffreys, were all on various dates were made aware of Plaintiff's predicament of requests for surgery to repair his improperly healed fractured hand and permanent disfiguration that caused him pain and requests for regularly prescribed 500 mg Ibuprofen anti-inflammatory pain medication for his intermittent pain and suffering due to Carpal Tunnel Syndrom Nerve Damage in his right hand by way of his grievances and other correspondences, reports, appeals, with all Defendants reviewing and denying his grievance and having knowledge of the Orthopaedic Hand Specialists recommendations prescribing plaintiff to take anti-inflammatory pain medication for his intermittent pain, yet Sheila, Kelly, Angela, Anothany, DeAnna, and Rob all after being made aware of an excessive risk to plaintiff's safety and health through his grievance, correspondence Specialist's Report Findings, appeals, etc., they all failed to follow the Orthopaedic Specialists of the

(118)

-Orthopaedic Institute of Southern Illinois Clinic recommendations and refused to exercise the authority of his or her office to provide or ensure plaintiff received prescribed anti-inflammatory medication or substitute, despite his repeated complaints over an approximate-ly 4 month period without it and worsening pain until he finally received some on 6/2/22, constituting Deliberate Indifference to his serious medical needs for denial or delaying of prescribed medical treatment, failure to follow recommendations of Specialist, Interference with treatment prescribed, and unnecessary and wanton infliction of pain, resulting in prolonged pain and suffering, suffering from sharp stabbing pains in his right hand, pinching pains in his right hand and wrist, extreme discomfort, numbness of hand, loss of feeling in his fingers, excessive hand cramps, throbbing and burning sensations, joint pains, mental anguish, severe emotional distress, headaches, migraines, loss of sleep, chronic intermittent pain, all in violation of the Eighth Amendment's Prohibition against Cruel And Unusual Punishment. (See Exhibits # 41, #46, #42, #43, #44, #45, #47, #48, #49, #50, #51, #52, #53, #54, #55, #56, #57, #58, #59, #60, #61, #62, #63, #95, #110, #116,                    ).

(#247.) On 5/14/22, plaintiff was seen on a nursing sick call in person by Jane Doe nurse Suzie who he made aware of his severe hand injury of his fractured hand healing improper, and causing him a form of pain along with his Carpal Tunnel Syndrome nerve damage pain and him being prescribed anti-inflammatory pain medical by a physician and his numerous request to Angela Crain and others seeking to obtain anti-inflammatory medication for his chronic intermittent pain and she responded that she'd contact Angela Crain in attempt to get me some and provided plaintiff no relief at that time for his pain and suffering due to his severe hand injury, when she could've gave him a substitute of pain medication consisting of over the counter Ibuprofen until he could've gotten something a bit stronger, constituting Deliberate Indifference to plaintiff's serious medical needs and unnecessary and wanton infliction of pain, resulting in unnecessarily prolonging his pain and suffering, denying and delaying treatment, suffering from sharp stabbing pains in his right hand, pinching

(119.)   ▮

—pains in his wrist, extreme discomfort, numbness of hand, loss of feeling in his fingers, excessive hand cramps, throbbing and burning sensations, joint pains, mental anguish, severe emotional distress, headaches, migraines, loss of sleep, chronic intermittent pain, all in violation of the Eighth Amendment's Prohibition against Cruel And Unusual Punishment. (See Exhibits #41, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53, #54, #55, #56, #57, #58, #59, #60, #61, #62, #63,                    ).

(#248.) On 6/15/22, plaintiff had a shot and blood drawn to test vitals and for psy-meds eval for depression upon being prescribed anti-depression medication for mental anguish from cruel and unusual punishment to his serious medical needs over a 19 month time period. (See Exhibit #64)

(#249.) After being seen on nursing sick call exam on 6/2/22 which led to plaintiff being referred to see a Nerve Specialist for his Carpal Tunnel Syndrome nerve pain in his hand, on 6/17/22 he was sent on a med furlough to UIC/UIH Hospital for an evaluation the nerve specialist's examination findings determined plaintiff did have nerve damage (Carpal Tunnel Syndrome) in his right hand, Arthritis joint pains, and as courses of treatment the nerve specialist said she'd refer her findings to the Orthopaedic Hand Specialist for him to decide exactly what courses of treatment to proceed with and for now she'd like for plaintiff to try alternative courses of treatment to see if they help with the pain and suffering he's experiencing in providing a Wrist Hand Splint, physical theraphy, and stronger pain medication and refer that he be seen by the Orthopaedic Hand Specialist for a follow-up, but stated that really the only thing to relieve him of the pain he's facing is Carpal Tunnel Surgery. (See Exhibit #65, *

"Warden - Anthony Wills and Medical Director and Health Care Unit Administrator - Angela Crain Deliberate and Intentional Indifference to Plaintiff's serious medical needs for denial or delay of access to adequate medical treatment, placing his health and safety at risk by not following their own policies, rules, regulations, state law constituting Unnecessary and wanton infliction of pain in violation of the Eighth Amendment's prohibition of Cruel and Unusual Punishment" *Claim*

(#250.) On 6/2/22, plaintiff was seen on nursing sick call and was referred to be seen by a Nerve Specialist for an eval for the nerve pain he's been suffering from in his right hand due to an improperly healed fractured hand and pursuant to Administrative Director 04.03.103, "Offender Health Care Services", section (6)(c.) "Review of sick call Requests" which state's: When an offender's request for non-emergency medical attention results in referral

120.

- to a primary care physician by the screening health care staff, the primary care evaluation shall take place within 72 hours or upon the next scheduled visit by a primary care physician with plaintiff nor actually being seen by the Nerve Specialist physician on 6/17/22 (15 days after being referred by nurse sick call) with Warden ~~Anthony~~ Wills and Medical Director/Health Care Unit Administrator Angela Crain both responsible Authority who's duty is to ensure all Policies, Administrative Directives, medical rules and regulations are adhered to ~~both~~ failed to make sure plaintiff was seen by physician in 72 hours after physicians referral from nurse resulting in unnecessary and wanton infliction of pain, prolonging suffering and delaying access to adequate medical care and personnel, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment's Cruel and Unusual Punishment. (See Exhibit #112,                                                                                    ).

#**251.**) IDOC Administrative Directive. 01. 02. 111, "Facility Leadership And Direction", dated - 6/1/22 - (I.) Policy states: it is the policy of the department to provide the Warden of each institution the authority and responsibil -ity to manage and direct the total operations of the facility; Under this authority, the Warden shall operate ~~operate~~ the facility in accordance with state and federal laws, state statutes, administrative directives, executive orders and judical decisions; with (G.)(2.) "Strategic Plan" - the Warden of each facility shall be responsible for guiding the development and implementation of a local strategic plan for the facility including information and goals relating to the following: (b.) Institutional programs and services for: (1.) Reception and orientation activities, (4.) All individual areas of departmental programing and services, including education, career technical education, religious services, recreation, release preparation, unit management, health care services, including both medical and mental health care, recovery services, and victim awareness/empath, etc; and (5.) All other departments of major significance to institutional operations. (See Exhibit #122).

#**252.**) IDOC Administrative Directive, 04.03. 112, "Medical and Health Care", 9/1/2002, lists the duty of the Warden to create written guidelines for outside clinics, arrangement and approval of making appointments, arranging for prescriptions to be filled, and arranging for hospitalization within the community when necessary. (See Exhibit # 121)

#**253.**) IDOC Administrative Director, 04.03.103, "Offender Health Care Services", states the duties and responsibili of Warden Anthony Wills and Medical Director/Health Care Unit Administrator Angela Crains medical care dut (121.) ~~1121.~~ ]

- stating under (F.) Warden is responsible for developing procedures covering provision of health care services with the Facility, and the procedure shall be dated and signed by the "CAO" and the designated health care authority for the facility and approved by the Agency Medical Director, with the procedures shall provide the following: (1.) The health care Services programs shall be directed by a designated health care authority whose scope of duties are detailed in a written agreement, contract or job description that is reviewed annually and revised; (3.) "offender Access" - (a.) all offenders shall have ~~intake~~ exam upon admission to a reception and classification center in accordance to AD) 04.03.101; (b.) All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant, or nurse practitioner as needed; (c.) offenders shall be referred for specialty services if determined medically necessary; (1.) if a facility physician, physician's assistant or nurse practitioner deems specialty services necessary, medical special services referral and report, DOC 0254 shall be submitted to the facility Medical Director; (c)(iii.) -if the referral is approved, the facility Medical Director shall ensure services are scheduled and course of treatment is initiated; and (3.) if approved, health care staff shall schedule the pending specialty service. (See Exhibits # 112).

(#254.) IDOC Administrative Directive, 04.03.103, Title: Offender Health Care Services, 1/1/20; states: (7.) "Health Care Planning for General Population Offenders" - (a.) Health Care staff shall identify offenders who have health conditions that require health care planning; (e.) following completion of health care planning, a note shall be placed: (1.) On the Offender Medical Problem List, DOC 0088, indicating that health care planning has been completed; (2.) In the progress note describing the health care plan and indicating that the plan was discussed with the offender; (f.) The health care planning portion of local procedures shall be reviewed, and revised and re-approved annually, at the time of the annual governing body meeting as scheduled by the Agency Medical Director; (8.) Review of Health Complaints: Reports of health problems of other medical complaints made by offenders shall be reviewed within 24 hours, or immediately in the event of an emergency, by designated trained staff; appropriate referrals to scheduled or unscheduled health care services shall be made as needed. (See Exhibit # 112).

(#255.) On 6/17/22, upon plaintiff's return from UIC/UIH Hospital he was never given a -

(122.)   (___.)

—intake screening on the day of offenders return of those with disabilities; (1.) who shall be received by trained staff who shall inquire into the offender's medical history, with the inquiry shall include the following and the results shall be documented on DOC 0092: (a.) current illnesses; (b.) Health problems and cares (c.) Medications; (d.) Special Health Requirements; (e.) Substance abuse and intravenous needle history; (f.) Sexual history, including contact with homosexuals and prostitutes, and contact with individuals who were or have since diagnosed as having Human Immunodeficiency Virus (HIV) disease; and; (6.) History of sexual abuse or sexual predator. (See Exhibit # 113)

(# 256.) IDOC Administrative Directive, 04.03.101, Title: Offender Physical Examinations, effective: 5/1/21, provision policy states the following requirements and duties for Warden Wills and Medical Director/Health Care Unit Administrative Angela Crain shall adhere to: (G.) Requirements: The Chief Administrative Officer shall ensure that physical examinations of offenders are conducted in accordance with provisions of this Directive; (G.1.) "Intake Screening": (b.) Offenders returning from writs or authorized absences greater than 24 hours, but no more than 90 days, shall have the Offender Medical History, DOC 0092, completed the day the offender returns; If the writ or authorized absence exceeds 90 days, the entire medical reception process shall be performed; (G.)(C.)(2.) Be observed by trained staff in regard to the following or shall document the findings on the DOC 0092: (a.) Behavior; (b.) Appearance; (c.) Mental Status; (d.) Auditory ability; (e.) Any deformity, (f.) Evidence of trauma; and (g.) condition of skin to include rashes, pediculosis infestation, jaundice or track marks. (See Exhibit # 113).

(# 257.) IDOC Administrative Directive, 04.03.101, Title; Offender Physical Examinations, effective 5/1/21, states under: (G.2) Health Appraisal – (a.) Intake Physical Examination: Within seven working days of an offenders admission to a reception and classification center or another designated intake facility: (1.) A physician, physician's assistant or nurse practitioner shall review the intake screening; (2.) Health care staff shall complete a medical history; the medical history shall be recorded on the DOC 0092, (3.) A physician, physician's assistant or nurse practitioner shall conduct a physical examination of the offender; the examination results shall be documented on the DOC 0099. (See Exhibit # 113).

(# 258.) Medical Director/Health Care Unit Administrator Angela Crain and Warden Anthony Wills both (122.) (123.)

failed to ensure that when plaintiff **had** requested and was referred to see a Nerve Specialist physician on sick call eval on 6/2/22 by nurse within 72 hours which is required by Wexford Policy under "Doctor's Sick Call" constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs by denying and delaying access to adequate medical care and personnel resulting in unnecessary and wanton infliction of pain in violation of the Eight Amendment's Prohibition of Cruel and unusual Punishment, resulting in unnecessarily prolonging suffering and pain. (See Exhibit # 94, #112)

**#259.** Upon plaintiff's return from the Outside Hospital at UIC/UIH from seeing the Nerve Specialist Physician Warden Anthony Wills and Medical Director/Health Care Unit Administrator **Angela Crain**, on 6/17/22 from medical furlough Writ, they failed to ensure plaintiff received a physical examination, intake screening by trained medical staff and document the findings on DOC 0092 **form**, and **conduct** an intake physical Examination by a physician, physician's assistant, or nurse practitioner within 7 days of plaintiff's admission to a reception and classification center in violation of state law Administrative Director 04.03.101, titled: "Offender Physical Examinations", constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs placing him and his Health and safety at risk for coming into contact with people at outside Hospital whom he could've contracted a disease, AIDS, etc from and not knowing because they didn't conduct the physical exam, and constituting unnecessary and wanton ▓▓▓ infliction of pain, unnecessarily prolonging his suffering and pain, resulting in sharp pains, throbbing burning sensations, extreme discomfort, severe hand cramps, denial and delay of receiving pain medication to cope with the intermittent pain, loss of sleep, mental anguish, depression. (see Exhibit # 113, #

**#260.** Upon plaintiff's return from UIC/UIH Hospital from seeing the Nerve Specialist Warden Anthony Wills and Medical Director/Health Care Unit Administrator Angela Crain are responsible for ensuring Administrative Directive 04.03.121, Title: "Treatment Protocols", effective: 5/1/2019 are provided to plaintiff with access to adequate health care according to provider treatment protocols with uniform procedures for the treatment protocols being approved by the Warden and Angela Crain requiring that upon return of med furlough Writ from outside Medical Hospitals plaintiff are to be seen by a physician for an

124.

evaluation and physical examination within 5 days upon return to intake facility for follow up exam, which Anthony Wills and Angela Crain failed to do upon return to Menard C.C. on 6/17/22 constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs for not following their own Policy, rules, and regulations, state law, placing plaintiff's health and safety at risk after coming into contact with people from outside hospitals who could've transferred diseases on him, AIDS, etc and failing to conduct tests to ensure he didn't, and constituting unnecessary and wanton infliction of pain in violation of the **Eighth** Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit "111, "65, "110, #66).

#261. On 6/26/22, plaintiff was seen on Mental Health call pass by A. Greenwalt and was treated for his severe depression and his Cymbalta 30mg anti-depressants medication was continued to help with the nerve pain he was suffering from and the mental anguish and depression he suffered as a result of the pain caused by his nerve damage injury in his improperly healed hand and the **lack** of access to adequate medical care and delays from receiving proper and adequate corrective treatment. (See Exhibit # 66).

#262. On 7/10/22, plaintiff **seen** mental health about the inadequate courses of treatment being provided due to the Ibuprofen pain pills not being effective to relief him of his chronic pain and suffering and a form of Menard's medical staff persisting in an inappropriate course of treatment unnecessarily prolonging plaintiffs pain and suffering, and may need to have Carpal Tunnel Surgery and be required to wear a hand splint. (See Exhibit # 68)

#263. On 9/27/22, plaintiff **went** to see the Orthopaedic Hand Specialist at the Outside Clinic 3 months after visiting the Nerve Specialist Physician and being referred for an eval to consider possible treatment options and **courses** of treatment on 6/17/22, with Warden Anthony Wills and Medical Directive/Health Care Unit Administrator Angela Crain both being Deliberate and Intentional Indifferent to plaintiff's serious medical needs for not following their own Administrative Directive, 04.03.103, "Offender Health Care Services" policy and Wexford Policy under "Doctor's Sick Call", constituting unnecessary and

125.

- Wanton Infliction of pain, resulting in delay of treatment prolonging plaintiff's pain and suffering for non-medical reasons in violation of the Eighth Amendment's Prohibition of against Cruel and Unusual Punishment. (See Exhibit #77, #94, #112).

#264.) Upon plaintiff's Orthopaedic Hand Specialist visit on 9/27/22, the physician recommended as courses of treatment a Right Wrist Hand Splint, Stronger regularly prescribed pain medication called "Meloxicam", and physical theraphy to try out first before considering surgery to see how these treatments help with plaintiff's intermittent pain. ~~recommended~~ (See Exhibit #77).

#265.) Upon Plaintiff's return from the Orthopaedic Hand Specialist's Clinic Visit on 9/27/22, Warden Anthony Wills and Medical Director/ Health Care Unit Administrator Angela Crain both failed to adhere to treatment Protocol requiring that plaintiff be seen upon return of med Furlough Writ from Outside Orthopaedic Hand Specialist Clinic within 5 days by a physician, physician's assistant, or nurse practitioner for a follow-up examination, constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs, constituting unnecessary and wanton infliction of pain, placing his health and safety at risk for coming into contact to people and medical personnel who he can contract diseases from without ever knowing or conducting a treatment plan or ensuring the physician's course of treatment recommendations are followed in violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment. (See Exhibit #77, #113, #112).

#266.) On 9/28/22, plaintiff sent a request to the counselor of East House while in cell 813 requesting for pain medication. (See Exhibit #78).

#267.) On 10/2/22, plaintiff received regularly prescribed pain pills called "Meloxicam" medication by the Orthopaedic Hand Specialist. (See Exhibit #80).

#268.) On 10/3/22, plaintiff went to physical theraphy for the first time and was seen by physical theraphy technician A. Dewanne.

#269.) On 10/13/22, plaintiff received a "Wrist Soft Brace" which was signed by Physical Theraphy technician A. DeWanne impersonating a M.D. (Medical Doctor) falsifying a physician's signature which h

126. ■.

—'s not in violation of Administrative Directive, 03.02.108, "Standards of Conduct", effective: 1/1/21, which states under (G.)(10.) that all employees shall obey all Federal, State and local laws, and all applicable court decisions and orders related to the performance of their job duties; along with under section "Giving False Information" requiring that any employee who knowingly provides false information, including, but not limited to, false information provided in statements, including incident reports, correspondence or an interview shall be subject to disciplinary action, including discharge, ~~about~~ nor was the "Wrist Soft Brace" given to plaintiff the recommended course of treatment the Orthopaedic Hand Specialist prescribed for his hand injury consisting of no wrist support, with Warden Anthony Wills and Medical Director/Health Care Unit Administrator Angela Crain both being deliberate indifferent to plaintiff's serious medical needs by not ensuring that plaintiff received the recommended course of treatment advised by the Orthopaedic Hand Specialist, delaying and denying appropriate treatment, unnecessarily prolonging plaintiff's pain and suffering, and exacerbating his injury due to him suffering another injury by falling from the top bunk due to receiving the "wrist Soft Brace", and interfering with recommended course of treatment plan from physician for none medical reason, constituting unnecessary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment. (See Exhibit #82, #110, #83,)

270.* On 10/31/22, plaintiff slipped and fell trying to climb up on the top bunk with the "Wrist Soft Brace" on and injured his right hand further due to his hand going weak and having no wrist support or ladder forcing him to have to jump on the toliet and step on the sink in order to get on the top bunk, and is requesting a bottom bunk permit. (See Exhibit # 83).

271. On 10/13/22, plaintiff went to physical theraphy and was seen by H. Deweanne who did some hand exercises on me that basically amounted to nothing and provided no relief for the pain and suffer plaintiff were experiencing, nor did anything to prevent the sharp pain in his right hand, stop the burning and throbbing sensation, pinching pain in his wrist, numbness in his hand, loss of feeling in his hand, extreme

127.

-e discomfort, loss of sleep, depression and mental anguish caused by inadequate treatment received to correct the pain from Carpal Tunnel Nerve damage, with the physical theraphy technician basically telling ~~him~~ him all physical theraphy consists of is hand exercises that don't do much for the pain and suffering and is an ineffective course of treatment.

#272. On 11/3/22, plaintiff filed an emergency grievance with the Warden requesting Carpal Tunnel Surgery because ~~the~~ alternative courses of treatment in the form of pain medication, physical theraphy, the "Wrist soft Brace" with no wrist support are all ineffective and aren't doing anything to relief him of his pain and suffering, and he requested to receive a Right Wrist Splint with some wrist support to not aggrevate his injury further, and requested to have Carpal Tunnel Surgery Immediately to repair his nerve damage and adequately relieve him of his pain and suffering once and for all. (See Exhibit # 84).

#273. On 11/2/22, I went to sick call for falling off the top bunk and hurting my hand even worser, exacerbating plaintiff's injury and was given pain pills with plaintiff requesting a bottom bunk permit.

#274. On 11/4/22, while plaintiff was in cell #813, the correctional officer told him he was on the clothing call line for a medical furlough Writ to the Outside Orthopaedic Clinic for the next day but it was cancelled for non-medical reasons denying and delaying access to adequate medical treatment and access to medical personnel with Warden Anthony Wills and Angela Crain being Deliberate Indifference to plaintiff's serious medical needs after he request via grievance to see a physician and have ~~surgery~~ to repair his nerve damage to ~~relief him~~ of ~~his~~ pain and suffering constituting unnecessary and wanton infliction of pain, resulting in unnecessarily prolonging his pain and suffering in violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment.

#275. On 11/15/22, plaintiff was sent out to see Orthopaedic Hand Specialist wearing the "Wrist Soft Brace" menard's medical staff gave me against the Medical Doctor's recommendations which was a "Right Wrist Splint" he prescribed me and he smirked ~~when~~ I asked him was the "Wrist Soft Brace the Right Wrist Splint" and he said "no", and he'd put me in for it again placing emphasis on the -

128.

Case 3:23-cv-03775-DWD Document 54 Filed 11/06/25 Page 130 of 158 Page ID#3170

" Nurse Nicole Brand's Deliberate Indifference to plaintiff's serious medical needs constituting Unnecessary and **Wanton** Infliction **of** Pain For Interfering With Treatment Prescribed by Orthopaedic Hand Specialist and For Not following The Recommended Course of Treatment prescribed by the Physician in Violation of the Eighth Amendment's Cruel and Unusual Punishment " (Claim ~~And Denying plaintiff Access To Adequate Medical Care.~~

- specific ~~kind~~ to prevent this from happening again; also he put plaintiff in For Carpal Tunnel Surgery. See Exhibit # ).

**# 276.** Warden Anthony Wills and Medical Director/Health Care Unit Administrator Angela Crain failed to ensure plaintiff was seen by a Medical Doctor/Physician after his request to see one within 72 hours which Wexford's **Policy** requires under section "Doctor's Sick Call" constituting Deliberate and **Intentional** Indifference to plaintiff's serious medical needs, resulting in unnecessary and wanton infliction of pain and prolong his pain and suffering in violation of the Eighth Amendments Prohibition of Cruel and Unusual Punishment. (See Exhibit # 94).

**# 277.** On 11/18/22, plaintiff was in East House, cell # 813, when around 8:00am nurse Nicole Brand and an officer came to my cell and she told me to sign for a "Right Wrist ██ Splint ( Cock Up Wrist Brace) (a Night " dated 11/15/22, and she'd be back to receive her white copy for the "Illinois Department Of Corrections Medical Permit Menard Correctional Center", only to come back with plaintiff signing for it and giving the nurse the white copy, but she then walked off never giving him the "Right Wrist Splint" and when he asked for it she said it'll come in the mail and could take 2 months and he asked then why are you having him sign for it right now as if he received it, and when he obtained the " Wrist Soft Brace" he got it at the same time right he signed for it the nurse gave it to him, constituting Deliberate Indifference to plaintiff's serious medical needs by Nicole Brand nurse for interfering with the prescibed course of treatment by the Orthopaedic Hand Specialist and to not follow the recommended course of treatment the physician advised, constituting unnecessary and wanton infliction of pain and prolonging his pain and suffering in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit # 85).

**# 278.** Nurse Practitioner, M. Moldehauer, signed plaintiff's "IDOC Medical Permit Menard C.C." when a Medical Doctor's signature was supposed to be at on 11/15/22, which led to plaintiff not receiving the Right Hand Splint which was the proper course of treatment device to prevent his wrist from bending and aggrevating his injury due to nurse M. Moldehauer falsifying her signature on the Permit ~~also~~ in violation

129.

-of Administrative Directive, 03.02.108, "Standards of Conduct," effective :11/1/2021, requiring that giving false information of a state employee shall be prohibited with them being subject to disciplinary action, including discharge, constituting Deliberate and Intentional Indifference for not following their own State law Administrative Directives and Policies, constituting unnecessary and wanton infliction of pain, resulting in plaintiff being denied adequate medical treatment and prolonging his pain and suffering in violation of his serious medical needs in violation of the Eighth Amendments Prohibition against Cruel and Unusual Punishment. (See Exhibit # 110, # 85).

#279. On 11/21/22, plaintiff filed a grievance #295-11-22, "Requesting Right Wrist Splint" with Counselor Clara Richmond with plaintiff explaining how the "Wrist Soft Brace" he received from Menard's Medical Staff isn't what the Hand Specialist Recommended and how he was deceived to sign for the "Right Hand Splint" that he never received by Nurse Nicole Brand with him requesting to receive the "Right Wrist Splint" the Orthopaedic Hand Specialist prescribed as treatment for his hand injury and a bottom bunk permit and requesting surgery for his Carpal Tunnel injury! (See Exhibit # 86).

#280. On 11/21/22, plaintiff filed another grievance # 296-11-22 with Counselor Clara Richmond Requesting Surgery For Hand Carpal Tunnel Nerve Damage Pain since the pain pills aren't really helping to relieve him of his pain, the physical theraphy and hand splint are also forms of ineffective courses of treatment that only prolongs his pain and suffering and preventing him from receiving adequate medical treatment. (See Exhibit #87).

#281. On 12/9/22, plaintiff received the "Right Wrist-Cock Up Wrist Brace @ Night and Activities" which was signed by Nurse Practitioner M. Middenhauer, 44 days after the Orthopaedic Hand Specialist prescribed him as a course of treatment for his hand injury with Warden Wills, Angela Crain both being deliberate indifferent to plaintiff's serious medical needs for denying, or delaying and interfering with the recommended course of treatment prescribed by the Orthopaedic Hand Specialist, constituting unnecessary and wanton infliction of pain and prolong his pain and-

130.

suffering in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit #88).

#282.) On 6/27/23, plaintiff received a "Memorandum" date: May 24, 2023, From: Angela Crain responding to his medical grievance # 296-11-22 for a grievance he filed over 5 to 6 months prior constituting deliberate and Intentional Indifference to his serious medical needs by intentionally interfering, delaying or denying him access to adequate medical care, constituting unnecessary and wanton infliction of pain, resulting in unnecessarily prolonging his pain and suffering and medical treatment in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment, (See Exhibit # 91), Exhibit # 92), along with another "Memorandum" date May 24, 2023 responding to grievance # 295-11-22 with both of plaintiff's grievances attached to the Memorandums with the Counselor's Response along with Angela Crain's responses to the two seperate grievances both filed on 11/21/22 and receiving a response to them on 6/27/23.

"Warden Anthony Wills and Medical Director/Health Care Unit Administrator Angela Crain are Both Deliberate Indifferent to Plaintiff's serious medical needs for Delaying or Denying access to Adequate Medical Care for non-medical reasons and Interfering with Treatment Plans Recommendations by Physician in Violation of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment"

#283.) Plaintiff went to see the Orthopaedic Hand Specialist on 11/15/22 and the specialist put him in for surgery and said it was now up for Menard's medical staff to schedule it.

#284.) On 12/1/22, plaintiff was referred for surgery by Menard's medical staff.

#285.) On 1/9/22, plaintiff was supposed to be scheduled for surgery at the outside Orthopaedic Clinic by the Orthopaedic Hand Specialist but it was cancelled for non-medical

131.

-medical reasons.

#286. On 2/3/22, plaintiff went out to the Orthopaedic Institute Of Southern Illinois which was supposed to be for surgery but once he arrived the Dr. Glenn (Orthopaedic Hand Specialist) said that Menard's C.C. medical personnel scheduled plaintiff for a follow-up eval instead when plaintiff should've been scheduled for surgery for his right hand Carpal Tunnel Syndrome and he had to go all the way back to menard C.C. to be delayed even longer to have surgery to repair his nerve damage in his hand.

#287. On 3/3/22, plaintiff was finally tooken back to the Orthopaedic Institute Of South-ern Illinois and he had Carpal Tunnel Surgery to repair the nerve damage in his right hand and relieve him of his pain and suffering once and for all, 19 months after suffering his severe right hand injury before obtaining any meaningful relief in the form of surgery.

#288. Warden Anthony Wills and Unit Medical Director / Health Care Unit Admin-strator delayed plaintiff's recommended surgery for Carpal Tunnel Damage in his right hand requested by the Orthopaedic Hand Specialist on 11/15/22 for approximately 4 months with several delays for non-medical reasons before he actually received surgery on 3/3/23, constituting unnecessary and wanton infliction of pain resulting in plaintiff unnecessar-ly having to endure prolonged pain and suffering, severe hand cramps, sharp stabbing pains, burning and throbbing sensations in his hand, pinching pains in his wrist, extreme discomfor, numbness on fingers and hand, loss of feeling in his hand, loss of sleep, mental anguish, headaches and migraines, infliction of emotional distress, in violation of the Eighth Amendmen prohibition against Cruel and Unusual punishment with Warden Anthony Wills and Unit Medical Director / Health Care Unit Administrator both being Deliberate Indifferent to plaintiff's serious medical needs.

#289. Upon return to Menard C.C. after having surgery for Carpal Tunnel Surgery in hi

132.

- right hand Warden Anthony Wills and Unit Medical Director / Health Care Unit Administrator Angela Crain both failed to adhere to Administrative Directive, 04.03.101, "Offender Physical Examinations, requiring plaintiff received intake screening, with Documented findings of his medical history, including an intake physical examination within 7 working days of plaintiff's return from the Orthopaedic Institute of Southern Illinois after having surgery by a physician, physician's assistant or nurse practitioner with them conducting a complete physical examination of plaintiff with the examination results being documented on the "DOC 0099", constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs for not following **their** own policies, direction s, rules, regulations, state law, placing plaintiff's health and safety of physical harm at unreasonable risk and **serious** damage, along with the unnecessary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit #(13).

#290. Upon return from plaintiff having Carpal Tunnel Surgery on 3/3/23, Warden Anthony Wills and **U**nit Medical Director / Health Care Unit Administrator Angela Crain both failed to follow their own Medical Treatment Protocol rules and regulations requiring that plaintiff be seen by a Medical Doctor or Nurse Practitioner for a follow-up physical examination in 5 days upon return from Surgery at the **Orthopaedic** Institute of Southern Illinois, constituting Deliberate and Intentional Indifference for not following their own policies, Administrative Directives, rules, regula -tions, state law, being deliberate indifferent to plaintiff's serious medical needs, **by** placing his health and safety of physical harm at unreasonable risk and serious damage, along with the unneces -ary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. ( See Exhibit # 111, #110, #41, #42, #43 ).

#291. Plaintiff was sent out on a Medical Furlough Writ to the Orthopaedic Institute of Southern Illinois on 3/20/23 to have the physician's assistant remove his stitches for post-surgery treatment to allow plaintiff's hand to heal properly, with the physician's assistant prescribing him Vaseline grease **to** massage the area his wound to help it heal the scar tissues.

133.

**#292.** On 3/20/23, upon plaintiff's return from the Orthopaedic Institute Of Southern Illinois after having his stitches removed by the physician's assistant and being prescribed Vaseline to massage his scar tissue from a freshly surgical wound that hasn't healed yet Warden Anthony Wills and Unit Medical Director/ Health Care Unit Administrator Angela Crain both failed to adhere to Administrative Directive, 04.03.101, "Offender Physical Examination, requiring plaintiff received an intake screening, with Documented findings of his medical history, including an intake physical examination within 7 working days of plaintiff's return from the Orthopaedic Institute Of Southern Illinois after having his stitches removed by the physician assistant for a freshly opened wound 17 days after having Carpal Tunnel Right Hand Nerve Surgery by a physician, physician's assistant, or nurse practitioner with them conducting a complete physical examination of plaintiff with the examination results being documented on the "DOC 0099", constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs for not following their own policies, Administrative Directives, rules, regulations, state law, placing plaintiff's health and safety of physical harm at unreasonable risk and serious damage, along with the unnecessary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit #113).

**#293.** On 3/29/23, plaintiff had physical therophy but it was scheduled for non-medical reasons.

**#294.** The Orthopaedic Hand Specialist had scheduled plaintiff for a Post-Surgery Follow-Up evaluation to make sure everything was healing properly and that my freshly healing open wound didn't get infected, etc for 6 weeks after surgery, yet on 6/1/23 plaintiff was scheduled to go on a Medical Furlough at 11:45 am to the Orthopaedic Institute Of Southern Illinois to see the Orthopaedic Hand Specialist Glen Babich (M.D.) for Post-Surgery Follow-Up Examination but it was cancelled for non-medical reasons by Warden Anthony Wills and Unit Medical Director/Health Care Unit Administrator Angela Crain with them both being Deliberate Indifferent to plaintiff's serious medical need for refusing to follow the advice and recommendations of the Orthopaedic Hand Specialist for denying or dela

134.

-ing necessary treatment needlessly placing his health and safety at unreasonable risk of physical harm and serious damage, prolonging his pain, for their inaction, and their interferring with treatment prescribed by the Orthopaedic Hand Specialist, constituting the unnecessary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment.

#295. On 6/28/23, plaintiff went to physical theraphy and was cleared by the physical theraphy technician to be tooken off physical theraphy due to her observation of the progress of his range of motion in his wrist and right hand without any consideration of the Orthopaedic Hand Specialist's opinions or findings, nor was it fully healed.

#296. On 8/3/23, plaintiff went on a Medical Furlough Writ to see the Orthopaedic Hand Specialist at the Orthopaedic Institute Of Southern Illinois around 6:45 am with the Medical Doctor Glen Babich telling plaintiff that he had scheduled him for a Post-Surgery follow-up for six weeks after plaintiff's Carpal Tunnel Surgery on 3/3/23, yet plaintiff wasn't returned for Post-Surgery follow-up care evaluation until approximately 5 months later on 8/3/23, with both Warden Anthony Wills and Unit Medical Director/Health Care Unit Administrator Angela Crain being Deliberate Indifferent to plaintiff's serious medical needs ▪ for not following the advice and recommendations of the Orthopaedic Hand Specialist, for denying or delaying him necessary treatment and access to adequate medical care and medical personnel, for interfering with treatment prescribed and follow-up care by the Orthopaedic Hand Specialist, and for needlessly and unreasonably placing plaintiff's health and safety at risk of physical harm and serious damage, prolonging his pain, for their inaction, constituting unnecessary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment.

#297. On 8/3/23, upon return from the Orthopaedic Institute Of Southern Illinois medical furlough Writ for Post Follow-Up Care by Orthopaedic Hand Specialist Warden Anthony Wills and Unit Medical Director/Health Care Unit Administrator Angela Crain both failed to adhere to Administrative Directive, 04.03.101, "Offender Physical Examinations, requiring plaintiff received an intake Screening, wi

135.

- Documented findings of his medical history, including an intake physical examination within 7 working days of plaintiff's return from the Orthopaedic Institute of Southern Illinois after Orthopaedic Post-Surgery Follow-up for a freshly unhealed open wound, by a physician, physician's assistant, or nurse practitioner with them conducting a complete physical examination of plaintiff with the examination results being documented on the "DOC 0099", constituting Deliberate and Intentional Indifference to plaintiff's serious medical needs for not following their own policies, administrative directives, rules, regulations, state law, placing plaintiff's health and safety of physical harm at unreasonable risk and serious damage, along with the unnecessary and wanton infliction of pain in violation of the Eighth Amendment's Prohibition against Cruel and Unusual Punishment. (See Exhibit # 11:

"Defendant - Wexford Health Sources, Inc./ Private Corporation Provided Health Care Services For Menard Correctional Center Inmates - Policy, Custom, Practice of Denial or Delay of Adequate Access to Medical Care (Severe Hand Injury - Fractured hand, Nerve Damage Carpal Tunnel, and Arthritis Pain) being Deliberate Indifference to Plaintiff's Serious Medical Needs in Violation of Eighth Amendment's Prohibition OF Cruel And Unusual Punishment"

(#298.) Wexford Health Sources, Inc., provided health care services for Menard C.C. under contract with the State Of Illinois during the relevant time of this lawsuit; Wexford is responsible for providing medical care to inmates at Menard Corr. Center. (See Exhibit # 94).

(#299.) Plaintiff was denied access to an Outside Clinic Physician for a follow-up for his request for surgery to repair his improperly healed fractured right hand over a Carpal Nerve that caused him pain and suffering which was a result Wexford's medical staff misdiagnosing his injury and Wexford's policy of directing its medical staff when conditions are prexisting, chronic, and stable it only requires monitoring and may receive minimal support observation instead of providing adequate medical treatment. (See Exhibit # 94).

136.

**#300.)** After plaintiff sustained severse hand injury in a fight in self defense, resulting in a fractured right hand, prison nurses and Medical Doctor Radiologists intentionally misdiagnose him on numerous occassions over several months, denying him access at adequate medical care and physician personnel, because of Wexford's policy or custom of instructing its support medical staff to maintain doubtful suspicion of inmates medical complaints and to misdiagnose their injuries to prevent having to provide treatment with observation only being the best course of treatment. (See Exhibit # 94).

**#301.)** Plaintiff sustained a severe hand injury in a fight in self defense resulting in a fractured right which led to him being assessed and evaluated by unqualified nurses, provided ineffective courses of treatment in receiving only pain medication for a broken hand for a 19 month period until gaining adequate treatment in the form of surgery, being misdiagnosed multiple times, denied and delayed access to see an Orthopaedic Hand Specialist for Evaluation and being given the Wrong Right Wrist Hand Splint by Menard's C.O. medical staff, all because of Wexford's policy or custom of not having a full-time doctor stationed at Menard C.C. onsite at all times, or on call to properly ensure adequate medical care is provided in the above mentioned areas.

**#302.)** Plaintiff sustained a severe hand injury in a fight in self-defense in the form of a broken hand, Nerve Damage & Arthritis experiencing pain and suffering, and a 19 month delay before obtaining adequate medical care in the form of surgery, because of Wexford's policy and custom in place amongst its staff where it gives medical staff discretion to disregard inmates serious medical needs for the convenience of medical and correctional staff with factors considered for deciding courses of treatment not being based on the medical needs of the inmate. (See Exhibit # 94).

**#303.)** Plaintiff sustained a severe hand injury, a fractured right hand, and was denied or delayed access to an Outside Orthopeadic Medical Doctor for Evaluation and adequate medical care for approximately a 6 month period on multiple occassions unnecessarily prolonging his pain and worsening his

**[300.]** **137.**

—his injury, because of Wexford having a policy or custom that encourages medical staff to falsify information on sick call evaluations and medical reports to support their assessment findings that justifies their misdiagnosis which leads to inmates receiving no treatment, delays, and also resulting in denials of referring inmates to see outside physicians for evaluations. (See Exhibit # 94).

**#304.** Plaintiff had a severe ~~serious~~ hand injury, a fractured right hand, yet wasn't sent out to see an Orthopaedic Hand Specialist for an evaluation for an approximately 6 month delay after sustaining his injury, even after possessing the symptoms that Medical Treatment Protocols required referral to see Medical Doctor for, and after several recommendations by Medical Doctor Radiologist requesting plaintiff be seen by an outside Clinic Physician for eval after review of X-ray findings, all as a direct result of Wexford having a policy of encouraging the Unit Medical Director (Angela Crain at Menard Corr. center) to undermine the recommendations for procedures and services by specialists when deciding to provide services to meet inmates serious medical needs, with the Unit Medical Director having the final decision making authority with them justifying it by indirectly stating the treatment or repair isn't the responsibility of the Department of Corrections. (See Exhibit # 94).

**#305.** Plaintiff was denied and delayed access to an Orthopaedic Hand Specialist for an Eval and adequate medical treatment for a severe hand injury, a broken right hand, for approximately six months, resulting in prolonged pain and suffering and worsening his injury causing irreparable damage and permanent disfiguration, extreme discomfort, loss of range of motion, loss of functioning in his hand, intentional infliction of emotional distress, severe mental anguish, and depression in violation of his serious medical needs and the Eighth Amendment's prohibition of Cruel and Unusual Punishment, all because of Wexford's Radiologist Service Policy system, where their employed nurses and nurse practitioners are being ordered to interpret X-ray films and make personal evaluations giving them radiologist readings final decision making

138.

— authority to determine if an inmate needs to be referred to see an Outside Clinic Physician overriding the Radiologist's referral recommendation's, leading to unqualified Nurses and Nurse practitioners making (medical misdiagnoses). (See Exhibits # 94, #11, #12, #13, #14, #15, #16, #17, #18, #19, #21, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53, #54, ).

(#306.) Plaintiff was intentionally given ineffective courses of treatment for his severe hand injury (Improperly healed fractured hand, Nerve Damage, Arthritis) in the form of physical theraphy and right Wrist Hand Splints that unnecessarily prolonged his pain and suffering and delayed access to adequate medical care, because Wexford has a policy and custom of instructing its medical staff to prescribe ineffective courses of treatment for extended periods of time for injuries as a cheap cost effective medical alternative to deny or delay having to cover the cost for adequate medical care to save money and increase profits, by knowingly encouraging its medical staff to play psychological role playing in attempt to deceive patients into thinking the physical theraphy and hand splint orthotic devices are helping or providing adequate treatment when in actuality it may soothe the mind but does nothing to correct the source of the illness, problem, or injury. (See Exhibit # 94, #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #53, #54, #55, #56, #61, #62, #68, #82, #83, #84, #86, #87, #88, #85, #91, #92, #126, #125 ).

(#307.) Plaintiff was denied corrective surgery to repair a fractured right hand that healed improperly, causing him additional and unnecessary pain and suffering, due to a misdiagnosis of Wexford's medical staff ~~that~~ denied and delayed access to an outside Orthopaedic Hand Specialist and access to adequate medical care, because Wexford has a policy of instructing its medical staff to disregard and give less consideration to proposed corrective treatment procedures that might give some relief, and more significant weight to proposed treatment only if there is a reasonable —

139.

—expectation that the outcome of the treatment will make a significant difference for a reasonable duration in order for a procedure to be given serious consideration. (See Exhibit # 94, #11, #12, #13, #14, #15, #16, #17, #18, #19, #21, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #51, #52, #53, #55, # ).

(#308.) Plaintiff's requests to see an outside Orthopaedic Hand Specialist for a severe hand injury, a broken right hand he sustained in a fight in self-defense, corrective surgery to repair an improperly healed misdiagnosed fractured hand, with denied and delayed access to an outsi -de physician for proper evaluation, corrective surgery- Carpal Tunnel Nerve Damage Surgery, having to endure extreme discomfort, unnecessary pain and suffering, being prescribed knowingly ineffective courses of treatment in receiving only pain medication and Whrist Hand Splints, for a 19 month period before receiving access to adequate medical care in the form of Carpal Tunnel Surgery, all because Wexford has a policy and custom that tells its hired medical staff that IDOC and Wexford does not have a responsibility to provide a service simply because an inmate requests it, nor does the State have a responsibility to cure, only to appropriately diagnose and treat. (See Exhibit # 94, #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #38, #31, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #53, #54, #55, #56, #61, #62, #68, #77, #78, #80, #82, #83, #84, #86, #87, #88, #85, #91, #92, #125, #126 ).

(#309.) Plaintiff with a severe hand injury in the form of a broken right hand, Arthritis, and Carpal Tunnel Syndrome that he sustained in a fight in self-defense trying to protect himself from harm at the hands of another inmate, was forced to endure extreme discomfort, pain and suffering for over a 19 month period until he could obtain adequate medical care in the form of surge , due to being prescribed ineffective generic pain medication and non-formulary capsule Cymbalta Anti-Depression Medication he was told also functions as anti-inflammatory pain-

(140.) 141.

~medication that suppose to help with his chronic intermittent pain, which also placed an ~unreasonable risk to plaintiff's health and safety, serious damage, and physical harm in violation of the Eighth Amendment, as a result of Wexford's Pharmaceutical Service Policy that allows for the use of generic (unbranded) non-formulary medication in capsules that are not authorized medications included in an approved formulary list, which require official formula medicines to adhere to a fixed or prescribed form, formulas, with specific directions for compounding them according to official formulary standards, which are placing inmates health and safety at risk with unregulated and unknown medicine formulas being used with unknown adverse consequences and side effects as cheap pain medication alternatives to cut costs and save money to increase profit margins. (See Exhibit # 94, #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, #39, #40, #41, #42, #43, #44, #45, #4, #47, #48, #49, #50, #53, #54, #55, #56, #57, #58, #59, #60, #61, #62, #63, #64, #65, #66, #68, #70, #72, #77, #78, #80, #81, #83, #84, #86, #87, #91, #92, #125, #126).

(#300.) Wexford Health Care Source has a practice in place at Menard Correctional Cent amongst its staff where it prolongs and denys adequate access to medical care to inmates, so Wexford can save money. (See Exhibit # 94).

(#301.) As a direct result of the conduct described above in paragraphs 1-305, inclusive, plaintiff Keith Allen has suffered and still suffers injuries. The injuries plaintiff suffered include unnecessary and wanton infliction of pain, unnecessary prolonged suffering, irrepai -ble damage, permanent disfiguration and deformity, loss of range of motion, diminished functioni extreme discomfort, sharp stabbing pains and throbbing and burning sensations in hand, arm, numbness and loss of feeling and weakness in right hand, pinching pains in wrist, severe hand cramps, loss of sleep, migraines, headaches, extreme mental anguish, depression, infliction of emotional distress, from the following injuries of fractured bone in right hand that healed improperly with the bone being infused together, no protective coating over the bone, bone marrow

-gone from inside it, with bare bones rubbing against each other and denied surgery to repair it so it can heal properly, then Arthritis bone joint pains, and carpal Tunn Syndrome Nerve Damage with improperly healed bone encroaching over Carpal bones causing more pain, which plaintiff endured for approximately 19 months from the day of sustaining injury on 8/16/21 until he received any form of meaningful medical care in the form of surgery on 3/3/23, being prescribed only ineffective pain medication the entire 19 month period with plaintiff being ~~treated~~ treated less than human by Menard's C.C. and Wexford's medical staff causing severe pain and suffering and emotional distress, through improper treatment, Denials, Unnecessary and unreasonable delays of treatment for non-medical reasons. (See Exhibits #94, #1, #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #24, #25, #26, #27, #28, #29, 30, #31, #32, #33, #34, #35, #36, #37, #38, #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, #49, #50, #5, #54, #55, #56, #61, #62, #68, #77, #78, #80, #82, #83, #84, #86, #87, #88, #85, #91, #92, #125, #126)

## ✳✳✳ "Claims For Relief" ✳✳✳

### ✳ – Count #1 – 42 U.S.C. ] 1983 – ✳

"Deliberate Indifference to Plaintiff's Serious Medical Needs in Violation Of The Eighth and Fourteenth Amendments."

(#302.) Plaintiff incorporates herein the facts set forth in paragraphs 1-306, inclusive.

(#303.) Plaintiff had a serious medical need while in Custody at Menard Correctional Center and under the care of Illinois Department of Corrections due to a severe hand injury in the form of a fractured right hand, Carpal Tunnel Syndrome Nerve Damage, and Arthriti pain. Mr. Allen was denied adequate treatment, unnecessarily delayed access to adequate medical care and physician personnel, given inappropriate and ineffective courses of treatment tha

(142.)

—worsened his injury and unnecessarily prolonged his pain and suffering throughout various times over a 19 month period before receiving any meaningful treatment in the form of surgery.

(#304.) Defendant's, Rob Jeffreys, Wexford Health Sources, Inc., Anthony Wills, DeAnna Kink, Angela Crain, J. Crane, Alisa Dearmond, Nicole Brand, M. Moldenhauer, N. Florence, N. Yousuf, Clara Richmond, Kelly Pierce, Reva (Nurse Jane Doe), Suzie (Nurse Jane Doe), all had actual knowledge of or should have known of the substantial risk of serious harm to Mr. Allen's health and safety, because Mr. Allen repeatedly informed all defendants of his severe hand injury and the extreme pain and suffering he experienced and the lack of appropriate medical attention received, which Mr. Allen informed defendants of these issues in various ways — in person, the filing of multiple grievances, reports, appeals, correspondences, mental health personnel notes and correspondences, and in his medical records.

(#315.) All defendants were deliberately indifferent to Mr. Allen's serious medical condition. Defendants failed to provide him access to physician personnel to properly assess and evaluate his severe hand injury in a reasonable amount of time exacerbating his injury and prolonging his pain and suffering, they failed to follow advice of Medical Doctors and physicians recommendations or courses of treatment, ~~interfering~~ interfered with prescribed treatment once ordered by physician, failed to timely schedule surgery appointments and unnecessarily delayed them for non-medical reasons, knowingly persisted in providing inappropriate and effective courses of treatment failed to adhere to follow-up care ordered by Orthopaedic Hand Specialist, and have a policy or custom of restricting, if not outright denying access to adequate medical care, referrals to outside clinics to see specialists, and ▬▬▬ follow-up care ordered by a doctor when such care is expensive.

(#316.) This deliberate indifference deprived Mr. Allen of the protection from Cruel and Unusual punishment and the unnecessary and wanton infliction of pain as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

(143.) ▮▬.▮

(#317.) As a direct result of Defendants' deliberate and Intentional Indifference, Mr. Allen has sustained additional injuries of a personal nature, and physical and emotional pain, suffering, and injury.

Count #2 — 42 U.S.C. § 1983
"State Law Tort - Medical Malpractice / Intentional Medical Negligence Claim"

(#318.) Defendant, Nurse Practitioner, J. Crane, owed plaintiff a duty of reasonable standard of care to provide adequate medical care with reasonable diligence when summoning medical care for inmate in need of immediate medical care, when made aware of plaintiff's severe hand injury in person, by continued complaints of pain and suffering among various symptoms of deformity, severe pain, swelling, loss of range of motion on three occasions and via Medical Doctor, Radiologist's, X-ray findings requesting patient be seen by an outside physician.

(#319.) Defendant, J. Crane, breached that duty by not following the recommendations of specialist to refer plaintiff to see a physician for examination, for not communicating to physician orthopaedic hand specialist plaintiff's continued symptoms and complaints of pain for not following NCCHC Standards of care requiring LPN (NP) Practitioners to report accurate information to treating physicians, for practicing and persisting in an ineffective course of treatment, for significantly diminishing the seriousness of plaintiff's severe hand injury which was later found out to be broken / fractured.

(# 320.) Defendant, J. Crane's, breach of duty resulted in serious physical and emotional injury, and damages, specifically the unnecessary and wanton infliction of pain, unnecessary prolonged suffering, irreparable damage, permanent disfiguration and deformity, loss of range of motion, diminished functioning, extreme discomfort, sharp stabbing pains and throbbing and burning sensations in hand and wrist, numbness and loss of feeling and weakness in right hand, pinching pains in wrist, severe hand cramps, loss of sleep, migraines, headaches, extreme mental anguish, depression

(144.)

—infliction of emotional distress, and unable to engage in recreational daily activities, placing his health and safety at risk with other inmates living in a ~~prison~~ prison environment.

321a. Defendant, J. Crane's breach of Duty proximately caused those damages.

322. Defendant, Registered Nurse, Alisa Dearmond, owed plaintiff a duty of reasonable standards of care to provide care, by communicating to Orthopaedic Hand Specialist Doctor describing the symptoms and information about plaintiff's complaints of pain and suffering, severe hand injury, deformity, swelling, loss of range of motion, after being made aware by her personal in person observation with knowledge of a risk to plaintiff's health on three seperate occasions and disregarding it when it was obvious he had a serious medical need.

323. Defendant, Alisa Dearmond, breached that duty when confronted with an inappropiate or questionable practice and simply deferred to that practice, when she has a professional obligation to the plaintiff to "take appropriate action," whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority; not referring plaintiff to see an Orthopaedic Hand Specialist after witnessing him be seen for the same complaint three times in thirty days for the same complaint in violation of Administrative Directive, number - 04.03.121, title - "Treatment Protocols"; and for failing to refer plaintiff to see an outside physician for evaluation even after Medical Doctor, Radiologist, N. Yousuf, recommended her to do so on 10/13/21 after his X-ray findings review where he identified "mild degenerative changes and mild soft tissue swelling" in plaintiff's right hand, and for not ensuring plaintiff received constitutionally adequate care which she as a Registered nurse has an independant duty to do.

324. Defendant, Alisa Dearmond's, breach of duty resulted in serious physical and emotional injury, and damages, specifically the unnecessary and wanton infliction of pain, unnecessary prolonged suffering, irreparable damage, permanent disfiguration and deformity, loss of range of motion, diminished function, extreme discomfort, sharp stabbing pains and throbbing and burning sensations in hand and wrist, numbness, loss of feeling, and weakness in right hand, pinching pains in wrist, severe hand cramps,

145.

—loss of sleep, migraines, headaches, extreme mental anguish, depression, infliction of emotional distress, and unable to engage in recreational activities, placing his health and safety at risk with other inmates ▬ living in a violent prison environment.

(#325.) Defendant, Alisa Dearmond's, breach of Duty proximately caused those damages.

(#326.) Defendant, Medical Doctor-Radiologist, N. Yousuf, owed plaintiff a duty of reasonable standard of care to provide adequate medical care with reasonable diligence when summoning medical care for inmate in need of immediate medical care, when made aware of plaintiff's severe hand injury via x-ray reviews on several occasions and his continued complaints of pain and suffering, along with observing various symptoms of deformity, severe pain, swelling, mild degenerative changes seen on x-ray findings, requiring N. Yousuf to ensure plaintiff be seen by an Orthopaedic Hand Specialist for Evalu-tion.

(#327.) Defendant, N. Yousuf, breached that duty by failure to provide a complete description of the situation surrounding plaintiff's injury for Orthopaedic Hand Specialists upon eval, and significa-ntly diminishing the seriousness of patients symptoms, and by misleading medical professionals about patients health, which Radiologist, N. Yousuf did when misdiagnosing plaintiff's fractured hand in X-ray report reviews on 9/2/21 and 9/16/21, which reports contradicted each other showing deception and Intentionally falsifying medical X-ray findings and providing false information to to treating physicians; for not ensuring plaintiff was seen by medical doctor after confronted with inappropriate and questionable practices after reviewing X-ray films by Menard's medical staff on 9/2/21 and on 9/14/21 after he requested that Menard's medical staff refer plaintiff to be seen by a Doctor for eval on both dates, and his failure to fulfill his professional duty and obligation to ensure plaintiff received constitutionally adequate medical care by "taking appropriate action", whether by discussing the medical Doctor's concerns with the treating Orthopa-dic physician or by contacting a responsible administrator or higher authority.

(#328.) Defendant, N. Yousuf, breach of Duty resulted in serious physical and emotional injury, and damages, specifically the unnecessary and wanton infliction of pain, unnecessary prolonged suffering,

(146.) [▬]

— irreparable damage, permanent disfiguration and deformity, loss of range of motion, diminished function, extreme discomfort, sharp stabbing pains and throbbing and burning sensations in hand and wrist, numbness, loss of feeling and weakness in the right hand, pinching pains in wrist, severe hand cramps, loss of sleep, migraines, headaches, extreme mental anguish, depression, infliction of emotional distress, and unable to engage in daily recreational activities, placing his health and safety at risk with other inmates due to living in a violent prison environment.

(#329.) Defendant, N. Yousuf's breach of duty proximately caused those damages.

(#330.) Defendant, Medical Doctor-Radiologist, N. Florence, owed plaintiff a duty of reasonable standard of care to provide adequate medical care with reasonable diligence when summoning medical care for inmate in need of immediate medical care, when Medical Doctor-Radiologist, N. Florence was made aware of plaintiff's complaints; of his severe hand injury by X-ray report sent to him from Nurse Practitioner, J. Crane, on 8/20/21; and plaintiff's complaints of extreme pain and suffering along with symptoms of moderate swelling, purple discoloration to hand and palm, radical pulse signs, and moderate severe restriction of motion being unable to make fist and him being prescribed Motrin 600 mg pain medication, ~~and reviewing inappropriate and questionable practices~~ from (NP) J. Cranes Assessment reports notes, with Radiologist, N. Florence, having knowledge of a substantial risk to plaintiff's health and safety.

(#331.) Defendant, Medical Doctor-Radiologist, N. Florence, breached that duty by after being made aware of plaintiff's severe hand injury and complaints of extreme pain, suffering, and adverse symptoms via nurse practitioner's assessment, X-ray notes, having knowledge of a substantial risk to plaintiff's health and safety and knowingly disregarding obvious risks, by him intentionally misdiagnosing plaintiff's injury, failing to provide a complete and accurate description of his findings; the situation surrounding plaintiff's injury for Orthopaedic Hand Specialist review upon eval, and significantly diminishing the seriousness of patients symptoms and injury, and by misleading medical professionals about plaintiff's health; for not ensuring plaintiff was seen by a medical Doctor after confronted with "inappropriate and questionable practices" after reviewing X-ray film and Menard C.C. nurse's notes from 8/20/21 assessments, and N. Florence's failure to fulfill his professional duty and obligation

(147.)

— to ensure plaintiff received constitutionally adequate medical care by "taking appropriate action", whether by discussing the medical doctor's concerns with the treating Orthopaedic physician or by contacting a responsible administrator or higher authority.

(#322.) Defendant, N. Florence's, breach of duty resulted in serious physical and emotional injury, and damages, specifically the unnecessary and wanton infliction of pain, unnecessary prolonged suffering, irreparable damage, permanent disfiguration and deformity, loss of range of motion, diminished functioning, extreme discomfort, sharp stabbing pains and throbbing and burning sensations in hand and wrist, numbness, loss of feeling, weakness in right hand, ~~████████~~ pinching pains in wrist, severe hand cramps, loss of sleep, migraines, headaches, extreme mental anguish, depression, infliction of emotional distress, and unable to engage in recreational activities, placing his health and safety at risk with other inmates living in a prison environment.

(#323.) Defendant, N. Florence's breach of duty proximately caused those damages.

(#324.) Plaintiff incorporates herein the facts set forth in paragraphs 1-312, inclusively, as the grounds and foundation for Count #2 - State Law Tort - Medical Malpractice / Intentional Medical Negligence Claim, above.

## Count #3 — 42 U.S.C. § 1983

### "State Law Tort - Intentional Infliction Of Emotional Distress Claim"

(#335.) Plaintiff incorporates herein the facts set forth in paragraphs 1-329, inclusive.

(#336.) Defendants' acts and omissions as set forth above were extreme and outrageous with defendants' conduct going beyond all bounds of decency and were intolerable in a civilized community.

(#337.) Defendants' intentionally delayed treatment and denied access to adequate medical treatment, and in a timely fashion for plaintiff Mr. Allen's severe hand injury as a cost-saving measure. Defendants' acted with reckless disregard for the health and safety of plaintiff Mr. Allen, by

(148.)

— delaying and denying his treatment for his severe hand injury, in the form of a Broken Right Hand and Carpal Tunnel Syndrome (Nerve Damage) and Arthritis.

(#338.) Defendants' intentional and reckless conduct in failing to provide Mr. Allen with the basic necessities of Life, such as medical care, is outrageous conduct. Defendant also breached their duty under Illinois Law and IDOC Contract to exercise ordinary and reasonable care to preserve the health and life of Mr. Allen.

(#339.) Plaintiff suffered a severe hand injury, specifically a broken right hand, on 8/16/21 in a fight in self-defense trying to protect himself from great bodily harm from another inmate.

(#340.) Plaintiff told Defendants, and Menard's medical staff being made aware of plaintiff severe hand injury in person on 8/16/21, when he was put in to see Nurse Practitioner, J.Crane sick call on 8/17/21 and 8/20/21, at which time his hand was swollen like a Baseball glove with plaintiff experiencing pain and suffering with no pain medication or receiving no medical treatment for on 8/16/21.

(#341.) On 8/17/21, after nurse practitioner, J. Crane became aware of plaintiff's severe hand injury in person on nursing sick call evaluation observing his swollen hand, loss of range of motion being unable to make a fist, purple discoloration, deformity, severe pain and suffering, only giving him an ice pack and pain pills and an X-ray over another inmate on 8/20/21, where her and Registered Nurse, Alisa Dearmond, both reviewed the X-ray findings and laughed and joked sarcastically about plaintiff's injury, saying: "how it was remarkable that his hand could be that swollen and not have any fractures" after asking him how he injured it and being told he injured it in a fight with another inmate, right after misdiagnosing his hand injury, which prevented plaintiff from being referred to see an Orthopaedic Hand Specialist for Eval and denying and delaying him access to adequate medical care four days after sustaining his hand injury; Due to Wexford Health Source Inc.'s Policy directing it's medical staff to intentionally misdiagnose inmates injuries, stating: no diagnosis equals no treatment in order to avoid having to pay for inmates medical care for their —

(149.) (150.)

- serious medical needs to cut costs, and save money to increase their profit margins. All at the expense of plaintiff's health and safety, because an inmate cannot obtain his own medical care and is dependant upon prison officials, if the authorities fail to do so, those needs will not be met.

(#392.) Then Plaintiff was seen on nursing sick calls for the same severe hand injury on 8/20/21, 8/31/21, and 9/14/21 with Menard's medical staff conducting three different X-rays and intentionally misdiagnosing him on each occasion preventing him access to see an outside Hand Specialist for Eval and to receive proper treatment, despite their own medical treatment protocols and Medical Doctor-Radiologist's, X-ray review findings indicating symptoms that required a physicians attention and requesting plaintiff be referred to see a physician on two seperate occasions, yet menard's medical staff refused to follow Radiologist's recommendations, intentionally and maliciously prolonging his pain and suffering, causing intentional infliction of emotional distress.

(#393.) Plaintiff filed multiple emergency grievances that were deemed emergencies by the Warden, Anthony Wills, on 10/15/21 and 11/3/21 requesting a second opinion from an outside Hospital and nurse's X-ray for his severe hand injury and pain and suffering with the pain pills prescribed being ineffective courses of treatment (treating the symptom and not the cause which is the equivelent of placing a bandaid over a gunshot wound) in attempt to get proper treatment for his fear of worsening his injury and possible risk of permanent disfiguration, all of which requests fell on deaf ears for approximately six months before finally seeing an Orthopaedic Hand Specialist on 2/8/22 for Eval, only for him to confirm that Wexford and Menard's medical staff maliciously lied and misdiagnosed plaintiff's injury of a fractured right hand and denied and delayed him access to adequate medical care and physician personnel exacerbating his injury with his fears of permanent disfiguration coming true as a result causing him intentional infliction of emotional distress amongst various other injuries.

(150.)

#344. After the Orthopaedic Hand Specialist confirmed his improperly healed right hand fracture and Carpal Tunnel Syndrome Nerve Damage, plaintiff requested to get the surgery to correct the improperly infused broken bones that caused him pain, only to be denied his request by Wexford and Menard's medical staff, then the failed to provide him anti-inflammatory pain medication prescribed by the Orthopaedic Hand Specialist for his chronic intermittent pain for approximate four months, intentional and maliciously, dispite his multiple request over that period to receive them and having knowledge of the Doctor recommending plaintiff's need for it, with medical staff at Menard C. unnecessarily and intentionally prolonging his pain and suffering, resulting in severe mental anguish and extreme depression which he was treated by Mental Health Staff for, who prescribed him Symbalta, anti-depression medication for as a result of the maltreatment he was receiving by medical personnel, his pain and suffering, and the intentional infliction of emotional distress plaintiff was forced to endure.

#345. Plaintiff experienced the most extreme and outrageous conduct by the hands of Menard and Wexford's medical staff for his severe hand injury in numerous ways over a 19 month period, being given multiple forms of known ineffective and inappropriate courses of treatment as cheap alternatives designed to aggrevate and prolong inmates pain and suffering and Wexford policy to save money by denying access to adequate medical care to avoid having to pay for inmates treatment, with plaintiff experiencing a four month delay after the Orthopaedic Hand Specialist prescribed plaintiff to have surgery for Carpal Tunnel Nerve Damage, with multiple resceduling for surgery for non-medical reasons, maliciously done. With on one occasion plaintiff was driven on a medical furlough Writ to the Orthopaedic Institute Of Southern Illinois in anticipation for having surgery to relieve him of his pain and suffering 3 months after the Orthopaedic Hand Specialist put him in for surgery only to get to the Ortho Clinic and find out Menard's medical staff scheduled a follow-up appointment and not for surgery, where he was prevented from having surgery that day, and had to wait an additional month of

151.

— suffering before actually obtaining it, causing plaintiff, intentional infliction of emotional distress.

(#346.) Then after finally receiving surgery Menard and Wexford's medical staff failed to conduct intake physical examinations upon return to Menard C.C., nor was it done once on any Medical Furlough Writ on approximately 6 to 8 medical Furlough Writ trips within a 19 month period, nor did they send plaintiff out within 6 weeks after obtaining surgery for a Post-Surgery Follow-up examination as requested by Orthopaedic Hand Specialist until 8/3/23, approximately 5 months later after having surgery, placing plaintiff's health and safety at risk even further being deliberate and intentionally Indifferent to his serious medical need in violation of their own rules, regulations, policies, Administrative Directives, State Law, and Plaintiff's Eighth Amendment Rights of the United States Constitution to be free from Cruel and Unusual Punishment.

(#347.) Plaintiff suffered the following injuries over the course of a 19 month period from the date he sustained his severe hand injury on 8/16/21 to obtaining any meaningful treatment or relief in the form of surgery on 3/3/23, as a result of defendant's malicious conduct, medical maltreatment, denial and unnecessary delays of access to adequate medical and physician personnel, along with their intentional infliction of emotional distress, and deliberate and intentional Indifference to plaintiff's serious medical needs for not following their own rules, regulations, policies, administrative directives, state law, and violations of his Eighth Amendment rights: "Serious physical and emotional injury, and damages, permanent disfiguration, and deformity, loss of range of motion, diminished functioning, extreme discomfort, sharp stabbing pains and throbbing and burning sensations in hand and wrist, numbness, loss of feeling and weakness in his right hand, pinching pains in wrist, severe hand cramps, loss of sleep, migraines, headaches, extreme mental anguish, depression, infliction of emotional distress, and unable to engage in daily recreational activities, and placing his health and safety at risk with other inmates due to living in a violent prison environment.

(152.)

**# 348.)** Defendants intentionally interfered with treatment prescribed by Orthopaedic hand Specialist when they failed to give him a "Right Wrist Hand Splint" to prevent from aggrevating his injury, and gave him a "salt Wrist brace" instead with no wrist support which lead to plaintiff falling off the top bunk further injurying his right hand, then Nurse, Nicole Brand, Menard's medical staff then deceived and tricked plaintiff, in retaliation for filing grievances seeking to obtain adequate medical care for his prolonged pain and suffering, into signing the permit for receiving the "Right Wrist Hand Splint" even though he never was given it by nurse, after suffering additional injury and having to file a grievance to receive it, resulting in an approximately 3 month delay before actually receiving the correct "Right Wrist Hand Splint", which was prescribe as a course of treatment for his severe hand injury.

**# 349.)** Each Defendant's conduct was extreme and outrageous.

**# 350.)** Each Defendant either intended to inflict emotional distress on Mr. Allen, when engaging in this conduct or knew that there was a high probability that their conduct would cause emotional distress.

**# 351.)** Each Defendants conduct caused plaintiff, Mr. Allen, to suffer severe emotional distress that no reasonable person could be expected to endure.

**# 352.)** Plaintiff has been harmed as a direct result of the conduct of each Defendant.

Wherefore, Keith Allen, demands Judgment against defendants, and each of them, for Compensatory and Punitive damages; Attorneys fees and cost of this action; and such other and additional relief as the court deems equitable and just.

## ✳✳✳ Demand For Jury Trial ✳ ✳✳

Pursuant to Federal Rule of Civil Procedure 38(b), Keith Allen demands a trial by jury of any and all issues on which trial by Jury is available under applicable law.

153.

## ✳ ✳ ✳  Relief Requested ✳ ✳ ✳

Wherefore, pursuant to 42 U.S.C. Section 1983, Plaintiff, Keith Allen demand judgment against defendants, and each of them, for :

1.) Compensatory and Punitive damages, jointly and severally;

2.) Injunctive Relief in the form of an order enjoining and prohibiting individual defendants and other current and future employees of Menard Correctional Center and Illinois Department Of Corrections from further deprivations of plaintiff rights. For Plaintiff Keith Allen to be Immediately transferred to StateVille C.C. or Kewanee C.C. to not be retaliated against any further by Menard C.C. Medical Staff and Correctional Officers Personnel and Warden. That all Defendants in this civil suit to be disciplined and fired for violating plaintiff's rights and intentional malicious acts that caused plaintiff severe pain and suffering and intentional Infliction of emotional distress, in accordance with violating Administrative Directive number: 03.02.108, Title: Standards Of Conduct, effective: 1/1/2021. Plaintiff also requests that Wexford Health Sources, Inc., be forced to change all their unconstitutional policies aimed at denying inmates adequate medical care to cut costs and increase profits, and that they lose their Contract as Primary Prison & Jail Medical Service Provider for the Illinois Department Of Corrections, for their unlawful and unethical medical Malpractice Practices and their known history of Denying, Delaying, and Failing to Provide Adequate Medical Care to prisoners under their care, placing their Health a Safety at Risk, Causing severe injuries, irreparable damages, with some Resulting In Death !!!

3.) Declare that All Defendants violated Plaintiff's Eighth Amendment rights to Medical Care, and violated State Law Tort of Intentional Infliction Of Emotional Distress.

4.) Attorney's Fees and Costs of this Action;

(154.)

5.) Grant Plaintiff any such other additional relief as this Honorable Court deems equitable and Just.

Date: 11/22/23

Respectfully Submitted,

X _Keith Allen_

Keith Allen # M21830
Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

\* \* \* \*  Verification Of Complaint  \* \* \*

"Declaration Under Penalty Of Perjury"

Pursuant to 28 U.S.C. 1746 and 18 U.S.C. 1621, I declare under penalty of perjury that I am a named party in the above action, I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: 11/22/23

/s/ Keith Allen

Keith Allen
# M21830

Menard Correctional Center
P.O. Box 1000
Menard, IL. 62259

155.



11-22-23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Allen, Keith

Name

M21830

ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?  (Yes) or  No

    If this is a habeas case, please circle the related statute:  28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?  Yes or (No)

    If yes, please list case number:  N/A

    If yes, but you do not know the case number mark here: _____

3.  Should this document be filed in a pending case?  Yes or (No)

    If yes, please list case number:  N/A

    If yes, but you do not know the case number mark here: _____

4.  Please list the total number of pages being transmitted:  600

5.  If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| — Complaint | 156 |
| — Motion To Proceed Without Cost with Trust Fund Certifications | 9 |
| — Motion For Recruitment of Counsel | 6 |
| — Motion For Class Certification | 2 |
| — Exhibits | 426 |
| — Notice of Filing | 1 |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

## VI.    JURY DEMAND (*check one box below*)

The plaintiff ☐ does   ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: _____          _____

(date)                                  Signature of Plaintiff

_____          _____

Street Address                            Printed Name

_____          _____

City, State, Zip                          Prisoner Register Number

_____

Signature of Attorney (if any)

Rev. 10/3/19